# EXHIBIT 3

```
 1                UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3  INTELLECTUAL VENTURES,   ) Docket No. A 19-CA-1075 ADA
    LLLC                     )
 4                           )
    vs.                      ) Austin, Texas
 5                           )
    VMWARE, INC.             ) January 31, 2020
 6  ---------------------------------------------------------
                  UNITED STATES DISTRICT COURT
 7                WESTERN DISTRICT OF TEXAS
                        WACO DIVISION
 8
    PARUS HOLDINGS, INC.     ) Docket No. A 19-CA-432 ADA
 9                           )
    vs.                      ) Waco, Texas
10                           )
    APPLE, INC., ET AL       ) January 31, 2020
11
                  TRANSCRIPT OF MOTION HEARING
12            BEFORE THE HONORABLE ALAN D. ALBRIGHT

13  APPEARANCES:

14  For Intellectual        Mr. Jonathan DeBlois
    Ventures:               Mr. Robert R. Gilman
15                          Prince, Lobel, Tye, LLP
                            One International Place
16                          Boston, Massachusetts 02110

17                          Mr. Derek T. Gilliland
                            The Sorey Law Firm
18                          109 West Tyler Street
                            Longview, Texas 75601
19
    For Parus Holdings:     Mr. Andrew H. DeVoogd
20                          Mr. Michal J. McNamara
                            Mintz, Levin, Cohn, Ferris,
21                          Glovsky and Popeo, P.C.
                            One Financial Center
22                          Boston, Massachusetts 02111

23  For VMware, Inc.:       Ms. Katherine Kelly Vidal
                            Winston & Strawn, LLP
24                          275 Middlefield Road, Suite 205
                            Menlo Park, California 94025

25
```

```
 1   (Appearances Continued:)

 2   For Apple, Inc.:        Ms. Bita Rahebi
                             Morrison & Foerster, LLP
 3                           707 Wilshire Boulevard,
                             Suite 6000
 4                           Los Angels, California 90017

 5                           Mr. J. Stephen Ravel
                             Kelly, Hart & Hallman, LLP
 6                           303 Colorado Street, Suite 2000
                             Austin, Texas 78701
 7
     For Google, LLC:        Mr. Darin W. Snyder
 8                           O'Melveny & Myers, LLP
                             Two Embarcadero Center,
 9                           28th Floor
                             San Francisco, California 94111
10
                             Mr. Stephen Burbank
11                           Scott, Douglass, McConnico
                             303 Colorado Street, Suite 2400
12                           Austin, Texas 78701

13   For Samsung Electronics: Ms. Victoria E. Maroulis
                             Quinn, Emanuel, Urquhart, Oliver
14                           & Hodges, LLP
                             555 Twin Dolphin Drive, 5th Floor
15                           Redwood Shores, California 94065

16   For Amazon.Com, Inc:    Mr. Barry K. Shelton
                             Shelton Coburn, LLP
17                           311 RR 620 South, Suite 205
                             Austin, Texas 78734
18
                             Mr. Ravi Ranganath
19                           Fenwick & West, LLP
                             801 California Street
20                           San Francisco, California 94041

21   Court Reporter:         Ms. Lily Iva Reznik, CRR, RMR
                             501 West 5th Street, Suite 4153
22                           Austin, Texas 78701
                             (512)391-8792
23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer.
```

| | | |
|---|---|---|
| 08:59:13 | 1 | THE CLERK:  Motion hearing in Civil Actions |
| 08:59:18 | 2 | 1:19-CV-1075, styled, Intellectual Ventures I and II, LLC |
| 08:59:23 | 3 | vs. VMware, Incorporated, Civil Case No. W-19-CV-432, |
| 08:59:29 | 4 | styled Parus Holdings, Incorporated vs. Apple, |
| 08:59:33 | 5 | Incorporated, and Civil Action No. W-19-CV-612, styled |
| 08:59:40 | 6 | Gabriel De La Vega vs. Microsoft Corporation. |
| 08:59:44 | 7 | THE COURT:  Good morning, everyone.  All my |
| 08:59:47 | 8 | favorite lawyers in one place.  How lucky can I get.  I |
| 08:59:52 | 9 | shouldn't even get paid to have to work today. |
| 08:59:55 | 10 | If you all would be so kind as to start off and, |
| 08:59:57 | 11 | I guess, if you -- we can go in the order that Suzanne |
| 09:00:01 | 12 | just called the cases.  We'll start with IV vs. VMware, |
| 09:00:05 | 13 | Inc., and if the lawyers would address and identify |
| 09:00:08 | 14 | themselves.  Josh is already telling me something I need |
| 09:00:18 | 15 | to do.  So I try and do everything that Suzanne and Josh |
| 09:00:23 | 16 | tell me to do. |
| 09:00:24 | 17 | So if I could hear from the IV lawyers and then, |
| 09:00:26 | 18 | from the lawyers for VMware. |
| 09:00:30 | 19 | MR. GILLILAND:  Your Honor, Derek Gilliland on |
| 09:00:32 | 20 | behalf of IV, and with me today is Bob Gilman and John |
| 09:00:36 | 21 | DeBlois.  And also in the gallery is representative of IV |
| 09:00:39 | 22 | Chuck Ebertin.  We're ready to proceed. |
| 09:00:42 | 23 | THE COURT:  And, Mr. Gilliland, who will be |
| 09:00:43 | 24 | speaking on y'all's on behalf? |
| 09:00:47 | 25 | MR. GILLILAND:  Mr. Gilman will be arguing for |

| | | |
|---|---|---|
| 09:00:48 | 1 | IV. |
| 09:00:48 | 2 | THE COURT:  Mr. Ravel, your at least up front. |
| 09:00:51 | 3 | Or. |
| 09:00:51 | 4 | MR. RAVEL:  I'm in the next case, Parus against |
| 09:00:53 | 5 | Apple.  And for Apple is Bita Rahebi and me.  We'll be |
| 09:00:57 | 6 | splitting the argument.  And our client, Natalie Pous, in |
| 09:01:00 | 7 | from Cupertino. |
| 09:01:01 | 8 | THE COURT:  And immediately behind you is? |
| 09:01:03 | 9 | MS. VIDAL:  Kathy Vidal.  I'm here with William |
| 09:01:06 | 10 | Logan, my colleague, representing VMware.  And in the |
| 09:01:09 | 11 | gallery is my client, Danielle Coleman, from VMware. |
| 09:01:11 | 12 | THE COURT:  And, Ms. Vidal, who will be speaking |
| 09:01:15 | 13 | on behalf of VMware? |
| 09:01:16 | 14 | MS. VIDAL:  I will, your Honor. |
| 09:01:17 | 15 | THE COURT:  Very good. |
| 09:01:18 | 16 | Okay.  Well, then, let's start with that case. |
| 09:01:19 | 17 | Before we hear from the lawyers, let me tell you a couple |
| 09:01:22 | 18 | of things that you probably have all heard me say in the |
| 09:01:26 | 19 | past about these general issues.  More notes?  Okay. |
| 09:01:35 | 20 | Suzanne tells me there's an attorney I need to have sworn |
| 09:01:36 | 21 | in.  If that's true, just let me know whenever that case |
| 09:01:40 | 22 | comes up, and I'll be happy to do that. |
| 09:01:42 | 23 | Couple of things I just generically feel about |
| 09:01:48 | 24 | the arguments on infringement, contributory infringement, |
| 09:01:53 | 25 | willful infringement, and some of the others, in terms of |

| | |
|---|---|
| 09:01:55 | 1 |
| 09:02:02 | 2 |
| 09:02:06 | 3 |
| 09:02:12 | 4 |
| 09:02:17 | 5 |
| 09:02:20 | 6 |
| 09:02:24 | 7 |
| 09:02:28 | 8 |
| 09:02:35 | 9 |
| 09:02:41 | 10 |
| 09:02:43 | 11 |
| 09:02:46 | 12 |
| 09:02:50 | 13 |
| 09:02:52 | 14 |
| 09:02:57 | 15 |
| 09:03:00 | 16 |
| 09:03:06 | 17 |
| 09:03:09 | 18 |
| 09:03:13 | 19 |
| 09:03:17 | 20 |
| 09:03:20 | 21 |
| 09:03:26 | 22 |
| 09:03:32 | 23 |
| 09:03:35 | 24 |
| 09:03:39 | 25 |

notice.  Number one is, I don't -- you know, I don't feel like -- I'm not often going to be persuaded by an argument that -- I'm just picking out until I'm not even sure -- I'll pick on anyone who's here, Microsoft or anyone.  The fact that they may have gone and gotten a patent and somewhere in one of those patents, they identify the patent that is being is asserted, that's not going to be good enough to me for actual notice.  I think there actually needs to be some kind of formal notice.  And it might not have to be the old-fashioned send a letter, notice, or anything like that, but there actually needs to be some notice of an awareness of the patent for the period to begin running.

That being said, I know that many on the plaintiff's side of the bar would be concerned, you know, about the information they have when they file pleadings, their ability to do this.  And if they don't make the -- if they don't make the accusation in the initial pleading, a fear that they won't be able to make the accusation.

I want to ensure everyone in here that the way I see it is, there will be a period of time after the Markman, once the discovery begins, where it will be a relatively short period of time, probably about three months, but you will -- the plaintiffs will have a baked-in period of time in every case where they can take

09:03:42  1  discrete discovery on the issue -- these specific issues,
09:03:46  2  and if they determine that there was knowledge of the
09:03:51  3  patent, then leave will be given -- granted very liberally
09:03:56  4  and allow -- to allow the plaintiffs to amend their
09:04:01  5  pleadings, as long as they get it done quickly enough
09:04:04  6  during the discovery period of time to allow additional
09:04:07  7  discovery to take place on behalf of the defendants.
09:04:10  8       But I'm not going to be receptive to defendant
09:04:15  9  saying, they should have pled it originally because we
09:04:17  10 have a lot of lawyers here who are unhappy that it was
09:04:20  11 pled in the initial pleadings.  And so, I'm thinking
09:04:24  12 that's the better way to do it.
09:04:26  13      So, Mr. Gilman, having -- or, actually, I guess,
09:04:29  14 Ms. Vidal, it's your -- it will be y'all's motions, but
09:04:32  15 that's the context I see all in this is sort of a
09:04:36  16 balancing of issue.  And I will tell you that there may be
09:04:42  17 slightly more weight on the plaintiff's side to explain to
09:04:47  18 me why it makes a difference that you all are able to
09:04:50  19 maintain an accusation or an allegation of willfulness or
09:04:56  20 the other issues that we're here for.
09:05:01  21      If you know that I'm going to give you the
09:05:04  22 opportunity to -- Mr. Gilman, I'm sorry, I'm picking on
09:05:05  23 you.  I'm looking at you, but it's true for all the
09:05:07  24 plaintiffs.  As long as you are aware that I'm going to
09:05:11  25 make -- give you the opportunity to establish, for

09:05:14  1  example, willfulness and give you an opportunity to amend
09:05:17  2  your pleadings, one of my favorite sayings when people
09:05:23  3  argue in front of the Supreme Court is, I'm not sure it's
09:05:25  4  worth the candle.  I'm not even sure I know exactly what
09:05:28  5  that means, but it's a cool phrase, and I think it applies
09:05:32  6  here.  I'm not sure why it's worth a candle to be fighting
09:05:35  7  over all this.  So that's my general perspective.
09:05:39  8          So with all that background, Ms. Vidal.
09:05:42  9          MS. VIDAL:  Thank you, your Honor.  With that
09:05:45  10 background, I believe I can rest.
09:05:47  11         THE COURT:  You are probably pretty close to it.
09:05:50  12 Really, what I'm most interested in and the reason I set
09:05:53  13 the hearing in this manner and have as many of these cases
09:05:57  14 as possible is, I thought, you know, my perspective --
09:06:01  15 getting my general perspective out to really good
09:06:04  16 plaintiff's lawyers, to really well-established
09:06:08  17 plaintiff's groups like Intellectual Ventures, really good
09:06:14  18 defense lawyers.  Some of my all-time favorites are
09:06:16  19 sitting over here.
09:06:16  20         And I guess I can't say Stephen Burbank is my
09:06:20  21 favorite clerk since Josh is sitting in front of me, but
09:06:23  22 I'll say that he was my favorite former clerk.
09:06:27  23         But part of the reason of having this many people
09:06:29  24 attend -- and it's great the corporate representatives are
09:06:33  25 here -- is to get across my general philosophy.  So, you

| 09:06:38 | 1 | know, frankly, it might be better for me to hear from Mr. |
| 09:06:40 | 2 | Gilman, after everything I've said, about what his |
| 09:06:43 | 3 | thoughts are about what IV would like to do unless you |
| 09:06:46 | 4 | have something you'd like to say. |
| 09:06:47 | 5 | MS. VIDAL:  If you'd like me to create a record |
| 09:06:49 | 6 | on the five patents, I'm happy to, but if it's -- |
| 09:06:52 | 7 | THE COURT:  We've been through all of them.  Josh |
| 09:06:54 | 8 | and I have spent a lot of time getting ready for this |
| 09:06:57 | 9 | hearing, and so, I don't think it's necessary for the |
| 09:06:59 | 10 | record; and it won't help me because Josh and I have gone |
| 09:07:03 | 11 | -- we've gone through all the stuff pretty carefully. |
| 09:07:06 | 12 | MS. VIDAL:  And, your Honor, one other thing. |
| 09:07:08 | 13 | THE COURT:  Yes, ma'am. |
| 09:07:08 | 14 | MS. VIDAL:  Your chambers brought the Romag |
| 09:07:11 | 15 | decision to our attention.  Is there something that you |
| 09:07:12 | 16 | wanted us to address on that, or was that for other |
| 09:07:15 | 17 | defendants and plaintiffs? |
| 09:07:16 | 18 | THE COURT:  No. |
| 09:07:16 | 19 | Generally speaking, I was listening to the oral |
| 09:07:21 | 20 | arguments and I -- and I worried about sending it out |
| 09:07:25 | 21 | because at least some you would say he doesn't even |
| 09:07:28 | 22 | realize it's a trademark case and I did.  And so, I get |
| 09:07:32 | 23 | that.  But when I heard, I think it was, Justice |
| 09:07:37 | 24 | Kavanaugh -- pretty sure it was Kavanaugh.  He was |
| 09:07:40 | 25 | articulating issues about what -- you know, for |

09:07:43  1  willfulness, what willfulness means in terms of actual

09:07:46  2  knowledge.

09:07:47  3      I think that that -- the way he was asking it, I

09:07:52  4  don't know at least in his mind or some of the other

09:07:55  5  justices that they would really see it much in difference

09:07:59  6  in terms of the willfulness standard between the different

09:08:02  7  IP groups.  And it sounded to me like an indication from

09:08:06  8  at least one justice what he thought actual knowledge

09:08:09  9  might -- sufficient knowledge might be.

09:08:12  10     So I just wanted you all to have heard, you know,

09:08:16  11 be aware of that, as well, because I think that's -- as a

09:08:19  12 lower court, I think I should be informed by what those

09:08:23  13 cases that are going on, and I thought you guys just ought

09:08:27  14 to be aware of that.

09:08:28  15     MS. VIDAL:  And I appreciate that.  Since

09:08:29  16 willfulness is not in our case, I'll leave that to the

09:08:31  17 other counsel to address.

09:08:32  18     THE COURT:  I mean, y'all have better lives than

09:08:34  19 I do because you probably don't walk around listening to

09:08:36  20 Supreme Court arguments in Waco.  But that's what you have

09:08:40  21 to do in Waco is listen to Supreme Court arguments.  And

09:08:43  22 so, I thought it was informative.  No.  That's it.

09:08:46  23     MS. VIDAL:  Thank you, your Honor.

09:08:46  24     THE COURT:  Mr. Gilman.

09:08:55  25     MR. GILMAN:  Thank you, your Honor.  Bob Gilman

| 09:08:56 | 1 | for Intellectual Ventures. |
| 09:08:57 | 2 | Yeah, given the comments you made just now, I |
| 09:09:01 | 3 | think we agree with you, it's not worth the candle.  You |
| 09:09:04 | 4 | know, frankly, our biggest concern through this motion |
| 09:09:07 | 5 | practice is that we're able to obtain discovery.  You |
| 09:09:10 | 6 | know, we're going to get up here and argue that the better |
| 09:09:13 | 7 | procedural way to handle this is to not dismiss it and |
| 09:09:15 | 8 | deal with it.  You know, as I think you recognized a |
| 09:09:18 | 9 | little bit in the Parity case, it's the scope of the |
| 09:09:21 | 10 | damage should be a factual issue. |
| 09:09:22 | 11 | But, really, if this is the way we're going to |
| 09:09:26 | 12 | proceed but we're going to be able to get discovery on |
| 09:09:29 | 13 | some items, even some things we discovered after filing |
| 09:09:31 | 14 | the complaint on our own that lead us to believe that we |
| 09:09:33 | 15 | might find something in VMware discovery that would show a |
| 09:09:36 | 16 | notice date before the filing of the patent in suit.  If |
| 09:09:38 | 17 | we could get that discovery, I think we're fine. |
| 09:09:40 | 18 | THE COURT:  And, actually, you said it better |
| 09:09:42 | 19 | than I did, which is pretty typical of the way things go |
| 09:09:46 | 20 | here. |
| 09:09:46 | 21 | But, actually, one of the things I was also |
| 09:09:50 | 22 | trying to intimate was, I would not be receptive to having |
| 09:09:55 | 23 | defendants tell plaintiffs, you can't ask discovery on the |
| 09:09:58 | 24 | issues of willfulness or a factual underpinning of direct |
| 09:10:03 | 25 | and indirect -- any of the others because you didn't -- |

| | | |
|---|---|---|
| 09:10:06 | 1 | it's not alleged, so we're not going to answer it.  That |
| 09:10:08 | 2 | would be very poorly received by me. |
| 09:10:12 | 3 | I think the much better way of doing it is to -- |
| 09:10:18 | 4 | if you have a case where there is actual notice and I |
| 09:10:20 | 5 | think there's one here where either, you know, we have |
| 09:10:22 | 6 | that or close to that situation, then obviously that's |
| 09:10:25 | 7 | fine. |
| 09:10:25 | 8 | But I think I agree with, you know, having done |
| 09:10:30 | 9 | cases on both sides, I can appreciate why, for example, |
| 09:10:34 | 10 | Apple doesn't want to have these allegations that may or |
| 09:10:38 | 11 | may not be substantiated in the original complaint or even |
| 09:10:41 | 12 | amended complaint; but at the same time, they should not |
| 09:10:46 | 13 | to not have to provide you with discovery because you |
| 09:10:48 | 14 | didn't plead it in the initial complaint or the amended |
| 09:10:52 | 15 | complaint. |
| 09:10:52 | 16 | So yes, you would -- within reason, you would be |
| 09:10:57 | 17 | -- have total access to discovery to establish these other |
| 09:11:00 | 18 | claims. |
| 09:11:01 | 19 | MR. GILMAN:  All right.  That's appreciated, your |
| 09:11:02 | 20 | Honor.  If we walk out of here having that statement, then |
| 09:11:04 | 21 | I think, you know. |
| 09:11:05 | 22 | THE COURT:  I think I speak a fair amount, and |
| 09:11:08 | 23 | that's one of the things I always try to get across is, |
| 09:11:10 | 24 | that's my view on discovery.  And for those of you who |
| 09:11:15 | 25 | have not been in front of me before on other matters, |

09:11:19  1    either, with regard to discovery, I'm a very hands-on

09:11:26  2    judge.  And my attitude is, for example, I'm not saying

09:11:31  3    there will be a problem, but let's say -- I'm just using

09:11:33  4    you because you're first up.

09:11:34  5         Were you to have sent something to Apple or

09:11:40  6    someone else and, you know, my -- number one, my

09:11:43  7    expectation is that you oughta do whatever you need to do

09:11:45  8    to protect your client's rights and be as aggressive as

09:11:48  9    that is.  And I think, for example, Ms. Vidal ought to do

09:11:51  10   the same for her client.  I expect that.  I know her very

09:11:55  11   well and I know you and, you know, I know Mr. Gilliland.

09:12:00  12   I expect it to be gracious, the way you treat each other,

09:12:04  13   but vigorous, the way you do it.

09:12:05  14        So I don't -- I don't expect anyone to just say,

09:12:09  15   oh, well, we probably shouldn't do this, but we will.  I

09:12:12  16   get that.  Or vice versa.  But if you have that issue, I

09:12:16  17   also don't want, which I've had recently, where there are

09:12:20  18   two weeks of back-and-forth e-mails saying -- you know, if

09:12:25  19   you all can't get something resolved like this in a phone

09:12:30  20   call, then just call -- I told them yesterday, I'm going

09:12:33  21   to have shirts made up that say, call Dr. Yi.  He probably

09:12:38  22   wouldn't want me to do that.

09:12:39  23        But, you know, if you will just let us know after

09:12:43  24   a shorter period of time, you can't get something

09:12:46  25   resolved, so far, I think we've been able to get -- have

| | | |
|--|--|--|
| 09:12:49 | 1 | telephonic conferences within the next day or so. |
| 09:12:54 | 2 | And like yesterday, I lost an hour of my life, |
| 09:12:57 | 3 | but we got it resolved and I was happy when I left and |
| 09:13:02 | 4 | they were happy.  So no one in here should feel like |
| 09:13:07 | 5 | they're giving anything up by any ruling because we will |
| 09:13:13 | 6 | be available to resolve anything virtually within 24 hours |
| 09:13:17 | 7 | that you -- any dispute that y'all have. |
| 09:13:19 | 8 | MR. GILMAN:  Well, that's fantastic.  That's |
| 09:13:21 | 9 | appreciated and refreshing.  So. |
| 09:13:22 | 10 | THE COURT:  Well -- |
| 09:13:23 | 11 | MR. GILMAN:  Appreciate that. |
| 09:13:24 | 12 | THE COURT:  You know, I've only been on the bench |
| 09:13:26 | 13 | a year and a half.  They haven't beaten the patience out |
| 09:13:29 | 14 | of me yet. |
| 09:13:30 | 15 | Is there anything else you wanted to say? |
| 09:13:32 | 16 | MR. GILMAN:  No, your Honor. |
| 09:13:32 | 17 | THE COURT:  Okay. |
| 09:13:32 | 18 | MR. GILMAN:  Thank you for the time. |
| 09:13:33 | 19 | THE COURT:  You bet. |
| 09:13:39 | 20 | So we are going to probably -- I can't say I |
| 09:13:44 | 21 | remember for each one, but, for example, Ms. Vidal, in |
| 09:13:48 | 22 | this case, would your clients be satisfied from what I've |
| 09:13:53 | 23 | said with a dismissal without prejudice of the claims with |
| 09:13:58 | 24 | which you're unhappy, with the understanding that |
| 09:14:00 | 25 | discovery's going to be taken at the appropriate time? |

| 09:14:03 | 1 | MS. VIDAL:  VMware would be very happy with that, |
| 09:14:05 | 2 | your Honor.  Thank you. |
| 09:14:06 | 3 | THE COURT:  And, Mr. Gilman, you're okay with |
| 09:14:07 | 4 | that? |
| 09:14:08 | 5 | MR. GILMAN:  Yes, your Honor. |
| 09:14:08 | 6 | THE COURT:  Okay.  Very good then. |
| 09:14:12 | 7 | Then next up -- and I think this is clear to |
| 09:14:16 | 8 | everyone in here.  I recognize most of the faces.  But, |
| 09:14:19 | 9 | you know, discovery will start immediately after the |
| 09:14:22 | 10 | Markman.  And with my Markmans, if you haven't been in |
| 09:14:26 | 11 | front of me before, there's one this afternoon.  In fact, |
| 09:14:30 | 12 | I know I'm babbling, but we are trying to start a new |
| 09:14:35 | 13 | process. |
| 09:14:36 | 14 | We sent out preliminary constructions yesterday |
| 09:14:40 | 15 | to the parties that are going to be at the Markman.  I'm |
| 09:14:44 | 16 | thinking that's what we'll do from now on.  Maybe not as |
| 09:14:49 | 17 | far in advance as we did in this case.  This hearing got |
| 09:14:53 | 18 | bumped, so we were a little ahead of time. |
| 09:14:55 | 19 | But you should start anticipating to have |
| 09:14:58 | 20 | preliminary constructions by 5:00 the day before so that |
| 09:15:04 | 21 | you know when you come in here.  They are only preliminary |
| 09:15:07 | 22 | constructions.  You know, the reason I'm giving them is, I |
| 09:15:13 | 23 | have found, a couple of times now, where we've given our |
| 09:15:18 | 24 | own construction and people said, we can live with that. |
| 09:15:21 | 25 | And so, it saved them the time of preparing for -- I don't |

09:15:25  1   expect anyone to abandon their positions by having gotten

09:15:28  2   the preliminary constructions.  It's really, again, to

09:15:30  3   help you all out.

09:15:31  4          The discovery's stayed until the Markman, but for

09:15:34  5   example, the case today, at the end of the hearing today,

09:15:37  6   they will have the Markman constructions, and on Monday,

09:15:40  7   they can start discovery.  And so, on Monday, if they have

09:15:44  8   these issues, for example, that Mr. Gilman had, I would

09:15:47  9   expect them get discovery out immediately so that it can

09:15:52 10   get -- they know one way or the other, and they can get

09:15:54 11   their pleadings amended quickly enough to allow the

09:15:57 12   discovery in the rest of the case.

09:15:59 13          So the next case up is Parus, which is P-A-R-U-S,

09:16:08 14   Holdings vs. Apple.

09:16:13 15          Mr. Ravel and --

09:16:16 16          MR. DEVOOGD:  Drew DeVoogd for Parus, your Honor.

09:16:19 17          THE COURT:  Pleased to meet you, sir.

09:16:22 18          MR. DEVOOGD:  Likewise, your Honor.

09:16:24 19          MR. RAVEL:  I'll begin with a question, rather

09:16:26 20   than with an argument.  If the question is, would Apple be

09:16:29 21   satisfied with a dismissal without prejudice as to

09:16:32 22   willfulness, indirect infringement, and the request for

09:16:34 23   permanent injunction?  The answer to that question would

09:16:37 24   be yes, subject to cooperating in discovery immediately

09:16:42 25   after it starts and not filing any silly oppositions to

| | | |
|---|---|---|
| 09:16:47 | 1 | amended pleadings. |
| 09:16:48 | 2 | THE COURT:  And what do you say on behalf of |
| 09:16:51 | 3 | Parus? |
| 09:16:52 | 4 | MR. DEVOOGD:  I'd be happy to proceed in that |
| 09:16:54 | 5 | manner, your Honor. |
| 09:16:55 | 6 | THE COURT:  Okay.  Very good. |
| 09:17:00 | 7 | And then, do we have anyone for De La Vega vs. |
| 09:17:12 | 8 | Microsoft? |
| 09:17:12 | 9 | MR. SHELTON:  Yes, your Honor.  Barry Shelton. |
| 09:17:13 | 10 | THE COURT:  Oh, I'm sorry.  I assumed these other |
| 09:17:15 | 11 | Parus cases were all together.  I should ask for Google, |
| 09:17:17 | 12 | LG Electronics, Samsung and Amazon, whether there's any |
| 09:17:20 | 13 | difference in the positions you all would take like Mr. |
| 09:17:24 | 14 | Ravel did.  If so -- and if you would introduce yourselves |
| 09:17:27 | 15 | on the record, just make sure that we get it down, one at |
| 09:17:30 | 16 | a time, and who you represent. |
| 09:17:32 | 17 | MR. SNYDER:  Darin Snyder and Stephen Burbank, |
| 09:17:35 | 18 | along with our representative Timur Engin from Google, |
| 09:17:39 | 19 | LLC.  And then, Stephen Burbank and Darin Snyder for LG |
| 09:17:42 | 20 | Electronics, Incorporated and LG Electronics USA, |
| 09:17:45 | 21 | Incorporated. |
| 09:17:45 | 22 | THE COURT:  And what would your position be? |
| 09:17:45 | 23 | And, Lily, can you hear him from there or do you want him |
| 09:17:45 | 24 | to come up? |
| 09:17:45 | 25 | COURT REPORTER:  If you could move the mic closer |

09:17:54   1   to you, please.

09:17:54   2          MR. SNYDER:  Good morning, your Honor.  Darin

09:17:55   3   Snyder with O'Melveny & Myers.

09:17:56   4          Granting our motion without prejudice to the

09:17:58   5   plaintiff later taking discovery would be acceptable to

09:18:03   6   Google and LG.

09:18:04   7          THE COURT:  Okay.  Yes, ma'am.

09:18:08   8          MS. MAROULIS:  Good morning, your Honor.

09:18:09   9          Victoria Maroulis, counsel for Samsung in the

09:18:14  10   Parus case.

09:18:14  11          And as with other defendants, we're satisfied

09:18:16  12   with dismissing the claims without prejudice and having

09:18:19  13   discovery later.  Thank you, your Honor.

09:18:21  14          THE COURT:  Okay.  Yes, sir.

09:18:25  15          MR. RANGANATH:  Good morning.

09:18:25  16          Ravi Ranganath, Fenwick & West, for Amazon.  And

09:18:28  17   our position is the same as the other defendants.

09:18:29  18          THE COURT:  And last, but not least, my favorite

09:18:33  19   Barry Shelton.

09:18:34  20          MR. SHELTON:  Your Honor, I'm local counsel

09:18:35  21   for Amazon.

09:18:35  22          THE COURT:  Okay.  Very good.

09:18:37  23          So does that take care of all of the Parus

09:18:40  24   Defendants?

09:18:41  25          MR. DEVOOGD:  Your Honor.

| | | |
|---|---|---|
| 09:18:41 | 1 | THE COURT:  Yes, sir. |
| 09:18:42 | 2 | MR. DEVOOGD:  If I may, Drew DeVoogd for Parus |

THE COURT:  Yes, sir.

MR. DEVOOGD:  If I may, Drew DeVoogd for Parus
Holdings.  I'm the attorney who would like your indulgence
to get sworn in.  Would you like to do that now?  We can.
Or reserve till after the hearing?

THE COURT:  Nothing would make me happier than to
swear you in right now, in front of all these people.  So
if you'll come up.

MR. DEVOOGD:  And I also have a couple of
additional comments.

THE COURT:  Okay.

MR. DEVOOGD:  At least with respect to the Google
case.

THE COURT:  Okay.  Let me swear you in; that way,
you're all official.  If you would raise your right hand
and repeat after me:

I do solemnly swear that I will discharge the
duties of attorney and counselor of this court faithfully.
That I will demean myself uprightly under the law in the
highest ethics of our profession.  I will support and
defend the Constitution of the United States.

Congratulations.

MR. DEVOOGD:  Thank you, your Honor.

THE COURT:  Now, let me hear what it is you would
like to add about Google, and then, I'll hear from

```
09:19:51   1   Google's counsel, if they need to say something.
09:19:54   2           MR. DEVOOGD:  Thank you, your Honor.  I just need
09:19:55   3   to retrieve my binder with your indulgence.
09:19:57   4           THE COURT:  Okay.
09:19:58   5           MR. DEVOOGD:  Thank you.
09:20:16   6           THE COURT:  And your -- is this the case where
09:20:19   7   there may have been some actual notice that you would like
09:20:21   8   to articulate?
09:20:23   9           MR. DEVOOGD:  That's correct, your Honor.  And I
09:20:24   10  also had some thoughts on the Romag Fasteners argument.
09:20:26   11          THE COURT:  Great.
09:20:28   12          MR. DEVOOGD:  It's more academic, so we can defer
09:20:30   13  that discussion, if you'd like.
09:20:33   14          THE COURT:  No.  I'm happy to have it.
09:20:35   15          MR. DEVOOGD:  Okay.  So as I heard that argument,
09:20:38   16  the issue that Justice Kavanaugh and, I believe, Justices
09:20:42   17  Kagan and Sotomayor were addressing is whether or not the
09:20:46   18  specific requirement for willfulness under the classic
09:20:53   19  principles of equity that the courts have applied in this
09:20:56   20  country for the past 200 years that are committed to the
09:21:01   21  district court's discretion within those parameters of
09:21:04   22  those classic equitable principles can be satisfied
09:21:09   23  without actual notice.
09:21:12   24          And from our perspective and the way I read the
09:21:15   25  cases in forming with respect to these particular
```

09:21:19  1  allegations under Halo, that line of cases does not

09:21:27  2  preclude a finding of willfulness, i.e., an award of

09:21:37  3  enhanced damages without actual notice under the rubric of

09:21:41  4  willful blindness.  And so, I can provide some additional

09:21:45  5  case citations.

09:21:45  6          THE COURT:  I think you and I are probably in

09:21:47  7  agreement on that.  And I think -- and Halo was kind of

09:21:49  8  touched on a little bit in those arguments, as well, and I

09:21:52  9  think they were trying to make that point.

09:21:54  10         MR. DEVOOGD:  Absolutely.  It's a sliding scale.

09:21:56  11         THE COURT:  Right.  I think so, too.

09:21:57  12         MR. DEVOOGD:  And you have the discretion to

09:21:59  13  assess the evidence before you and make a determination

09:22:01  14  based on that evidence.

09:22:02  15         THE COURT:  Yeah.  And I got the feeling, even

09:22:05  16  though he's like a thousand times smarter than me, that

09:22:09  17  Justice Kavanaugh was -- it was more of kind of not

09:22:12  18  academic but sort of a -- he's not really in the trenches

09:22:16  19  ever having to do the balancing himself.  He gets it once

09:22:19  20  the balancing has taken place.  And he was trying to find

09:22:22  21  whether or not there was a bright line.

09:22:23  22         MR. DEVOOGD:  I agree with that.

09:22:25  23         THE COURT:  And now, you want to take up a

09:22:27  24  specific issue with Google.

09:22:28  25         MR. DEVOOGD:  I do, your Honor.  And I guess I

09:22:32  1  would start with a question that I think applies to a

09:22:36  2  number of the defendants, and that is whether post-suit

09:22:41  3  allegations are permissible to keep the claims in.

09:22:49  4        So we can see that at least some of the

09:22:52  5  defendants did not have actual notice.  Now, setting aside

09:22:55  6  the willful blindness aspect of it, but we can see that

09:23:00  7  some of the defendants did not have actual notice as to

09:23:03  8  some of the patents.  They certainly are aware of them

09:23:07  9  between the filing of the initial complaint and the filing

09:23:10  10  of the amended complaint.

09:23:13  11        I know that there is some divergence in the

09:23:17  12  district courts as to whether that post-complaint notice

09:23:26  13  period is essentially in the case and adequately pled for

09:23:30  14  purposes of the allegations that we're talking about here.

09:23:36  15  So totally understand the Court's direction and admonition

09:23:40  16  and the proposed compromise related to the pre-suit

09:23:45  17  allegations.

09:23:46  18        I guess I just seek a little clarification as to

09:23:49  19  your view on the post initial complaint time period, and

09:23:53  20  I'd be happy to explain why I think that's appropriate.

09:23:56  21        THE COURT:  Go ahead, please.

09:23:58  22        MR. DEVOOGD:  Okay.  So as I read the cases,

09:24:02  23  basically the Eastern District of Texas and Delaware are

09:24:06  24  nearly unanimous that post-complaint notice satisfies the

09:24:14  25  knowledge requirement for both enhanced damages claims and

| | | |
|---|---|---|
| 09:24:18 | 1 | inducement and contributory infringement. |
| 09:24:22 | 2 | Now, some of the defendants have downplayed those |
| 09:24:27 | 3 | cases and said they're against the weight of precedent. |
| 09:24:33 | 4 | From my perspective, I would argue that you have two of |
| 09:24:37 | 5 | the busiest patent dockets in the country with judges who |
| 09:24:40 | 6 | see these patent cases all the time, and I think it would |
| 09:24:45 | 7 | behoove us to give due weight to the cases coming out of |
| 09:24:49 | 8 | those districts.  I think there's at least a dozen in |
| 09:24:52 | 9 | Delaware and nearly that many in the Eastern District of |
| 09:24:56 | 10 | Texas. |
| 09:24:58 | 11 | So with that, I can. |
| 09:24:59 | 12 | THE COURT:  Let me hear from Google or anyone |
| 09:25:04 | 13 | else who wants to argue that. |
| 09:25:05 | 14 | Mr. Snyder. |
| 09:25:11 | 15 | MR. SNYDER:  Good morning, your Honor.  Darin |
| 09:25:14 | 16 | Snyder of O'Melveny Myers on behalf of Google and LG. |
| 09:25:16 | 17 | Which of those issues would the Court prefer I |
| 09:25:19 | 18 | start with? |
| 09:25:20 | 19 | THE COURT:  I would start with the what happens |
| 09:25:22 | 20 | when Google finds out in the original complaint that they |
| 09:25:27 | 21 | are infringing -- alleged to be infringing the 123 patent. |
| 09:25:31 | 22 | Does that satisfy post that date a claim of willful |
| 09:25:38 | 23 | infringement? |
| 09:25:40 | 24 | MR. SNYDER:  It should not, your Honor. |
| 09:25:42 | 25 | As the Court said in M & C Innovations, that's a |

09:25:45  1   situation that exists in literally every patent

09:25:49  2   infringement case.  And thus, notice provided by the

09:25:53  3   complaint does not remove a case from a garden-variety

09:25:59  4   patent infringement case to the kind of case that warrants

09:26:02  5   enhanced damages, which is what Halo in the Supreme Court

09:26:04  6   said is required for that kind of award.  It has to be

09:26:09  7   something else.  It has to be something that's

09:26:11  8   characteristic of a pirate.

09:26:13  9        Likewise, for indirect infringement, whether it's

09:26:14  10  contributory infringement or inducing infringement, the

09:26:17  11  mere notice provided by a complaint shouldn't provide that

09:26:20  12  necessary knowledge and intent because merely continuing

09:26:24  13  that conduct after you've been sued doesn't provide that

09:26:30  14  knowledge of or intent to infringe the patent that is

09:26:34  15  required for either of those types of indirect

09:26:36  16  infringement.

09:26:36  17        THE COURT:  Well, let me take a step just short

09:26:38  18  of that, which is, it seems to me that your arguments are

09:26:44  19  more on the merits of what -- as opposed to why should I

09:26:52  20  now allow it to be pled.  What, again, in the -- is it

09:26:57  21  worth the candle but why -- how is Google harmed, for

09:27:03  22  example, if the allegation is made that anything post

09:27:09  23  notice in the original complaint, an allegation is made

09:27:14  24  that the conduct subsequent to that is willful.

09:27:20  25        Are you saying, should the Court as a matter of

09:27:23  1    law just say that can never happen?  Why wouldn't it be

09:27:28  2    the wiser course -- not the happier course for Google, but

09:27:30  3    why wouldn't it be the wiser course for the Court to allow

09:27:34  4    the allegation to be made and discovery taken, whatever

09:27:41  5    else happens, and then, the issue can be resolved, if

09:27:44  6    you're right with respect to it being a matter of law, on

09:27:48  7    a summary judgment at the time summary judgment -- as

09:27:52  8    opposed to at this juncture?

09:27:55  9         MR. SNYDER:  There aren't any disputed facts

09:27:58  10   about the knowledge that is provided by the complaint.

09:28:01  11   And we believe that as a matter of substantive law, the

09:28:05  12   knowledge merely provided by the complaint can't provide

09:28:09  13   the knowledge and intent necessary to satisfy the

09:28:13  14   willfulness or indirect infringement elements.

09:28:17  15        That literally occurs in every case.  I'm not

09:28:20  16   sure, your Honor, what discovery the plaintiff would need

09:28:22  17   to take were you, in fact, served with a complaint.  Yes,

09:28:25  18   we were served with a complaint.  We're here today.  So

09:28:28  19   Google is obviously aware of the allegation.  But that

09:28:32  20   does not remove this case or any other case because the

09:28:36  21   knowledge would be identical in every other case from the

09:28:40  22   realm of a garden-variety patent litigation to the realm

09:28:43  23   of behavior characteristic of a pirate that shows

09:28:47  24   intentional misconduct that should justify an award of

09:28:52  25   willful or exemplary damages.

09:28:53   1          So the damage that's done to Google is the

09:28:56   2     exposure that's created merely by those allegations.  And

09:28:59   3     as the Court indicated this morning, the presence of those

09:29:03   4     allegations when there is no factual basis for them is

09:29:06   5     problematic.  Likewise, the presence of those allegations

09:29:09   6     when as a matter of law, they should not be sufficient is,

09:29:13   7     likewise, problematic.

09:29:15   8          THE COURT:  So if -- would it be your position

09:29:20   9     that if I were to say I'm not going to dismiss the tranche

09:29:25   10    of willfulness claims that start with the filing of the

09:29:29   11    original complaint, would that be something that could be

09:29:32   12    taken up -- it would be sufficiently final, it could be

09:29:37   13    taken up in interlocutory appeal?

09:29:39   14         MR. SNYDER:  The Court could fashion a ruling

09:29:42   15    that could do that.  I'm not sure that -- my imagination

09:29:48   16    isn't broad enough to say categorically, there will never

09:29:52   17    be a situation in which post-complaint conduct could

09:29:56   18    justify a willfulness award.  There may be such a

09:29:59   19    situation, and that can be treated by your Honor and this

09:30:02   20    court exactly the same way as pre-suit notice.

09:30:06   21         If they take their discovery and they believe

09:30:08   22    that they have justification for amending their complaint,

09:30:12   23    they can timely bring that to your Honor if the parties

09:30:15   24    don't stipulate to it.

09:30:17   25         THE COURT:  And my only other question is -- and

09:30:21 1   the reason I asked about the interlocutory appeal is, is

09:30:28 2   this something that would be better -- rather than just

09:30:30 3   having district judges in the courts in Delaware, in the

09:30:34 4   Eastern District, and perhaps me deciding, wouldn't it be

09:30:38 5   better if the circuit told us?  I mean, it seems like a

09:30:40 6   pretty bright-line rule that one oughta.

09:30:45 7           MR. SNYDER:  I am sure that getting direction

09:30:47 8   from the Federal Circuit would help resolve the known

09:30:49 9   conflict among the districts.  Plaintiff's counsel is

09:30:51 10  correct that there are some courts in this country that

09:30:54 11  will allow allegations of willfulness or indirect

09:30:57 12  infringement to go forward, based on the notice provided

09:30:59 13  by the complaint.

09:31:00 14          That is inconsistent with the decisions of this

09:31:04 15  district so far, but I do acknowledge that there is a

09:31:08 16  difference.

09:31:09 17          THE COURT:  I mean, that's really the problem I'm

09:31:11 18  having is, it doesn't really seem like -- I mean, I get

09:31:15 19  that we all have -- we have to make the initial decision.

09:31:18 20  But it would be nice for the circuit to tell us one way or

09:31:22 21  the other.

09:31:22 22          MR. SNYDER:  It would be good to have that

09:31:25 23  direction, your Honor, but the kind of plan that the Court

09:31:27 24  outlined at the beginning of this hearing assumes that

09:31:31 25  notice provided by the complaint is insufficient.  Because

09:31:34  1   in each one of these cases, whether we're talking about

09:31:36  2   the preceding case by Intellectual Ventures, or the other

09:31:40  3   Parus cases, or the case that's going to follow us, there

09:31:43  4   was notice to the defendants provided by the complaint.

09:31:47  5        So if it's not going to be dismissed -- there

09:31:50  6   would not be a basis for dismissing any of those cases

09:31:54  7   without prejudice, subject to amendment, if the Court is

09:31:57  8   going to allow mere notice provided by the complaint to

09:32:00  9   suffice.

09:32:05  10       THE COURT:  Anything else?

09:32:05  11       MR. SNYDER:  Nothing further, your Honor.

09:32:06  12       THE COURT:  Any response or anything additional?

09:32:10  13  Yes, sir.

09:32:11  14       MR. RANGANATH:  Good morning, your Honor.  Ravi

09:32:13  15  Ranganath for Amazon.

09:32:15  16       I just wanted to address one thing because I will

09:32:17  17  acknowledge that the rule does appear to be unanimous in

09:32:19  18  east Texas that notice -- their complaint filing is

09:32:23  19  sufficient.  I do not agree that it's the unanimous rule

09:32:26  20  of Delaware.  I think we cited in our papers an opinion

09:32:29  21  from Judge Connolly from this last year where he says the

09:32:33  22  complaint itself cannot serve as a basis for defendant's

09:32:36  23  actionable knowledge.  The purpose of a complaint is not

09:32:39  24  to create a claim, but to obtain relief for an existing

09:32:42  25  claim.  And that's the VLSI case out of Delaware.

09:32:46  1        So just wanted to note that even within

09:32:49  2  districts, there seems to be some split here.  So I would

09:32:52  3  hardly describe it as a unanimous rule of Delaware.

09:32:55  4        THE COURT:  And which Delaware judges have gone

09:32:58  5  the other way?

09:32:59  6        MR. RANGANATH:  I'm aware of, I believe, Judge

09:33:01  7  Andrews and possibly Judge Stark.

09:33:03  8        THE COURT:  Okay.

09:33:10  9        MS. RAHEBI:  Your Honor.

09:33:10  10        THE COURT:  Yes, ma'am.

09:33:10  11        MS. RAHEBI:  If I could address for Apple.

09:33:11  12        We agree with the law and it is mixed.  But I

09:33:14  13  would just say that under the not-worth-a-candle doctrine,

09:33:16  14  we will end up -- you know, once they take discovery, if

09:33:19  15  there's a case to proceed, at least for now, we can have

09:33:23  16  and have a simpler case until we get to the discovery

09:33:25  17  period, and we think it resolves this issue.  Thank you.

09:33:29  18        THE COURT:  Yes, sir.  Yes, ma'am.

09:33:32  19        MS. MAROULIS:  Your Honor, Victoria Maroulis,

09:33:35  20  counsel for Samsung.

09:33:36  21        The only willfulness allegations against Samsung

09:33:39  22  are based on both filing, meaning the notice of the

09:33:42  23  complaint.  So I just wanted to register agreement with

09:33:45  24  counsel for Google that to the extent the Court is

09:33:50  25  dismissing these claims without prejudice, the Court is

09:33:53   1   recognizing that the filing of the complaint is not

09:33:56   2   sufficient without any additional facts to constitute

09:33:59   3   basis for willfulness.

09:34:01   4          Thank you.

09:34:01   5          THE COURT:  Well, I think what I'm -- what I'm

09:34:05   6   wrestling with is that absent something additional to

09:34:11   7   that, I think that's probably right.  I don't know that

09:34:14   8   it's quite as bright a line as you're suggesting.

09:34:18   9          MS. MAROULIS:  Your Honor, there are a couple of

09:34:20   10  cases out there that I believe Parus cited, perhaps

09:34:27   11  Bio-Rad in Delaware or Bobcar.  In those cases, while it's

09:34:29   12  not very clear from the decisions exactly happened, it

09:34:31   13  appears that, in addition to the complaint, there were

09:34:33   14  some additional facts, a protracted licensing negotiation.

09:34:37   15  Some head-to-head competition of the facts that may take

09:34:41   16  it out of what counsel for Google referred to as

09:34:45   17  garden-variety willfulness claims.  That just because

09:34:47   18  you're sued, you are now willfully -- alleged to willfully

09:34:51   19  infringe.

09:34:51   20         THE COURT:  And you can answer this and anyone

09:34:52   21  else can, as well.

09:34:54   22         Should it make any difference whether or not the

09:34:58   23  patent that's being asserted is being asserted by a

09:35:01   24  competitor, rather than someone who is not a competitor,

09:35:03   25  with regard to -- in other words, again, I'm just making

09:35:07  1   this up.  Two names, Dell and HP, for lack of -- but if

09:35:14  2   Dell were to sue HP and give it notice -- once it had the

09:35:19  3   notice of the patent, should it make any difference in

09:35:22  4   terms of the willfulness determination the fact that HP

09:35:26  5   continued to compete with Dell and selling allegedly

09:35:31  6   infringing products, as opposed to situation where the

09:35:34  7   plaintiff is an entity who just owns the patent?

09:35:38  8            MS. MAROULIS:  Your Honor, I believe that that

09:35:41  9   alone does not make any difference with its competitors or

09:35:45  10  nonpracticing entity versus operating company.  What I was

09:35:48  11  referring to, what I think some of the cases that Parus

09:35:51  12  cites referred to is more situations where there's some

09:35:55  13  additional indicia of willfulness.  And it may be the case

09:35:58  14  that in the competitor cases, that occurs more frequently

09:36:02  15  because the companies monitor each other, they are in the

09:36:05  16  stream of commerce.  But it's going to depend on

09:36:08  17  case-by-case basis.

09:36:09  18            I agree with counsel for Google that as a

09:36:12  19  bright-line rule, filing a complaint is not enough.  One

09:36:15  20  of the cases defendants cited in their motions said that a

09:36:19  21  complaint is there to bring relief to a claim, not to

09:36:22  22  create a new claim.  And that's what pure allegations of

09:36:26  23  willfulness based on post-filing conduct are.  We're

09:36:32  24  creating a claim by just saying there is willfulness, and

09:36:34  25  that is the difference.

| | | |
|---|---|---|
| 09:36:36 | 1 | THE COURT:  Anything else from defense? |
| 09:36:39 | 2 | MS. MAROULIS:  Thank you, your Honor. |
| 09:36:40 | 3 | THE COURT:  Counsel. |
| 09:36:46 | 4 | MR. DEVOOGD:  Thank you, your Honor. |
| 09:36:47 | 5 | Before I address the substance of those |
| 09:36:49 | 6 | arguments, I neglected to introduce my colleagues and |
| 09:36:53 | 7 | client reps, if you'll allow me. |
| 09:36:56 | 8 | THE COURT:  That may be the worst mistake you |
| 09:36:57 | 9 | could ever make. |
| 09:37:00 | 10 | MR. DEVOOGD:  I was reminded of that, your Honor. |
| 09:37:02 | 11 | Michael McNamara is lead counsel and Courtney |
| 09:37:05 | 12 | Herndon is my colleague.  And also, Texas trial counsel |
| 09:37:09 | 13 | from Ward Smith & Hill, Johnny Ward is here, as well. |
| 09:37:13 | 14 | We've also got the CEO of Parus, Taj Reneau, and the GC, |
| 09:37:17 | 15 | Robert McConnell. |
| 09:37:18 | 16 | THE COURT:  Well, and let me take the time to |
| 09:37:21 | 17 | thank anyone who is here.  I don't know if it's |
| 09:37:25 | 18 | voluntarily, but more voluntarily than the lawyers who had |
| 09:37:27 | 19 | to come.  I think this is the best thing about our |
| 09:37:35 | 20 | judicial system is that you all -- it's -- everything's |
| 09:37:38 | 21 | done in public, and I think everyone oughta be here |
| 09:37:41 | 22 | measuring how I perform as well as how your lawyers |
| 09:37:44 | 23 | perform.  So it always heartens me when clients take the |
| 09:37:49 | 24 | time to attend hearings like this.  Specifically, with |
| 09:37:53 | 25 | respect to your client representatives, I welcome them to |

| 09:37:56 | 1 | Austin. |

09:37:57  2    MR. DEVOOGD:  Thank you, your Honor.

09:37:57  3    THE COURT:  And so, if you'd like to continue.

09:37:59  4    MR. DEVOOGD:  Absolutely, your Honor.

09:38:00  5    And Mr. Snyder said something I thought was

09:38:03  6  noteworthy.  He said he could imagine a situation --

09:38:05  7    THE COURT:  That would be a first.  Sorry.

09:38:11  8    MR. SNYDER:  Thank you, your Honor.

09:38:12  9    MR. DEVOOGD:  I'll leave that one on the table,

09:38:14  10  your Honor.

09:38:14  11    He said he could imagine a situation in which

09:38:19  12  there could be some evidence supporting a -- an enhanced

09:38:25  13  damages award, based on post-complaint conduct, and that,

09:38:30  14  to me, is the point.  As the Court said in the Blitzsafe

09:38:37  15  case, the notice of the filing of the complaint, coupled

09:38:41  16  with a plea for enhanced damages, plausibly supports an

09:38:49  17  presence of an intentional redoubling of infringement

09:38:52  18  activity, which is just as plausible as the fact that

09:38:56  19  they've lawyered up and are going to fight the case

09:38:59  20  vigorously.

09:39:00  21    And it's not for the Court, at this point, at the

09:39:04  22  pleadings stage, to determine whether inferences that are

09:39:10  23  -- might be more plausible than not, or could be

09:39:15  24  improbable once evidence comes before the Court later,

09:39:19  25  should be tossed out at the pleadings stage.  And that's

09:39:22   1   really the point on that, your Honor.

09:39:26   2         As to the purpose of the complaint, I know there

09:39:31   3   is case law, and counsel for defendants cited it,

09:39:35   4   suggesting that a complaint does not serve a purpose of

09:39:40   5   creating a new cause of action.  There's a recent case out

09:39:45   6   of Delaware from your colleague, Judge Connolly.  It's the

09:39:51   7   Boston Scientific vs. Nevro case.  And I can send the cite

09:39:59   8   to Dr. Yi after the hearing, if you'd like.

09:40:02   9         That case -- in that case, Judge Connolly notes

09:40:05  10   that Section 284 allows district courts to punish the full

09:40:11  11   range of culpable behavior.  And I'll just put a bookmark

09:40:18  12   there because I want to take us back to Halo because

09:40:20  13   that's a very important point.  But Judge Connolly went on

09:40:22  14   to say that in the majority of patent cases today -- and,

09:40:26  15   to be candid, our pleadings make the same, I think, error

09:40:32  16   in terminology of making allegation for a claim of willful

09:40:40  17   infringement.

09:40:42  18         But requests for enhanced damages under 284 are

09:40:46  19   not a claim for relief.  They're requests that the Court

09:40:51  20   exercise its discretion, based on all the facts and

09:40:57  21   circumstances before and after the evidence is adduced and

09:41:02  22   placed into the record as to whether enhanced damages are

09:41:05  23   appropriate.

09:41:05  24         Now, Mr. Snyder also said that those enhanced

09:41:09  25   damages are only appropriate if the defendant acts like a

09:41:15  1   pirate.  But here's what the Halo court actually said.

09:41:19  2   The chief justice wrote that the sort of conduct

09:41:22  3   warranting enhanced damages has been variously described

09:41:26  4   as willful, wanton, malicious, bad faith, deliberate,

09:41:30  5   consciously wrongful, flagrant or, indeed, characteristic

09:41:36  6   of a pirate.  The disjunctive is important here.

09:41:41  7        Back to my earlier comments about the recognition

09:41:45  8   of Justices Kavanaugh and Sotomayor and Kagan during the

09:41:51  9   Romag Fasteners argument last week, culpable conduct

09:41:55  10  worthy of enhanced damages is a sliding scale.  And the

09:42:00  11  worst is an intentionally malicious pirate who goes out

09:42:05  12  seeking with actual knowledge of the patent in order to,

09:42:10  13  you know, undermine their competitors' advantage in the

09:42:15  14  marketplace, or something like that.  That's piracy and we

09:42:18  15  can agree on that.

09:42:19  16       But there are other flavors of culpable conduct

09:42:24  17  warranting enhanced damages.  So the point of that is that

09:42:33  18  the notice requirement is -- it serves one purpose, and

09:42:37  19  that is to put the defendants on notice of the existence

09:42:40  20  of a patent.  We're talking about actual notice here.  And

09:42:44  21  so, I don't see the difference, frankly, between me

09:42:48  22  sending a letter to Google saying, you infringe the 123

09:42:54  23  patent, or me filing a complaint, articulating in far

09:42:58  24  greater detail you infringe the 123 patent and here's why.

09:43:05  25       So with that, I'd like to turn to the

09:43:09  1    Google-specific issues unless you'd like to hear from

09:43:12  2    defendants.

09:43:12  3            THE COURT:  Let me hear from anyone who wants to

09:43:14  4    stand up because I do have a couple of more questions.

09:43:16  5            Mr. Snyder, you might be the obvious person.

09:43:20  6            MR. DEVOOGD:  Thank you, your Honor.

09:43:23  7            THE COURT:  And I guess where I'm torn here is,

09:43:26  8    why since it's up to me to make this decision, correct,

09:43:32  9    about whether or not Google in this case acted -- whoever

09:43:37  10   it is, acted willfully.  It seems to me, if the case gets

09:43:47  11   filed, they give you the notice of the 123 patent, you

09:43:53  12   defend it vigorously and we go all the way through trial,

09:44:01  13   how is the system better off with me not just at the end

09:44:07  14   of trial -- regardless of whether Google wins or loses

09:44:11  15   because I will have gotten to -- if Google wins, then if

09:44:14  16   the issues goes away altogether.  I get that.  But if the

09:44:17  17   plaintiff wins, I would, at that point, then be able to

09:44:21  18   assess whether or not I thought that the defense that

09:44:24  19   Google raised was in good faith or not.  Presumably, it

09:44:30  20   would be.  You've tried it all the way through the case,

09:44:33  21   you've put on experts and all that.  And then, I don't

09:44:38  22   think one will be able to find willfulness as a result of

09:44:41  23   that.

09:44:41  24            I guess is the issue whether or not just

09:44:49  25   knowledge is sufficient?  Is that your point?

09:44:51    1              MR. SNYDER:  Well, a few things, your Honor.

09:44:56    2         We know from the Supreme Court that knowledge of

09:44:59    3    the patent is not sufficient to award exemplary damages.

09:45:02    4              THE COURT:  Right.

09:45:03    5              MR. SNYDER:  There has to be knowledge of

09:45:05    6    infringement.  And that knowledge of infringement and that

09:45:09    7    conduct has to go far beyond mere knowledge of the patent

09:45:13    8    to what the Supreme Court described as willful, wanton,

09:45:17    9    malicious, bad faith, et cetera.  Those are serious

09:45:22    10   accusations, whether they're in the patent infringement

09:45:25    11   context or any other context.

09:45:27    12             So merely -- mere knowledge of the patent and a

09:45:31    13   mere accusation of infringement does not satisfy that

09:45:35    14   standard.

09:45:38    15             THE COURT:  And that's why -- I guess what I'm

09:45:40    16   saying is, so the likelihood of a competent judge finding

09:45:45    17   that you acted that way at the end of trial is pretty

09:45:49    18   remote, even if that allegation still exists.

09:45:51    19             MR. SNYDER:  And I guess that leads to my second

09:45:53    20   point, your Honor.  At the time that the complaint is

09:45:56    21   filed, that conduct post-complaint cannot exist because it

09:46:01    22   hasn't happened yet.  And we engage in all kinds of logic

09:46:07    23   games in the law, but we haven't yet flipped around the

09:46:11    24   passage of time that it goes in the other direction.

09:46:13    25             When the plaintiff signs the complaint, says here

09:46:17  1   is my good-faith belief of infringement, at that point,

09:46:22  2   there can be no allegations of post-complaint conduct with

09:46:25  3   knowledge of infringement that would raise to the level of

09:46:31  4   justifying exemplary damages.  And that' what lead to my

09:46:33  5   comment --

09:46:33  6        THE COURT:  Well, then, how could all these

09:46:35  7   judges say that it does?

09:46:37  8        MR. SNYDER:  I don't believe that they should,

09:46:39  9   your Honor.  I think that that is inconsistent with what

09:46:42  10  the Supreme Court has said and that guidance.  And we

09:46:45  11  don't yet have guidance from the Federal Circuit on the

09:46:48  12  Supreme Court in this narrow circumstances the Court has

09:46:51  13  already pointed out.  But that doesn't mean that that

09:46:55  14  guidance wouldn't be forthcoming.  And I think we can see

09:46:58  15  the direction the wind is blowing, based on what the

09:47:01  16  Supreme Court has said.

09:47:02  17       Halo made it very clear that you need something

09:47:05  18  more than mere knowledge.  Now, to be fair, the Supreme

09:47:09  19  Court has also recognized that actual knowledge may not be

09:47:12  20  required.  There are some situations where willful

09:47:17  21  blindness is satisfactory.  But the Supreme Court is

09:47:19  22  giving guidance on that, as well; and in that circumstance

09:47:22  23  as it said in Global Tech, you still need to have a

09:47:27  24  subjective belief and a high likelihood of infringement.

09:47:31  25  Mere knowledge of the patent does not provide that.

09:47:33  1    So that was my point about in response to the
09:47:37  2  Court's question, can they still perhaps come back to the
09:47:41  3  Court and move to amend to add allegations of willfulness,
09:47:45  4  based on post-complaint conduct?  And my point there is
09:47:49  5  not that that's always going to occur.  My point is that
09:47:52  6  there may be some universe in which that set of facts
09:47:56  7  would lead the Court to allow them to make that amendment.
09:48:00  8  It's probably unlikely.  But is it theoretically possible?
09:48:03  9  My imagination isn't big enough to completely exclude that
09:48:07  10 possibility.
09:48:07  11    But merely going ahead and defending yourself
09:48:12  12 after you've been accused of infringement should not be
09:48:14  13 enough to provide that kind of exemplary damages or right
09:48:19  14 to exemplary damages, which is what they're arguing.
09:48:22  15    This actually has consequence in the context of
09:48:24  16 the Google case, your Honor, in this Google case.  Of the
09:48:28  17 two patents that are accused, one of those patents, the
09:48:34  18 431 patent, was something that was identified by Parus to
09:48:39  19 Google during some licensing negotiations that occurred
09:48:41  20 more than a decade ago, and the distinction between
09:48:45  21 knowledge of a patent and knowledge or belief of
09:48:48  22 infringement becomes very important in this context.
09:48:50  23    In '07, when that notice was provided, it was not
09:48:53  24 in the context of saying, Google, we think you infringe
09:48:56  25 this patent.  It was, we have a portfolio of patents.  We

| 09:48:59 | 1 | think we'd like you to -- maybe you'd like to pay us some |
| 09:49:03 | 2 | money for them.  Here is one of many patents that we have. |
| 09:49:06 | 3 | There was no allegation of infringement.  And even the |
| 09:49:09 | 4 | instrumentalities that are accused of infringement in this |
| 09:49:12 | 5 | case didn't exist.  In fact, they didn't exist for nine |
| 09:49:16 | 6 | years. |
| 09:49:17 | 7 | So when Parus provided notice of the patent, they |
| 09:49:24 | 8 | certainly didn't provide notice of infringement and no |
| 09:49:27 | 9 | basis for Google to believe that it was infringing.  And |
| 09:49:30 | 10 | that is what is required for exemplary damages and that is |
| 09:49:33 | 11 | what's absent.  So even the mere -- the mere fact of |
| 09:49:35 | 12 | notice of a patent doesn't provide the notice of |
| 09:49:38 | 13 | infringement that I think is really required to make that |
| 09:49:41 | 14 | next step and allow the case to proceed with an allegation |
| 09:49:44 | 15 | of willful infringement that would justify exemplary |
| 09:49:49 | 16 | damages. |
| 09:49:49 | 17 | THE COURT:  Okay.  Got it. |
| 09:49:57 | 18 | Counsel. |
| 09:50:03 | 19 | MR. DEVOOGD:  Thank you, your Honor. |
| 09:50:04 | 20 | THE COURT:  Yes, sir. |
| 09:50:05 | 21 | MR. DEVOOGD:  Again, I want to emphasis that at |
| 09:50:07 | 22 | the pleadings stage, whether an allegation is plausible is |
| 09:50:11 | 23 | a binary determination.  We don't get to weigh whether an |
| 09:50:16 | 24 | inference is more likely or not or improbable or not.  If |
| 09:50:19 | 25 | it's plausible, it's plausible, and the pleading passes |

09:50:22  1   muster under Twombly.

09:50:24  2          As to the notion that knowledge of infringement

09:50:27  3   can't be conveyed by a complaint, our complaints in this

09:50:33  4   case, and including the one against Google, are some 25 or

09:50:36  5   30 pages long, with 100 different discrete paragraphs

09:50:42  6   making out detailed allegations, mapping the claims of the

09:50:45  7   patents to the accused instrumentalities.  So I'm not sure

09:50:50  8   how that moves the needle for Mr. Snyder.

09:50:53  9          As to the specifics of the Google circumstance

09:50:58  10  here, it was much more than just a discussion about

09:51:02  11  licensing.  So back in 2007 -- and this is laid out in the

09:51:06  12  complaint -- representatives from Parus met with Google

09:51:11  13  and made a presentation regarding their innovative

09:51:16  14  technology and informed them of foundational patents in

09:51:23  15  this voice recognition space.  Among those patents, as

09:51:27  16  Google now concedes, was the 431 patent, which is the

09:51:32  17  parent of the 084 patent.

09:51:34  18         During that management presentation, Parus

09:51:41  19  introduced Google to its business and made a detailed

09:51:45  20  presentation about the technology and the patents.

09:51:50  21  There's some very carefully worded language in the motion

09:51:57  22  to dismiss where Google says, well, Google Assistant,

09:52:01  23  which is the instrumentality of Google that we're pointing

09:52:10  24  for at least some of the elements, didn't come into

09:52:13  25  existence until 2016.  But they made no mention of any

09:52:18  1   predecessor product like the Google Voice Search or Google
09:52:22  2   Now, which I believe -- this isn't in the papers, so take
09:52:27  3   it for what it's worth.  But based on our investigation,
09:52:31  4   Google Voice Search at least was rolled out a little over
09:52:35  5   a year after Parus made this technology presentation.
09:52:40  6           So from our perspective, there is no doubt, and
09:52:44  7   they concede it, that they had actual notice of the 431
09:52:49  8   patent at least as early as 2007.
09:52:53  9           With respect to notice of infringement, from our
09:52:55  10  perspective, it is a plausible inference that Google,
09:53:01  11  which is a highly sophisticated, well-heeled technology
09:53:06  12  company with much at stake in products that they roll out,
09:53:11  13  such as something like Google Assistant, which they're
09:53:16  14  touting all over the place as the next best thing in
09:53:19  15  voice-assisted technology, would not only be aware of,
09:53:28  16  based on their extensive technical diligence, which is
09:53:34  17  also alleged, that a team of both patent attorneys and
09:53:36  18  technical assets conduct detailed diligence not only on
09:53:41  19  the patents that Parus presented but the technology that
09:53:45  20  Parus presented.  And there's no rebuttal for that.
09:53:48  21          And in any event, you need to take those factual
09:53:51  22  allegations pled as true.  So the notion that it's somehow
09:54:04  23  implausible that Google could have been aware of
09:54:06  24  infringement of the 431 patent at least as early as 2007,
09:54:11  25  it could be true.  I don't know.  But that's not for us to

09:54:14  1  decide right now.  The point is that a reasonable

09:54:18  2  inference can be drawn, based on the allegations in the

09:54:20  3  complaint, that Google had notice not only of the 431

09:54:25  4  patent but, also, of its infringement of that patent.  So

09:54:28  5  that's the 431.

09:54:29  6          As to the child, there is case law standing for

09:54:32  7  the proposition that a plaintiff cannot rely on a pending

09:54:40  8  patent application standing alone for purposes of the

09:54:48  9  notice requirement.  I concede that.  But there's a whole

09:54:50  10  lot more here in the allegations that we've pled taken as

09:54:54  11  true, drawing all reasonable inferences in our favor as we

09:54:59  12  must.

09:55:01  13          For all of the reasons I've already articulated,

09:55:03  14  it almost defies logic to suggest that a company with this

09:55:08  15  much at stake in the space as Google would simply ignore

09:55:14  16  or not investigate the pending applications of these

09:55:20  17  foundational patents flowing from this 2004 meeting.

09:55:24  18          Now, whether or not that's a probable allegation,

09:55:29  19  whether or not we're going to be able to prove that up,

09:55:32  20  that doesn't matter.  What matters for today is whether or

09:55:39  21  not the allegations we've made support a plausible

09:55:42  22  inference.  And we respectfully submit that based on the

09:55:45  23  facts pled, that is, in fact, a plausible inference,

09:55:52  24  which, therefore, means we pass muster under the pleadings

09:55:57  25  standard.

09:55:57  1          So unless you have any further questions, I'll

09:55:59  2   step down.  Thank you.

09:56:03  3          MS. RAHEBI:  Is it possible, your Honor, for me

09:56:04  4   to address on behalf of Apple?

09:56:05  5          THE COURT:  Sure.

09:56:05  6          MS. RAHEBI:  We agree with Google that it does --

09:56:07  7   the standard does require knowledge of infringement.  But

09:56:10  8   I wanted to point out when we're looking at a complaint

09:56:12  9   such as the one against Apple, there is no allegation that

09:56:16  10  we ever even heard of Parus, let alone its patents.

09:56:19  11         So what we're really dealing with is a complaint

09:56:21  12  that's the first time we're hearing that we are being

09:56:24  13  accused.  And we believe there's no basis, at that point,

09:56:27  14  to be, for instance, asserting willfulness.  And there's

09:56:31  15  nothing in Halo that suggests defending a patent suit

09:56:36  16  alone would rise to that egregious behavior.

09:56:39  17         And we would go back to this court's language and

09:56:41  18  standard in Parity Networks, which is looking at the time

09:56:43  19  of the filing of the complaint.  Thank you.

09:56:48  20         THE COURT:  Mr. Snyder.

09:56:50  21         MR. SNYDER:  Thank you, your Honor.

09:56:54  22         I'd like to start where plaintiff's counsel

09:56:57  23  ended.  Plaintiff's counsel argues that they should be

09:57:00  24  allowed to make allegations of willfulness because a

09:57:03  25  company of Google's size and sophistication with, quote,

09:57:07  1  so much at stake must have known about these patents.  As

09:57:12  2  I understood it, that was exactly the point of the Court's

09:57:15  3  initial comments that they would be allowed to take

09:57:19  4  discovery on this issue.  And that's exactly the kind of

09:57:21  5  thing that should be determined with real facts, as

09:57:24  6  opposed to speculation, which is all that exists right

09:57:29  7  now.

09:57:29  8       The only evidence that they have of any knowledge

09:57:32  9  is this presentation that was made in 2007, long before

09:57:37  10  any of the accused instrumentalities even existed, and

09:57:40  11  that relates only to one patent.  So if that is the basis,

09:57:44  12  and it seems that it is, then that feeds precisely into

09:57:48  13  this court's suggested approach, which is to dismiss these

09:57:51  14  allegations, give the plaintiffs an opportunity to take

09:57:54  15  discovery, and if they have facts to support these

09:57:57  16  allegations, then they can put them in an amended

09:58:00  17  complaint and the case can proceed.  So that's the first

09:58:04  18  point.

09:58:04  19       The second point, your Honor, is that the

09:58:07  20  allegations or the description in the argument of the

09:58:10  21  notice as to the first of the patents, the 431 patent, is

09:58:13  22  very different than what is in the complaint.  In the

09:58:17  23  first amended complaint against Google, there are two

09:58:19  24  paragraphs that talk about this presentation, paragraph 20

09:58:22  25  and paragraph 21.  There is no allegation in either of

| | | |
|---|---|---|
| 09:58:26 | 1 | those paragraphs that Google was accused at that time of |
| 09:58:32 | 2 | infringing any of the patents.  It was justified provided |
| 09:58:33 | 3 | with some notice.  That is not enough. |
| 09:58:37 | 4 | If discovery later indicates that somehow, Google |
| 09:58:41 | 5 | understood that it was infringing, or that there was a |
| 09:58:44 | 6 | high likelihood that it was infringing one of these |
| 09:58:47 | 7 | patents, that would be a different issue.  But that does |
| 09:58:49 | 8 | not exist yet. |
| 09:58:50 | 9 | And they couldn't logically have alleged that the |
| 09:58:54 | 10 | instrumentalities at issue in this case infringe because |
| 09:58:58 | 11 | they didn't exist for nearly a decade, until a decade |
| 09:59:01 | 12 | later.  That is the 431 patent. |
| 09:59:04 | 13 | Last, your Honor, I want to make a point as it |
| 09:59:07 | 14 | relates to the second patent in this case, the 084 patent. |
| 09:59:11 | 15 | Plaintiff's counsel described that as the child of the 431 |
| 09:59:15 | 16 | patent.  I think that stretches the truth a little bit.  I |
| 09:59:18 | 17 | think if you follow the generations, it might be the |
| 09:59:22 | 18 | great-great grandchild.  It's five generations removed. |
| 09:59:25 | 19 | The application wasn't even filed until five years after |
| 09:59:28 | 20 | this meeting in '07. |
| 09:59:30 | 21 | And it really does strain credulity to say that |
| 09:59:34 | 22 | Google would be on notice of an application that didn't |
| 09:59:36 | 23 | exist for five years and a patent that wasn't issued for |
| 09:59:40 | 24 | almost nine years.  In all of the -- in the context of |
| 09:59:44 | 25 | both of these patents, your Honor, the approach that the |

| 09:59:47 | 1 | Court described at the outset of the hearing would be |
| 09:59:50 | 2 | acceptable to Google and, we would think, would be the |
| 09:59:52 | 3 | proper way to deal with a situation in which the |
| 09:59:55 | 4 | allegations of even notice of the patent are so scant but, |
| 09:59:59 | 5 | most importantly, notice of any knowledge, or of |
| 10:00:04 | 6 | infringement, or high probability of infringement is |
| 10:00:06 | 7 | completely lacking. |
| 10:00:09 | 8 | THE COURT:  Anything else? |
| 10:00:11 | 9 | MR. DEVOOGD:  Just one final comment, your Honor. |
| 10:00:20 | 10 | I won't belabor the ground that I've already covered. |
| 10:00:23 | 11 | Under clear Fifth Circuit law, especially where |
| 10:00:28 | 12 | the relevant information is beyond the access of the |
| 10:00:31 | 13 | plaintiff, courts should generally permit discovery to |
| 10:00:35 | 14 | proceed unless the complaint recites no more than sheer |
| 10:00:38 | 15 | speculation.  All right.  Absent that, the claims should |
| 10:00:46 | 16 | stay in the pleading as it exists. |
| 10:00:48 | 17 | And I would cite for that proposition, the Wooten |
| 10:00:51 | 18 | vs. McDonald case that's in our in briefs. |
| 10:00:54 | 19 | THE COURT:  Well, I'll tell you all, I'm very |
| 10:00:56 | 20 | torn.  But here's what I'm going to do and you all are |
| 10:01:00 | 21 | just going to be the -- have to be the guinea pigs because |
| 10:01:03 | 22 | I have to do something.  And by you all, I mean |
| 10:01:06 | 23 | collectively guinea pigs. |
| 10:01:08 | 24 | I've thought pretty hard about what I'm going to |
| 10:01:12 | 25 | try in this case.  That doesn't mean that it will turn out |

| | | |
|---|---|---|
| 10:01:15 | 1 | to be right, but I am going to dismiss your claims without |
| 10:01:19 | 2 | prejudice, the plaintiff's claims.  I've heard exactly |
| 10:01:23 | 3 | what you've articulated.  You will be -- if at the end of |
| 10:01:30 | 4 | the three-month period after discovery, you want to |
| 10:01:35 | 5 | reassert those claims, you'll have leave to do so; and at |
| 10:01:40 | 6 | that point, if the arguments are still where they're at |
| 10:01:44 | 7 | today, then the defendants can take it up on a motion for |
| 10:01:49 | 8 | summary judgment.  And that way, we can -- I can actually |
| 10:01:53 | 9 | rule on it as a matter of law, as opposed to -- I don't |
| 10:01:56 | 10 | see a great deal of difference, frankly, between saying |
| 10:02:02 | 11 | I'm allowing it in and having motion for summary judgment |
| 10:02:07 | 12 | as I am saying I'm dismissing without prejudice, letting |
| 10:02:12 | 13 | you know it will be allowed back in if you choose to |
| 10:02:15 | 14 | assert it again at the end of three months, after |
| 10:02:17 | 15 | discovery. |
| 10:02:19 | 16 | I don't see that as being really much different. |
| 10:02:23 | 17 | Either way, if it's in the case -- even if I were to leave |
| 10:02:28 | 18 | it in the case right now, I assume I would be getting a |
| 10:02:30 | 19 | motion for summary judgment, at some appoint, and have to |
| 10:02:35 | 20 | deal with this.  So that's -- just to be consistent, |
| 10:02:38 | 21 | that's the way I'm going to do. |
| 10:02:39 | 22 | But I will tell you, I'm certainly -- I certainly |
| 10:02:41 | 23 | understand all the arguments that you've made, and I'm |
| 10:02:43 | 24 | going to have to wrestle with those arguments.  And we may |
| 10:02:46 | 25 | even set it for summary judgment hearing if you do |

```
10:02:48   1   reassert it, and we'll take it up.  I'll be better
10:02:52   2   prepared to argue it from that perspective, rather than a
10:02:57   3   perspective of just a motion to dismiss.
10:03:01   4          But I understand -- and I think we need to have a
10:03:06   5   ruling -- it's one way or the other.  I mean, I'm not -- I
10:03:09   6   only get to make that decision temporarily until someone
10:03:12   7   tells me.  But, you know, I'd certainly hope maybe this
10:03:15   8   will be the kind of case where we would get some guidance
10:03:18   9   afterwards if the case gets far enough along.
10:03:22  10          But I want to make clear, I am dismissing it
10:03:25  11   without preventing you from being able to assert it in the
10:03:29  12   future if you choose to do that, and then, we'll take it
10:03:32  13   up in a different setting.
10:03:35  14          MR. DEVOOGD:  May I ask a question, your Honor?
10:03:37  15          THE COURT:  Sure.
10:03:37  16          MR. DEVOOGD:  That applies to the 431 patent
10:03:39  17   allegation against with Google, as well?
10:03:40  18          THE COURT:  Yes.
10:03:41  19          MR. DEVOOGD:  Thank you, your Honor.
10:03:42  20          THE COURT:  I understand all those arguments.
10:03:44  21   And, like I said, I think I could just as easily say, as
10:03:50  22   asserted, I'm going to defer fact that it was asserted and
10:03:53  23   I should to the defer to the fact that on motion to
10:03:56  24   dismiss, that that's the way to do it.  And I just -- I
10:04:00  25   don't see it being all that different than doing it the
```

| | | |
|---|---|---|
| 10:04:02 | 1 | way I'm doing it.  I don't see any prejudice to the |
| 10:04:04 | 2 | plaintiff by doing it that way, and I think it lessens any |
| 10:04:10 | 3 | prejudice that's unnecessary to Google by maintaining it |
| 10:04:13 | 4 | in a case until you assert it, having had the opportunity. |
| 10:04:16 | 5 | I'm kind of with Mr. Snyder.  I don't know that |
| 10:04:19 | 6 | you will be able to find any -- and I'm not saying on this |
| 10:04:25 | 7 | particular one, on the quantum after they have actual |
| 10:04:30 | 8 | notice, not that there's proof that they did all the |
| 10:04:33 | 9 | pirate things but -- |
| 10:04:35 | 10 | MR. DEVOOGD:  Right. |
| 10:04:35 | 11 | THE COURT:  But that's something that may or may |
| 10:04:38 | 12 | not get any further after discovery.  You will still be |
| 10:04:41 | 13 | allowed to re-file that claim, regardless of the |
| 10:04:46 | 14 | discovery.  And then, Google, and if they want, can file a |
| 10:04:49 | 15 | motion for summary judgment and we'll square up, and I'll |
| 10:04:52 | 16 | make an actual ruling on it, and I'll decide whether or |
| 10:04:57 | 17 | not to go with the Eastern District in Delaware or the |
| 10:04:59 | 18 | others.  Because they both have compelling reasons why I |
| 10:05:02 | 19 | think they're right. |
| 10:05:04 | 20 | MR. DEVOOGD:  Understood, your Honor.  And I |
| 10:05:05 | 21 | appreciate that from the pragmatic perspective.  The |
| 10:05:10 | 22 | solution may be elegant from your perspective. |
| 10:05:13 | 23 | I just want to note, for the record, that I do |
| 10:05:16 | 24 | share the concerns that Mr. Gilman and, I believe, Morgan |
| 10:05:22 | 25 | Chu articulated in the VLSI argument, back in August, as |

| 10:05:27 | 1 | to -- you know, I do not want to be frustrated in |

to -- you know, I do not want to be frustrated in

10:05:30  2  discovery when I'm trying to get information to.

10:05:33  3      THE COURT:  You will not be frustrated in

10:05:34  4  discovery.

10:05:35  5      MR. DEVOOGD:  Substantiate these allegations.

10:05:36  6      THE COURT:  Okay.

10:05:37  7      MR. DEVOOGD:  Thank you.

10:05:38  8      THE COURT:  You've got my favorite law clerk that

10:05:40  9  you'll be dealing with in discovery.  I have no doubt you

10:05:43  10  will have no problems in discovery.

10:05:45  11      MR. DEVOOGD:  Thank you very much.

10:05:47  12      THE COURT:  He'll give Google great advice and

10:05:50  13  counsel on what they should do.

10:05:52  14      MR. DEVOOGD:  I have no doubt.  Thank you, your

10:05:53  15  Honor.

10:05:56  16      THE COURT:  We are going to take just a -- the

10:06:03  17  next case is slightly different than the facts in this

10:06:06  18  case.  We're going to take just a five-minute break and

10:06:08  19  then, come back out and resume with the case.

10:06:10  20      Was that everything with regard to Parus Holdings

10:06:13  21  against anybody that I needed to take up?

10:06:16  22      Yes, ma'am.

10:06:18  23      MS. VIDAL:  Your Honor, in view of your recent

10:06:21  24  rulings in our case, we had only moved to dismiss indirect

10:06:25  25  infringement based on the pre-suit allegations.

| | | |
|---|---|---|
| 10:06:29 | 1 | Will your Honor entertain dismissing it in its |
| 10:06:32 | 2 | entirety? |
| 10:06:33 | 3 | THE COURT:  We would in the same -- under the |
| 10:06:35 | 4 | same guidelines that I've set here. |
| 10:06:38 | 5 | MS. VIDAL:  Thank you, your Honor. |
| 10:06:39 | 6 | MR. GILMAN:  Can I get some clarification on |
| 10:06:41 | 7 | that, your Honor? |
| 10:06:41 | 8 | THE COURT:  Sure. |
| 10:06:42 | 9 | MR. GILMAN:  Everything in front of you on the |
| 10:06:44 | 10 | motion that VMware filed was simply for pre-suit damages. |
| 10:06:48 | 11 | Are you now saying you're going to dismiss our |
| 10:06:51 | 12 | indirect infringement claims?  Because I think that's in a |
| 10:06:55 | 13 | wholly different context than what's been argued on |
| 10:06:56 | 14 | willfulness. |
| 10:06:56 | 15 | THE COURT:  No.  I thought we were -- I meant |
| 10:06:58 | 16 | willfulness. |
| 10:06:59 | 17 | MR. GILMAN:  We don't have a willfulness claim. |
| 10:07:01 | 18 | So our case is much more narrow -- |
| 10:07:02 | 19 | THE COURT:  Let me hear from Ms. Vidal again.  I |
| 10:07:05 | 20 | may have misunderstood. |
| 10:07:06 | 21 | MS. VIDAL:  My understanding -- and maybe I'm not |
| 10:07:08 | 22 | aware of all the issues that are pending in the other |
| 10:07:10 | 23 | cases is that your Honor was dismissing indirect |
| 10:07:12 | 24 | infringement and willfulness in the other cases, based on |
| 10:07:15 | 25 | the knowledge not being -- the complaint not being |

| | | |
|---|---|---|
| 10:07:18 | 1 | sufficient for knowledge. |
| 10:07:19 | 2 | Is that? |
| 10:07:21 | 3 | THE COURT:  I am doing that in the other cases |
| 10:07:23 | 4 | but I don't think -- but Intellectual Ventures hadn't had |
| 10:07:27 | 5 | a chance to brief on those issues.  With regard to |
| 10:07:30 | 6 | willfulness and post filing the complaint, it probably |
| 10:07:38 | 7 | would be the same. |
| 10:07:40 | 8 | MS. VIDAL:  Right.  And willfulness is not in our |
| 10:07:42 | 9 | case.  It's only indirect infringement. |
| 10:07:47 | 10 | THE COURT:  There's no allegation of willfulness? |
| 10:07:47 | 11 | MS. VIDAL:  There's not.  It's only indirect |
| 10:07:47 | 12 | infringement. |
| 10:07:47 | 13 | THE COURT:  Okay.  So I would need to take that |
| 10:07:50 | 14 | up and give -- I would need to let Intellectual Ventures |
| 10:07:53 | 15 | --- if you want to move to have those dismissed to file a |
| 10:07:56 | 16 | motion, I'll hear from Intellectual Ventures.  I don't |
| 10:08:00 | 17 | think we'll need to have another hearing on that.  We'll |
| 10:08:03 | 18 | be able to take that up on the papers.  When you said, can |
| 10:08:05 | 19 | we have the same ruling, I just lost track that there was |
| 10:08:08 | 20 | no willfulness claim.  And so, what I was dealing with |
| 10:08:11 | 21 | was, I think we can deal with the willfulness in the same |
| 10:08:16 | 22 | manner as I am in the Parus Holdings cases, but I'm not |
| 10:08:20 | 23 | prepared until they have a chance to argue the other ones |
| 10:08:23 | 24 | to rule on that. |
| 10:08:24 | 25 | MS. VIDAL:  Thank you, your Honor. |

| | | |
|---|---|---|
| 10:08:25 | 1 | THE COURT:  Okay.  Anything else from anyone |
| 10:08:30 | 2 | until -- I'm going to go to the back.  I have to do one |
| 10:08:35 | 3 | thing, and then, we'll come back and we'll take up De La |
| 10:08:39 | 4 | Vega vs. Microsoft and Google. |
| 10:14:17 | 5 | (Recess.) |
| 10:14:19 | 6 | THE COURT:  The next case I have in front of me |
| 10:14:23 | 7 | is De La Vega vs. Microsoft and vs. Google.  And -- yes, |
| 10:14:23 | 8 | sir. |
| 10:14:27 | 9 | MR. DEVOOGD:  Andrew Devoogd, your Honor.  I |
| 10:14:29 | 10 | apologize for interrupting. |
| 10:14:30 | 11 | THE COURT:  No. |
| 10:14:31 | 12 | MR. DEVOOGD:  Counsel for defendants in the Parus |
| 10:14:33 | 13 | matters reminded me that I neglected to tell you that we |
| 10:14:37 | 14 | are no longer proceeding with our injunctive relief |
| 10:14:39 | 15 | claims.  That was also the subject of some of the |
| 10:14:42 | 16 | briefing.  So we will be withdrawing those allegations. |
| 10:14:45 | 17 | THE COURT:  Okay.  Very good. |
| 10:14:47 | 18 | MR. DEVOOGD:  Thank you, your Honor. |
| 10:14:48 | 19 | THE COURT:  You're doing that voluntarily.  I'm |
| 10:14:50 | 20 | not. |
| 10:14:51 | 21 | MR. DEVOOGD:  That is correct.  Streamlining the |
| 10:14:54 | 22 | case. |
| 10:14:54 | 23 | THE COURT:  Very good. |
| 10:14:55 | 24 | MR. DEVOOGD:  Thank you. |
| | 25 | (End of proceedings.) |

1                          *  *  *  *  *  *

2

3

4  UNITED STATES DISTRICT COURT  )

5  WESTERN DISTRICT OF TEXAS)

6

7     I, LILY I. REZNIK, Certified Realtime Reporter,

8  Registered Merit Reporter, in my capacity as Official

9  Court Reporter of the United States District Court,

10  Western District of Texas, do certify that the foregoing

11  is a correct transcript from the record of proceedings in

12  the above-entitled matter.

13     I certify that the transcript fees and format comply

14  with those prescribed by the Court and Judicial Conference

15  of the United States.

16     WITNESS MY OFFICIAL HAND this the 7th day of February,

17  2020.

18

19

20                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                Certification No. 4481
25                              Expires:  1-31-21