EXHIBIT
2

05-08-01

**IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE**

**PATENT APPLICATION**

Krishna Balachandran
Joseph H Kang
Kumud K Sanwal
James Paul Seymour

**CASE**   21-1-3-12

**TITLE**   Enhanced Frequency Hopping In A Wireless System

**ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C.  20231**

SIR:

### NEW APPLICATION UNDER 37 CFR § 1.53(b)

Enclosed are the following papers relating to the above-named application for patent:

    Specification – 17 pages
    6 Informal Sheets of drawing(s)
    Information Disclosure Statement with two (2) references attached.

| CLAIMS AS FILED | | | | |
|---|---|---|---|---|
| | NO. FILED | NO. EXTRA | RATE | CALCULATIONS |
| Total Claims | 27 - 20 = | 7 | x $18 = | $126 |
| Independent Claims | 13 - 3 = | 10 | x $80 = | $800 |
| Multiple Dependent Claims, if applicable | | | + $270 = | $0 |
| Basic Fee | | | | $710 |
| | | | TOTAL FEE | $1636 |

Please file the application and charge **Lucent Technologies Deposit Account No. 12-2325** the amount of $1636, to cover the filing fee. Duplicate copies of this letter are enclosed. In the event of non-payment or improper payment of a required fee, the Commissioner is authorized to charge or to credit **Deposit Account No. 12-2325** as required to correct the error.

The Assistant Commissioner for Patents is hereby authorized to treat any concurrent or future reply, requiring a petition for extension of time under 37 CFR § 1.136 for its timely submission, as incorporating a petition for extension of time for the appropriate length of time if not submitted with the reply.

"Express Mail" mailing label
number _EK218523860US_
Date of Deposit _MAY 7 2001_
I hereby certify that this _APPLICATION_ is
being deposited with the United States Postal
Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on the
date indicated above and is addressed to the
Commissioner of Patents and Trademarks
Washington, D.C. 20231
_LOURDES CHESAL_
(Printed name of person mailing paper of fee)

(Signature of person mailing paper of fee)

WSOU-CANON-0000013

2

Please address all correspondence to **Docket Administrator (Room 3C-512), Lucent Technologies Inc., 600 Mountain Avenue, P.O. Box 636, Murray Hill, New Jersey 07974-0636.**   However, telephone calls should be made to me at  732-949-1708.

Respectfully,

Joseph J. Opalach
Reg. No. 36229
Attorney for Applicant(s)

Date: May 7, 2001

**Lucent Technologies Inc.**
**600 Mountain Avenue (Room 3C-512)**
**P.O. Box 636**
**Murray Hill, New Jersey  07974-0636**

PT13 12/97

WSOU-CANON-0000014

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

## ENHANCED FREQUENCY HOPPING IN A WIRELESS SYSTEM

### FIELD OF THE INVENTION

This invention relates generally to communications and, more particularly, to wireless communications systems.

5 ### BACKGROUND OF THE INVENTION

Advances in wireless technologies have propelled a migration in features and services provided to the end user. Network operators may however need to support multiple and perhaps migratory technologies with limited spectrum. Therefore, radio resource management techniques that improve spectral efficiency and/or system capacity

10 are always of interest to network operators.

Higher spectral efficiency and/or voice capacity can be achieved in the Global System for Mobile Communication (GSM) Enhanced Data rates for Global Evolution (EDGE) Radio Access Network (GERAN) through tight frequency reuse (e.g., 1/3 or 1/1 reuse). Current GSM deployments employ techniques such as frequency hopping in order

15 to combat the effects of fading and interference. The performance improvement achieved through frequency hopping for voice users at the link and system level directly translates into higher capacity.

On a GSM full rate traffic channel, 20 ms (milli-second) speech frames are convolutionally encoded and diagonally interleaved over a sequence of 8 bursts in a time

20 slot. In the case of a half rate channel, speech is coded and diagonally interleaved over a sequence of 4 alternate bursts in a time slot. Frequency hopping is carried out burst by burst in order to mitigate the effects of slow fading and interference. It provides the following benefits: fading diversity, interferer diversity, and interference averaging.

In practical systems, the frequency hopping is typically non-ideal and the benefits

25 of fading and interferer diversity are not fully realized. With respect to frequency hopping techniques, GSM specifies cyclic frequency hopping and pseudo-random frequency hopping (e.g., see 3GPP TS 45.002, "3rd Generation Partnership Project; Technical Specification Group GERAN; Digital Cellular telecommunications System (Phase 2+); Multiplexing and Multiple Access on the Radio Path (Release 4)"). If the

1

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

number of frequencies is sufficient, then cyclic hopping provides full fading diversity. (As referred to herein, full fading diversity is where every burst within the interleaving depth of a speech frame experiences an independent fading state. This is possible only if the number of frequencies is greater than the number of bursts over which a speech frame

5    is interleaved and the frequencies are sufficiently separated from each other.) However, cyclic hopping does not provide the benefits of interferer diversity and interference averaging. The pseudo-random frequency hopping algorithm specified in GSM provides interferer diversity and achieves long-term interference averaging but does not guarantee fading diversity (i.e., no frequency repetitions) within the interleaving depth of a speech

10   frame.

With respect to GSM pseudo-random frequency hopping, if a large amount of spectrum is allocated, then there are many frequencies over which users can hop and repeated frequencies over a short interval are not common. However, in limited spectrum scenarios where the number of frequencies are smaller than the number of bursts over the

15   interleaving depth (40 ms in the speech case), frequency repetitions always occur. This is illustrated in FIG. 1 on a full rate traffic channel. For full-rate voice users, eight bursts are transmitted over pseudo-randomly generated frequencies (it is assumed for this example that there are eight frequencies to select from: $f_0$ to $f_7$). As can be observed from FIG. 1, coded speech frame 1 encounters frequency, $f_4$, on 3 out of the 8 bursts that it is

20   interleaved across. This implies that speech frame 1 experiences only 6 out of 8 possible independent fading states (assuming there is sufficient separation between each of the frequencies). Similarly, it can be observed for speech frame 2 that frequencies, $f_2$, $f_4$ and $f_5$ are repeated two times each on the 8 bursts over which coded speech frame 2 is interleaved. In this case, speech frame 2 experiences only 5 out of 8 possible independent

25   fading states. In other words, the GSM pseudo-random frequency hopping algorithm does not maximize the number of unique frequencies (or independent fading states) in this case. This has consequences for low mobility users where the fading tends to be strongly correlated for time duration in excess of the interleaving depth of a speech frame. In this case, users may hop to the same frequency multiple times, experiencing similar

30   channel fading conditions each time. With typical channel coding schemes employed for

2

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

speech traffic channels and control signaling channels, increased correlation within the interleaving depth can lead to degradation in error performance.

## SUMMARY OF THE INVENTION

5       In accordance with the invention, a wireless endpoint transmits signals using frequency hopping over a time period $T$ by selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies.

      In an embodiment of the invention, a wireless endpoint employs frequency hopping for communicating signals in a wireless communications system. Over a time

10   period $T$, the wireless endpoint performs pseudo-random selection of a frequency from a hopping set such that over at least a portion of the time period $T$ the choice of frequencies to select from within the hopping set is constrained as a function of previously selected frequencies. In particular, prior selected frequencies are temporarily prohibited from being selected again from the hopping set. Thus, repetition of frequencies over the time

15   period $T$ is reduced.

## BRIEF DESCRIPTION OF THE DRAWING

      FIG. 1 illustrates prior art frequency repetition in a GSM pseudo-random hopping sequence over an illustrative time period;

      FIG. 2 shows an illustrative high-level block diagram of a wireless endpoint for

20   use in accordance with the principles of the invention;

      FIG. 3 illustrates constrained frequency hopping in a GSM pseudo-random hopping sequence over an illustrative time period, $T$;

      FIG. 4 shows Table One, which lists the parameters used in determining a pseudo-random frequency index $S$;

25   FIG. 5 shows an illustrative flow chart embodying the principles of the invention; and

      FIG. 6 shows Table Two, which illustrates an application of the inventive concept.

## DETAILED DESCRIPTION

3

WSOU-CANON-0000017

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

Other than the inventive concept, familiarity with GSM is assumed and is not described herein. For example, other than the inventive concept, a form of frequency hopping used in GSM is described in 3GPP TS 45.002, "3rd Generation Partnership Project; Technical Specification Group GERAN; Digital Cellular telecommunications
5      System (Phase 2+); Multiplexing and Multiple Access on the Radio Path (Release 4)." In addition, the inventive concept is implemented using conventional programming techniques, which as such, will not be described herein.

FIG. 2 shows a high-level block diagram of a representative wireless endpoint 200 for use in accordance with the principles of the invention. Other than the inventive
10     concept, the elements shown in FIG. 2 are well known and will not be described in detail. Wireless endpoint 200 represents a stored-program-control-based processor architecture and includes processor 250, memory 260 (for storing program instructions and data (such as a set of hopping frequencies), as further described below) and communications interface(s) 265 for coupling to one or more wireless communication paths as represented
15     by path 266 (e.g., 265 represents a wireless transmitter and a wireless receiver). In the context of this invention, e.g., processor 250 and memory 260 implement (among other functions not described herein) a constrained frequency hopping method for selecting frequencies for use in transmission of signals via communications interface 265. A detailed description of the reception and transmission of wireless signals is not necessary
20     for the inventive concept and, as such, is not described herein. Except as noted below, it is assumed that the wireless endpoint 200 is a part of a GSM system (not shown) and is in communication with another wireless endpoint (not shown). Wireless endpoint 200 is representative of any wireless device, e.g., a base station, mobile station, user terminal, etc.

25     In accordance with the invention, hopping frequency sequences are constrained in order to reduce, or minimize, repeated frequencies over a time period $T$. Consider a class of hopping sequences for which constraints are imposed to minimize repeated frequencies. For example, if the total number of frequencies, $N$, in a hopping set is equal to 4, the hopping sequence is constrained to prevent any repeats within a set of four
30     bursts. Thus across two consecutive sets of four bursts, no frequency would be repeated

4

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

three or more times. A similar case can be made for $N = 8$. In this case, a constrained hopping sequence prevents the repetition of any frequency over 8 consecutive bursts (i.e., it guarantees 8 independent fading states). Hence, the maximum frequency repeat across an 8-tuple would be 1. This is shown in FIG. 3 for an illustrative speech frame 1, which

5 illustrates constrained frequency hopping on a full rate traffic channel. It should be noted that although the negative effects of frequency repetitions decrease for GSM hopping sets with larger values of $N$, e.g., $N = 12$, the inventive concept still provides improvement.

In accordance with the invention, a hopping state, $H$, is defined to be:

$$H = \{H_0, H_1, ..., H_{F-1}, H_F, ..., H_{N-1}\}, \tag{1}$$

10 which is a vector of length $N$, where $N$ is the total number of frequencies available to hop over, and $F$ is $\leq N$ and is the number of frequencies in $H$ over which the wireless endpoint is constrained to hop. $H$ can also be defined as $H = A \cup B$, where

$$A = \{H_0, H_1, ..., H_{F-1}\}, \tag{2}$$

and is the set of $F$ frequencies over which a wireless endpoint is currently allowed to hop

15 and

$$B = \{H_F, ..., H_{N-1}\} \tag{3}$$

and is the set of $(N - F)$ frequencies over which a wireless endpoint is not currently allowed to hop. In other words, $H$ can be viewed as being divided into a set of allowable frequencies ($A$) and a set of prohibited frequencies ($B$). Let the range of $F$ be defined by

20 $F_{min}$ and $F_{max}$, where $0 \leq F_{min} < F_{max} \leq N$.

For each hop (hops occur every 4.615 ms frame in the case of GSM), the transmitter and receiver (of corresponding wireless endpoints as represented by wireless endpoint 200 of FIG. 2) first use the following procedure in order to determine a pseudo-random frequency index, $S$ (also referred to herein as a hopping index sequence value).

25 Steps (4) through (8), below, are found in section 6.2.3 of the above-mentioned standard, 3GPP TS 45.002. Values for $M$ (where $0 \leq M \leq 152$) and $S$ (where $0 \leq S \leq N - 1$) are computed as follows:

$$M = T2 + RNTABLE\ ((HSN\ xor\ T1R) + T3); \tag{4}$$

$$M' = M\ modulo\ (2\ ^\wedge NBIN); \tag{5}$$

30 $$T' = T3\ modulo\ (2\ ^\wedge NBIN); \tag{6}$$

5

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

$$\text{if } M' < N, \text{ then} \qquad (7)$$

$$S = M'; \qquad (8)$$

else,

$$S = (M' + T) \text{ modulo } N; \qquad (9)$$

5    where the parameters used above are defined in Table One, which is shown in FIG. 4 (additional information on the parameters shown in Table One are found in the above-mentioned standard - 3GPP TS 45.002).

Normally, $S$ is used to select one of the frequencies from **H**. However, and in accordance with the invention, this pseudo-random frequency index, $S$, is now used to

10    select one of the allowable frequencies in $A$. Note, that the pseudo-random frequency index $S$ corresponds to the Mobile Allocation Index (MAI) that is generated by the GSM hopping algorithm for non-zero HSN (Hopping Sequence Number) and MAIO = 0, where MAIO is the Mobile Allocation Index Offset. (In the generation of the pseudo-random frequency index, S, as described below for the inventive concept, MAIO=0 is employed

15    for all users in a sector to ensure that users within a sector choose identical indices of **H**. This guarantees that the hopping states are identical between all users within a sector. In GSM, each user in a sector is assigned a unique MAIO. This ensures that the frequency hopping sequences between users in the same sector are orthogonal. This concept still applies when using the inventive concept described below (e.g., see equation (11), below)

20    as modulo addition of the MAIO guarantees no intra-sector collisions.) Now, let the sequence of pseudo-random frequency indices generated by the above-described algorithm be $\boldsymbol{S} = \{S_0, S_1, S_2, \ldots\}$. Note that $S_i \in \{0, 1, \ldots, N\text{-}1\}$ can be larger than the number of allowable frequencies $F$. Therefore, in this constrained hopping algorithm, a wireless endpoint hops to:

25    $$\text{Hopping Frequency} = (H_{S'} + \text{MAIO}) \text{ modulo } N \text{ where} \qquad (10)$$

$$S' = (S_i) \text{ modulo } F. \qquad (11)$$

In other words, and in accordance with the invention, $S'$ is restricted to the allowable set, **A**.

Turning now to FIG. 5, an illustrative flow chart is shown for updating the

30    hopping state for a constrained frequency hopping method in accordance with the

6

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

principles of the invention.  In steps 505, 510 and 515, the value of the currently hopped frequency, $H_R$, is swapped (via the variable $c$) with $H_{F-1}$, the last allowable frequency in **A**.  Thus, the currently hopped frequency becomes the last element in the set **A**, at position $F$ - $1$.  In the step 520, the size of **A** is reduced by decrementing $F$ by one so that

5    the set of frequencies over which the user can hop for the next burst is reduced (thus, excluding the currently hopped frequency, which is now effectively inserted into **B**).  In step 525, if $F$ reaches a pre-determined minimum value, $F_{min}$, (e.g., 0), $F$ is reset to $F_{max}$ and **H** is cyclically shifted to the right by ($F_{max}$ - $F_{min}$) *modulo N*, and **A** is set equal to the first $F_{max}$ elements of **H** (while **B** = **H** - **A** (which in some instances my be the null set)).

10    In this way, the oldest candidates in **H** can be considered once again.

Consider an example with the following parameters:

$N$ = 8 frequencies;

$F_{min}$ = 0, $F_{max}$ = 4;

Initial hopping state **H** = {1 3 4 6 2 0 5 7} (obviously, each number in **H**

15        corresponds to an *a priori* assigned frequency); and

Initial value of $F$ = 4.

Table Two, shown in FIG. 6, illustrates the constrained frequency hopping method when the GSM hopping index sequence, **S**, is illustratively equal to {1 5 2 4 1...} for the first 5 bursts (burst number 0 through burst number 4).  As can be observed from Table

20    Two, the first column shows the burst number; the second column shows the associated value of the hopping index sequence for that burst number (taken from S = {1 5 2 4 1 ... }); the third column illustrates the allowable frequency set **A**; the fourth column shows the computed hop frequency in accordance with equations (10) and (11), above; the fifth column shows the updating of **H** (or equivalently **A** (and **B** for that

25    matter)) using the method shown in FIG. 5; and the sixth column illustrates the value of $F$.

As noted above, and shown in the first row of Table Two, the initial set of hopping frequencies is **H** = {1 3 4 6 2 0 5 7} and $F$ = $4$.  As such, for the first burst number of 0, **A** is effectively set equal to the first four hopping frequencies of **H**, as

30    shown in row 2 of Table Two (and the remaining frequencies of **H** are a part of **B**).  The

7

WSOU-CANON-0000021

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

hop frequency is computed in accordance with equation (11), above, with the result shown in row 2 of Table Two, i.e., $H_1 = 3$. $\mathbf{H}$ is now adjusted as shown in the flow chart of FIG. 5, i.e., $\mathbf{H} = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$. In other words, the frequency value at the computed index position $I$ is exchanged with the frequency value at index position $(F - I)$. In this

5   example, 3 is exchanged with 6 at the 1st and 3rd positions (recalling that the position index begins at 0). Finally, $F$ is adjusted to 3, as shown in the final column entry for row 2 of Table Two.

As a result, since $F$ is now equal to 3, for the next burst number of 1, the next hop frequency is now restricted to 1, 6, or 4 since the size of $\mathbf{A}$ has been reduced as shown in

10   row 3 of Table 2. (Alternatively, the allowed frequency selections from $\mathbf{H}$ have been constrained to the first three frequencies.) The hop frequency is computed in accordance with equation (11), above, with the result shown in row 3 of Table Two, i.e., $H_2 = 4$. $\mathbf{H}$ is now adjusted as shown in the flow chart of FIG. 5, i.e., $\mathbf{H} = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$. In other words, the frequency value at the computed index position $2$ is exchanged with the

15   frequency value at index position $(F - I)$. In this example though the positions are the same since the selected index position and the value of $F$ are the same, i.e., 3. Therefore, the ordering of the frequencies in $\mathbf{H}$ does not change. Finally, $F$ is adjusted to 2, as shown in the final column entry for row 3 of Table Two.

For the next burst number of 2, the next hop frequency is now restricted to 1 and 6

20   since the size of $\mathbf{A}$ has been reduced as shown in row 4 of Table 2 (since $F$ now equals 2). The hop frequency is computed in accordance with equation (11), above, with the result shown in row 4 of Table Two, i.e., $H_0 = I$. $\mathbf{H}$ is now adjusted as shown in the flow chart of FIG. 5, i.e., $\mathbf{H} = \{6\ 1\ 4\ 3\ 2\ 0\ 5\ 7\}$. In other words, the frequency value at the computed index position $0$ is exchanged with the frequency value at index position $(F - I)$. In this

25   example, 1 is exchanged with 6 at the 0th and 1st positions. Finally, $F$ is adjusted to 1, as shown in the final column entry for row 4 of Table Two.

For the next burst number of 3, the next hop frequency is now restricted to 6 since the size of $\mathbf{A}$ has been reduced as shown in row 5 of Table 2 (since $F$ now equals 1). The hop frequency is computed in accordance with equation (11), above, with the result

30   shown in row 5 of Table Two, i.e., $H_0 = 6$. $\mathbf{H}$ is now adjusted as shown in the flow chart

8

WSOU-CANON-0000022

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

of FIG. 5, i.e., $\mathbf{H}$ = {6 1 4 3 2 0 5 7}. In other words, the frequency value at the computed index position $0$ is exchanged with the frequency value at index position $(F - 1)$. In this example though the positions are the same since the selected index position and the value of $F$ are the same, i.e., 0. As such, the ordering of the frequencies in $\mathbf{H}$ does not change.

5    Finally, $F$ is adjusted to 0, as shown in the final column entry for row 5 of Table Two. However, this update to $F$ indicates that the minimum value is reached and hence, $H$ is cyclically shifted by $(F_{max} - F_{min})$ mod $N$ = 4 and $F$ is reset to $F_{max}$ = 4. This is shown by the additional entries in row 5 of columns 5 and 6 of Table Two, where now $\mathbf{H}$ = {2 0 5 7 6 1 4 3} and $F = 4$. Consequently, for the next burst number of 4, the size of $\mathbf{A}$ has been

10    increased as shown in row 6 of Table 2 (since $F$ now equals 4) and $\mathbf{A}$ = {2 0 5 7}. As a result of this constrained frequency hopping method, the hop sequence for the first 5 burst numbers is: 3, 4, 1, 6, (of course assuming that the MAIO associated with this user equals 0, else refer to equation (11)).

This algorithm is stated in a general way to allow flexibility in the actual

15    implementation. Although the proposed change ultimately alters the hopping sequence, this algorithm uses the existing GSM hopping framework thus allowing legacy mobiles to be easily supported. In addition, the similarity to the current GSM hopping algorithm allows this feature to be turned off for cases such as large spectrum deployments where little to no gains do not warrant the additional complexity. In such cases, the regular

20    GSM hopping algorithm can be employed.

Note, it is recommended that wireless endpoints run the proposed algorithm at all times, even during silence, in order to maintain the hopping state. Maintaining hopping states is needed to ensure that there are no intra-sector collisions.

Since the algorithm considers consecutive bursts spanning multiple frames, the

25    algorithm easily applies to full rate voice (diagonally interleaved) and data (block interleaved) services. The algorithm also applies to half rate voice if $N \geq 8$.

The following should be noted with respect to protocol aspects. When a user enters the system (e.g. at the start of a voice call), the wireless endpoint must know the hopping state, $H$, the number of currently allowable frequencies, $F$, and the range of $F$

30    defined by $Fmin$ and $Fmax$ where $0 \leq Fmin < Fmax \leq F$. $Fmin$ and $Fmax$ are assumed to

9

WSOU-CANON-0000023

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

be provided during call setup. The network can provide $H$ and $F$ to a wireless endpoint (e.g., a user terminal) in any number of ways, such as:

    1) These parameters can be provided during call setup signaling from another wireless endpoint along with an associated timestamp by suitable modification of messages used in existing call setup protocols. Since the algorithm to reconstruct the time evolution of $H$ and $F$ are known, either wireless endpoint can then determine the state information at the current time (effectively providing information on $\mathbf{A}$, etc.); or

    2) Alternatively, state information can be autonomously derived at a wireless endpoint by refreshing the state information at pre-determined time instants. For example, the state can be refreshed (i.e., $H = \{ H_0, H_1, ..., H_{N-1} \}$, $F = Fmax)$ at pre-determined time instants. The wireless endpoint can then reconstruct the time evolution of $H$ and $F$ from the previous refresh instant to the current time.

As described above, and in accordance with the invention, a constrained hopping sequence has been described for reducing the rate at which frequencies are repeated (or alternatively, maximizes the number of independent fading states). The use of constrained frequency hopping allows GSM pseudo-random frequency hopping to achieve full fading diversity under spectrum constraints within the interleaving depth of a speech frame. As such, the constrained hopping algorithm maximizes the number of unique frequencies that occur over the interleaving depth of a speech frame. This permits an improvement in fading diversity performance with negligible impact on interferer diversity and interference averaging capability of the existing GSM pseudo-random hopping algorithm.

The foregoing merely illustrates the principles of the invention and it will thus be appreciated that those skilled in the art will be able to devise numerous alternative arrangements which, although not explicitly described herein, embody the principles of the invention and are within its spirit and scope. For example, although illustrated in the context of pseudo-random frequency selection, other selection methods may be used. Also, although shown as a separate elements, any or all of the elements of FIG. 1 (e.g.,

WSOU-CANON-0000024

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

260) may be implemented in a stored-program-controlled processor.

11

WSOU-CANON-0000025

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

WHAT IS CLAIMED:

1      1. A method for use in wireless equipment, the method comprising the steps of:

2      transmitting signals using frequency hopping over a time period $T$, by

3          selecting a frequency from a set of $N$ frequencies such that over at least a

4          portion of the time period $T$, the frequency selection is constrained to less than

5          the $N$ frequencies.

1      2. The method of claim 1 wherein frequency selection is done pseudo-randomly.

1      3. A method of frequency hopping for use in wireless equipment, the method

2 comprising the steps of:

3      storing a set of hopping frequencies; and

4      selecting frequencies from the set of hopping frequencies over a time period $T$ by

5 limiting the available frequencies from the hopping set over at least a portion of the time

6 period $T$.

1      4. The method of claim 3 wherein the selecting step selects the frequency pseudo-

2 randomly.

1      5. A method of frequency hopping for use in wireless equipment, the method

2 comprising the steps of:

3      initializing a hopping set to a size of $F$ frequencies, the hopping set used to select

4 therefrom hopping frequencies over a time period $T$; and

5      reducing the size of the hopping set over a portion of the time period $T$ by at least

6 one frequency.

1      6. A method of frequency hopping for use in wireless equipment, the method

2 comprising the steps of:

3      initializing a hopping set to a size of $N$ frequencies, the hopping set used to select

4 therefrom hopping frequencies over a time period $T$; and

5      selecting frequencies from the hopping set over the time period $T$ such that at least

WSOU-CANON-0000026

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

6    one of the selected frequencies is prohibited from subsequent selection in at least a

7    portion of the time period $T$.

1        7.  The method of claim 6 wherein the selecting step selects the frequency pseudo-

2    randomly.

1        8.  A method of frequency hopping for use in wireless equipment, where a

2    hopping set is initialized to a size of $N$ frequencies, the hopping set used to select

3    therefrom hopping frequencies over a time period $T$, the method comprising the steps of:

4        determining a hopping index value;

5        modifying the hopping index value by at least the modulo of a number $F$, where $F$

6    $\leq N$;

7        selecting a hopping frequency from the hopping set as a function of the modified

8    hopping index value;

9        adjusting the order of the hopping set such that the selected hopping frequency is

10   now at a position corresponding to the value of $F$;

11      reducing the value of $F$; and

12      returning to the determining step.

1        9.  The method of claim 8 wherein when the value of $F$ reaches a predefined

2    minimum value, further including the step of shifting the hopping set in a cyclical

3    direction by a value equal to a difference between a predefined maximum value for $F$ and

4    the minimum value, modulo $N$.

1       10.  A method of frequency hopping for use in wireless equipment, the method

2    comprising the steps of:

3        initializing a hopping set to a size of $N$ frequencies, the hopping set used to select

4    therefrom hopping frequencies over a time period $T$;

5        dividing the hopping set into an allowable frequency set and a prohibited

6    frequency set;

7        selecting frequencies from the allowable frequency set; and

8        after at least one frequency selection, adjusting the membership in the allowable

WSOU-CANON-0000027

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

9    frequency set and the prohibited frequency set.

1        11.  The method of claim 10 wherein the selecting step selects the frequency
2    pseudo-randomly.

1        12.  The method of claim 10 wherein membership in the allowable frequency set
2    and the prohibited frequency set at a current time is derived from knowledge of the
3    allowable frequency set and the prohibited frequency set at an earlier time.

1        13.  The method of claim 10 wherein knowledge of the allowable frequency set
2    and the prohibited frequency set at a particular time is provided by one wireless endpoint
3    to the other wireless endpoint through explicit signaling.

1        14   The method of claim 10 wherein all $N$ frequencies in the hopping set are
2    assumed allowable at pre-determined time instants.

1        15.  A method of frequency hopping for use in wireless equipment, the method
2    comprising the steps of:
3        dividing a hopping set into an allowable frequency set and a prohibited frequency
4    set; and
5        transmitting information associated with the division of the hopping set to another
6    wireless endpoint.

7        16.  The method of claim 15 wherein the transmitted information enables the
8    other wireless endpoint to derive the allowable frequency set.

1        17.  A wireless endpoint comprising:
2        a transmitter for transmitting signals using frequency hopping over a time period
3    $T$; and
4        a processor for selecting a frequency from a set of $N$ frequencies such that over at
5    least a portion of the time period $T$, the frequency selection is constrained to less than the
6    $N$ frequencies.

1        18.  The wireless endpoint of claim 17 wherein frequency selection is done

14

WSOU-CANON-0000028

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

2     pseudo-randomly.

1        19. A wireless endpoint comprising:

2        a memory for storing a set of hopping frequencies; and

3        a processor for selecting frequencies from the set of hopping frequencies over a

4     time period $T$ by limiting the available frequencies from the hopping set over at least a

5     portion of the time period $T$.

1        20. The wireless endpoint of claim 19 wherein the processor selects the frequency

2     pseudo-randomly.

1        21. A wireless endpoint comprising:

2        a memory for storing a hopping set comprising $F$ frequencies, the hopping set

3     used to select therefrom hopping frequencies over a time period $T$; and

4        a processor for reducing the size of the hopping set over a portion of the time

5     period $T$ by at least one frequency.

1        22. A wireless endpoint comprising:

2        a memory for storing a hopping set comprising $N$ frequencies, the hopping set

3     used to select therefrom hopping frequencies over a time period $T$; and

4        a processor for selecting frequencies from the hopping set over the time period $T$

5     such that at least one of the selected frequencies is prohibited from subsequent selection

6     in at least a portion of the time period $T$.

1        23. The wireless endpoint of claim 22 wherein the at least one selected frequency

2     is selected pseudo-randomly.

1        24. A wireless endpoint comprising:

2        a memory for storing a hopping set comprising $N$ frequencies, the hopping set

3     used to select therefrom hopping frequencies over a time period $T$; and

4        a processor for (a) determining a hopping index value, (b) modifying the hopping

5     index value by at least the modulo of a number $F$, where $F \leq N$, (c) selecting a hopping

6     frequency from the hopping set as a function of the modified hopping index value, (d)

WSOU-CANON-0000029

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

7    adjusting the order of the hopping set such that the selected hopping frequency is now at a

8    position corresponding to the value of $F$, (e) reducing the value of $F$; and (f) returning to

9    (a).

1         25.  The wireless endpoint of claim 24 wherein when the value of $F$ reaches a

2    predefined minimum value, the processor further shifts the hopping set in a cyclical

3    direction by a value equal to a difference between a predefined maximum value for $F$ and

4    the minimum value, modulo $N$.

1         26.  A wireless endpoint comprising:

2         a memory for storing a hopping set comprising $N$ frequencies, the hopping set

3    used to select therefrom hopping frequencies over a time period $T$; and

4         a processor for (a) dividing the hopping set into an allowable frequency set and a

5    prohibited frequency set, (b) selecting frequencies from the allowable frequency set, and

6    (c) after at least one frequency selection, adjusting the membership in the allowable

7    frequency set and the prohibited frequency set.

1         27.  The wireless endpoint of claim 26 wherein the at least one selected frequency

2    is selected pseudo-randomly.

16

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

## ABSTRACT

A wireless endpoint employs frequency hopping for communicating signals in a wireless communications system. Over a time period $T$, the wireless endpoint performs pseudo-random selection of a frequency from a hopping set of $N$ frequencies such that 5 over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies.

17

WSOU-CANON-0000031

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 1

*Prior Art*



WSOU-CANON-0000032

1/6

FIG. 2   Balachandran-Kang-Sanwal-Seymour 21-1-3-12



WSOU-CANON-0000033

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 3

| Even bits | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 |
|-----------|---|---|---|---|---|---|---|---|---|---|---|---|
| Odd bits | x | x | x | x | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 |
| Frequency | $f_3$ | $f_1$ | $f_4$ | $f_0$ | $f_7$ | $f_8$ | $f_5$ | $f_6$ | $f_1$ | $f_3$ | $f_0$ | $f_4$ |

Bursts →

Speech frame 1

WSOU-CANON-000034

3/6

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 4

*Prior Art*

| Parameter | Definition | Range |
|---|---|---|
| TDMA Frame Number, *FN* | TDMA frame number | 0 to (26 x 51 x 2048) - 1 |
| Time parameter, *T1R* | [FN div (26 x 51)] modulo 64 | 0 to 63 |
| Time parameter, *T2* | FN modulo 26 | 0 to 25 |
| Time parameter, *T3* | FN modulo 51 | 0 to 50 |
| Hopping Sequence Number (*HSN*) | Used along with other time parameters to generate a pseudo-random hopping sequence | 0 to 63 |
| *NBIN* | Number of bits required to represent *N* | |
| *xor* | Bit-wise exclusive or of 8 bit binary operands | |

Table One

WSOU-CANON-0000035

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 5



WSOU-CANON-0000036

5/6

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 6

column 1

| Burst Number | Hopping index | A | Compute Hop Frequency | H | F |
|---|---|---|---|---|---|
| -- | -- | -- | -- | $H = \{1\ 3\ 4\ 6\ 2\ 0\ 5\ 7\}$ | $F = 4$ |
| 0 | 1 | $A = \{1\ 3\ 4\ 6\}$ | $H_{(1\ mod\ 4)} = H_1 = 3$ | $H = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 3$ |
| 1 | 5 | $A = \{1\ 6\ 4\}$ | $H_{(5\ mod\ 3)} = H_2 = 4$ | $H = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 2$ |
| 2 | 2 | $A = \{1\ 6\}$ | $H_{(2\ mod\ 2)} = H_0 = 1$ | $H = \{6\ 1\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 1$ |
| 3 | 4 | $A = \{6\}$ | $H_{(4\ mod\ 1)} = H_0 = 6$ | $H = \{6\ 1\ 4\ 3\ 2\ 0\ 5\ 7\}$ $H = \{2\ 0\ 5\ 7\ 6\ 1\ 4\ 3\}$ | $F = 0,$ $F = 4$ |
| 4 | 1 | $A = \{2\ 0\ 5\ 7\}$ | $H_{(1\ mod\ 4)} = H_1 = 0$ | $H = \{2\ 7\ 5\ 0\ 6\ 1\ 4\ 3\}$ | $F = 3$ |

row 1

Table Two

WSOU-CANON-0000037

6/6



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/850,124 | 05/07/2001 | Krishna Balachandran | 21-1-3-12 | 1172 |

| | | |
|---|---|---|
| 6980 7590 05/20/2004 | | EXAMINER |
| TROUTMAN SANDERS LLP | | ZHENG, EVA Y |
| BANK OF AMERICA PLAZA, SUITE 5200 | ART UNIT | PAPER NUMBER |
| 600 PEACHTREE STREET , NE | 2634 | |
| ATLANTA, GA  30308-2216 | | 6 |

DATE MAILED: 05/20/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

WSOU-CANON-0000220

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/850,124 | BALACHANDRAN ET AL. |
| | Examiner | Art Unit | |
| | Eva Yi Zheng | 2634 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _5/7/01_.
2a)☐ This action is **FINAL**.       2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
    closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) _1-27_ is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) _1-27_ is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner.  Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some * c)☐ None of:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
         application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
   Paper No(s)/Mail Date _5_.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 1-04)                    **Office Action Summary**                    Part of Paper No./Mail Date 6

WSOU-CANON-0000221

## DETAILED ACTION

### *Specification*

1.    The disclosure is objected to because of the following informalities: on page 7, line 9, phrase: "some instances my be" should be changed to --some instances may be--.

Appropriate correction is required.

### *Claim Objections*

2.    Claims 6, 10, 22, 24 and 26 are objected to because of the following informalities:

a)    Regarding claims 6 and 10, on line 3, "initializing a hopping set of a size of **N** frequencies" should be changed to -- initializing a hopping set of a size of F frequencies--.

b)    Regarding claims 22, 24 and 26, on line 2, "a memory for storing a hopping set comprising **N** frequencies" should be changed to -- a memory for storing a hopping set comprising F frequencies--.

Appropriate correction is required.

### *Claim Rejections - 35 USC § 112*

3.    The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

4.      Claim 9 recites the limitation "the step of shifting" on line 2.  There is

insufficient antecedent basis for this limitation in the claim. It should be changed

to --a step of shifting--.


### Claim Rejections - 35 USC § 102

5.      The following is a quotation of the appropriate paragraphs of 35

U.S.C. 102 that form the basis for the rejections under this section made in this

Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

6.      Claims 1, 3, 5, 6, 8 -10, 12 -17, 19, 21, 22 and 24-26 are rejected under

35 U.S.C. 102(b) as being anticipated by Kung et al. (4,654, 859).

a)      Regarding claim 1, Kung et al. disclose a method for use in wireless

equipment, the method comprising the steps of

        transmitting signals using frequency hopping over a time period T (Fig. 2

and 3),

        by selecting a frequency (Col 4, L62-63) from a set of N frequencies (as

shown in Fig. 2 and 3) such that over at least a portion of the time period T (as

shown in Fig 2 and 3),

        the frequency selection is constrained to less than the N frequencies (Col

4, L 42-60).

b)      Regarding claim 3, Kung et al. disclose a method of frequency hopping for

use in wireless equipment, the method comprising the steps of:

storing a set of hopping frequencies (32 in Fig.1); and

selecting frequencies (Col 4, L62-63) from the set of hopping frequencies over a time period T by limiting the available frequencies from the hopping set over at least a portion of the time period T (as shown in Fig. 2 and 3).

c)      Regarding claim 5, Kung et al. disclose a method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of F frequencies (Col 2, L 45, imply as "30 frequencies"), the hopping set used to select therefrom hopping frequencies over a time period T (as shown in Fig. 2 and 3); and

reducing the size of the hopping set over a portion of the time period T by at least one frequency (Col 2, L40-41).

d)      Regarding claim 6, Kung et al. disclose a method of frequency hopping for use in wireless equipment, the method comprising the steps of

initializing a hopping set to a size of N frequencies (Col 2, L 45, imply as "30 frequencies"), the hopping set used to select therefrom hopping frequencies over a time period T (as shown in Fig. 2 and 3); and

selecting frequencies (Col 4, L62-63) from the hopping set over the time period T such that at least one of the selected frequencies is prohibited from subsequent selection in at least a  portion of the time period T (as shown in Fig 2 and 3).

e)      Regarding claim 10, Kung et al. disclose a method of frequency hopping for use in wireless equipment, the method comprising the steps of

WSOU-CANON-0000224

initializing a hopping set to a size of N frequencies (Col 2, L 45, imply as "30 frequencies"), the hopping set used to select therefrom hopping frequencies over a time period T (as shown in Fig. 2 and 3);

dividing the hopping set into an allowable frequency set and a prohibited frequency set (Col 2, L45-47, imply as "at least 10 Khz");

selecting frequencies from the allowable frequency set (Col 4, L62-63); and

after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set (Col 2, L 32-47).

f)    Regarding claim 12, Kung et al. disclose the method of claim 10 wherein membership in the allowable frequency set and the prohibited frequency set at a current time is derived from knowledge of the allowable frequency set and the prohibited frequency set at an earlier time (Col 2, L 32-47).

g)    Regarding claim 13, Kung et al. disclose the method of claim 10 wherein knowledge of the allowable frequency set and the prohibited frequency set at a particular time is provided by one wireless endpoint to the other wireless endpoint through explicit signaling (Col 2, L 24-31).

h)    Regarding claim 14, Kung et al. disclose the method of claim 10 wherein all N frequencies in the hopping set are assumed allowable at pre-determined time instants (Col 2, L32-33).

i)    Regarding claim 15, Kung et al. disclose a method of frequency hopping for use in wireless equipment, the method comprising the steps of

dividing a hopping set into an allowable frequency set and a prohibited

frequency set (Col 2, L45-47, imply as "at least 10 Khz"); and

transmitting information associated with the division of the hopping set to

another wireless endpoint (30 in Fig. 1).

j)      Regarding claim 16, Kung et al. disclose the method of claim 15 wherein

the transmitted information enables the other wireless endpoint to derive the

allowable frequency set (Col 2, L24-31).

k)      Regarding claim 17, Kung et al. disclose a wireless endpoint comprising:

a transmitter for transmitting signals using frequency hopping over a time

period T (as shown in Fig. 2 and 3); and

a processor (34 in Fig. 1) for selecting a frequency from a set of N

frequencies (Col 4, L62-63) such that over at least a portion of the time period T,

the frequency selection is constrained to less than the N frequencies (Col 4, L

42-60).

l)      Regarding claims 19, 21, 22 and 26, Kung et al. disclose a wireless

endpoint comprising:

a memory for storing a hopping set comprising N frequencies (32 in Fig.

1), the hopping set used to select therefrom hopping frequencies over a time

period T; and

a processor (34 in Fig. 1) for (a) dividing the hopping set into an allowable

frequency set and a  prohibited frequency set, (b) selecting frequencies from the

allowable frequency set, and (c) after at least one frequency selection, adjusting

the membership in the allowable frequency set and the prohibited frequency set.

m)      Regarding claims 8, 9, 24 and 25, Kung et al. disclose a wireless endpoint comprising:

a memory for storing a hopping set comprising N frequencies (32 in Fig. 1), the hopping set used to select therefrom hopping frequencies over a time period T; and

a processor (34 in Fig. 1) for (a) determining a hopping index value, (b) modifying the hopping index value by at least the modulo of a number F, where F: N, (c) selecting a hopping frequency from the hopping set as a function of the modified hopping index value, (d) adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of F, (e) reducing the value of F; and (f) returning to (a) (Col 2 , L 32-47).


7.      Claims 1, 3, 5, 6, 10,15, 17, 19, 21, 22, 24 and 26 are rejected under 35 U.S.C. 102(b) as being anticipated by Emi (5,541,954).

a)      Regarding claims 1, 5, 6, 10, 15 and 17, Emi discloses a method for use in wireless equipment, the method comprising the steps of

transmitting signals using frequency hopping over a time period T (Fig. 7 and 8),

by selecting a frequency (Col 7, L 60- Col 8, L 4) from a set of N frequencies (Col 7, L 62-63) such that over at least a portion of the time period T (as shown in Fig 7 and 8),

the frequency selection is constrained to less than the N frequencies (Col 7, L 60- Col 8, L 4).

WSOU-CANON-0000227

b)    Regarding claim 3, 19, 21, 22, 24 and 26, Emi discloses a wireless endpoint comprising:

a memory for storing a hopping set comprising N frequencies (11 in Fig. 1A), the hopping set used to select therefrom hopping frequencies over a time period T; and

a processor (17 in Fig. 1A) for (a) dividing the hopping set into an allowable frequency set and a prohibited frequency set, (b) selecting frequencies from the allowable frequency set, and (c) after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set (Col 6, L56 - Col 7, L1).

### Claim Rejections - 35 USC § 103

8.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

9.    Claims 2, 4, 7, 11, 18, 20, 23 and 27 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kung et al. (4,654, 859).

Regarding claim 2, 4, 7, 11, 18, 20, 23 and 27, Kung et al. disclose all the subject matter described above, except the specific teaching of a selecting step selects the frequency pseudo-randomly.

However, it is well known in the art that a frequency hopping spread spectrum carrier hops on a predetermined pseudo random pattern. Therefore, it

would have been obvious to one of ordinary skill in the art at the time of invention was made to understand and realize that the frequency hopping communication system by Kung et al. select frequency pseudo-randomly.

### *Conclusion*

10.    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Eva Yi Zheng whose telephone number is 703-305-8699.  The examiner can normally be reached on 7:30-4:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Stephen Chin can be reached on 703-305-4714.  The fax phone number for the organization where this application or proceeding is assigned is 703-879-9306.

**Any response to this action should be mailed to:**

Commissioner of Patents and Trademarks

Washington, D.C.  20231

**or faxed to:**

**(703) 872-9314 (for Technology Center 2600 only)**

Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal Drive, Arlington, VA, Sixth Floor (Receptionist).

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the Technology Center 2600 Customer Service Office whose telephone number is (703) 306-0377.

Eva Yi Zheng
Examiner
Art Unit 2634

May 4, 2004

SHUWANG LIU
PRIMARY EXAMINER

WSOU-CANON-0000230

2634  41

**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application No.:    09/850,124

Filing Date:       May 7, 2001

Applicant:         Krishna BALACHANDRAN et al.

Group Art Unit:    2634

Examiner:          Eva Y. Zheng

Title:             ENHANCED    FREQUENCY    HOPPING    IN    A    WIRELESS
                   SYSTEM

Attorney Docket:   29250-000873/US

**RECEIVED**

AUG 1 8 2004

Technology Center 2600

Commissioner for Patents                        August 16, 2004
P.O. Box 1450
Alexandria, VA 22313-1450

### AMENDMENT

Sir:

Applicants are in receipt of the Office Action dated May 20, 2004 ("Office

Action"), and respond as follows.

Amendments to the Claims begin on page 2 of this paper.

Remarks begin on page 9 of this paper.

WSOU-CANON-0000235

Application No. 09/850,124
Docket No. 29250-000873/US

## IN THE CLAIMS

Kindly amend claims 1, 3, 5, 6, 8, 10, 15, 17, 19, 21, 24 and 26 and delete claims 2, 4, 7, 11, 18, 20, 23 and 27 without prejudice to, or disclaimer of, the subject matter therein. The subject matter of these deleted claims has been incorporated into other claims.

The following is a complete listing of revised claims with a status identifier in parenthesis.

### LISTING OF CLAIMS

1.    (Currently Amended)    A method for use in wireless equipment, the method comprising the steps of:

transmitting signals using frequency hopping over a time period $T$, by

pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies.

2.    (Cancelled)

3.    (Currently Amended)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

storing a set of hopping frequencies; and

pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the hopping set over at least a portion of the time period $T$.

WSOU-CANON-0000236

Application No. 09/850,124
Docket No. 29250-000873/US

4.      (Cancelled)

5.      (Currently Amended)      A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency.

6.      (Currently Amended)      A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

pseudorandomly selecting frequencies from the hopping set over the time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$.

7.      (Cancelled)

8.      (Currently Amended)      A method of frequency hopping for use in wireless equipment, where a hopping set is initialized to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$, the method comprising the steps of:

determining a hopping index value;

Page 3

WSOU-CANON-0000237

Application No. 09/850,124
Docket No. 29250-000873/US

modifying the hopping index value by at least the modulo of a number $F$, where $F \leq N$;

<u>pseudorandomly</u> selecting a hopping frequency from the hopping set of a function of the modified hopping index value;

adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of $F$;

reducing the value of $F$; and

returning to the determining step.

9.      (Original)    The method of claim 8 wherein the value of $F$ reaches a predefined minimum value, further including the step of shifting the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for $F$ and the minimum value, modulo $N$.

10.    (Currently Amended)    A method for frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$;

dividing the hopping set into an allowable frequency set and a prohibited frequency set;

<u>pseudorandomly</u> selecting frequencies from the allowable frequency set; and

after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set.

WSOU-CANON-0000238

Application No. 09/850,124
Docket No. 29250-000873/US

11.    (Cancelled)

12.    (Original)    The method of claim 10 wherein membership in the allowable frequency set and the prohibited frequency set at a current time is derived from knowledge of the allowable frequency set and the prohibited frequency set at an earlier time.

13.    (Original)    The method of claim 10 wherein knowledge of the allowable frequency set and the prohibited frequency set at a particular time is provided by one wireless endpoint to the other wireless endpoint through explicit signaling.

14.    (Original)    The method of claim 10 wherein all $N$ frequencies in the hopping set are assumed allowable at pre-determined time instants.

15.    (Currently Amended)    A ~~method of~~ pseudorandom frequency hopping method for use in wireless equipment, the method comprising the steps of:

dividing a hopping set into an allowable frequency set and a prohibited frequency set; and

transmitting information associated with the division of the hopping set to another wireless endpoint.

16.    (Original)    The method of claim 15 wherein the transmitted information enables the other wireless endpoint to derive the allowable frequency set.

Page 5

WSOU-CANON-0000239

Application No. 09/850,124
Docket No. 29250-000873/US

17.   (Currently Amended)     A wireless endpoint comprising:

a transmitter for transmitting signals using frequency hopping over a time period $T$; and

a processor for pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies.

18.   (Cancelled)

19.   (Currently Amended)     A wireless endpoint comprising:

a memory for storing a set of hopping frequencies; and

a processor for pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the hopping set over at least a portion of the time period $T$.

20.   (Cancelled)

21.   (Currently Amended)     A wireless endpoint comprising:

a memory for storing a hopping set comprising $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

a processor for reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency.

WSOU-CANON-0000240

Application No. 09/850,124
Docket No. 29250-000873/US

22.    (Currently Amended)    A wireless endpoint comprising:

a memory for storing a hopping set comprising *N* frequencies, the hopping set used to select therefrom hopping frequencies over a time period *T*, and

a processor for <u>pseudorandomly</u> selecting frequencies from the hopping set over a time period *T* such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period *T*.

23.    (Cancelled)

24.    (Currently Amended)    A wireless endpoint comprising:

a memory for storing a hopping set comprising *N* frequencies, the hopping set used to <u>pseudorandomly</u> select therefrom hopping frequencies over a time period *T*, and

a processor for (a) determining a hopping index value, (b) modifying the hopping index value by at least the modulo of a number *F* where $F \leq N$, (c) selecting a hopping frequency from the hopping set as a function of the modified hopping index value, (d) adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of *F*, (e) reducing the value of *F*, and (f) returning to (a).

25.    (Original)    The wireless endpoint of claim 24 wherein when the value of *F* reaches a predefined minimum value, the processor further shifts

WSOU-CANON-0000241

Application No. 09/850,124
Docket No. 29250-000873/US

the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for $F$ and the minimum value, modulo $N$.

26.    (Currently Amended)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

a processor for (a) dividing the hopping set into an allowable frequency set and a prohibited frequency set, (b) pseudorandomly selecting frequencies from the allowable frequency set, and (c) after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set.

27.    (Cancelled)

WSOU-CANON-0000242

## REMARKS

### Response to Claim Rejections

The Office Action requests that the reference to "$N$" frequencies in claims 6 and 10 be changed to "$F$" frequencies.  As indicated on at least page 5 of the specification, $N$ is the total number of frequencies available for frequency hopping, while $F$ is the number of frequencies in a hopping state, **$H$**, over which a wireless endpoint is constrained to hop, where $F$ is less than or equal to $N$.  Therefore, Applicants respectfully submit that claims 6 and 10 appropriately indicate an initial hopping set of size $N$ frequencies.

The Office Action also requests that claims 22, 24 and 26, which claim "a memory for storing a hopping set comprising $N$ frequencies" should be changed to --a memory for storing a hopping set comprising $F$ frequencies--.  Similar to the objections to claims 6 and 10, Applicants respectfully submit that the present specification provides support for existing claims 22, 24 and 26.

Accordingly, Applicants respectfully request withdrawal of the pending objections and allowance of claims 6, 10, 22, 24 and 26.

### The Section 112 Rejections

Claim 9 was rejected under 35 U.S.C. §112, the Office Action stating that the feature "the step of shifting" in claim 9, line 2, requires an antecedent basis.  Applicants respectfully traverse this rejection for at least the following reasons.

Page 9

As presently understood by Applicants' attorney, the Office Action appears to be objecting to the form of claim 9. However, it is respectfully submitted that when an additional step or method is claimed, the format "the step of" is appropriate and does not require an additional antecedent basis, e.g., "a" or "an" preceding step.

In addition, it is respectfully submitted that the scope of claim 9 can be reasonably ascertained by those skilled in the art and, therefore, is not indefinite (see MPEP 2173.05(e)).

Accordingly, Applicants respectfully request withdrawal of the pending rejection and allowance of claim 9.

## Section 102 and 103 Rejections

Claims 1, 3, 5, 6, 8-10, 12-17, 19, 21, 22 and 24-26 were rejected under 35 U.S.C. §102(b) as being anticipated by Kung et al., U.S. Patent No. 4,654,859 ("Kung"). In addition, claims 1, 3, 5, 6, 10, 15, 17, 19, 21, 22, 24 and 26 were rejected under 35 U.S.C. §102(b) as being anticipated by Emi, U.S. Patent No. 5,541,954 ("Emi"). Finally, claims 2, 4, 7, 11, 18, 20, 23 and 27 were rejected under 35 U.S.C. §103(a) as being unpatentable over Kung.

Applicants respectfully disagree and traverse these rejections for at least the following reasons.

WSOU-CANON-0000244

As indicated in the Office Action, neither Kung nor Emi discloses or suggests the pseudorandom selection of a hopping frequency, as is required by each of the claims of the present invention. In fact, both references teach away from the use of a pseudorandom selection of a hopping frequency.

Kung selects a frequency by cycling through an ordered frequency set in a predetermined fashion. In contrast, the present invention pseudo-randomly selects a hopping frequency. The fact that Kung discloses the selection of a frequency by cycling through an ordered frequency set in a predetermined fashion, explicitly teaches away from pseudorandom selection of a hopping frequency, as is required by the claims of the present invention.

Emi appears to disclose a frequency hopping scheme where a receiver counts errors it has received on each given frequency. If a total error count exceeds some metric, then the received frequency will be deemed unusable and an alternative, unused frequency will be substituted in its place. There is nothing in Emi which teaches the pseudorandom selection of a hopping frequency, as is required by the claims of the present invention. One of ordinary skill in the art, on reading Emi would not equate Emi's substitution of a new frequency with pseudorandom frequency hopping selection, as is required by the claims of the present invention.

In the Office Action, it is stated that "it is well known in the art that a frequency hopping spread spectrum carrier hops on a predetermined pseudo

WSOU-CANON-0000245

Application No. 09/850,124
Docket No. 29250-000873/US

random pattern." Applicants wish to respectfully point out at least two things regarding this statement in the Office Action.

First, the claims do not require "a predetermined pseudorandom pattern." Instead, all that is required is a pseudorandom selection of a hopping frequency.

Second, Applicants respectfully submit that this is an inappropriate basis for rejecting the claims based on 35 U.S.C. §103(a). Only in limited circumstances should claims be rejected based on "common knowledge." Such a rejection, unsupported by documentary evidence should only be taken when the facts asserted to be common knowledge in the art are capable of instant and unquestionable demonstration of being so known.

Applicants respectfully submit that the pseudorandom selection of a hopping frequency from a set of $N$ or $F$ frequencies is not capable of instant and unquestionable demonstration as being well known, given the fact that none of the references cited in the Office Action discloses or even suggests such a feature.

Because there is no form of evidence offered in the Office Action to support an assertion of common knowledge or specific factual findings predicated on sound technical and scientific reason to support the rejection, Applicants respectfully request that the Section 103 rejections be withdrawn and claims 3, 4, 7, 11, 18, 20, 23 and 27 be allowed (see MPEP 2144.03).

WSOU-CANON-0000246

Application No. 09/850,124
Docket No. 29250-000873/US

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact John E. Curtin at the telephone number of the undersigned below.

In the event this Response does not place the present application in condition for allowance, applicant requests the Examiner to contact the undersigned at (703) 668-8000 to schedule a personal interview.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. § 1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

John E. Curtin, Reg. No. 37,602
P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

JEC:psy

Page 13

WSOU-CANON-0000247



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/850,124 | 05/07/2001 | Krishna Balachandran | 21-1-3-12 | 1172 |

| 6980 | 7590 | 01/07/2005 | EXAMINER |
|---|---|---|---|

TROUTMAN SANDERS LLP
BANK OF AMERICA PLAZA, SUITE 5200
600 PEACHTREE STREET, NE
ATLANTA, GA 30308-2216

ZHENG, EVA Y

| ART UNIT | PAPER NUMBER |
|---|---|
| 2634 | |

DATE MAILED: 01/07/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

WSOU-CANON-0000253

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/850,124 | BALACHANDRAN ET AL. |
| | Examiner | Art Unit | |
| | Eva Yi Zheng | 2634 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>16 August 2004</u>.

2a) ☒ This action is **FINAL**.   2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☐ Claim(s) _____ is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☒ Claim(s) <u>8-10,12-14 and 24-26</u> is/are allowed.

6) ☒ Claim(s) <u>1,3,5,6,15-17,19,21 and 22</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____.

WSOU-CANON-0000254

Application/Control Number: 09/850,124                                    Page 2
Art Unit: 2634

## DETAILED ACTION

### *Response to Arguments*

1.      Applicant's arguments with respect to claims 1, 3, 5, 6, 8-10, 12-17, 19, 21, 22

and 24-26 have been considered but are moot in view of the new ground(s) of rejection

because of amendment.

### *Claim Objections*

2.      Claims 1, 4, 5, 6, 8, 9, 10, 14, 17, 21, 22 and 24-26 are objected to because of

the following informalities: parameters: "N and F" are not defined.

Appropriate correction is required.

### *Claim Rejections - 35 USC § 102*

3.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

4.      Claims 1, 3, 15-17 and 19 are rejected under 35 U.S.C. 102(b) as being

anticipated by Munday et al. (US 5,377,221).

Application/Control Number: 09/850,124                               Page 3
Art Unit: 2634

a)    Regarding claim 1, Munday et al. disclose a method for use in wireless

equipment, the method comprising the steps of:

      transmitting signals using frequency hopping over a time period T (2A and 2B),

by

      pseudo randomly selecting a frequency from a set of N frequencies such that

over at least a portion of the time period T, the frequency selection is constrained to less

than the N frequencies (Col 2, L64-67).

b)    Regarding claim 3, Munday et al. disclose a method for use in wireless

equipment, the method comprising the steps of:

      Storing a set of hopping frequencies (74 in Fig. 1; Col 6, L52-59); and

      pseudo randomly selecting frequencies from the set of hopping frequencies over

a time period T by limiting the available frequencies from the hopping set over at least a

portion of the time period T (Fig. 2A and 2B; Col 2, L64-67) .

c)    Regarding claim 17, Munday et al. disclose a wireless endpoint comprising:

      a transmitter for transmitting signals using frequency hopping over a time period

T (2A and 2B; Col 2, L64-67); and

      a processor for pseudo randomly selecting a frequency from a set of N

frequencies such that over at least a portion of the time period T, the frequency

selection is constrained to less than the N frequencies (26 in Fig. 1; Col 3, L61- Col 4,

L15).

d)    Regarding claim 15, Munday et al. disclose a pseudorandom frequency hopping

method for use in wireless equipment, the method comprising the steps of:

Application/Control Number: 09/850,124                                    Page 4
Art Unit: 2634

dividing a hopping set into an allowable frequency set and a probhibited

frequency set (Col 2, L64 - Col 3, L17); and

transmitting information associated with the division of the hopping set to another

wireless endpoint (Col 2, L64 - Col 3, L17).

e)      Regarding claim 16, Munday et al. disclose the method of claim 15 wherein the

transmitted information enables the other wireless endpoint to derive the allowable

frequency set (other wireless endpoint inherent as receiver; Col 2, L64 - Col 3, L17).

f)      Regarding claim 19, Monday et al. disclose a wireless endpoint comprising:

a memory for storing a set of hopping frequencies (74 in Fig. 1; Col 6, L52-59);

and

a processor for pseudo randomly selecting frequencies from the set of hopping

frequencies over a time period T by limiting the available frequencies from the hopping

over at least a portion of the time period T (26 in Fig. 1; Col 3, L61- Col 4, L15).

5.      Claims 1, 5, 6, 21 and 22 are rejected under 35 U.S.C. 102(e) as being

anticipated by Haartsen (US 6,345,066 B1).

a)      Regarding claim 1, Haartsen discloses a method for use in wireless equipment,

the method comprising the steps of:

transmitting signals using frequency hopping over a time period T (Fig. 1), by

pseudo randomly selecting a frequency from a set of N frequencies such that

over at least a portion of the time period T, the frequency selection is constrained to less

than the N frequencies (Fig. 2; Col 4, L 25-47).

Application/Control Number: 09/850,124                                    Page 5
Art Unit: 2634

b)      Regarding claim 5, Haartsen discloses a method of frequency hopping for use in
wireless equipment, the method comprising the steps of:

        initializing a hopping set to a size of F frequencies, the hopping set used to
pseudo randomly select therefrom hopping frequencies over a time period T (Col 4,
L25-47); and

        reducing the size of the hopping set over a portion of the timer period T by at
least one frequency (Fig. 3; Col 5, L6-23).

c)      Regarding claim 6, Haartsen discloses a method of frequency hopping for use in
wireless equipment, the method comprising the steps of:

        initializing a hopping set to a size of N frequencies, the hopping set used to
select therefrom hopping frequencies over a time period T (Col 4, L25-47); and

        pseudo randomly selecting frequencies from the hopping set (inherent as
reduced set of frequencies) over the time period T such that at least one of the selected
frequencies is prohibited from susbsequent selection in at least a portion of the time
period T (Col 6, L31-57).

d)      Regarding claim 21, Haartsen discloses a wireless endpoint comprising:

        a memory for storing a hopping set comprising F frequencies (inherent as control
502 in Fig. 2), the hopping set used to pseudo randomly select therefrom hopping
frequencies over a time period T (Col 4, L 25-47); and

        a processor for reducing the size of the hopping set over a portion of the timer
period T by at least one frequency (Fig. 3; Col 5, L6-23).

e)      Regarding claim 22, Haartsen discloses a wireless endpoint comprising:

WSOU-CANON-0000258

Application/Control Number: 09/850,124                                    Page 6
Art Unit: 2634

a memory for storing a hopping set comprising N frequencies (inherent as control 502 in Fig. 2), the hopping set used to select therefrom hopping frequencies over a time period T (Col 4, L 25-47); and

a processor for pseudo randomly selecting frequencies from the hopping set (inherent as reduced set of frequencies) over the time period T such that at least one of the selected frequencies is prohibited from susbsequent selection in at least a portion of the time period T (Col 6, L31-57).


### *Allowable Subject Matter*

6.      Claims 8-10, 12-14 and 24-26 are allowed.

7.      The following is an examiner's statement of reasons for allowance:

None of the prior art teaches or suggests a frequency hopping method in a wireless system, a hopping set initialized to a size of N frequencies, and the hopping set used to select therefrom hopping frequencies over a time period of T, comprising the steps of: determining a hopping index value; modifying the hopping index value by at least the modulo of a number F, where F is less or equal to N; pseudo randomly selecting a hopping frequency from the hopping set of a function of the modified hopping index value; adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value F; reducing the value of F; and returning to the determining a hopping index value. .

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably

WSOU-CANON-0000259

Application/Control Number: 09/850,124                                    Page 7
Art Unit: 2634

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

### *Conclusion*

8.      Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

9.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Eva Yi Zheng whose telephone number is (571) 272-

3049.  The examiner can normally be reached on 7:30-4:30.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Stephen Chin can be reached on (571) 272-3056.  The fax phone number

for the organization where this application or proceeding is assigned is 703-879-9306.

Application/Control Number: 09/850,124                    Page 8
Art Unit: 2634

**Any response to this action should be mailed to:**

Commissioner of Patents and Trademarks

Washington, D.C. 20231

**or faxed to:**

**(703) 872-9314 (for Technology Center 2600 only)**

Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal

Drive, Arlington, VA, Sixth Floor (Receptionist).

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the Technology Center 2600 Customer Service Office

whose telephone number is (703) 306-0377.

                                    Eva Yi Zheng
                                    Examiner
                                    Art Unit 2634
January 3, 2005

                                    SHUWANG LIU
                                    PRIMARY EXAMINER

WSOU-CANON-0000261



**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application No.:  09/850,124

Filing Date:  May 7, 2001

Applicant:  Krishna BALACHANDRAN et al.

Group Art Unit:  2634

Examiner:  Eva Y. Zheng

Title:  ENHANCED   FREQUENCY   HOPPING   IN   A   WIRELESS
SYSTEM

Attorney Docket:  29250-000873/US

---

Customer Service Window                                          April 5, 2005
Randolph Building
401 Dulany Street
Alexandria, VA  22314
**Mail Stop AF**

### REQUEST FOR RECONSIDERATION

Sir:

Applicants are in receipt of the Final Office Action dated January 7. 2005

("Final Office Action"), and respond as follows.

Amendments to the Claims begin on page 2 of this paper.

Remarks begin on page 11 of this paper.

WSOU-CANON-0000265

Application No. 09/850,124
Docket No. 29250-000873/US

## IN THE CLAIMS

Kindly amend claims 1, 3, 5, 8, 9, 10, 13, 14, 15, 17, 19, 21, 22, 24 and 26 as follows.

The following is a complete listing of revised claims with a status identifier in parenthesis.

### LISTING OF CLAIMS

1.      (Currently Amended)      A method for use in wireless equipment, the method comprising the steps of:

transmitting signals using frequency hopping over a time period $T$, by

pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$ [[.]],

where $N$ is the total number of frequencies available for frequency hopping.

2.      (Cancelled)

3.      (Currently Amended)      A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

storing a set of hopping frequencies; and

pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the

Page 2

WSOU-CANON-0000266

Application No. 09/850,124
Docket No. 29250-000873/US

hopping set over at least a portion of the time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$.

4.    (Cancelled)

5.    (Currently Amended)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$ [[.]],

where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

6.    (Currently Amended)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

Page 3

WSOU-CANON-0000267

Application No. 09/850,124
Docket No. 29250-000873/US

pseudorandomly selecting frequencies from the hopping set over the time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$[[.]]_,_

where $N$ is the total number of frequencies available for frequency hopping.

7.      (Cancelled)

8.      (Currently Amended)      A method of frequency hopping for use in wireless equipment, where a hopping set is initialized to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$, the method comprising the steps of:

determining a hopping index value;

modifying the hopping index value by at least the modulo of a number $F$, where $F \leq N$;

pseudorandomly selecting a hopping frequency from the hopping set of a function of the modified hopping index value;

adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of $F$ and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$;

reducing the value of $F$; and

returning to the determining step[[.]]_,_

Page 4

WSOU-CANON-0000268

Application No. 09/850,124
Docket No. 29250-000873/US

where *N* is the total number of frequencies available for frequency hopping and where *F* is the number of frequencies in a hopping state, *H*, over which a wireless endpoint is constrained to hop.

9.    (Currently Amended)    The method of claim 8 wherein when the value of *F* reaches a predefined minimum value, further including the step of shifting the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for *F* and the minimum value, modulo *N*.

10.    (Currently Amended)    A method for frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of *N* frequencies, the hopping set used to select therefrom hopping frequencies over a time period *T*;

dividing the hopping set into an allowable frequency set and a prohibited frequency set;

pseudorandomly selecting frequencies from the allowable frequency set; and

after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period *T* [[.]],

where *N* is the total number of frequencies available for frequency hopping.

WSOU-CANON-0000269

11.    (Cancelled)

12.    (Original)    The method of claim 10 wherein membership in the allowable frequency set and the prohibited frequency set at a current time is derived from knowledge of the allowable frequency set and the prohibited frequency set at an earlier time.

13.    (Currently Amended)    The method of claim 10 wherein knowledge of the allowable frequency set and the prohibited frequency set at a particular time is provided by one wireless endpoint to ~~the other~~ another wireless endpoint through explicit signaling.

14.    (Original)    The method of claim 10 wherein all *N* frequencies in the hopping set are assumed allowable at pre-determined time instants.

15.    (Currently Amended)    A    pseudorandom    frequency    hopping method for use in wireless equipment, the method comprising the steps of:

    dividing a hopping set into an allowable frequency set and a prohibited frequency set; and

    transmitting information associated with the division of the hopping set to another wireless endpoint <u>such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period <i>T</i></u>.

WSOU-CANON-0000270

Application No. 09/850,124
Docket No. 29250-000873/US

16.    (Original)    The method of claim 15 wherein the transmitted information enables the other wireless endpoint to derive the allowable frequency set.

17.    (Currently Amended)    A wireless endpoint comprising:

a transmitter for transmitting signals using frequency hopping over a time period $T$; and

a processor for pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies <u>and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$</u> [[.]]<u>,</u>

<u>where $N$ is the total number of frequencies available for frequency hopping.</u>

18.    (Cancelled)

19.    (Currently Amended)    A wireless endpoint comprising:

a memory for storing a set of hopping frequencies; and

a processor for pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the hopping set over at least a portion of the time period $T$ <u>such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$</u>.

WSOU-CANON-0000271

20.   (Cancelled)

21.   (Currently Amended)   A wireless endpoint comprising:

a memory for storing a hopping set comprising $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

a processor for reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency <u>such that at least one of the selected</u> <u>frequencies is prohibited from subsequent selection in at least a portion of the</u> <u>time period $T$</u> [[.]]<u>,</u>

<u>where $F$ is the number of frequencies in a hopping state, $H$, over which a</u> <u>wireless endpoint is constrained to hop.</u>

22.   (Currently Amended)   A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

a processor for pseudorandomly selecting frequencies from the hopping set over a time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$[[.]]<u>,</u>

<u>where $N$ is the total number of frequencies available for frequency</u> <u>hopping.</u>

Page 8

WSOU-CANON-0000272

Application No. 09/850,124
Docket No. 29250-000873/US

23.   (Cancelled)

24.   (Currently Amended)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

a processor for (a) determining a hopping index value, (b) modifying the hopping index value by at least the modulo of a number $F$ where $F \leq N$, (c) selecting a hopping frequency from the hopping set as a function of the modified hopping index value, (d) adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of $F$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$, (e) reducing the value of $F$; and (f) returning to (a) [[.]],

where $N$ is the total number of frequencies available for frequency hopping and where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

25.   (Original)    The wireless endpoint of claim 24 wherein when the value of $F$ reaches a predefined minimum value, the processor further shifts the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for $F$ and the minimum value, modulo $N$.

WSOU-CANON-0000273

Application No. 09/850,124
Docket No. 29250-000873/US

26.    (Currently Amended)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

a processor for (a) dividing the hopping set into an allowable frequency set and a prohibited frequency set, (b) pseudorandomly selecting frequencies from the allowable frequency set, and (c) after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$ [[.]].

where $N$ is the total number of frequencies available for frequency hopping.

27.    (Cancelled)

WSOU-CANON-0000274

Application No. 09/850,124
Docket No. 29250-000873/US

## REMARKS

### Claim Amendments

Claims 1, 3, 5, 8, 10, 15, 17, 19, 21, 24 and 26 have been amended to include a feature contained in claim 6 (and 22).   As such, Applicants respectfully submit that these amendments do not require an additional search by the Examiner.  Rather, these amendments place the claims in condition for allowance.

Claims 9 and 13 have been revised to correct for grammatical errors. These revisions are not related to the patentability of these, or other, claims.

### The claims are patentable over the newly cited references to Munday et al. ("Mundy") and Haartsen ("Haartsen")

Each of the claims of the present invention includes the feature of pseudorandomly selecting a frequency or frequencies from a set of frequencies that has been constrained, reduced or limited "such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of [a] time period, $T$."

It is respectfully submitted that neither Munday nor Haartsen, taken separately or in combination, discloses or suggests such a prohibition on frequency selection.

Instead, it appears that after a set of frequencies is selected in Munday or Haartsen any frequency within the set can be re-selected without prohibition.  Said another way, neither Munday nor Haartsen is prohibited

Page 11

WSOU-CANON-0000275

Application No. 09/850,124
Docket No. 29250-000873/US

from re-selecting a frequency, from a set of allowable frequencies, that has already been selected during a time period, $T$, as in the claims of the present invention.

Therefore, Applicants respectfully submit that neither Munday nor Haartsen can anticipate or render obvious the claims of the present invention.

Applicants respectfully request entry of the amendments referred to above, withdrawal of the pending rejections and allowance of claims 1, 3, 5, 6, 8-10, 12-17, 19, 21, 22 and 24-26.

Should there be any outstanding matters that need to be resolved in the present application, the Examiner is respectfully requested to contact John E. Curtin at the telephone number of the undersigned below.

In the event this Response does not place the present application in condition for allowance, applicant requests the Examiner to contact the undersigned at (703) 668-8000 to schedule a personal interview.

WSOU-CANON-0000276

Application No. 09/850,124
Docket No. 29250-000873/US

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. § 1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By _____

John E. Curtin, Reg. No. 37,602
P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

JEC:psy

Page 13

WSOU-CANON-0000277



MAIL STOP AF
RESPONSE UNDER
37 C.F.R. § 1.116
EXPEDITED PROCEDURE
EXAMINING GROUP <u>2634</u>

PATENT
29250-000873/US

## IN THE U.S. PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Krishna BALACHANDRAN et al. | Conf.: | 1172 |
| Appl. No.: | 09/850,124 | Group: | 2634 |
| Filed: | May 7, 2001 | Examiner: | Eva Y. Zheng |
| For: | ENHANCED FREQUENCY HOPPING IN A WIRELESS SYSTEM | | |
| Docket No.: | 29250-000873/US | | |

## NOTICE OF APPEAL FROM THE
## PRIMARY EXAMINER TO THE BOARD OF APPEALS

Customer Service Window                                          April 5, 2005
Randolph Building
401 Dulany Street
Alexandria, VA  22314
**Mail Stop <u>AF</u>**

Sir:

Applicants hereby appeal to the Board of Appeals from the decision dated <u>January 7, 2005</u> of the Primary Examiner finally rejecting claims <u>1, 3, 5, 6, 15-17, 19, 21 and 22</u>.

☐   The enclosed document is being transmitted via the Certificate of Mailing provisions of 37 C.F.R. § 1.8.

Applicants hereby petition for an extension of  _____( _____ ) **month(s)** pursuant to 37 C.F.R. §§ 1.17 and 1.136(a).

The fee has been calculated as shown below:

04/06/2005 SFELEKE1 00000025 09850124

01 FC:1401                          500.00 OP

WSOU-CANON-0000278

Application No. 09/850,124
Attorney Docket No. 29250-000873/US

☐ <u>NO</u> extensions of time have been previously obtained for responding to the Final Rejection. Thus a fee of $.00 is required for the <u>full period</u> of the above-requested extension of time.

☐ An extension of _____ ( ___ ) **month**(s) for responding to the Final Rejection was previously requested and paid for on         . Thus a fee of $       is required.

☐ Applicant claims small entity status. See 37 C.F.R. § 1.27.

The Government fee for filing a Notice of Appeal to the Board of Appeals is calculated as follows:

☒    Large entity - $500.00

☐    Small Entity - $250.00

Therefore, the TOTAL FEE due for the filing of this Notice of Appeal is $<u>500.00</u>.

Payment of the above TOTAL FEE is being made in the following manner:

☒ Check in the amount of $500.00 is enclosed.

☐ Please charge Deposit Account No. 08-0750 in the amount of $0.00. A triplicate copy of this sheet is attached.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 08-0750 for any additional fees required under 37 C.F.R. §§1.16 or 1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By    _____

John E. Curtin, Reg. No. 37,602

P.O. Box 8910
Reston, Virginia 20195
(703) 668-8000

JEC:psy

2

WSOU-CANON-0000279

PTO/SB/17 (12-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2005

*Effective 10/01/2004. Patent fees are subject to annual revision.*

Applicant claims small entity status. See 37 CFR 1.27

**TOTAL AMOUNT OF PAYMENT**   ($)   500

| Complete if Known | |
|---|---|
| Application Number | 09/850,124 |
| Filing Date | May 7, 2001 |
| First Named Inventor | Krishna BALACHANDRAN |
| Examiner Name | Eva Y. Zheng |
| Art Unit | 2634 |
| Attorney Docket No. | 29250-000873/US |

*(OIPE / APR 2 9 2005 / PATENT & TRADEMARK stamp)*

## METHOD OF PAYMENT *(check all that apply)*

☒ Check   ☐ Credit card   ☐ Money Order   ☐ Other   ☐ None

☒ Deposit Account:

| Deposit Account Number | 08-0750 |
|---|---|
| Deposit Account Name | Harness, Dickey & Pierce, PLC |

**The Director is authorized to:** *(check all that apply)*
☐ Charge fee(s) indicated below   ☐ Credit any overpayments
☐ Charge any additional fee(s) during the pendency of this application
☐ Charge fee(s) indicated below, except for the filing fee
to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1011 | 300 | 2011 | 150 | Utility filing fee | |
| 1012 | 200 | 2012 | 100 | Design filing fee | |
| 1013 | 200 | 2013 | 100 | Plant filing fee | |
| 1014 | 300 | 2014 | 150 | Reissue filing fee | |
| 1005 | 200 | 2005 | 100 | Provisional filling fee | |
| | | | | **SUBTOTAL (1)** | ($) 0 |

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | | Extra Claims | | Fee from below | | Fee Paid |
|---|---|---|---|---|---|---|
| Total Claims | -20 ** | = | 0 | X | | = 0 |
| Independent Claims | -3 ** | = | 0 | X | | = 0 |
| Multiple Dependent | | | | | | = 0 |

| Large Entity | | Small Entity | | |
|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description |
| 1202 | 50 | 2202 | 25 | Claims in excess of 20 |
| 1201 | 200 | 2201 | 100 | Independent claims in excess of 3 |
| 1203 | 360 | 2203 | 180 | Multiple dependent claim, if not paid |
| 1204 | 200 | 2204 | 100 | ** Reissue independent claims over original patent |
| 1205 | 50 | 2205 | 25 | ** Reissue claims in excess of 20 and over original patent |
| | | | | **SUBTOTAL (2)** ($) 0 |

*** or number previously paid, if greater; For Reissues, see above*

## 3. ADDITIONAL FEES

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 120 | 2251 | 60 | Extension for reply within first month | |
| 1252 | 450 | 2252 | 225 | Extension for reply within second month | |
| 1253 | 1020 | 2253 | 510 | Extension for reply within third month | |
| 1254 | 1,590 | 2254 | 795 | Extension for reply within fourth month | |
| 1255 | 2,160 | 2255 | 1080 | Extension for reply within fifth month | |
| 1401 | 500 | 2401 | 250 | Notice of Appeal | |
| 1402 | 500 | 2402 | 250 | Filing a brief in support of an appeal | 500 |
| 1403 | 1000 | 2403 | 500 | Request for oral hearing | |
| 1452 | 500 | 2452 | 250 | Petition to revive – unavoidable | |
| 1453 | 1500 | 2453 | 750 | Petition to revive – unintentional | |
| 1501 | 1400 | 2501 | 700 | Utility issue fee (or reissue) | |
| 1502 | 800 | 2502 | 400 | Design issue fee | |
| 1450 | 130 | 1450 | 130 | Petitions to the Commissioner | |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17 (q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 790 | 2809 | 395 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 1810 | 790 | 2810 | 395 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 1801 | 790 | 2801 | 395 | Request for Continued Examination (RCE) | |

Other fee (specify) _____

*Reduced by Basic Filing Fee Paid   **SUBTOTAL (3)** ($)500

## 4. SEARCH/EXAMINATION FEES

| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | |
|---|---|---|---|---|---|
| 1111 | 500 | 2111 | 250 | Utility Search Fee | |
| 1112 | 100 | 2112 | 50 | Design Search Fee | |
| 1113 | 300 | 2113 | 150 | Plant Search Fee | |
| 1114 | 500 | 2114 | 250 | Reissue Search Fee | |
| 1311 | 200 | 2311 | 100 | Utility Examination Fee | |
| 1312 | 130 | 2312 | 65 | Design Examination Fee | |
| 1313 | 160 | 2313 | 80 | Plant Examination Fee | |
| 1314 | 600 | 2314 | 300 | Reissue Examination Fee | |
| | | | | **SUBTOTAL (4)** ($)0 |

## SUBMITTED BY

| | | | Complete (if applicable) | |
|---|---|---|---|---|
| Name (Print/Type) | John E. Curtin | Registration No. (Attorney/Agent) | 37,602 | Telephone (703) 668-8000 |
| Signature | | | Date | April 29, 2005 |

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

WSOU-CANON-0000284

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

Appeal No. _____

| | |
|---|---|
| Appellants: | Krishna BALACHANDRAN et al. |
| Application No.: | 09/850,124 |
| Group No.: | 2634 |
| Filed: | May 7, 2001 |
| Examiner: | Eva Y. Zheng |
| For: | ENHANCED  FREQUENCY  HOPPING  IN  A  WIRELESS SYSTEM |
| Attorney Docket No.: | 29250-000873/US |

## BRIEF ON APPEAL ON BEHALF OF APPELLANT

Customer Service Window                                       April 29, 2005
Randolph Building
401 Dulany Street
Alexandria, VA  22314
**Mail Stop Appeal Brief - Patents**

05/03/2005 HALI11   00000003 09850124
01 FC:1402              500.00 OP

Page i

WSOU-CANON-0000285

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

## TABLE OF CONTENTS

Page

BRIEF ON BEHALF OF APPELLANT ............................................................. 1

I.      REAL PARTY IN INTEREST ................................................................ 1

II.     RELATED APPEALS AND INTERFERENCES...................................... 1

III.    STATUS OF THE CLAIMS ................................................................. 1

IV.     STATUS OF ANY AMENDMENT FILED SUBSEQUENT TO THE
        FINAL REJECTION ......................................................................... 2

V.      SUMMARY OF THE CLAIMED SUBJECT MATTER ............................. 2

VI.     ISSUES TO BE REVIEWED ON APPEAL........................................... 17

        (i.)    Whether or not claims 1, 3, 15-17 and 19 are
                anticipated by U.S. Patent No. 5,377,221
                to Munday et al. ...................................................................... 17

        (ii.)   Whether or not claims 1, 5, 6, 21 and 22 are
                anticipated by U.S. Patent No. 6,345,667
                to Haartsen ............................................................................. 17

VII.    ARGUMENTS.................................................................................... 7

IX.     CONCLUSION.................................................................................. 10

APPENDIX A    -   Clean Version of Pending Claims
APPENDIX B    -   Figure 1
APPENDIX C        Figure 2
APPENDIX D        Figure 3
APPENDIX E        Figure 4
APPENDIX F        Figure 5
APPENDIX G        Figure 6

WSOU-CANON-0000286

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

## BRIEF ON BEHALF OF APPELLANT

In support of the Notice of Appeal filed April 5, 2005, appealing the Examiner's Final Office Action mailed January 7, 2005 rejecting each of pending claims 1, 3, 5, 6, 15-17, 19, 21 and 22 of the present application which appear in the attached Appendix A, Appellant hereby provides the following remarks.

## I.    REAL PARTY IN INTEREST

The present application is assigned to Lucent Technologies Inc., by an Assignment recorded on August 24, 2001, Reel 012109, Frame 0573.

## II.    RELATED APPEALS AND INTERFERENCES

The Appellant does not know of any appeals or interferences which would directly affect or which would be directly affected by, or have a bearing on, the Board's decision in this Appeal.

## III.    STATUS OF THE CLAIMS

The claims reproduced in the attached Appendix A are the claims on appeal. Each of these claims is currently pending in the application.

In addition, Appellants note that the Examiner has admitted that claims 8-10, 12-14 and 24-26 (also included in Appendix A) contain allowable subject matter and would be allowable if rewritten in independent form. Accordingly, irrespective of the outcome of this Appeal, Appellants reserve the right to re-write any and all of these objectionable claims into independent form to place them in condition for allowance.

Page 1

WSOU-CANON-0000287

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

## IV. STATUS OF ANY AMENDMENTS FILED SUBSEQUENT TO THE FINAL REJECTION

A Request for Reconsideration ("Request") dated April 5, 2005 was filed with the U.S. Patent and Trademark Office in response to the Final Office Action. In an April 20, 2005 Advisory Action, this Request was considered but not entered by the Examiner.

## V. SUMMARY OF THE CLAIMED SUBJECT MATTER

Advances in wireless technologies have propelled a migration in features and services provided to the end user. Network operators may, however, need to support multiple and perhaps migratory technologies with limited spectrum. Therefore, radio resource management techniques that improve spectral efficiency and/or system capacity are always of interest to network operators.

Higher spectral efficiency and/or voice capacity can be achieved in the Global System for Mobile Communication (GSM) Enhanced Data rates for Global Evolution (EDGE) Radio Access Network (GERAN) through tight frequency reuse (e.g., 1/3 or 1/1 reuse). Current GSM deployments employ techniques such as frequency hopping in order to combat the effects of fading and interference. The performance improvement achieved through frequency hopping for voice users at the link and system level directly translates into higher capacity.

Page 2

WSOU-CANON-0000288

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

On a GSM full rate traffic channel, 20 ms (milli-second) speech frames are convolutionally encoded and diagonally interleaved over a sequence of 8 bursts in a time slot. In the case of a half rate channel, speech is coded and diagonally interleaved over a sequence of 4 alternate bursts in a time slot. Frequency hopping is carried out burst by burst in order to mitigate the effects of slow fading and interference.   It provides the following benefits: fading diversity, interferer diversity, and interference averaging (excerpts from specification, p. 1).

In practical systems, frequency hopping is typically non-ideal and the benefits of fading and interferer diversity are not fully realized. With respect to frequency hopping techniques, GSM specifies cyclic frequency hopping and pseudo-random frequency hopping (e.g., see 3GPP TS 45.002, "3rd Generation Partnership Project; Technical Specification Group GERAN; Digital Cellular telecommunications System (Phase 2+); Multiplexing and Multiple Access on the Radio Path (Release 4)").  If the number of frequencies is sufficient, then cyclic hopping provides full fading diversity.  (As referred to herein, full fading diversity is where every burst within the interleaving depth of a speech frame experiences an independent fading state. This is possible only if the number of frequencies is greater than the number of bursts over which a speech frame is interleaved and the frequencies are sufficiently separated from each other.) However, cyclic hopping does not provide the benefits of interferer diversity and interference averaging.   The pseudo-random frequency hopping algorithm

Page 3

WSOU-CANON-0000289

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

specified in GSM provides interferer diversity and achieves long-term interference averaging but does not guarantee fading diversity (i.e., no frequency repetitions) within the interleaving depth of a speech 10 frame (excerpts from specification, pp. 1-2).

With respect to GSM pseudo-random frequency hopping, if a large amount of spectrum is allocated, then there are many frequencies over which users can hop and repeated frequencies over a short interval are not common. However, in limited spectrum scenarios where the number of frequencies are smaller than the number of bursts over the interleaving depth (40 ms in the speech case), frequency repetitions always occur. This is illustrated in FIG. 1 (Appendix B) on a full rate traffic channel. For full-rate voice users, eight bursts are transmitted over pseudo-randomly generated frequencies (it is assumed for this example that there are eight frequencies to select from: $f_0$ to $f_7$). As can be observed from FIG. 1, coded speech frame 1 encounters frequency, $f_4$, on 3 out of the 8 bursts that it is interleaved across. This implies that speech frame 1 experiences only 6 out of 8 possible independent fading states (assuming there is sufficient separation between each of the frequencies). Similarly, it can be observed for speech frame 2 that frequencies, $f_2, f_4$ and $f_5$ are repeated two times each on the 8 bursts over which coded speech frame 2 is interleaved. In this case, speech frame 2 experiences only 5 out of 8 possible independent fading states. In other words, the GSM pseudo-random frequency hopping algorithm does not maximize the number of unique

WSOU-CANON-0000290

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

frequencies (or independent fading states) in this case. This has consequences for low mobility users where the fading tends to be strongly correlated for time duration in excess of the interleaving depth of a speech frame. In this case, users may hop to the same frequency multiple times, experiencing similar channel fading conditions each time. With typical channel coding schemes employed for speech traffic channels and control signaling channels, increased correlation within the interleaving depth can lead to degradation in error performance (excerpts from specification, pp. 2-3).

Familiarity with GSM is assumed and is not described herein. For example, other than the inventive concept, a form of frequency hopping used in GSM is described in 3GPP TS 45.002, "3rd Generation Partnership Project; Technical Specification Group GERAN; Digital Cellular telecommunications System (Phase 2+); Multiplexing and Multiple Access on the Radio Path (Release 4)." In addition, the inventive concept is implemented using conventional programming techniques, which as such, will not be described herein.

FIG. 2 (Appendix C) shows a high-level block diagram of a representative wireless endpoint 200 for use in accordance with the principles of the invention. Other than the inventive concept, the elements shown in FIG. 2 are well known and will not be described in detail. Wireless endpoint 200 represents a stored-program-control-based processor architecture and includes processor 250, memory 260 (for storing program instructions and data (such

Page 5

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

as a set of hopping frequencies), as further described below) and communications interface(s) 265 for coupling to one or more wireless communication paths as represented by path 266 (e.g., 265 represents a wireless transmitter and a wireless receiver). In the context of this invention, e.g., processor 250 and memory 260 implement (among other functions not described herein) a constrained frequency hopping method for selecting frequencies for use in transmission of signals via communications interface 265. A detailed description of the reception and transmission of wireless signals is not necessary for the inventive concept and, as such, is not described herein. Except as noted below, it is assumed that the wireless endpoint 200 is a part of a GSM system (not shown) and is in communication with another wireless endpoint (not shown). Wireless endpoint 200 is representative of any wireless device, e.g., a base station, mobile station, user terminal, etc. (excerpts from specification, pp. 3-4).

In accordance with the invention, hopping frequency sequences are constrained in order to reduce, or minimize, repeated frequencies over a time period $T$. Consider a class of hopping sequences for which constraints are imposed to minimize repeated frequencies. For example, if the total number of frequencies, $N$ in a hopping set is equal to 4, the hopping sequence is constrained to prevent any repeats within a set of four bursts. Thus across two consecutive sets of four bursts, no frequency would be repeated three or more times.A similar case can be made for $N = 8$. In this case, a constrained

Page 6

WSOU-CANON-0000292

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

hopping sequence prevents the repetition of any frequency over 8 consecutive bursts (i.e., it guarantees independent fading states). Hence, the maximum frequency repeat across an 8-tuple would be 1. This is shown in FIG. 3 (Appendix D) for an illustrative speech frame 1, which illustrates constrained frequency hopping on a full rate traffic channel. It should be noted that although the negative effects of frequency repetitions decrease for GSM hopping sets with larger values of $N$, e.g., $N = 12$, the inventive concept still provides improvement.

In accordance with the invention, a hopping state, $\boldsymbol{H}$, is defined to be:

$$\boldsymbol{H} = \left\{ H_0, H_1, ..., H_{F-1}, H_F, ..., H_{N-1} \right\}, \tag{1}$$

which is a vector of length $N$, where $N$ is the total number of frequencies available to hop over, and $F$ is $\leq N$ and is the number of frequencies in $\boldsymbol{H}$ over which the wireless endpoint is constrained to hop. $\boldsymbol{H}$ can also be defined as $\boldsymbol{H} = \boldsymbol{A} \bigcup \boldsymbol{B}$, where

$$\boldsymbol{A} = \left\{ H_0, H_1, ..., H_{F-1} \right\}, \tag{2}$$

and is the set of $F$ frequencies over which a wireless endpoint is currently allowed to hop and

$$\boldsymbol{B} = \{ H_F, ..., H_{N-1} \} \tag{3}$$

and is the set of $(N - F)$ frequencies over which a wireless endpoint is not currently allowed to hop. In other words, $\boldsymbol{H}$ can be viewed as being divided into a set of allowable frequencies ($\boldsymbol{A}$) and a set of prohibited frequencies ($\boldsymbol{B}$). Let the

WSOU-CANON-0000293

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

range of $F$ be defined by $F_{min}$ and $F_{max}$, where $0 \leq F_{min} < F_{max} \leq N$ (excerpts from specification, pp. 4-5).

For each hop (hops occur every 4.615 ms frame in the case of GSM), the transmitter and receiver (of corresponding wireless endpoints as represented by wireless endpoint 200 of FIG. 2) first use the following procedure in order to determine a pseudo-random frequency index, $S$ (also referred to herein as a hopping index sequence value). Steps (4) through (8), below, are found in section 6.2.3 of the above-mentioned standard, 3GPP TS 45.002. Values for $M$ (where $0 \leq M \leq 152$) and $S$ (where $0 \leq S \leq N - 1$) are computed as follows:

$$M = T2 + RNTABLE \ ((HSN \text{ xor } TIR) + T3); \qquad (4)$$

$$M' = M \text{ modulo } (2^\wedge NBIN); \qquad (5)$$

$$T' = T3 \text{ modulo } (2^\wedge NBIN); \qquad (6)$$

$$\text{if } M' < N, \text{ then} \qquad (7)$$

$$\qquad S = M'; \qquad (8)$$

else,

$$\qquad S = (M' + T') \text{ modulo } N; \qquad (9)$$

where the parameters used above are defined in Table One, which is shown in FIG. 4 (Appendix E) (additional information on the parameters shown in Table One are found in the above-mentioned standard - 3GPP TS 45.002) (excerpts from specification, pp. 5-6).

Normally, $S$ is used to select one of the frequencies from **H**. However, and in accordance with the invention, this pseudo-random frequency index,

Page 8

WSOU-CANON-0000294

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

$S$, is now used to select one of the allowable frequencies in **A**. Note, that the pseudo-random frequency index $S$ corresponds to the Mobile Allocation Index (MAI) that is generated by the GSM hopping algorithm for non-zero HSN (Hopping Sequence Number) and MAIO = 0, where MAIO is the Mobile Allocation Index Offset. (In the generation of the pseudo-random frequency index, $S$, as described below for the inventive concept, MAID=0 is employed for all users in a sector to ensure that users within a sector choose identical indices of **H**. This guarantees that the hopping states are identical between all users within a sector. In GSM, each user in a sector is assigned a unique MAIO. This ensures that the frequency hopping sequences between users in the same sector are orthogonal. This concept still applies when using the inventive concept described below (e.g., see equation (11), below) as modulo addition of the MAIO guarantees no intra-sector collisions.) Now, let the sequence of pseudo-random frequency indices generated by the above-described algorithm be **S** = {$S_0$, $S_1$, $S_2$, ...}. Note that $S_i \in$ {0, 1, .., $N$ -1} can be larger than the number of allowable frequencies $F$. Therefore, in this constrained hopping algorithm, a wireless endpoint hops to:

$$\text{Hopping Frequency} = (Hs + \text{MAIO}) \text{ modulo } N \text{ where} \qquad (10)$$

$$S' = (S_i) \text{ modulo } F. \qquad (11)$$

In other words, and in accordance with the invention, $S'$ is restricted to the allowable set, **A** (excerpts from specification, p. 6).

Page 9

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

Turning now to FIG. 5 (Appendix F), an illustrative flow chart is shown for updating the hopping state for a constrained frequency hopping method in accordance with the principles of the invention.  In steps 505, 510 and 515, the value of the currently hopped frequency, $H_R$, is swapped (via the variable $c$) with $H_{F-1}$, the last allowable frequency in **A**.  Thus, the currently hopped frequency becomes the last element in the set **A**, at position $F-1$.  In the step 520, the size of **A** is reduced by decrementing $F$ by one so that the set of frequencies over which the user can hop for the next burst is reduced (thus, excluding the currently hopped frequency, which is now effectively inserted into B).  In step 525, if $F$ reaches a pre-determined minimum value, $F_{min}$, (e.g., 0), $F$ is reset to $F_{in}$" and **H** is cyclically shifted to the right by ($F_{n,,,}$ - $Fmi_i$) modulo N, and A is set equal to the first $F_{max}$ elements of **H** (while **B** = **H-A** (which in some instances my be the null set)).  In this way, the oldest candidates in **H** can be considered once again.

Consider an example with the following parameters:

N = 8 frequencies;

$F_{min} = 0$, $F_{max} = 4$;

Initial hopping state **H** = (1 3 4 6 2 0 5 7) (obviously, each

number in **H** corresponds to an a priori assigned frequency);

and

Initial value of $F = 4$.

WSOU-CANON-0000296

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

Table Two, shown in FIG. 6 (Appendix G), illustrates the constrained frequency hopping method when the GSM hopping index sequence, **S**, is illustratively equal to {1 5 2 4 1...} for the first 5 bursts (burst number 0 through burst number 4). As can be observed from Table Two, the first column shows the burst number; the second column shows the associated value of the hopping index sequence for that burst number (taken from S = {1 5 2 4 1 ...}); the third column illustrates the allowable frequency set **A**; the fourth column shows the computed hop frequency in accordance with equations (10) and (11), above; the fifth column shows the updating of **H** (or equivalently **A** (and **B** for that matter)) using the method shown in FIG. 5; and the sixth column illustrates the value of $F$ (excerpts from specification, pp. 6-7).

As noted above, and shown in the first row of Table Two, the initial set of hopping frequencies is **H** = {1 3 4 6 2 0 5 7} and $F = 4$. As such, for the first burst number of 0, **A** is effectively set equal to the first four hopping frequencies of H, as shown in row 2 of Table Two (and the remaining frequencies of **H** are a part of **B**). The hop frequency is computed in accordance with equation (11), above, with the result shown in row 2 of Table Two, i.e., $H_1 = 3$. **H** is now adjusted as shown in the flow chart of FIG. 5, i.e., **H** = {1 6 4 3 2 0 5 7}. In other words, the frequency value at the computed index position $1$ is exchanged with the frequency value at index position $(F - 1)$. In this example, 3 is exchanged with 6 at the 1st and 3rd positions (recalling

Page 11

WSOU-CANON-0000297

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

that the position index begins at 0). Finally, $F$ is adjusted to 3, as shown in the final column entry for row 2 of Table Two (excerpts from specification, pp. 7-8).

As a result, since $F$ is now equal to 3, for the next burst number of 1, the next hop frequency is now restricted to 1, 6, or 4 since the size of **A** has been reduced as shown in row 3 of Table 2. (Alternatively, the allowed frequency selections from **H** have been constrained to the first three frequencies.) The hop frequency is computed in accordance with equation (11), above, with the result shown in row 3 of Table Two, i.e., $H_2 = 4$. **H** is now adjusted as shown in the flow chart of FIG. 5, i.e., **H** = {1 6 4 3 2 0 5 7}. In other words, the frequency value at the computed index position $2$ is exchanged with the frequency value at index position $(F - 1)$. In this example though the positions are the same since the selected index position and the value of $F$ are the same, i.e., 3. Therefore, the ordering of the frequencies in **H** does not change. Finally, $F$ is adjusted to 2, as shown in the final column entry for row 3 of Table Two.

For the next burst number of 2, the next hop frequency is now restricted to 1 and 6 since the size of **A** has been reduced as shown in row 4 of Table 2 (since $F$ now equals 2). The hop frequency is computed in accordance with equation (11), above, with the result shown in row 4 of Table Two, i.e., $H_0 = 1$. **H** is now adjusted as shown in the flow chart of FIG. 5, i.e., **H** = {6 1 4 3 2 0 5 7}. In other words, the frequency value at the computed index position 0 is exchanged with the frequency value at index position $(F - 1)$.

Page 12

WSOU-CANON-0000298

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

In this example, 1 is exchanged with 6 at the 0th and 1st positions. Finally, $F$ is adjusted to 1, as shown in the final column entry for row 4 of Table Two.

For the next burst number of 3, the next hop frequency is now restricted to 6 since the size of **A** has been reduced as shown in row 5 of Table 2 (since $F$ now equals 1). The hop frequency is computed in accordance with equation (11), above, with the result shown in row 5 of Table Two, i.e., $H_0 = 6$. **H** is now adjusted as shown in the flow chart of FIG. 5, i.e., **H** = {6 1 4 3 2 0 5 7}. In other words, the frequency value at the computed index position $0$ is exchanged with the frequency value at index position $(F-1)$. In this example though the positions are the same since the selected index position and the value of $F$ are the same, i.e., 0. As such, the ordering of the frequencies in H does not change. Finally, $F$ is adjusted to 0, as shown in the final column entry for row 5 of Table Two. However, this update to $F$ indicates that the minimum value is reached and hence, **H** is cyclically shifted by $(F_{max} - F_{min})$ mod $N = 4$ and $F$ is reset to $F_{max} = 4$. This is shown by the additional entries in row 5 of columns 5 and 6 of Table Two, where now **H** = {2 0 5 7 6 1 4 3} and $F = 4$. Consequently, for the next burst number of 4, the size of **A** has been increased as shown in row 6 of Table 2 (since $F$ now equals $4$) and **A** = {2 0 5 7}. As a result of this constrained frequency hopping method, the hop sequence for the first 5 burst numbers is: 3, 4, 1, 6, (of course assuming that the MAIO associated with this user equals 0, else refer to equation (11)) (excerpts from specification, pp. 8-9).

Page 13

WSOU-CANON-0000299

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

This algorithm is stated in a general way to allow flexibility in the actual implementation. Although the proposed change ultimately alters the hopping sequence, this algorithm uses the existing GSM hopping framework thus allowing legacy mobiles to be easily supported. In addition, the similarity to the current GSM hopping algorithm allows this feature to be turned off for cases such as large spectrum deployments where little to no gains do not warrant the additional complexity. In such cases, the regular GSM hopping algorithm can be employed.

Note, it is recommended that wireless endpoints run the proposed algorithm at all times, even during silence, in order to maintain the hopping state. Maintaining hopping states is needed to ensure that there are no intra-sector collisions. Since the algorithm considers consecutive bursts spanning multiple frames, the algorithm easily applies to full rate voice (diagonally interleaved) and data (block interleaved) services. The algorithm also applies to half rate voice if $N \geq 8$.

The following should be noted with respect to protocol aspects. When a user enters the system (e.g. at the start of a voice call), the wireless endpoint must know the hopping state, $H$, the number of currently allowable frequencies, $F$, and the range of $F$ defined by $Fmin$ and $Fmax$ where $0 \leq Fmin \leq Fmax \leq F$. $Fmin$ and $Fmax$ are assumed to be provided during call setup. The network can provide $H$ and $F$ to a wireless endpoint (e.g., a user terminal) in any number of ways, such as:

Page 14

WSOU-CANON-0000300

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

1)    These parameters can be provided during call setup signaling from another wireless endpoint along with an associated timestamp by suitable modification of messages used in existing call setup protocols. Since the algorithm to reconstruct the time evolution of $H$ and $F$ are known, either wireless endpoint can then determine the state information at the current time (effectively providing information on $A$, etc.); or

2)    Alternatively, state information can be autonomously derived at a wireless endpoint by refreshing the state information at pre-determined time instants. For example, the state can be refreshed (i.e., $H = \{H_0, H_1, ..., H_{N-1}\}$, $F = Fmax$) at pre-determined time instants. The wireless endpoint can then reconstruct the time evolution of $H$ and $F$ from the previous refresh instant to the current time.

(excerpts from specification, pp. 9-10)

   As described above, and in accordance with the invention, a constrained hopping sequence has been described for reducing the rate at which frequencies are repeated (or alternatively, maximizes the number of independent fading states). The use of constrained frequency hopping allows GSM pseudo-random frequency hopping to achieve full fading diversity under spectrum constraints within the interleaving depth of a speech frame. As such, the constrained hopping algorithm maximizes the number of unique

Page 15

WSOU-CANON-0000301

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

frequencies that occur over the interleaving depth of a speech frame. This permits an improvement in fading diversity performance with negligible impact on interferer diversity and interference averaging capability of the existing GSM pseudo-random hopping algorithm.

The foregoing merely illustrates the principles of the invention and it will thus be appreciated that those skilled in the art will be able to devise numerous alternative arrangements which, although not explicitly described herein, embody the principles of the invention and are within its spirit and scope. For example, although illustrated in the context of pseudo-random frequency selection, other selection methods may be used. Also, although shown as a separate elements, any or all of the elements of FIG. 1 (e.g., 260) may be implemented in a stored-program-controlled processor (excerpts from specification, pp. 10-11).

Appellants respectfully note that the above summary of the invention, including any indication of reference numerals, drawings, figures, paragraphs, page numbers, etc. (collectively referred to as "descriptions" of the application) have been provided solely to comply with the U.S. Patent and Trademark Office's rules concerning the appeal of the claims of the present application. As such, the descriptions above are merely exemplary and should not be construed to limit the claims of the present application in any way whatsoever.

Page 16

WSOU-CANON-0000302

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

## VI.    ISSUES TO BE REVIEWED ON APPEAL

(i.)    Whether or not claims 1, 3, 15-17 and 19 are anticipated by U.S. Patent No. 5,377,221 to Munday et al. ("Munday").

(ii.)    Whether of not claims 1, 5, 6, 27 and 22 are anticipated by U.S. Patent No. 6,345,066 to Haartsen ("Haartsen").

## VII.    ARGUMENTS

## The claims are patentable over the newly cited references to Munday and Haartsen

Each of the claims of the present invention includes the feature of pseudorandomly selecting a frequency or frequencies from a set of frequencies that has been constrained, reduced or limited "such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of [a] time period, $T$."

It is respectfully submitted that neither Munday nor Haartsen, taken separately (or in combination), discloses or suggests such a prohibition on frequency selection.

Instead, it appears that after a set of frequencies is selected in Munday or Haartsen any frequency within the set can be re-selected without prohibition.  Said another way, neither Munday nor Haartsen is prohibited from re-selecting a frequency, from a set of allowable frequencies, that has

Page 17

WSOU-CANON-0000303

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

already been selected during a time period, $T$, as in the claims of the present invention.

Therefore, Applicants respectfully submit that neither Munday nor Haartsen can anticipate (or render obvious) the claims of the present invention.

## IX.   CONCLUSION

Accordingly, for at least the aforementioned reasons, Appellants respectfully request the Honorable Members of the Board of Patent Appeals and Interferences to reverse each of the outstanding rejections in connection with the present application and allow each of the pending claims 1, 3, 5, 6, 15-17, 19, 21 and 22 in connection with the present application.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No.08-0750 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. § 1.17; particularly, extension of time fees.

Respectfully submitted,

HARNESS, DICKEY, & PIERCE, P.L.C.

By: _____
        John E. Curtin, Reg. No. 37,602
        P.O. Box 8910
        Reston, Virginia 20195
        (703) 668-8000

JEC:psy

Page 18

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

## APPENDIX A

1.      (Previously Presented)    A method for use in wireless equipment, the method comprising the steps of:

transmitting signals using frequency hopping over a time period $T$, by

pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $N$ is the total number of frequencies available for frequency hopping.

2.      (Cancelled)

3.      (Previously Presented)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

storing a set of hopping frequencies; and

pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the hopping set over at least a portion of the time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$.

Page 19

WSOU-CANON-0000305

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

4.      (Cancelled)

5.      (Previously Presented)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

6.      (Previously Presented)    A method of frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

pseudorandomly selecting frequencies from the hopping set over the time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $N$ is the total number of frequencies available for frequency hopping.

Page 20

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

7.      (Cancelled)

8.      (Previously Presented)    A method of frequency hopping for use in wireless equipment, where a hopping set is initialized to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$, the method comprising the steps of:

determining a hopping index value;

modifying the hopping index value by at least the modulo of a number $F$, where $F \leq N$;

pseudorandomly selecting a hopping frequency from the hopping set of a function of the modified hopping index value;

adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of $F$ and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$;

reducing the value of $F$; and

returning to the determining step,

where $N$ is the total number of frequencies available for frequency hopping and where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

Page 21

WSOU-CANON-0000307

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

9.      (Previously Presented)    The method of claim 8 wherein when the value of $F$ reaches a predefined minimum value, further including the step of shifting the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for $F$ and the minimum value, modulo $N$.

10.      (Previously Presented)    A method for frequency hopping for use in wireless equipment, the method comprising the steps of:

initializing a hopping set to a size of $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$;

dividing the hopping set into an allowable frequency set and a prohibited frequency set;

pseudorandomly selecting frequencies from the allowable frequency set; and

after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $N$ is the total number of frequencies available for frequency hopping.

11.      (Cancelled)

Page 22

WSOU-CANON-0000308

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

12. (Original)   The method of claim 10 wherein membership in the allowable frequency set and the prohibited frequency set at a current time is derived from knowledge of the allowable frequency set and the prohibited frequency set at an earlier time.

13. (Previously Presented)   The method of claim 10 wherein knowledge of the allowable frequency set and the prohibited frequency set at a particular time is provided by one wireless endpoint to another wireless endpoint through explicit signaling.

14. (Original)   The method of claim 10 wherein all $N$ frequencies in the hopping set are assumed allowable at pre-determined time instants.

15. (Previously Presented)   A   pseudorandom   frequency   hopping method for use in wireless equipment, the method comprising the steps of:

dividing a hopping set into an allowable frequency set and a prohibited frequency set; and

transmitting information associated with the division of the hopping set to another wireless endpoint such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$.

WSOU-CANON-0000309

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

16.   (Original)   The method of claim 15 wherein the transmitted information enables the other wireless endpoint to derive the allowable frequency set.

17.   (Previously Presented)   A wireless endpoint comprising:

a transmitter for transmitting signals using frequency hopping over a time period $T$; and

a processor for pseudorandomly selecting a frequency from a set of $N$ frequencies such that over at least a portion of the time period $T$, the frequency selection is constrained to less than the $N$ frequencies and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $N$ is the total number of frequencies available for frequency hopping.

18.   (Cancelled)

19.   (Previously Presented)   A wireless endpoint comprising:

a memory for storing a set of hopping frequencies; and

a processor for pseudorandomly selecting frequencies from the set of hopping frequencies over a time period $T$ by limiting the available frequencies from the hopping set over at least a portion of the time period $T$ such that at

Page 24

WSOU-CANON-0000310

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$.

20.    (Cancelled)

21.    (Previously Presented)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $F$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

a processor for reducing the size of the hopping set over a portion of the time period $T$ by at least one frequency such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$ ,

where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

22.    (Previously Presented)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

a processor for pseudorandomly selecting frequencies from the hopping set over a time period $T$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

Page 25

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

where $N$ is the total number of frequencies available for frequency hopping.

23.    (Cancelled)

24.    (Previously Presented)    A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to pseudorandomly select therefrom hopping frequencies over a time period $T$; and

a processor for (a) determining a hopping index value, (b) modifying the hopping index value by at least the modulo of a number $F$ where $F \leq N$, (c) selecting a hopping frequency from the hopping set as a function of the modified hopping index value, (d) adjusting the order of the hopping set such that the selected hopping frequency is now at a position corresponding to the value of $F$ such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$, (e) reducing the value of $F$; and (f) returning to (a),

where $N$ is the total number of frequencies available for frequency hopping and where $F$ is the number of frequencies in a hopping state, $H$, over which a wireless endpoint is constrained to hop.

Page 26

WSOU-CANON-0000312

Serial No. 09/850,124
Atty. Ref. 29250-000873/US

25.   (Original)   The wireless endpoint of claim 24 wherein when the value of $F$ reaches a predefined minimum value, the processor further shifts the hopping set in a cyclical direction by a value equal to a difference between a predefined maximum value for $F$ and the minimum value, modulo $N$.

26.   (Previously Presented)   A wireless endpoint comprising:

a memory for storing a hopping set comprising $N$ frequencies, the hopping set used to select therefrom hopping frequencies over a time period $T$; and

a processor for (a) dividing the hopping set into an allowable frequency set and a prohibited frequency set, (b) pseudorandomly selecting frequencies from the allowable frequency set, and (c) after at least one frequency selection, adjusting the membership in the allowable frequency set and the prohibited frequency set such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period $T$,

where $N$ is the total number of frequencies available for frequency hopping.

27.   (Cancelled)

Page 27

WSOU-CANON-0000313

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

## FIG. 1

*Prior Art*



WSOU-CANON-0000314

APPENDIX B

1/6

FIG. 2   Balachandran-Kang-Sanwal-Seymour 21-1-3-12



200

2/6

WSOU-CANON-0000315

APPENDIX C

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 3

| Even bits | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 |
|-----------|---|---|---|---|---|---|---|---|---|---|---|---|
| Odd bits | x | x | x | x | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 |
| Frequency | $f_3$ | $f_1$ | $f_4$ | $f_0$ | $f_7$ | $f_8$ | $f_5$ | $f_6$ | $f_1$ | $f_3$ | $f_0$ | $f_4$ |

Bursts →

Speech frame 1

WSOU-CANON-0000316

APPENDIX D

3/6

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

FIG. 4

*Prior Art*

| Parameter | Definition | Range |
|---|---|---|
| TDMA Frame Number, *FN* | TDMA frame number | 0 to (26 x 51 x 2048) - 1 |
| Time parameter, *T1R* | [FN div (26 x 51)] modulo 64 | 0 to 63 |
| Time parameter, *T2* | FN modulo 26 | 0 to 25 |
| Time parameter, *T3* | FN modulo 51 | 0 to 50 |
| Hopping Sequence Number (*HSN*) | Used along with other time parameters to generate a pseudo-random hopping sequence | 0 to 63 |
| *NBIN* | Number of bits required to represent *N* | |
| *xor* | Bit-wise exclusive or of 8 bit binary operands | |

Table One

WSOU-CANON-0000317

APPENDIX E

Balachandran-Kang-Sanwal-Seymour 21-1-3-12



FIG. 5

Start

505

Set $c = H_R$, where $R = S_i$ modulo $F$

510

Set $H_R = H_{F-1}$

515

Set $H_{F-1} = c$

520

$F = F - 1$

525

If $F \leq F_{min}$ then Set $F = F_{max}$ and
shift **H** cyclically to the right $(F_{max}-F_{min})$modulo $N$

End

WSOU-CANON-0000318

APPENDIX F

5/6

Balachandran-Kang-Sanwal-Seymour 21-1-3-12

## FIG. 6

column 1

| Burst Number | Hopping index | $A$ | Compute Hop Frequency | $H$ | $F$ |
|---|---|---|---|---|---|
| -- | -- | -- | -- | $H = \{1\ 3\ 4\ 6\ 2\ 0\ 5\ 7\}$ | $F = 4$ |
| 0 | 1 | $A = \{1\ 3\ 4\ 6\}$ | $H_{(1\ mod\ 4)} = H_1 = 3$ | $H = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 3$ |
| 1 | 5 | $A = \{1\ 6\ 4\}$ | $H_{(5\ mod\ 3)} = H_2 = 4$ | $H = \{1\ 6\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 2$ |
| 2 | 2 | $A = \{1\ 6\}$ | $H_{(2\ mod\ 2)} = H_0 = 1$ | $H = \{6\ 1\ 4\ 3\ 2\ 0\ 5\ 7\}$ | $F = 1$ |
| 3 | 4 | $A = \{6\}$ | $H_{(4\ mod\ 1)} = H_0 = 6$ | $H = \{6\ 1\ 4\ 3\ 2\ 0\ 5\ 7\}$ \newline $H = \{2\ 0\ 5\ 7\ 6\ 1\ 4\ 3\}$ | $F = 0,$ \newline $F = 4$ |
| 4 | 1 | $A = \{2\ 0\ 5\ 7\}$ | $H_{(1\ mod\ 4)} = H_1 = 0$ | $H = \{2\ 7\ 5\ 0\ 6\ 1\ 4\ 3\}$ | $F = 3$ |

row 1

Table Two

WSOU-CANON-0000319

APPENDIX G

6/6



UNITED STATES PATENT AND TRADEMARK OFFICE



UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 30594 | 7590 | 01/13/2006 |
|---|---|---|

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| ZHENG, EVA Y |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2634 | |

DATE MAILED: 01/13/2006

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/850,124 | 05/07/2001 | Krishna Balachandran | 29250-000873/US | 1172 |

TITLE OF INVENTION: ENHANCED FREQUENCY HOPPING IN A WIRELESS SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $1700 | 04/13/2006 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151.** THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS ABANDONED.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

| If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status: | If the SMALL ENTITY is shown as NO: |
|---|---|
| A. If the status is the same, pay the TOTAL FEE(S) DUE shown above. | A. Pay TOTAL FEE(S) DUE shown above, or |
| B. If the status above is to he removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or | B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above. |

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 07/05) Approved for use through 04/30/2007.

WSOU-CANON-0000338

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**

or **Fax**

**Mail Stop ISSUE FEE**
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| | | |
|---|---|---|
| 30594 | 7590 | 01/13/2006 |

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/850,124 | 05/07/2001 | Krishna Balachandran | 29250-000873/US | 1172 |

TITLE OF INVENTION: ENHANCED FREQUENCY HOPPING IN A WIRELESS SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $1700 | 04/13/2006 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ZHENG, EVA Y | 2634 | 375-130000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

| 4a. The following fee(s) are enclosed: | 4b. Payment of Fee(s): |
|---|---|
| ☐ Issue Fee | ☐ A check in the amount of the fee(s) is enclosed. |
| ☐ Publication Fee (No small entity discount permitted) | ☐ Payment by credit card. Form PTO-2038 is attached. |
| ☐ Advance Order - # of Copies _____ | ☐ The Director is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form). |

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.          ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/05) Approved for use through 04/30/2007.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

WSOU-CANON-0000339



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/850,124 | 05/07/2001 | Krishna Balachandran | 29250-000873/US | 1172 |

| 30594 | 7590 | 01/13/2006 |
|---|---|---|

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 8910
RESTON, VA 20195

| EXAMINER |
|---|
| ZHENG, EVA Y |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2634 | |

DATE MAILED: 01/13/2006

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 842 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 842 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571) 272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (703) 305-8283.

PTOL-85 (Rev. 07/05) Approved for use through 04/30/2007.

WSOU-CANON-0000340

| ***Notice of Allowability*** | Application No. | Applicant(s) |
|---|---|---|
| | 09/850,124 | BALACHANDRAN ET AL. |
| | Examiner | Art Unit |
| | Eva Yi Zheng | 2634 |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *RCE filed on 10/14/05*.

2. ☒ The allowed claim(s) is/are *1, 3, 5, 6, 8-10,12-17,19, 21, 22, and 24-26* .

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All    b) ☐ Some*   c) ☐ None   of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

     (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

         1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

     (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

     **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO-1449 or PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application (PTO-152)
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____ .

WSOU-CANON-0000341

Application/Control Number: 09/850,124                                       Page 2
Art Unit: 2634

## DETAILED ACTION

### Request for Continued Examination

1.   The request filed on Oct 14, 2005, for a Request for Continued Examination

(RCE) under 37 CFR 1.114 based on parent Application No. 09/850,124 is acceptable

and a RCE has been established. An action on the RCE follows.

### *Allowable Subject Matter*

2.   Claims 1, 3, 5, 6, 8-10,12-17,19, 21, 22, and 24-26 are allowed.

3.   The following is an examiner's statement of reasons for allowance:

   None of the prior art teaches or suggests a frequency hopping method as the

current application. In specific, pseudorandomly selecting frequency from a set of N

(total number of frequencies available) frequencies, where prior selected frequencies

are prohibited from being selected again from the hopping set. Thus, repetition of

frequency over time period T is reduced.

   Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee. Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

WSOU-CANON-0000342

Application/Control Number: 09/850,124                                    Page 3
Art Unit: 2634

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Eva Y Zheng whose telephone number is 571-272-3049. The examiner can normally be reached on M-F, 7:30 AM to 5:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Stephen Chin can be reached on 571-272-3056. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Eva Yi Zheng
Examiner
Art Unit 2634

December 15, 2005

STEPHEN CHIN
SUPERVISORY PATENT EXAMINE
TECHNOLOGY CENTER 2600

WSOU-CANON-0000343