**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTEMENTS, LLD D/B/A BRAZOS LICENSING AND DEVELOPMENT**, | | |
| | *Plaintiff,* | **6:20-cv-00980-ADA** |
| | | **6:20-cv-00981-ADA** |
| v. | | |
| **CANON INC.,** | | |
| | *Defendant.* | |
| **CANON INC.,** | | |
| | *Third-Party Plaintiff,* | **6:20-cv-00980-ADA** |
| v. | | |
| **NXP USA, INC.,** | | |
| | *Third-Party Defendant.* | |

**<u>CANON'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

CANON'S REPLY CLAIM CONSTRUCTION BRIEF ................................................................. i

I.    CONSTRUCTION OF THE '346 PATENT DISPUTED TERMS ....................................... 1

    A.    The "T," "N," and "F" Variables ....................................................................... 1

        1.    The Parties Agree That a "Time Period T," "A Portion of the Time Period T," as Well as the "N" and "F" Limitations Require Variables .......................................................... 1

        2.    WSOU's Constructions of the "T," "N," and "F" Terms Are Inconsistent With the Intrinsic Evidence .................................................................. 1

        a.    The Patentee Disclaimed Repeats Within the Time Period T ........................................... 1

        b.    The Claims Must Be Construed To Be Consistent with the Stated Purpose of the Invention. .................................................................. 2

        c.    WSOU's Arguments to Rebut Claim Indefiniteness Contradict Its Claim Construction Positions. .................................................................. 4

        d.    The Intrinsic Evidence Confirms Canon's Constructions ................................................. 6

        e.    The Time Period T is Not The Entire Time That Frequency Hopping Occurs ................ 6

    B.    "At Least One of the Selected Frequencies is Prohibited from Subsequent Selection" (All Asserted Claims) .................................................................. 7

    C.    "Pseudorandom[ly]" (All Asserted Claims) ..................................................................... 8

II.    CONSTRUCTION OF THE '714 PATENT DISPUTED TERMS ....................................... 9

    A.    The "Corresponding Temporally Predicted Second Encoded Representation" Terms (All Asserted Claims) .................................................................. 9

    B.    The Contextual Preambles "A video codec" (Claims 7, 13), "A multimedia system" (Claims 8, 13), "A portable electronic device" (Claim 12) are Not Limiting .......................... 12

    C.    "The Encoder Is Arranged To Transmit" (Claim 31) .................................................... 14

    D.    "Temporally Prior" (Claim 3) ........................................................................................ 15

    E.    "Said Other Picture" (Claims 29, 32) ............................................................................ 15

III.   CONCLUSION .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andersen Corp. v. Fiber Composites*,
  LLC, 474 F.3d 1361 (Fed.Cir.2007) .......................................................................13

*Autogiro Co. of Am. v. United States*,
  384 F.2d 391, 155 USPQ 697 (Ct. Cl. 1967) ..........................................................13

*Biovail Labs. Int'l SRL v. Impax Labs., Inc.*,
  433 F.Supp. 2d 501, 507 (E.D. Pa. 2006) ...............................................................14

*Caddo Systems, Inc. v. NXP USA, Inc.*,
  No. 6-20-CV-00244-ADA, Dkt. No. 41 (W.D. Tex. April 24, 2021) ......................10

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) ...........................................................................12, 13

*Eolas Techs., Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005) ...............................................................................14

*Grantley Patent Holdings, Ltd. v. Clear Channel Comm'ns, Inc.*,
  No. 9:06-cv-259, 2008 WL 5428186 (E.D. Tex. April 21, 2008) .......................4, 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .................................................................................5

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006) ...........................................................................3, 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................2, 11

*Purdue Pharma L.P. v. Endo Pharms. Inc.*,
  438 F.3d 1123 (Fed. Cir. 2006) .................................................................................7

*Renishaw PLC v Marposs Societa 'per Azioni*,
  158 F.3d 1243 (Fed. Circ. 1998) .............................................................................11

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017) ............................................................................4, 5

*TQ Delta, LLC v. 2Wire, Inc.*,
  No. 1:13-cv-01835-RGA, 2018 WL 4062617 (D. Del. Aug. 24, 2018) ....................4

*Trover Group, Inc. v. Dedicated Micros USA*,
   No. 2:13-cv-1047-WCB, 2015 WL 1263358 (E.D. Tex. March 19, 2015).........................4, 10

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016)...............................................................................................11

WSOU's constructions for both the '346 patent and the '714 patent are incompatible with the intrinsic evidence and the very purpose of the purported inventions of both these patents. Thus, for the reasons below, WSOU's constructions should be rejected and Canon's construction should be adopted.

## I.     CONSTRUCTION OF THE '346 PATENT DISPUTED TERMS

### A.     The "T," "N," and "F" Variables

#### 1.     The Parties Agree That a "Time Period T," "A Portion of the Time Period T," as Well as the "N" and "F" Limitations Require Variables

The parties agree that a "time period T," a "portion of the time period T," and the "N" and "F" limitations require variables that are used in a computer program or algorithm.  *Compare* Dkt. 52 ("Can. Br.") at 10 and 14 (requiring T, F, N terms to be pre-set and pre-configured)[1] *with* Dkt. 55 ("WSOU Br.") at 7 ("[A] POSITA would have understood the 'time period T' terms to be a variable commonly used in computer programs and algorithms"); at 18 ("'N' and 'F' frequency terms are variables").  Canon's constructions require that terms must be "pre-set" or "pre-configured" values, which captures that they are variables in code.  WSOU readily admits that the "T," "N," and "F" terms are variables, but its proposed constructions ignore that agreed concept and should, therefore, be rejected.

#### 2.     WSOU's Constructions of the "T," "N," and "F" Terms Are Inconsistent With the Intrinsic Evidence

##### a.     The Patentee Disclaimed Repeats Within the Time Period T

WSOU repeatedly and incorrectly argues that (1) the patentee did not limit its claimed invention to preclude repeats within the "time period T," (2) that the patent only requires "reducing" but not eliminating repeats, and (3) that repeats are only precluded during the

---

[1] All emphasis added and citations omitted unless otherwise noted.

"portion of the time period T."  WSOU Br. at 8-10, 15-16.[2]  But these arguments are contradicted by the fact that the patentee expressly narrowed its claims to obtain allowance by arguing that the prior art is ***not*** "***prohibited from re-selecting a frequency***, from a set of allowable frequencies, that has already been selected ***during a time period, T, as in the claims of the present invention***."  Can. Br. at 18 (quoting '346 File History (April 5, 2005, Amendment and Response at pp. 11-12)).  Contrary to WSOU's misplaced reliance on *Phillips* (WSOU Br. at 6), this argument is a clear disclaimer of systems that allow repeats and the claims must be construed to preclude embodiments that allow repeats. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*) (claims are limited by prosecution disclaimer).

### b.  The Claims Must Be Construed To Be Consistent with the Stated Purpose of the Invention.

WSOU's constructions must be rejected because they include countless embodiments that would actually ***increase*** frequency repeats contrary to the very purpose of the invention. The '346 patent repeatedly defines the invention as a way to ***minimize*** the number of repeated frequencies (in turn, maximizing the number of unique frequencies) used during the "time period T."  '346 Patent, 3:38-40 ("***In accordance with the invention***, hopping frequency sequences are constrained in order to reduce, or ***minimize, repeated frequencies*** over a time period T."); 7:20-30 ("***in accordance with the invention***, a constrained hopping sequence has been described for reducing the rate at which frequencies are repeated (or alternatively, ***maximizes the number of independent fading states***.)").  Repeated frequencies are minimized and unique frequencies are maximized only when repeats are not allowed as in Canon's construction.

WSOU's broad and unbounded construction for time period T and a portion of T encompasses embodiments that would actually ***increase*** frequency repetitions in violation of the

---

[2] Eliminating repeats is a reduction of repeats, so Canon's construction is consistent with WSOU's citations.

purpose of the invention.  Consider a system with a choice of 4 frequencies (f$_1$, f$_2$, f$_3$, f$_4$) (*i.e.*, N = 4).  *See*, *e.g.*, '346 Patent, 3:38-40.  Using an arbitrarily long time period T, as WSOU advocates, the "time period T" could be 200 hops long. *See* Martinelli Decl., Ex. A (Cooklev Dep. 53:15-24, Sept. 29, 2021).  And the "portion of the time period T" during which a frequency is prohibited from reselection could be anything less than 200 hops, say 12 hops.  On the first selection, one of the 4 frequencies would be selected—*e.g.*, f$_3$—and would then be prohibited from reselection for 12 hops (the "portion of time period T").  Contrary to the patented invention, this would ***increase*** the number of repeats for the next 12 hops because there would only be 3 frequencies to choose from during those 12 hops instead of 4.  Thus, at a minimum you would need to use each of the 3 frequencies 4 times, which is more repetitions than would occur under Canon's construction.

WSOU's expert—Dr. Cooklev—admitted that WSOU's construction led to embodiments that do not reduce frequency repetitions.  According to Dr. Cooklev, a portion of T equal to 199 hops in the above example "is not an appropriate portion of the time period T." *Id.* at 58:21-59:11.  But, as a portion of 200 hops, 199 hops is clearly within the literal scope of WSOU's construction. Dr. Cooklev would only identify 2 hops and 3 hops as a portion of the time period T that would work to achieve the benefits of the invention. *Id.* at 53:25-54:23 and 62:18-22.  Dr. Cooklev's testimony is consistent with Canon's construction, which requires T to be no more than N hops long and, therefore, only covers portions of T less than N hops.

WSOU's proposed construction, on the other hand, includes embodiments that their own expert admits would increase repeats, which is contrary to the admitted purpose of the invention and, therefore, must be rejected.  *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1339-40 (Fed. Cir. 2006) (rejecting the plain and ordinary meaning of "customer" ("one who

buys goods or services") because it would capture embodiments without the claimed advantages of the invention); *Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 1263358, at *2-3 (E.D. Tex. March 19, 2015) (rejecting construction that reads on a method contrary to purpose of the invention); *Grantley Patent Holdings, Ltd. v. Clear Channel Comm'ns, Inc.*, No. 9:06-cv-259, 2008 WL 5428186, at *4-5 (E.D. Tex. April 21, 2008) (rejecting the ordinary meaning construction of "subsequent" because it would cover embodiments that contradict the stated purpose of the invention).

### c. WSOU's Arguments to Rebut Claim Indefiniteness Contradict Its Claim Construction Positions.

WSOU's constructions conflict with its argument that the claim is not indefinite.[3] WSOU relies on *TQ Delta, LLC v. 2Wire, Inc.*, No. 1:13-cv-01835-RGA, 2018 WL 4062617 (D. Del. Aug. 24, 2018), to argue that ***the specification*** of the '346 patent is sufficient for a POSITA to derive the meaning of the "T," "N," and "F" terms. WSOU Br. at 9-13; 17-18. But by resorting to the specification to save the claim from indefiniteness, WSOU admits that the claim must be read in accordance with the specification and, thus, is limited by it. Indeed, this is how the Federal Circuit analyzed the issue in *Sonix Tech. v. Publ'ns Int'l, Ltd.*, upon which the court in *TQ Delta* relied. *TQ Delta*, 2018 WL 4062617 at *6 (*citing Sonix Tech.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)).

In *Sonix Tech*, the Federal Circuit found an undefined claim term to not be indefinite when limited to the scope specified in the specification. *Sonix Tech.*, 844 F.3d at 1377. The Federal Circuit held that the claim term "visually negligible" did not, on its own, provide clear

---

[3] WSOU falsely argues that Canon waived their argument regarding the lack of antecedent basis for "a portion of the time period T" in claim 11 because "Canon has never previously raised this defense." WSOU Br. at 14, n. 4. In fact, Canon's Invalidity Contentions expressly makes this argument. Martinelli Decl., Ex. B (Canon's Invalidity Contentions for Case No. 6:20-cv-980, dated July 7, 2021) at 19-21.

claim scope.  *Id.* at 1378.  The Court then used general claim construction principles "to determine whether there is some standard in the written description for measuring visual negligibility." And the Court found that "visually negligible" was not indefinite when interpreted in view of the specification to be limited to "what can be seen by the normal human eye."  *Id.*

Here, the "T," "N," and "F" terms, taken in the abstract, are similarly undefined. WSOU's proposed non-constructions do not specify the required bounds of the "T," "N," and "F" terms to make the invention work, and, therefore, do not address the indefiniteness issues raised by Canon at all.  Instead, WSOU argues that using the specification a POSITA would understand how to derive the value of 'a period of time T' and the bounds of N and F.  WSOU Br. at 10, 18.  But WSOU does ***not*** point to any portion of the specification or otherwise explain how a POSITA would construe the terms or provide "an objective baseline through which to interpret" the scope and meaning of these variables.  *See Sonix Tech.*, 844. F.3d at 1378.  Not surprisingly, WSOU's expert was also unable to articulate any such limits.  *See* Martinelli Decl., Ex. A at 68:12-69:22 (cannot articulate the parameters to make a portion of time period T work) and 89:5-14 (cannot identify the scope of N).  WSOU cannot have its cake and eat it too.  If the specification is required to enable a POSITA to understand the bounds of the claim, then the construction needs to reflect those bounds in order to resolve the parties' dispute.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

Furthermore, contrary to WSOU's arguments, Canon is neither asking the Court to limit the "T," "N," and "F" terms to a particular numerical value (WSOU Br. at 10-11; 18), nor improperly "raising infringement-related concerns during claim construction" (*id.* at 11).  Rather, Canon's constructions provide definite limits on the "T," "N," and "F" terms based on how the specification defines and uses those variables to embody the allegedly inventive algorithms.

### d.  The Intrinsic Evidence Confirms Canon's Constructions

WSOU incorrectly argues that Canon's constructions contradict the specification of

the '346 patent because the claims only require prohibition for "a portion of the time period T"

and not the entire time period T.  WSOU Br. at 8, 16-17.  WSOU mischaracterizes both the '346

patent and Canon's construction.  Canon's proposed construction does not restrict the use of

frequencies for the entire time period T.  Rather, it restricts repeated frequencies within the

***portion of the time period T*** by prohibiting reselection of a frequency for the *remainder* of the

time period T left *after* the frequency was selected for use.  For example, when the time period T

begins there is no restriction on selection of the first frequency.  After a frequency is used, it is

restricted over the remaining bursts during time period T, *i.e.*, the remaining "portion" of time

period T other than the first burst, which is less than the time period T.  Each subsequently

selected frequency is then prohibited for an even shorter portion of the time period T.

### e.  The Time Period T is Not The Entire Time That Frequency Hopping Occurs

While not reflected in its proposed construction, WSOU argues that the specification and

the claims define "T" as the time when frequency hopping occurs, *i.e.*, the time period T is

whenever frequency hopping is being performed.  WSOU Br. at 7.  This is wrong.  Rather than

defining T as the ***entire*** time when frequency hopping is occurring, the passages cited by WSOU

only say that frequency hopping occurs within a time period T.  '346 Patent at Abstract ("Over a

time period T, the wireless endpoint performs pseudo-random selection of a frequency…");

2:31-48 ("In accordance with the invention, a wireless endpoint transmits signals using

frequency hopping over a time period T…."); 3:38-56.  As a matter of logic, statements that

frequency hopping occurs of "over" a time period T do not mean that ***all*** frequency hopping

6

*must* occur within a single time period T.  In contrast, these statements are more consistent with Canon's constructions, which cover frequency hopping over many short time periods T.

WSOU's argument that the claim is *only* limited to precluding repeats during a portion of the time period T and not the entire time period T is directly contradicted by the patentee's prosecution arguments discussed above, in which the patentee expressly argued "neither Munday nor Haartsen *is prohibited from re-selecting a frequency*, from a set of allowable frequencies, that has already been selected *during a time period, T, as in the claims of the present invention*."  Can. Br. at 18.  This makes it clear that the "time period T" cannot be the entire period when frequency hopping is occurring (as WSOU argues) because Dr. Cooklev admitted that repeats would occur over that period. Martinelli Decl., Ex. A at 22:3-9.  Indeed, it is obvious that if you have more selections to fill than available frequencies, repeats must occur.  WSOU's construction encompasses embodiments that simply do not work.  Canon's construction of the time period T, which requires T to be less than or equal to N hops, does not have this problem and is consistent with the patentee's prosecution arguments.

## B.    "At Least One of the Selected Frequencies is Prohibited from Subsequent Selection" (All Asserted Claims)

The intrinsic evidence clearly limits the reason for prohibiting subsequent selection of a frequency to the sole fact that the frequency was previously selected during the time period T. As Canon detailed in its opening brief, the specification makes clear that the purpose of the invention is to minimize the repetition of frequencies used during a specific time period, and that purpose is met by prohibiting the selection of frequencies that were previously used during T. Can. Br. at 17-18.  Furthermore, unlike in *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006) where the patentee did not present the language in the prosecution history as a "necessary feature of the claimed formulations," the patentee here did.  The patentee

7

unequivocally argued the system "*is prohibited from re-selecting a frequency*…*that has already been selected during a time period T, as in the claims of the present invention*."  Can. Br. at 18.

While WSOU argues that there might be some unstated reasons for prohibiting reselection of a frequency other than prior selection (WSOU Br. at 19-20), its expert Dr. Cooklev could not identify any example that would accomplish the patent's goal of minimizing repeats. Martinelli Decl., Ex. A at 41:7-42:5.  And WSOU's repetition of its "portion of the time period T" argument (Opp. at 19-20) is wrong for the reasons explained above in Section I.A.2.

## C.    "Pseudorandom[ly]" (All Asserted Claims)

WSOU's construction of "pseudorandomly" is completely unworkable.  Dr. Cooklev was unable to articulate how the construction "appears to be patternless" could be practically used to distinguish pseudorandom selection from non-pseudorandom selection.  *See* Martinelli Decl., Ex. A at 90:23-91:14.  Rather, Dr. Cooklev admitted that, in order to determine whether a selection was performed pseudorandomly, you would need to analyze the selection algorithm.  *See id.* at 91:16-92:3.  This is consistent with Canon's proposed construction and contradicts WSOU's construction that selections need only "appear[] to be patternless."  Thus, WSOU's proposed construction should be rejected.

WSOU's proposed construction of "appears to be patternless" is also untenable as it would cover prior art that the patentee distinguished during prosecution.  The patentee added the requirement that the selection of a frequency be "pseudorandom" to distinguish Emi.  Can. Br. at 9.  WSOU's proposed construction of "pseudorandom[ly]" as "appears to be patternless" would read on Emi because Emi disclosed a frequency hopping scheme that prohibited frequencies based on random noise fluctuations, which would "appear to be patternless."  *Id.*  Thus, WSOU's proposed construction would improperly cover exactly the embodiment that the term "pseudorandom[ly]" was added to distinguish.

II.     **CONSTRUCTION OF THE '714 PATENT DISPUTED TERMS**

A.     **The "Corresponding Temporally Predicted Second Encoded Representation" Terms (All Asserted Claims)**

WSOU mischaracterizes the parties' dispute, arguing that the "claim itself makes clear that the second encoding mode is 'with reference to another picture of the sequence.'"  WSOU Br. at 24-25.  In fact, Canon agrees that the "claim itself makes clear that the second encoding mode is 'with reference to another picture of the sequence.'"  The real dispute here is the meaning of a "*corresponding* temporally predicted second encoded representation of the first picture," as opposed to a *non-corresponding* temporally predicted second encoded representation of the first picture.  And as to this claim language, WSOU agrees that proposed constructions that make claim limitations superfluous should be rejected.  WSOU Br. at 1-2 (where "proposed constructions seek to … make claim limitations superfluous[, s]uch approaches are improper").  Thus, based on WSOU's acknowledgement of the law, WSOU's construction must be rejected because the construction would be the same even if the word "corresponding" was deleted.

Indeed, WSOU admits that "corresponding" must mean *something*:

> According to Canon, WSOU's position is that any two encodings ***without any*** relation to one another would satisfy the claim.  ***That is simply not the case***.

WSOU Br. at 25.  However, WSOU's construction does not articulate what the "corresponding" relationship requires.  *Id*.  WSOU argues that "[i]n context, the claim clearly relates to encoding a picture with a first and second encoding mode."  But that concept is already in the claim without regard to the further requirement that the two encodings must *correspond* to one another.

As Canon explained in its Opening Brief, the claimed "correspondence" must comport with the invention disclosed in the '714 patent to accomplish the encoding and transmission benefits of the invention.  Can. Br. at 27-28.  In contrast, WSOU's construction, which merely

requires the same picture to be encoded two different ways (*e.g.*, INTRA and INTER), covers systems completely unrelated to the patented system.  For example, WSOU's construction would improperly cover an encoder that encodes first and second encodings of the first picture which were years apart to generate completely independent and unrelated encoded videos with no operative relationship to one another.  This has no connection to the invention and benefits of the '714 patent and must be rejected.  *See*, *e.g.*, *On Demand*, 442 F.3d at 1340 (rejecting the plain and ordinary meaning of "customer" ("one who buys goods or services") because it would capture embodiments without the claimed advantages of the invention); *Trover Group, Inc.*, 2015 WL 1263358 at *2-3; *Grantley Patent Holdings, Ltd.*, 2008 WL 5428186 at *4-5.

Moreover, WSOU's assertion that "Courts routinely give the term 'corresponding' its plain and ordinary meaning" is misleading.  In *Caddo Systems, Inc. v. NXP USA, Inc.*, No. 6-20-CV-00244-ADA, Dkt. No. 41 (W.D. Tex. April 24, 2021), upon which WSOU relies, the disputed term was: "one said active link corresponding to each of the items selected" / "one said active link corresponding to each of the hierarchical levels accessed by the user."  *Id*. at 3.  First, *Caddo* did not involve a claim construction dispute (the defendant did not argue a particular correspondence was required by the specification).  Rather, the defendant asked that the claim be declared indefinite.  *Id.* at 3.  Second, the claims required "active links" corresponding to "each" of a number of "items" or "levels."  *Id.* at 2.  The term "corresponding," therefore, served to link these numerous items.  Unlike WSOU, the plaintiff in *Caddo* was not advocating a construction of the disputed term that rendered "corresponding" superfluous.  The entire meaning of the *Caddo* claims changed if corresponding was deleted.  That is not the case here.

Despite WSOU's assertion to the contrary, there is no plain and ordinary meaning of the term "corresponding temporally predicted second encoded representation" that would give a

POSITA the requisite notice of the type of relationship that is covered by the claims and that was actually **invented**.  *See Renishaw PLC v Marposs Societa'per Azioni*, 158 F.3d 1243, 1250 (Fed. Circ. 1998) (construction should be determined with "a full understanding of what the inventors actually invented and intended to envelop with the claim.").

Canon's construction, on the other hand, is fully consistent with the specification, which reveals the ordinary meaning of disputed claim terms.  As described in Canon's Opening Brief, the '714 patent expressly teaches the purpose of the patent:  "The addition of additional INTER frames **corresponding** to INTRA frames as discussed above introduces error resilience into the encoded signal and allows a receiving decoder to select alternative decoding options if part of the received signal is corrupted."  '714 patent at 12:55-61.

WSOU's remaining arguments all fail.  First, WSOU gets the law wrong by arguing that Canon cannot rely on "statements of benefit within the patent, or by statements … in the file history" (WSOU Br. at 27) unless there is an express disavowal.  That is not the law. *See Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) (no express disavowal required).  WSOU also argues that *Phillips* supports the proposition that "where the claim read in light of the specification is clear, there is no need to refer to the prosecution history." WSOU Br. at 27.  WSOU is wrong.  The prosecution history is part of the intrinsic record that is highly relevant to construing the claim.  *Phillips* at 1317 (the court **should** consult the prosecution history if it is in evidence).

Second, WSOU fails to read the entirety of Canon's proposed construction in arguing that "associated" does not make the term clearer.  WSOU Br. at 25.  Canon's construction does not merely replace the word "corresponding" with "associated."  Instead, consistent with the invention disclosed in the specification of the '714 patent, Canon's construction specifies that the

claimed corresponding is met by "including both encoded representations in a single encoded video."  This captures the purported error resilience benefit of "the invention."  '714 patent at 12:55-61 ("***The invention*** is applicable to any video coding protocol using temporal prediction. The addition of additional INTER frames corresponding to INTRA frames as discussed above introduces error resilience into the encoded signal and allows a receiving decoder to select alternative decoding options if part of the received signal is corrupted."), 4:10-12.  Notably, WSOU does not and cannot argue that Canon's proposed construction is inconsistent with the specification.  It is not.  *See*, *e.g.*, '714 patent at 4:10-12, 12:55-61, 12:30-38, 12:55-61, Fig. 5; Can. Br. at 25 ('714 File History (July 15, 2005, Amendment and Response at p. 15)).

Third, WSOU misunderstands the foundation of the '714 patent.  According to WSOU, Canon's proposed construction is "nonsensical" because it would require a video of a picture or a video of the part of a picture.  WSOU Br. at 26.  But this argument is contrary to the background of the '714 patent, which WSOU admits as teaching conventional video coding being "particularly useful for transmission of a ***video sequence*** (***or a series of frames in a video***)."  *Id.* at 23.[4]

**B.      The Contextual Preambles "A video codec" (Claims 7, 13), "A multimedia system" (Claims 8, 13), "A portable electronic device" (Claim 12) are Not Limiting**

WSOU both misstates the law regarding whether a preamble is limiting and misapplies the misstated law to the facts at issue.  First, WSOU conflates the law of claim differentiation with the test of determining whether a preamble is limiting.  The Federal Circuit has provided "guideposts" to determine whether the preamble should be limiting.  *Catalina Mktg. Int'l, Inc. v.*

---

[4] To the extent WSOU is making the superficial argument that plugging Canon's construction into the claim would be grammatically awkward, the issue is easily resolved by including the phrase "…of the first picture or said part thereof" in the phrase to be construed.

*Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002).  Notably, these guideposts *do not*

include claim differentiation.  And claim differentiation is ***not*** a strong motivation to limit the

claims because it is well-understood that "[c]laim differentiation is a guide, not a rigid rule.  *If a*

*claim will bear only one interpretation, similarity will have to be tolerated*."  *Autogiro Co. of*

*Am. v. United States*, 384 F.2d 391, 404, 155 USPQ 697, 708 (Ct. Cl. 1967); *see also Andersen*

*Corp. v. Fiber Composites*, *LLC*, 474 F.3d 1361, 1370 (Fed.Cir.2007).

  The patent specification also contradicts WSOU's assertion that these preamble features

"recite[] essential structure of the invention."  WSOU Br. at 30, 32, 34.  There is no more than a

passing reference to these terms in the '714 patent (a multimedia system (*i.e.*, '714 patent at 5:6-

7, 8-9, 12:58-63), a portable electronic device (*i.e.*, 4:65-67), video codec ('714 patent at 5:10,

57-60, 7:64-65)).  The passing mention of these disputed terms in the '714 patent confirms that

the specification does ***not*** consider them "essential" to the invention.  For example, for both of

the "multimedia system" and the "portable electronic device," WSOU relies on col. 4:5-37 of

the '714 patent.  But the cited portions merely disclose that "[t]he invention also ***extends*** to a

video codec and a multimedia system including a video encoder."  WSOU Br. at 32, 34.  The

express teaching that "the invention" *extends* to a particular environment confirms these terms

merely provide exemplary environments and not necessary features.  Indeed, the specification

does not provide details for these features.  '714 patent at 5:54-57, 4:65-67.  Therefore, these

short preambles do not recite "additional structure *underscored as important by the*

*specification*."  *Catalina*, 289 F.3d at 808-09.

  WSOU incorrectly applies the Federal Circuit guideposts in concluding that there was a

"clear reliance on the preamble during prosecution to distinguish the claimed invention from the

prior art."  *Catalina*, 289 F.3d at 808-09.  WSOU argues that *the Examiner* considered terms

limiting.  *See*, *e.g.*, WSOU Br. at 33.  But neither the Examiner nor the applicant argued a "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."  The Examiner did not rely on these preamble features (in fact, the Examiner allowed claims without these features) and the applicant did not distinguish the claimed invention based on these features.  *See*, *e.g.*, *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337 (Fed. Cir. 2005).

WSOU also mistakenly argues that "a video codec" is not a preamble term in claim 13 despite it appearing before the word "comprising."  WSOU's Response at 31.  But *Biovail Labs*., which WSOU itself cites, contradicts its argument.  *Biovail Labs. Int'l SRL v. Impax Labs., Inc*., 433 F. Supp. 2d 501, 507 (E.D. Pa. 2006) ("transitional phase [*e.g.*, "consisting of" or "comprising"] appears immediately after the preamble and before the body).

Because the preambles in this case do not provide antecedent basis for any terms in the body of the claim, are not essential to understanding the claim's limitations—which are all directed to the encoding methods recited in claim 6—and were not relied on during prosecution *to distinguish any prior art*, these preambles lack the hallmarks of a limiting preamble under Federal Circuit precedent and should be found not-limiting.

### C.    "The Encoder Is Arranged To Transmit" (Claim 31)

WSOU confuses indefiniteness with enablement to argue the "encoder is arranged to transmit" is not indefinite.  WSOU Br. at 36.  The issue is not whether a POSITA could create a system that encodes and transmits, but, rather, whether a POSITA could understand what distinguishes an encoder from a transmitter.  WSOU's proposed construction, which replaces "arranged" with "configured," is just a swap of synonyms and does not clarify this issue.  Neither does WSOU's reliance on portions of the '714 patent that discuss "transmission errors" or various modes of transmission (*e.g.*, transmission of multiple copies in different packets) because these sections provide no guidance that would allow one to distinguish encoders arranged to

14

transmit from encoders whose data is later transmitted.

### D.    "Temporally Prior" (Claim 3)

WSOU's construction offers no additional clarity on whether the "another picture" must occur in the sequence temporally prior (or preceding in time) to the first picture: (Option 1) as the sequence is transmitted, (Option 2) as the frames are encoded, or (Option 3) the sequence of the original input video stream.  WSOU is arguing that the "another picture" must occur in the sequence temporally prior to the first picture in the sequence of the encoded video signal (Option 2).  WSOU Br. at 37.  WSOU then points to the specification at Figure 4 to show that forward or backward prediction can be used on an original input video stream (Option 3) to conclude that a "POSITA would readily understand temporally prior to be a frame or picture preceding in the sequence [of the original input video stream]."  *Id*.  Thus, WSOU's own arguments exacerbate, rather than resolve, the indefiniteness issue and should be rejected.

### E.    "Said Other Picture" (Claims 29, 32)

WSOU fails to acknowledge the lack of antecedent basis for said another picture in claims 29 and 32.  WSOU Br. at 39.  Rather, WSOU falsely argues that Canon waived this argument by not providing sufficient notice as to any cognizable invalidity theory.  *Id*.  In fact, Canon's Invalidity Contentions expressly makes this argument.  Martinelli Decl., Ex. C (Canon's Invalidity Contentions dated July 7, 2021) at 17-19.

### III.    <u>CONCLUSION</u>

For the aforesaid reasons, Canon respectfully requests that the Court adopt its proposed constructions of the disputed claim terms.

Dated: October 1, 2021                    Respectfully Submitted


                                          */s/ Richard F. Martinelli*
                                          _____

                                          Richard F. Martinelli (*pro hac vice*)
                                          rmartinelli@orrick.com
                                          Joseph A. Calvaruso (*pro hac vice*)
                                          jcalvaruso@orrick.com
                                          **ORRICK, HERRINGTON & SUTCLIFFE LLP**
                                          51 West 52nd Street
                                          New York, NY 10019-6142
                                          Tel: (212) 506-5000
                                          Fax: (212) 506-5151

                                          John M. Jackson (Texas Bar No. 24002340)
                                          jjackson@jw.com
                                          **JACKSON WALKER, LLP**
                                          2323 Ross Avenue, Suite 600
                                          Dallas, TX 75201
                                          Tel: (214) 953-6000
                                          Fax: (214) 953-5822

                                          *Attorneys for Defendant*
                                          *Canon Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served or delivered electronically to all counsel of record on the 1st day of October, 2021.


*/s/ John M. Jackson*
John M. Jackson