# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION
 3     WSOU INVESTMENTS, LLC         §
       D/B/A BRAZOS LICENSING        §
 4     AND DEVELOPMENT,              §
                                     §
 5        Plaintiff,                 §
                                     §    CIVIL ACTION NO.:
 6     V.                            §
                                     §   6:20-cv-00980-ADA
 7     CANON INC.,                   §
                                     §
 8        Defendant.                 §
       _____       §
 9                                   §
       CANON INC.,                   §
10                                   §
          Third-Party Plaintiff,    §
11                                   §
       V.                            §
12                                   §
       NXP USA, INC.,                §
13                                   §
          Third-Party Defendant.    §
14
15
16
17     *****************************************************
18        REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
19               TODOR COOKLEV, Ph.D.
20            29th day of September, 2021
21     *****************************************************
22
23
24
25     Job No. 4823393
```

                                                    Page  1

```
 1                REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
 2    TODOR COOKLEV, Ph.D., located in Fort Wayne,
 3    Indiana, produced as a witness at the instance of
 4    the Defendant and Third-Party Plaintiff, and duly
 5    sworn, was taken in the above-styled and numbered
 6    cause on the 29th day of September, 2021, from
 7    10:04 a.m. to 2:25 p.m., before Daniel J. Skur,
 8    Notary Public and Certified Shorthand Reporter in
 9    and for the State of Texas, reported by
10    stenographic means from Waxahachie, Texas, pursuant
11    to the Federal Rules of Civil Procedure.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1           R E M O T E   A P P E A R A N C E S
 2    FOR WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING
 3    AND DEVELOPMENT:
 4         Jayita Guhaniyogi, Ph.D.
 5         Kasowitz Benson Torres LLP
 6         1633 Broadway
 7         New York, New York 10019
 8         P 212-506-1796
 9         jguhaniyogi@kasowitz.com
10
11    FOR DEFENDANT AND THIRD-PARTY PLAINTIFF:
12         Richard F. Martinelli, Esq.
13         Weimin Ning, Esq.
14         Orrick, Herrington & Sutcliffe LLP
15         51 West 52nd Street
16         New York, New York 10019-6142
17         P 212-506-3702 | F 212-506-5151
18         rmartinelli@orrick.com
19         wning@orrick.com
20
21
22
23    ALSO PRESENT:   Mr. David Crenshaw, Videographer
24                    Ms. Dina Martin
25
```

Page 3

```
 1                      I N D E X
 2   1.  Appearances.............................  3
 3   2.  The Witness:TODOR COOKLEV, Ph.D.
 4        Examination by Mr. Martinelli....... 8, 100
          Examination by Guhaniyogi...............  97
 5
 6   3.  Acknowledgement.......................... 105
 7   4.  Reporter's Certificate................... 106
 8
 9                  DEPOSITION EXHIBITS
                    TODOR COOKLEV, Ph.D.
                    September 29th, 2021
10
     Number              Description           Page
11
        Exhibit A   Exhibit 1 to Waldrop        10
12                  Deposition, '346 Patent
                    13 pages
13
        Exhibit B   Answering Declaration of    33
14                  Todor Cooklev, Ph.D.
                    67 pages
15
        Exhibit C   '346 Example                48
16                  1 page
17      Exhibit D   '346 Example                58
                    1 page
18
        Exhibit E   '346 Example                59
19                  1 page
20      Exhibit F   '346 Example                64
                    1 page
21
        Exhibit G   Declaration of Dr. Zhi Ding  73
22                  in Support of Canon's
                    Proposed Claim Constructions
23                  29 pages
24      Exhibit H   Random Number                90
                    1 page
25
```

1                        DEPOSITION EXHIBITS

                         TODOR COOKLEV, Ph.D.

2                        September 29th, 2021

3      Exhibit I    Exhibit 15 to the Waldrop        92

                     Deposition, Article:  A

4                    Novel Concept:  Message

                     Driven Frequency Hopping

5                    7 pages

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  5

```
1              P R O C E E D I N G S
2           REMOTE ORAL DEPOSITION OF
3              TODOR COOKLEV, Ph.D.
4              (REPORTER NOTE:  This deposition is
5     being conducted remotely in accordance with the
6     Current Emergency Order regarding the COVID-19
7     State of Disaster.
8                   Today's date is the 29th day of
9     September, 2021.  The time is 10:04 a.m. Daylight
10    Savings Time.  The witness is located in Fort
11    Wayne, Indiana.)
12                   VIDEOGRAPHER:  We're on the record.
13    Today's date is September 29th, 2021.  The time is
14    10:02.  This is the video deposition of Todor
15    Cooklev, Ph.D., relative to a case styled WSOU
16    Investments LLC d/b/a Brazos Licensing and
17    Development versus Canon, Inc.  This case is filed
18    in the United States District Court for the Western
19    District of Texas, Waco Division.  This deposition
20    is being conducted remotely by stenographic and
21    video means.  The witness is located at 1336
22    Sycamore Hills, Fort Wayne, Indiana.
23                   Counsel, at this time, would you please
24    state your appearances for the record, and the
25    reporter can then place the witness under oath.
```

Page 6

1           MR. MARTINELLI:  All right.  I'm Richard

2     Martinelli for Canon, and with me is Weimin Ning.

3           MS. GUHANIYOGI:  Jayita Guhaniyogi on

4     behalf of WSOU plaintiff from Kasowitz Benson

5     Torres and on behalf of the witness.

6                 TODOR COOKLEV, Ph.D.,

7      having been duly cautioned and sworn to tell the

8     truth, the whole truth and nothing but the truth,

9               testified as follows:

10              (10:04 a.m.)

11          MR. MARTINELLI:  Good morning,

12    Dr. Cooklev.  Thank you for joining today.

13          MS. GUHANIYOGI:  I'm so sorry to

14    interrupt, Mr. Martinelli.  I just want to, as an

15    initial matter, just state something on the record

16    really quickly.  Just pursuant to the parties'

17    agreements in this case, in view of the limited

18    issues in the declaration -- expert declarations,

19    the parties have agreed that this deposition be

20    conducted for three and a half hours.

21              You can proceed, Mr. Martinelli.

22          MR. MARTINELLI:  And we agree to that.

23    Hopefully, we won't even use that much time.

24                    EXAMINATION

25    BY MR. MARTINELLI:

                                        Page  7

1    then -- then, yes, you will have frequency

2    repetitions.

3         Q.    So is the idea, for example, if you're

4    looking at eight bursts and you only have four

5    frequencies to use, you need to have repetition to

6    fill those full eight bursts with only four

7    frequencies, right?

8         A.    You have -- that's -- that is generally

9    correct, and, again, this is in the context of the

10   GSM system as it existed around the time of the

11   invention.  The -- so in that context, if you have

12   eight bursts and only four frequencies, then this

13   is -- you have four frequencies, so there would be

14   repetitions.

15        Q.    Do you know the minimum number of

16   repetitions that would occur in that scenario?

17             MS. GUHANIYOGI:  Objection, form, calls

18   for speculation.

19        A.    Well, I'm not sure what -- whether -- by

20   "minimum number of repetitions" whether you mean

21   one -- how many times would one frequency be used

22   or all of them or an average or something like

23   that.  But just if you have -- since you gave that

24   example, in the context of GSM, if we have eight

25   bursts and four frequencies, then, sure, there

Veritext Legal Solutions
866 299-5127

1    Q.  Uh-huh.

2    A.  -- in my paragraph 51?

3    Q.  Yes.

4    A.  What does the patent specification here

5 mean by repetition of frequencies over the time

6 period T is reduced?

7    Q.  Well, let me clarify that.  It's really

8 the "thus," and maybe I can ask a better question.

9 How does the first sentence that you quoted

10 starting "in particular" lead to the repetition of

11 frequencies over the time period T being reduced,

12 in your view?

13    A.  Excuse me.  I was just looking at the

14 prior sentence, so the sentence starting in

15 particular, what?

16    Q.  You can read what you have there.  So

17 it's:  In particular, prior selected frequencies

18 are temporarily prohibited from being selected

19 again from the hopping set.  That's the first

20 sentence.  Then it goes on:  Thus, repetitions of

21 frequencies over the time period T is reduced,

22 right?

23    How does temporary prohibition lead to

24 reduction of frequency repetition?

25    A.  Well, I don't think I have a rephrasal

Veritext Legal Solutions
866 299-5127

1   for the specification here of the -- what the

2   specification is saying that prior selected

3   frequencies are temporarily prohibited from being

4   selected again, and in this way, repetition of

5   frequencies over the time period T is reduced.

6       Q.   Is that statement true for any time

7   period T?

8           MS. GUHANIYOGI:  Objection to form,

9   vague.

10      A.   I'm -- I'm -- the statement is true, and

11  it is -- what is true is that repetition of

12  frequencies over the time period T is reduced, and

13  that is the time period T that is recited in the --

14  in the claims.

15  BY MR. MARTINELLI:

16      Q.   Right.  And my understanding is that you

17  construe the time period T to be the period when

18  frequency hopping is occurring; is that right?

19      A.   And I will -- yeah, in light of the

20  specification, a POSITA would understand that the

21  time period T, in the context of the claims, is the

22  period of time over which the device transmits

23  signals using frequency hopping.

24      Q.   So back to the passage we were looking

25  at in paragraph 51 of your declaration.  Is it true

Veritext Legal Solutions
866 299-5127

1      Q.     Right.

2      A.     -- as used in the -- as used in the

3   claims of the '346 patent.

4      Q.     Uh-huh.

5      A.     But I'm not -- I'm not prepared today to

6   analyze how the '346 patent applied to any

7   frequency hopping system.

8      Q.     So that's good because we're not doing

9   any frequency hopping system.  We're going to do a

10  very specific example so that I can get to the

11  limitations on the prohibition time period that we

12  were talking about before we took our break.  Let

13  me give an example, and you can tell me if my

14  example is good, bad, or indifferent.

15          If I said that the time period T is

16  200 -- I'm going to say hops worth of time, would

17  that be something that's understandable to you?

18          MS. GUHANIYOGI:  Objection to form,

19  vague, outside the scope.

20     A.     I mean, just 200 hops?

21  BY MR. MARTINELLI:

22     Q.     Uh-huh.

23     A.     Just 200 hops is -- is something that is

24  understandable.

25     Q.     Okay.  Good.  So we're at the point now

Page 53

```
 1    where we've defined N.  N is 4, right?  And we've
 2    specified four frequencies f1 through f4, and we've
 3    defined T as 200 hops.  What I'd like to know is
 4    what is the portion of the time period T that a
 5    person of skill in the art would apply in this
 6    situation to achieve the reduction in frequency
 7    repetitions described in the patent?
 8            MS. GUHANIYOGI:  Objection, form, vague,
 9    outside the scope, calls for speculation.
10            (Pause.)
11        A.   Okay.  I'm beginning to understand here.
12    It's not something that I've analyzed or I've
13    offered an opinion.  I mean, this 200 hops, you
14    selected 200 hops, as a -- so what you're asking me
15    what about the portion of time period T?
16    BY MR. MARTINELLI:
17        Q.   (Nods head.)
18        A.   I mean, let's enter two hops.
19        Q.   So the portion of time period T is two
20    hops, and I think I agree with you.  This will
21    reduce frequency repetitions compared to doing
22    nothing, right?
23        A.   Yes.
24        Q.   So I agree with you.  So we can actually
25    come over here and say yes.
```

Page 54

1    D.

2              (Exhibit Cooklev D introduced.)

3    BY MR. MARTINELLI:

4         Q.    And I'm going to remove your portion of

5    time period T as two hops and keep everything else

6    the same.  I'm going to delete whether prohibitions

7    of repeats occur.  So we still have a time period T

8    of 200 hops.  We still have f1 through f4 as the

9    available frequencies to use.  That means N equals

10   4.  You've given me one choice of a portion of time

11   period T that results in the reduction.

12              What happens if I choose a portion of

13   the time period T to be 199 hops?

14              MS. GUHANIYOGI:  Objection to form,

15   vague, calls for speculation, outside the scope.

16   BY MR. MARTINELLI:

17        Q.    So before we get into the details on

18   that, 199 hops is smaller than 200 hops, right?

19        A.    Well, I agree that 199 is smaller than

20   200.

21        Q.    Good.  If a selected frequency is then

22   prohibited for 199 hops, over the time period T,

23   will the number of repetitions overall go up

24   compared to -- well, let me ask it a different way

25   to make it simpler.

1             If I choose a portion of time period T

2     that's 199 hops will I achieve the advantage of the

3     patent and reduce the number of hops -- the number

4     of repetitions over the time period T?

5             MS. GUHANIYOGI:  Objection to form,

6     vague, outside the scope, calls for speculation.

7         A.    Well, I disagree with the assumption in

8     the question.  In particular, I disagree that 199

9     hops in this -- in this example that you are trying

10     to construct, 199 hops is an appropriate portion of

11     the time period T.  I disagree with this.

12     BY MR. MARTINELLI:

13         Q.    Okay.  I think you're right.  So

14     we'll -- bad example.  We'll make a new -- new

15     chart.

16             (Exhibit Cooklev E introduced.)

17     BY MR. MARTINELLI:

18         Q.    We'll call it E, and we'll -- what's the

19     largest portion of the time period T -- let me set

20     it up so we have it all the same.

21             This example is the same as the prior

22     example or the original example.  We have

23     frequencies available of f1 through f4, which means

24     N equals 4.  We have time period T of 200 hops, and

25     what I want to know is what is the longest possible

Page 59

1    of three hops of prohibition achieve the patent's

2    goal of reducing repeats overall over the time

3    period T?

4            MS. GUHANIYOGI:  Objection to form,

5    calls for speculation, outside the scope.

6        A.    Again, the complete answer to your

7    question is -- would require more information.  The

8    complete answer one -- a person of skill in the art

9    would take a concrete wireless system and will

10   understand -- then it will understand the

11   repetition, what does it mean to -- and since here

12   we are constructing -- it's a hypothetical example,

13   and it is incomplete because -- because there will

14   be a number of other details and assumptions that

15   will be made in the context of a concrete system.

16           So subject to this, I mean, we just --

17   we just went over when the portions of time period

18   is two hops, now if it's three hops, and subject to

19   this, generally it seems to me that, yes, that

20   there would be a benefit of -- that the -- this

21   particular benefit of the '346 patent would be

22   achieved.

23   BY MR. MARTINELLI:

24       Q.    I agree with you again.  Can you tell me

25   why the benefit would be achieved if the portion of

Veritext Legal Solutions
866 299-5127

1    calls for speculation.

2         A.    A person of skill in the art would know

3    what the scope of a portion of time period T is

4    when evaluating a particular system.

5    BY MR. MARTINELLI:

6         Q.    Can you place any parameters on the

7    portion of time period T that would allow you to

8    achieve the advantages of the invention today?

9              MS. GUHANIYOGI:  Objection to form.

10   BY MR. MARTINELLI:

11        Q.    Let me -- I'll rephrase it.

12             Sitting here today, can you articulate

13   any limitations on the portion of time period T

14   that would allow a person of ordinary skill in the

15   art to achieve the advantages of the invention?

16             MS. GUHANIYOGI:  Objection to form,

17   calls for speculation.

18        A.    I have not performed this analysis yet

19   and have not formed an opinion about that.

20   BY MR. MARTINELLI:

21        Q.    Is it your testimony that a person of

22   skill in the art can't know the scope of the

23   portion of time period T unless they build an

24   infringing system first?

25             MS. GUHANIYOGI:  Objection to form,

1    mischaracterizes testimony.

2        A.   Well, you said "unless they build an

3    infringing system first"?

4    BY MR. MARTINELLI:

5        Q.   I'll rephrase.

6        A.   I mean, I understand the question

7    that -- I think a person of skill in the art would

8    know the scope of the portion of time period T in

9    the context of a specific system.  They don't have

10   to build it, but it has to be in the context of a

11   specific system, just not in a vacuum.

12       Q.   What would a person of skill in the art

13   need to know about the context of a specific system

14   to be able to understand the scope of a portion of

15   time period T?

16            MS. GUHANIYOGI:  Objection to form.

17       A.   Well, and I think we're starting to get

18   into the -- getting into an analysis of a specific

19   system, and I have not performed this analysis, and

20   I can't list all of the parameters that are

21   necessary for a person of skill in the art to know

22   in -- in making this analysis right now.

23   BY MR. MARTINELLI:

24       Q.   Do you know whether Dr. Ding has

25   performed that analysis?

Veritext Legal Solutions
866 299-5127

1    selection in at least a portion of the time period

2    T.

3              Did I read that out of claim 1?

4         A.    Yes.

5         Q.    So some of the frequencies in N are

6    required to be prohibited during at least a portion

7    of T according to claim 1, right?

8         A.    At least one is required.

9         Q.    So then wouldn't a person of skill in

10   the art need to know whether N can change during

11   the time period T?

12             MS. GUHANIYOGI:  Objection to form.

13        A.    Maybe there is a need for that.  It's --

14   it's just I have not made that analysis yet.

15   BY MR. MARTINELLI:

16        Q.    Okay.  Thank you.

17             MR. MARTINELLI:  Okay.  Weimin, what

18   exhibit are we up to?

19             MS. NING:  We are at G.

20             (Interruption by the reporter.)

21             MR. MARTINELLI:  Next one will be H.

22   I'm mark as H --

23             MS. NING:  Right.

24             MR. MARTINELLI:  -- an exhibit which I'm

25   going to show on the screen right now.  It's in

                                        Page 89

```
 1    your packet, Dr. Cooklev.  It's a big long number.
 2              (Exhibit Cooklev H introduced.)
 3         A.    It's in the --
 4    BY MR. MARTINELLI:
 5         Q.    It's in the smaller packet.  It was
 6    behind the --
 7         A.    Oh, okay.  Yes, I see this in the last
 8    sheet of paper, yes.
 9         Q.    Does that number appear patternless to
10    you?
11              MS. GUHANIYOGI:  Objection, form, calls
12    for speculation, outside the scope.
13         A.    Not exactly.
14    BY MR. MARTINELLI:
15         Q.    Why not?
16         A.    Well, there is a -- the digit 08264 and
17    the next five digits are like a mirror image,
18    46280, and then there are what -- there are some,
19    like, six digits now 991735, and then -- and then a
20    mirror image, 53719, so in this sense, you know, in
21    a certain sense, it's not patternless, and I think
22    I answered the question in what sense.
23         Q.    Numbers are cool.  So from just looking
24    at this number, can you tell whether it was
25    generated by a -- by a pseudo-random selection or
```

Page 90

1    not?

2              MS. GUHANIYOGI:  Objection to form.

3         A.    Well, I can't now -- there are numerous

4    pseudo-random number generators.  Pseudo-random --

5    as I said, pseudo-random number generators are

6    known, a number of them are known, and some of them

7    were known at the time of the invention.

8    BY MR. MARTINELLI:

9         Q.    How many numbers do you need to look at

10   before you can decide whether a pseudo-random

11   selection appears to be patternless?

12             MS. GUHANIYOGI:  Objection to form,

13   vague.

14        A.    I don't know.

15   BY MR. MARTINELLI:

16        Q.    How would someone apply your

17   construction of the term "pseudo-randomly appears

18   to be patternless" to be able to determine whether

19   a selection is pseudo-random or not?

20        A.    Well, one could look at the algorithm

21   that is producing these digits --

22        Q.    And --

23        A.    -- and decide if that algorithm is

24   pseudo-random.

25        Q.    And what would they look for in the

                                          Page 91

1   algorithm to decide if it's pseudo-random?

2       A.   Well, they would look at the algorithm

3   overall.

4       Q.   Okay.  All right.  So at paragraph 89,

5   you say that Dr. Ding has an article in which he

6   uses variables close to a time period T; is that

7   right?

8       A.   Generally that's what I say there, yes.

9       Q.   And how does Dr. Ding use those

10  variables in the article you're referring to here?

11      A.   Well, generally, as articles are

12  written.  This is an example --

13      Q.   Uh-huh.

14      A.   -- that I provide in this paragraph, so

15  Dr. Ding describes the symbol period, the hop

16  duration, --

17      Q.   Uh-huh.

18      A.   -- so he's describing these variables.

19      Q.   Okay.  Now, I'm going to mark as --

20  well, I guess you have the quote right here, but

21  I'll mark it anyway.  I'm going to mark as Exhibit

22  I the Ding article that's being discussed.

23          (Exhibit Cooklev I introduced.)

24  BY MR. MARTINELLI:

25      Q.   Is this the article you were referring

Page 92