# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTEMENTS, LLD D/B/A BRAZOS LICENSING AND DEVELOPMENT**, | |
| *Plaintiff,* | **6:20-cv-00981-ADA** |
| v. | |
| **CANON, INC.,** | |
| *Defendant.* | |

### CANON'S PRELIMINARY INVALIDITY CONTENTIONS

Pursuant to the Scheduling Order entered on June 1, 2021 (Dkt. No. 29), Defendant and Third-Party Plaintiff Canon, Inc. ("Canon") hereby serves its Preliminary Invalidity Contentions for U.S. Patent No. 7,116,714 (the "'714 patent").

## I.   INTRODUCTORY STATEMENT

Plaintiff WSOU Investments, LLD D/B/A Brazos Licensing and Development's ("WSOU's") Preliminary Infringement Contentions served on May 12, 2021 (the "Infringement Contentions"), are vague and incomplete, and do not provide the specificity necessary to allow Canon to adequately respond.  For example, the Court's Scheduling Order required WSOU to "identify the earliest priority date (*i.e.*, the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention."  WSOU did not comply with this order.  Instead, WSOU refused to firmly identify a particular alleged priority date, did not produce any conception or reduction to practice documents, and made the open-ended statement that the '714 patent "is entitled to a priority date

of at least August 14, 2000." Infringement Contentions at p. 5. WSOU's failure to timely produce conception and reduction to practice documents prejudices Canon's ability to prepare its invalidity contentions, especially given WSOU's assertion that the "subject matter described by the Asserted Claims, however, may have been conceived and reduced to practice prior to [August 14, 2000]." *Id.* In preparing its invalidity contentions, Canon is relying on WSOU's alleged August 14, 2000 priority date.

WSOU's Infringement Contentions are also without merit and frivolous for at least the reasons explained in Richard F. Martinelli's April 27, 2021 letter to Jonathan K. Waldrop, which is incorporated herein by reference. WSOU's Infringement Contentions did not address any of these deficiencies, and WSOU's continued failure to present a *bona fide* infringement allegation has prejudiced Canon's ability to prepare these invalidity contentions.

As another example, WSOU has not provided any contentions regarding alleged induced infringement beyond the conclusory, non-factual allegation that "Defendant has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe each Asserted Claim. Such active steps by Defendant with specific intent to induce infringement have included, among other things, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing others to import, offer to sell, and/or sell the Accused Instrumentalities; directing and instructing others to use the Accused Instrumentalities in infringing ways; and by providing the Accused Instrumentalities to others." Infringement Contentions at pp. 3-4.

Similarly, to the extent WSOU intended to raise any doctrine of equivalents arguments, it failed to adequately disclose any doctrine of equivalents infringement theory or provide any

factual support therefor, and again did nothing more than recite the following boilerplate, conclusory language: "To the extent that Defendant alleges that one or more limitations of the Asserted Claims are not literally found in the Accused Instrumentalities, Plaintiff alleges that such limitations are found in or practiced by the Accused Instrumentalities under the doctrine of equivalents. Any differences alleged to exist between any of the Asserted Claims and any of the Accused Instrumentalities are insubstantial and that each Accused Instrumentality also meets each limitation under the doctrine of equivalents as the identified features of the Accused Instrumentality performs substantially the same function in substantially the same way to achieve substantially the same result as the corresponding claim limitation." Infringement Contentions at p. 3.

Should WSOU be permitted to amend its infringement contentions or otherwise be permitted to pursue induced infringement or infringement under the doctrine of equivalents, Canon reserves the right to amend and supplement these invalidity contentions as appropriate.

Moreover, the discovery and *Markman* processes have not begun, and WSOU has not yet served its Final Infringement Contentions. Canon has prepared these invalidity contentions without the benefit of knowing the positions WSOU may take regarding the scope of the asserted claims, how the Court may construe the asserted claims, how WSOU may interpret the Court's claim constructions, or how WSOU may attempt to read the claims onto the accused products. Canon specifically reserves the right to amend these invalidity contentions as the case progresses, including after receiving WSOU's Final Infringement Contentions.

Canon understands that WSOU has asserted claims 1, 3, 5-9, 12-13, 16, 18-22, 26-29, 31, 32, and 36[1] of the '714 patent, which are collectively referred to herein as the "Asserted Claims".

To the extent that these Infringement Contentions rely on or otherwise embody particular constructions of terms or phrases in the Asserted Claims, Canon is not proposing any such constructions as proper constructions of those terms or phrases.  Various positions put forth in this document are predicated on WSOU's incorrect and overly broad interpretation of its claims as evidenced by its Infringement Contentions, dated May 12, 2021.  Those positions are not intended to and do not necessarily reflect Canon's interpretation of the true and proper scope of WSOU's claims, and Canon reserves the right to adopt claim construction positions that differ from or even conflict with various positions put forth in this document.  Nor should these invalidity contentions be interpreted as suggesting that WSOU's reading of the Asserted Claims is correct, that any of the Asserted Claims are not indefinite, or as an admission that any of Canon's products or technology infringe any claim of the Asserted Patent.  Canon specifically denies any such infringement.

These invalidity contentions, including the attached exhibits, are subject to modification, amendment, and/or supplementation in the event that WSOU provides any information that it failed to provide in its Infringement Contentions or attempts to cure the deficiencies in its Infringement Contentions, in light of WSOU's Final Infringement Contentions, and/or in view of any Court's ruling regarding the construction or scope of the Asserted Claims, any findings as to the priority, conception, or reduction to practice date of the Asserted Claims, and/or positions that WSOU or its expert witness(es) may take concerning claim construction, infringement,

---

[1] We note WSOU's claim chart includes an entry for dependent claim 38, without including the corresponding independent claim, claim 10, from which it depends.  Accordingly, WSOU does not provide a infringement allegation for that claim and we do not consider it asserted.

and/or invalidity issues. Further, because discovery and the *Markman* process have not begun, Canon reserves the right to revise, amend, and/or supplement the information provided herein, including identifying and relying on additional references, should Canon's further search and analysis yield additional information or references, consistent with the applicable rules and the Federal Rules of Civil Procedure.

These invalidity contentions are based on Canon's present knowledge and Canon reserves the right to amend these contentions if it identifies new material despite Canon's reasonable efforts to prepare these contentions. Canon's investigation regarding invalidity of the '714 patent over prior art and regarding other grounds of invalidity, including those based on 35 U.S.C. §§ 101, 102, 103, and 112, is ongoing.

Moreover, prior art not included in this disclosure, whether known or unknown to Canon, may become relevant. In particular, Canon is currently unaware of the extent, if any, to which WSOU will contend that limitations of the Asserted Claims are not disclosed in the prior art identified by Canon, or will contend that any of the identified references does not qualify as prior art. The identification of any patents as prior art shall be deemed to include identification of any foreign counterpart patents. To the extent that such issues arise, Canon reserves the right to identify additional teachings in the same references or in other references that anticipate or would have made the addition of the allegedly missing limitation obvious.

## II.   INVALIDITY OF THE '714 PATENT

### A.   Invalidity Based on 35 U.S.C. § 101

Each Asserted Claim is invalid for failing to recite patentable subject matter under 35 U.S.C. § 101.

In *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court established a two-part test for determining whether a claim recites patent-eligible subject matter. First, the court must determine whether the claims at issue are directed to any of the following patentable ineligible subject matter: laws of nature, natural phenomena, or abstract ideas. *Id*. at 2355. Second, if the claims are directed to ineligible subject matter, the court must then consider the claim elements—both individually and as an ordered combination—to determine whether they add an "inventive concept." *Id*. Merely claiming a generic "computer" to implement an abstract idea is not sufficient to transform the computer into a patent-eligible invention. *Id*. at 2357-50.

The Asserted Claims of the '714 patent are drawn to an abstract idea of generally processing a video twice with two different encoding modes. The claims, as asserted by WSOU, are untethered to any specific implementation or environment without any limitation on the concepts and components that can be used to perform the claimed method. The patent further admits that the various types of encoding disclosed were all well-known in the art at the time. *See*, *e.g.*, '714 Patent at 1:34-12; 3:19-59.

Nor do the elements of the claims—whether individually or as a whole—evidence any "inventive concept." The elements merely describe the general act of video encoding, regardless of how the encoding is accomplished. As explained in detail below and in the attached claim charts, both the concept of encoding a video frame in two different formats and the particular claim steps were well-known long before the time of the '714 patent. Merely claiming the act of encoding a frame two different ways is an abstract idea and is not sufficient to transform the claims into a patent-eligible invention.

Canon's investigation concerning invalidity of the '714 patent under Section 101 is ongoing.  Canon thus reserves the right to supplement and/or amend its invalidity contentions with respect to § 101.

## B.      Invalidity Based on 35 U.S.C. §§ 102 and 103

The references in Exhibits A and B as well as the system prior art discussed below disclose elements of the Asserted Claims explicitly and/or inherently.  These references may also be relied upon to show the state of the art at the relevant time and/or that elements of the Asserted Claims, or any Asserted Claim as a whole, would have been obvious to a person having ordinary skill in the art at the time of the alleged invention.  Obviousness combinations are provided in the alternative to Canon's anticipation contentions and are not to be construed as suggesting that any reference included in the combinations is not by itself anticipatory.

Canon is unable to know the extent to which WSOU will contend that limitations of the Asserted Claims are not disclosed in the art identified by Canon as anticipatory.  If any such issue arises with respect to any such limitation, Canon reserves the right to identify other references and combinations that may make obvious the addition of the allegedly missing limitation.

The references discussed in Exhibits A and B as well as the system prior art discussed below are applied to the Asserted Claims.

The fact that Canon's disclosures pertain only to the Asserted Claims should not be construed to suggest that any of the other claims of the '714 patent are valid.  Should WSOU be permitted to amend its infringement contentions to assert additional or alternative claims, or modify the bases for its contentions, Canon reserves the right to modify, amend, or supplement these disclosures.

Various references discussed in Exhibits A and B as well as the system prior art discussed below may be of greater or lesser relevance and different combinations of these references may be implicated depending on WSOU's Final Infringement Contentions, the Court's future rulings regarding claim scope, or WSOU's interpretation and application of the Court's future claim construction rulings.  In view of Canon's uncertainty regarding how WSOU will contend the claims apply, the discussion of the different references in Exhibits A and B and the system prior art discussed below may reflect alternative applications of the prior art against the Asserted Claims.  A more detailed discussion of Canon's Section 102 and/or 103 defenses will be set forth in Canon's expert report(s) on invalidity.

Canon provides pinpoint citations to exemplary portions of the prior art for the purpose of fairly disclosing the manner in which the prior art references meet the claim limitations.  Such citations should not be construed to mean that other portions of the prior art references are not relevant to the invalidity of the claims.  Canon specifically reserves the right to rely on the entirety of any or all of the prior art references—whether charted or not charted—as a basis for asserting invalidity of the Asserted Claims and/or as necessary to supplement its invalidity contentions with additional citations and evidence.

### 1.    Anticipation by Patents and Printed Publications and System Art

Based on Canon's understanding of WSOU's Infringement Contentions, at least one or more Asserted Claims are invalid as anticipated under 35 U.S.C. § 102 in view of the patent and printed publication prior art references and system prior art listed below as indicated and discussed in Exhibit A, as well as any methods or systems which embody the concepts disclosed in those references.  Exhibit A is a series of charts, numbered A-1 through A-7, that identify specific examples of where each claim limitation is found in a particular reference.

**Table 1:  List of Anticipatory References**

| Chart | Reference |
|-------|-----------|
| A-1 | QuickTime, by Apple Inc. ("***QuickTime***") |
| A-2 | Adobe Premiere, by Adobe Inc. ("***Premiere***") |
| A-3 | PDR-300 Video File Server, by Tektronix, Inc. ("***PDR300***") |
| A-4 | Media Cleaner Pro 3.0 ("***Media Cleaner***") |
| A-5 | Robust H.263 Compatible Transmission for Mobile Video Server Access ("***Färber***") |
| A-6 | PCT Published Application WO1998026604A1 ("***Dalby***") |
| A-7 | U.S. Patent No. 5,680,322 ("***Shinoda***") |

Canon specifically asserts the references in the table above as anticipatory references under 35 U.S.C. §§ 102 (a), (b), and/or (e), but also asserts that the invention of such systems and/or methods prior to the alleged invention date of the asserted claims may also constitute prior art under 35 U.S.C. § 102(g), which will be confirmed as discovery progresses.

By way of example, *QuickTime* is an extensible multimedia framework developed by Apple Inc., for handling various formats of digital video, picture, sound, and images.  The first version of *QuickTime* was available no later than 1991 as a multimedia add-on for the then-current operating system for Macintosh computers.  *QuickTime* typically came bundled with the Mac OS, for example, coming pre-installed on the Macintosh PowerBook G3 in 1997, which PowerBook G3 touted a number of various peripherals for multimedia editing (*e.g.*, PC Card II, HDI-30 SCSI, VGA, and audio out mini-jacks).

With *QuickTime 3.0* being released for free as of 1998, *QuickTime* and personal computer systems employing *QuickTime* are prior art to the '714 patent under at least 35 U.S.C. § 102(b)

**Additional Support and Reservation of Rights**

*Färber*, *Dalby*, and *Shinoda* were submitted to the Patent and Trials Appeal Board (PTAB) via a related Petition for *Inter Partes* Review (IPR) of the '714 patent in Case No. IPR2021-00965 (Paper No. 5), filed on May 17, 2021, which Petition and accompanying Exhibits are hereby incorporated by reference in their entirety.

Canon's Petition for IPR is currently pending and ongoing.  Therefore, Canon reserves the right to supplement this response as Canon's cooperation with the PTAB develops.

**Additional Products and Reservation of Rights**

Additional products may also constitute invalidating prior art to the '714 patent under 35 U.S.C. § 102(a), (b), and/or (g).  This includes, for example, products that competed with the aforementioned products in the relevant timeframe.

Canon's investigation into additional products is ongoing.  Discovery in this case has not yet commended, and thus Canon reserves the right to supplement this response to identify these, or other, products as its investigation continues.

### 2.   Obviousness

Based on Canon's understanding of WSOU's Infringement Contentions, Canon believes that the patent and printed publication references discussed in Exhibit A, as well as the system art prior art references discussed above, each invalidate one or more of the Asserted Claims. However, if the fact finder determines that some limitation of a given claim was not disclosed by an asserted reference, Canon contends that the charted reference in combination with the knowledge and skill of a person of ordinary skill in the art at the time of the alleged invention and/or in combination with the disclosures of other prior art would have rendered all the Asserted Claims obvious.  Exemplary reasons why this is the case are explained below.

The prior art references evidence teachings, suggestions, motivations, and/or other reasons to combine them in ways that render obvious all of the Asserted Claims.  Certain references within Exhibit B are grouped or categorized according to a particular claim limitation that is disclosed within each reference.  References from within a group share similar reasons as to why it would have been well within the level of ordinary skill in the art and obvious to combine a reference with prior art listed in Exhibit A or with other references in Exhibit B.  Thus, in addition to the specific combinations of prior art disclosed using claim charts, Canon reserves the right to rely on any combination of prior art references disclosed in these contentions.

In Exhibit B, different categories of prior art references are presented and a title is provided for each such category.  The titles are provided for convenience only and do not constitute a binding characterization of what the references under that title disclose.

The Supreme Court has held that the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.  *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739 (2007).  When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one.  *Id*. at 1740.  For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

To determine whether there is an apparent reason to combine the known elements as set forth in the Asserted Claims, a court can look to interrelated teachings of multiple references; the effects of demands known to the design community or present in the marketplace; and the

background knowledge possessed by a person having ordinary skill in the art.  *Id*. at 1740-41.

For example, obviousness can be demonstrated by showing that there existed at the time of

invention a known problem for which there was an obvious solution encompassed by the patent's

claims.  *Id*. at 1743.  Any need or problem known in the field of endeavor at the time of

invention and addressed by the patent can provide a reason for combining the elements in the

manner claimed.  *Id*.  Common sense also teaches that familiar items may have obvious uses

beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the

teachings of multiple patents together like pieces of a puzzle.  *Id*.

       Thus, the motivation to combine the teachings of the prior art is found in the references

disclosed in Exhibits A and B, the system prior art discussed above, and in:  (1) the nature of the

problem being solved; (2) the express, implied and inherent teachings of the prior art; (3) the

knowledge of persons of ordinary skill in the art; (4) the fact that the prior art is generally

directed towards the well-established and crowded art of encoding video images; and (5) the

predictable results obtained in combining the different elements of the prior art.

       One of ordinary skill in the art would have therefore been motivated to make the

combinations and/or modifications due to the recognition at the time of the alleged invention of a

need for video encodings using different tradeoffs to balance quality versus data rate or file size.

Indeed, using different encodings were often needed for a single video sequence to accommodate

its distribution through different mediums, *e.g.*, broadcast, CD, DVD, Internet download,

streaming, etc.  One of ordinary skill in the art would have also understood the need to provide

additional robustness of a compressed video signal against its vulnerability against transmission

errors.  One of ordinary skill would be aware of various video compression methods, multimedia

transmission systems, and error detection methods, like those disclosed in each of the prior art

references and systems disclosed herein.  And one of ordinary skill in the art would have combined these known features to reduce errors in transmission, increase the transmission efficiency of the compressed video, and provide the additional flexibility of random access into a compressed video signal.

Furthermore, in the crowded field of video coding art, concepts in the field were well understood, predictable, and routinely mixed and matched as needed to achieve various design goals.  In some cases, the prior art expressly motivated users to combine known techniques/compressors to create multiple encodings of a video file to accommodate different distribution mediums and/or have the best quality video for editing and or transmission thereof. For example, QuickTime encouraged users to experiment with different well-known compressors:

> **Choosing Video Compression Settings**    Unfortunately, it's impossible to provide the one thing everybody wants: a precise recipe for compressing your video for the Web.  The settings you choose should depend on the content of your video, your personal aesthetics, your audience, and many other factors….  Here, we'll comment on each choice you're required to make in that dialog box. Remember that other applications provide the same choices, so the information we provide here applies no matter what QuickTime tool you use to do the compression….  **Compressor**:  In general, the best of the built-in QuickTime compressors for Web video is *Sorenson Video*.  This compressor does an excellent job of delivering good quality at the very low data rates required for streaming Web delivery.  Alternatively, you may want to try with *H.263* if you need very low data rates and your video has a good deal of motion. *Cinepak* is yet another choice, though it won't achieve very low data rates."

QuickTime 4 Guide at pp. 258-259.  When users changed the key frame frequency to accommodate different distribution channels / circumstances, one of ordinary skill would understand that this would motivate users to combine known coding techniques to encode a video frame in two different formats, as claimed in the '714 patent.

13

As an even further example, many of the references cited herein supported the same coding standards (*e.g.*, MPEG and ITU standards) or often expressly referenced the teachings of one another. Indeed, *Dalby* expressly cites to the teachings of *Färber*. Dalby at p. 2:22-30. Although an "express, written motivation to combine" is not required (*Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004)), *Dalby's* express statement that it is enhancing *Färber* confirms that one of ordinary skill in the art would look to both references to arrive at the claimed solution of the '714 patent.

For at least the reasons described above and below in the examples provided, as well as in the attached claim charts, it would have been obvious to one of ordinary skill in the art to combine any of a number of prior art references, including any combination of those identified in Exhibits A and B and the system prior art references discussed above to meet the limitations of the Asserted Claims.

Furthermore, the specification of the '714 patent admits that several elements of the claims were well-known at the time of the alleged invention, including without limitation: how to encode INTRA and INTER video frames for a video sequence, transmit the encoded video sequence, and decode those transmitted video frames; that a digital "video sequence consists of a series of still pictures or frames;" and that the first picture of a scene is typically INTRA-coded or that scene changes/scene cuts are also typically INTRA-coded. '714 Patent at 1:10-11, 37-45, 2:4-9. Incorporating these familiar elements according to known methods would yield predictable results and is accordingly obvious under *KSR*.

As set forth throughout Canon's Preliminary Invalidity Contentions and accompanying claim charts, Canon contends that each of the Asserted Claims are obvious because each limitation of each Asserted Claim is well known or obvious as is the combination of these

limitations.  Exhibit B provides chart B1, which sets forth additional evidence of obviousness for certain claim elements.  Based on Canon's understanding of WSOU's Infringement Contentions, each list in Exhibit B identifies specific pinpoint citations exemplifying where the particular limitation can be found in the prior art references within each list.  For the reasons explained herein and in Exhibit B, a person of ordinary skill in the art would have been motivated to combine the references in each chart in Exhibit B with any of the primary references listed in Exhibit A with respect to the limitation each chart addresses.  The absence of any reference charted in Exhibit A from one or more charts of Exhibit B is not an admission that such reference does not disclose any claim limitation.

**Table 2:  Additional Disclosure and Evidence of Obviousness**

| Chart | Description |
|:-----:|:-----------:|
| B-1 | B-frames |

### 3.    Additional Background References

In addition to the anticipatory and obviousness references identified above, Canon may also rely on the references in the table below to establish the state of the art and the knowledge of a person of ordinary skill in the art at the time of the alleged inventions of the Asserted Claims. The basic concepts and components in the Asserted Claims were all well-known to persons of ordinary skill in the art prior to the alleged priority date of the Asserted Patent as reflected in the references listed in the following table.

For example, many of the methods and systems charted in Exhibit A and Exhibit B were intended to be used with video created on digital video (DV) cameras, such as Canon's GL1 MiniDV Digital Camcorder and XL1 Digital Camcorder Kit.  Moreover, the use of MPEG compression, which includes INTRA and INTER coding, was a feature of video cameras such as

Hitachi, Ltd.'s MP-EG1 Digital Recorder Camera.  Touting the world's first single-chip MPEG-1 encoder/decoded on a portable electronic device, the Hitachi MP-EG1 camera evidences that many of the claimed features and methods of the Asserted Claims were well-known to persons of ordinary skill in the art prior to the alleged priority date of the Asserted Patent.

Furthermore, Canon contends that although none of the preambles of the Asserted Claims are limiting, the charted reference in combination with the knowledge and skill of a person of ordinary skill in the art at the time of the alleged invention and/or in combination with the disclosures of other prior art, such as evidenced by the Background References listed in Table 3, would have rendered all the Asserted Claims obvious.  By way of example, although Asserted Claim 12 recites a "portable electronic device incorporating a video encoder" in the preamble, Canon asserts that this non-limiting recitation was nevertheless obvious and well-understood by the use of MPEG and encoding devices that balanced the tradeoff between power and processing.

**Table 3:  List of Additional Background References[2]**

| **Reference** |
| --- |
| Hitachi MP-EG1 Digital Recorder Camera |
| Hitachi MP-EG10 Digital Recorder Camera |
| Canon GL1 MiniDV Digital Camcorder |
| Canon XL1 Digital Camcorder Kit |
| Leitch VR440 |
| Sony VAIO Digital Studio |

---

[2] In addition to the references that evidence and  support each system art prior art reference charted in Exhibit A, this table includes additional support thereof.

Discovery has not yet commenced, and Canon's prior art investigation is therefore not yet complete. Canon reserves the right to present additional items of prior art under 35 U.S.C. § 102(a), (b), (e) and/or (g), and/or 35 U.S.C. § 103 located during the course of discovery or further investigation. Canon further reserves the right to assert invalidity under 35 U.S.C. §§ 102(c), (d), and/or (f) to the extent that discovery or further investigation yields information forming the basis for such assertions.

### C.     Invalidity Based on 35 U.S.C. §§ 112

Canon lists below exemplary grounds upon which it contends that the Asserted Claims are invalid, under at least WSOU's apparent construction of the claims in its Infringement Contentions, for failure to meet one or more requirements of 35 U.S.C. § 112. This is particularly the case with respect to the apparent overbroad constructions that WSOU is applying to the Asserted Claims, which go beyond (and are not adequately described or enabled by) the purported inventions disclosed in the '714 patent. To the extent the Asserted Claims may eventually be construed so broadly as to cover the accused products, such a construction would render the Asserted Claims invalid for failure to meet the requirements of 35 U.S.C. § 112. A more detailed discussion of Canon's written description, enablement, and indefiniteness defenses will be set forth in Canon's expert report(s) on invalidity.

Canon's investigation concerning invalidity under 35 U.S.C. § 112 is ongoing. For example, discovery and the *Markman* process have not commenced, and WSOU has not provided adequate infringement contentions. Thus, Canon reserves the right to supplement and/or amend its invalidity contentions with respect to § 112. Such supplementation and/or amendments may include, but are not limited to, invalidity contentions based on indefiniteness,

17

lack of written description, and/or lack of enablement should the claims be construed under 35 U.S.C. § 112(6).

### 1.    Written Description / Enablement

Several Asserted Claims are invalid under 35 U.S.C. § 112(1) because they fail to provide an adequate written description of certain claim limitations such that one of ordinary skill in the art would recognize that the named inventor(s) had possession of those claim limitations and/or fails to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.  These claims include at least the following, as well as all claims that depend from the particularly identified claims below:

- Under WSOU's apparent interpretation of the Asserted Claims (*see* Infringement Contentions Ex. 1), all of the Asserted Claims are invalid because the specification lacks adequate written description support for the full scope of the claims and fails to enable the full scope of the claims. In particular, WSOU appears to assert its claim covers any time a video frame is encoded as a INTRA coded frame and an INTER coded frame, regardless of whether those frames can be used address the video transmission efficiency and resiliency problems allegedly addressed by the disclosed embodiments of the '714 Patent. *See, e.g.,* '714 Patent at 2:13-3:59.

### 2.    Indefiniteness

Several Asserted Claims are invalid under 35 U.S.C. § 112(2) because they fail to particularly point out and distinctly claim the subject matter which the named inventor(s) regard as the alleged invention.  The claims, read in light of the specification and file history, "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  The indefinite claims include at least those identified below and their respective dependent claims:

- "a first picture or part thereof" or "a segment of a first picture or part thereof" (all claims): all of the Asserted Claims are invalid because they fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention because a person of skill in the art has no basis to define the limits of "a first

picture or part thereof." For example, the patent does not provide a basis to understand whether "a first picture" is limited to a particular file structure, representation, or some other abstract concept. As such, it provides no basis for a person of skill in the art to distinguish one "first picture" from another "first picture." Furthermore, the claims use of the term "or" renders the scope of the claim ambiguous because it is unclear which of the two alternatives recited is required, in particular when those alternatives provide antecedent basis for other limitations in the claims. Furthermore, with respect to claim 9, it is unclear what distinguishes a segment from a first picture from a part of a first picture. Accordingly, neither the claims, specification, nor the file history provide any basis to inform a person of skill in the art of the scope of this limitation.

- "another picture" (claim 3): it is unclear whether the "another picture" in claim 3 is a new element or has antecedent basis from "another picture" recited in claim 1.

Dated:  July 7, 2021

Respectfully submitted,

*/s/ Richard F. Martinelli*
Richard F. Martinelli (*pro hac vice*)
rmartinelli@orrick.com
Joseph A. Calvaruso (*pro hac vice*)
jcalvaruso@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000
Fax: (212) 506-5151

John M. Jackson (Texas Bar No. 24002340)
jjackson@jw.com
JACKSON WALKER, LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-6000
Fax: (214) 953-5822

*Attorneys for Defendant Canon Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served or delivered electronically to all counsel of record on the 7th day of July, 2021.


*/s/   Weimin Ning*

Weimin Ning