# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | CIVIL ACTION 6:20-cv-00980-ADA<br>CIVIL ACTION 6:20-cv-00981-ADA |
| _Plaintiff,_ | |
| v. | |
| CANON, INC., | |
| _Defendant._ | |
| CANON INC., | CIVIL ACTION 6:20-cv-00980-ADA |
| _Third-Party Plaintiff,_ | |
| v. | |
| NXP USA, INC., | |
| _Third-Party Defendant._ | |

**PLAINTIFF WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 1

II.    CONSTRUCTION OF THE '346 PATENT DISPUTED TERMS ......................................... 2

        A.    The "T", "N," and "F" Terms ................................................................... 2

               1.    The Plain and Ordinary Meanings Control the Constructions of the "T," "N," and "F" Terms ................................................ 2

               2.    Canon's Importation of Limitations Into the "T," "N," and "F" Terms Is Improper ............................................................ 3

                        a.    There Is No Disclaimer In The '346 Patent File History ............... 4

                        b.    The "Purpose of Invention" Cannot Limit The Claim Terms ........ 6

                        c.    The Patent Examples Cannot Limit The Claim Terms .................. 7

                        d.    The "T", "N," and "F" Terms Are Not Indefinite ......................... 8

        B.    "At Least One of the Selected Frequencies is Prohibited from Subsequent Selection" (All Asserted Claims) ........................................... 9

        C.    "Pseudorandom[ly]" (All Asserted Claims) ............................... 10

III.    CONSTRUCTION OF THE '714 PATENT DISPUTED TERMS ............................... 10

        A.    The "Corresponding Temporally Predicted Second Encoded Representation" Terms (All Asserted Claims) ...................................... 10

        B.    "A video codec" (Claims 7, 13), "A multimedia system" (Claims 8, 13), "A portable electronic device" (Claim 12) ............................... 12

        C.    "The Encoder is Arranged to Transmit" (Claim 31) ........................... 14

        D.    "Temporally Prior" (Claim 3) ............................................... 14

        E.    "Said Other Picture" (Claims 29, 32) ..................................... 15

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andersen Corp. v. Fiber Composites*,
  LLC, 474 F.3d 1361 (Fed. Cir. 2007) ..................................................................................... 13

*Autogiro Co. of Am. v. United States*,
  384 F.2d 391 (Ct. Cl. 1967) .................................................................................................... 13

*BASF Corp. v. Johnson Matthey, Inc.*,
  No. 14-1204-RGA, Dkt. No. 179 (May 22, 2018 D. Del.) ........................................................ 9

*Bd. of Regents v. EOS GmbH Electro Optical Sys.*,
  No. A-03-CA-113-SS, 2003 WL 25787490 (W.D. Tex. Dec. 4, 2003) ................................... 6

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001) ............................................................................................ 5, 6

*Boeing Co. v. United States*,
  57 Fed. Cl. 22 (2003) ........................................................................................................... 13, 14

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................................................... 6, 11

*E-Pass Techs., Inc. v. 3Com Corp.*,
  343 F.3d 1364 (Fed. Cir. 2003) ........................................................................................... 6, 11

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005) .............................................................................................. 14

*Grantley Pat. Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*,
  No. CIV.A. 9:06CV259, 2008 WL 5428186 (E.D. Tex. Apr. 21, 2008) ................................ 12

*Graphon Corp. v. Autotrader.com, Inc.*,
  No. CIVA205CV530TJW, 2007 WL 1870622 (E.D. Tex. June 28, 2007) ............................. 15

*In re Hayes Microcomputer Prod., Inc. Pat. Litig.*,
  982 F.2d 1527 (Fed. Cir. 1992) .............................................................................................. 13

*Intervet Am., Inc. v. Kee-Vet Lab'ys, Inc.*,
  887 F.2d 1050 (Fed. Cir. 1989) ................................................................................................ 5

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ................................................................................................ 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)................................................................8, 9

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
    442 F.3d 1331 (Fed. Cir. 2006)................................................................11

*Optis Wireless Tech., LLC v. Apple Inc.*,
    No. 2:19-CV-00066-JRG, 2020 WL 1692968 (E.D. Tex. Apr. 7, 2020) ..................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)................................................................11

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003)..................................................................5

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)................................................................12

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
    607 F.3d 784 (Fed. Cir. 2010)................................................................7, 8

*Sonix Tech. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)................................................................8, 9

*Trover Grp., Inc. v. Dedicated Micros*
    USA, No. 2:13-CV-1047, 2015 WL 1263358 (E.D. Tex. Mar. 19, 2015) ..................12

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016)................................................................11

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development (WSOU"), submits this Sur-Reply Claim Construction Brief ("Brief") in support of WSOU's proposed claim constructions and phrases identified for construction from the claims of U.S. Patent Nos. 7,054,346 (the "'346 patent," Ex. 1[1]) and 7,116,714 (the "'714 patent," Ex. 2) and in response to Defendant Canon, Inc.'s ("Canon") Reply Claim Construction Brief ("Canon Reply Brief" or "Canon Reply Br."). (C. A. Nos. 6:20-cv-00980-ADA, Dkt. No. 65; 6:20-cv-981-ADA, Dkt. No. 53).

## I.    INTRODUCTION

The Court should adopt WSOU's proposed plain and ordinary meaning for each of the claim terms, and reject Canon's strained constructions. Canon's proposed constructions seek to improperly import limitations that are (i) contrary to the claim language itself, (ii) not found anywhere in the patent specification, and/or (iii) taken out of context from the prosecution history and are even contrary to other statements therein. Providing no additional support for its flawed positions, Canon merely parrots the same arguments from its opening brief, relies on much of the same inapposite case law, and continues to mischaracterize the prosecution history. Indeed, Canon's own expert, Dr. Zhi Ding, confirms that most of Canon's proposals for the '346 patent terms are not found anywhere in the patent.

Moreover, Canon's indefiniteness arguments should also be rejected because Canon cannot satisfy its heavy burden of establishing by clear and convincing evidence that any of the disputed terms are indefinite. Indeed, Dr. Ding's testimony undermines any such argument for the '346 patent.

---

[1] Unless otherwise specified, all citations to "Ex. __" refer to exhibits to the October 15, 2021 Declaration of Jonathan K. Waldrop in support of this Sur-Reply Claim Construction Brief, concurrently filed.

## II.   CONSTRUCTION OF THE 346 PATENT DISPUTED TERMS

### A.   The "T", "N," and "F" Terms

#### 1.   The Plain and Ordinary Meanings Control the Constructions of the "T," "N," and "F" Terms

As explained, the Court should apply the plain and ordinary meanings and reject Canon's proposed constructions.  For example, claim 1 teaches a method where a device, for example, "transmits signals using frequency hopping over a time period T," where the device "pseudorandomly selects a frequency from N number of frequencies such that over at least a portion of the time period T, the frequency selection is constrained to less than the N frequencies and such that at least one of the selected frequencies is prohibited from subsequent selection in at least a portion of the time period T, where N is the total number of frequencies available for frequency hopping."  Ex. 1 ('346 patent) at 7:46-58.  Based on the plain language, (i) time period T can be the entire time period for which the frequency hopping occurs or some shorter amount of time;[2] and (ii) the term "N frequencies" is expressly defined as "the total number of frequencies available for frequency hopping."  As explained, that is consistent with the specification and prosecution history.  *See, e.g.*, WSOU's September 15, 2021 Responsive Claim Construction Brief ("WSOU Resp. Br.") (C. A. No. 20-cv-980, Dkt. No. 55; C. A. No. 20-cv-981, Dkt. No. 44) at 6-7, 14-15.

An example of an implementation is where the time period T is the entirety in which one device transmits data to a second device using frequency hopping, such that the data

---

[2] Canon contends that "time period T is not the entirety that the frequency hopping occurs." Canon Reply Br. at 6-7.  But that is wrong and contrary to the plain meaning of the claim and specification. Indeed, Canon's own expert, Dr. Ding, testified that time period T could be the entirety of time in which frequency hopping occurs.  Ex. 3 (October 12, 2021 Deposition Transcript of Dr. Zhi Ding ("Ding Tr.")) at 67:13-68:8; 84:23-85:2.  Dr. Ding also testified that the specification does not define the length of time for time period T.  *Id*. at 51:12-20; 55:13-24; 57:13-15.  Thus, there is no basis to improperly limit time period T.

communication time is 10 minutes.  In such an example, one can also assume that the time it takes for each frequency hop is 1 minute for a total of 10 hops ($H_1 - H_{10}$), and that there are only 5 frequencies (*i.e.*, $f_1 - f_5$) for which to hop.  A frequency hopping algorithm, for example, can be implemented where $f_1$ is used during $H_1$, and prohibited from being used in the next hop, $H_2$.  Under such an example, $f_1$ is prohibited from being used in "at least a portion of the time period T." Indeed, Canon's expert, Dr. Ding, agreed that 1 hop (i.e., or 1 minute time slot) is *at least a portion of time period T* in the above example.  Ex. 3 (Ding Tr.) at 100:22-101:1.  Thus, as explained, there is no reason to construe these terms otherwise.

### 2.     Canon's Importation of Limitations Into the "T," "N," and "F" Terms Is Improper

Canon maintains constructions that limit "T," "N," and "F" Terms in three ways by requiring these terms to be limited to an amount of time that is (i) "pre-set"; (ii) limited to "***one*** cycle of frequency hopping"; and/or (iii) "no greater than the amount of time it would take to use each channel available for frequency hopping ***once***."[3]  In its Reply Brief, Canon further clarified that these terms "require[] [time period] T to be less than or equal to N hops," meaning that once a frequency is used that frequency *cannot* be used again during the remainder of time period T. Canon Reply Brief at 7.  As explained, that is wrong, contrary to the claim language, and improperly imports limitations.  Indeed, Canon's own expert, Dr. Ding, admitted that the '346 patent does not expressly define these terms in such a way:

---

[3] Canon also contends that WSOU allegedly agrees that the "T,", "N", and "F" terms are "preset" or "preconfigured."  Canon Reply Br. at 1.  That is incorrect.  Canon misstates WSOU's position. The time period T need not be preset.  As explained, T can be the entire time period over which a device transmits signals using frequency hopping or some other period of time.  WSOU Resp. Br. at 7.  Dr. Ding also agrees the communication time in frequency hopping in not prelimited (or preset).  Ex. 3 (Ding Tr.) at 101:10-11; 101:17-102:9.

> Q. Dr. Ding, is there anywhere in the patent other than the example, are there words in the patent that define the term "time period T" as being limited to or equal to the -- the N number of frequencies?
>
> A. Within -- within -- within the patent itself, it -- the patent does not explicitly say so in the patent specification that T is limited to N or to N or smaller.

Ex. 3 (Ding Tr.) at 51:12-20.

> Q. I understand that. My question to you is: That construction in those exact words, are there found anywhere within the -- within the patent specification?
>
> A.  The answer is no . . . . So this is not literally stated in the patent '346 itself.

*Id.* at 55:13-24.

> Q. Did the patentee define F to be such that the – that a frequency can only be used once during the entirety of time period T?
>
> A. Does the patentee define it though in plain language?  The answer is no. . . .

*Id.* at 103:22-104:1.

Nonetheless, Canon's Reply Brief does nothing more than repeat its original arguments from its Opening Brief to support its assertion that the proposed limitations must be imported into the claim terms.  As set forth below, Canon's arguments are unsupported by fact or law.

a.    There Is No Disclaimer In The '346 Patent File History

Canon repeatedly argues that an alleged file history disclaimer limits the "T," "N," and "F" terms to require that no frequency is used more than once during time period T.  Canon Reply Br. 1-2, 6-7.  In support, Canon repeatedly points to one sentence of the applicants' statements and another sentence in the Notice of Allowance.  *Id.*  More specifically, Canon contends that the applicant stated that the prior art is "***not* '*prohibited from re-selecting a frequency*, from a set of allowable frequencies, that has already been selected *during a time period, T, as in the claims of the present invention*,'" and that the Examiner agreed.  *Id*. at 2 (emphasis in original).  But those

4

statements are taken out of context, contrary to other statements, and are insufficient to rise to the level of a disclaimer.

First, the applicants amended certain pending claims to include the following language, which is starkly different than that Canon points to: "such that at least one of the selected frequencies is prohibited from subsequent selection *in at least a portion of the time period T*."

Second, immediately preceding the statement that Canon cites, the applicants explained that the claims include:

> "[a] feature of pseudorandomly selecting a frequency or frequencies from a set of frequencies that has been constrained, reduced or limited 'such that at least one of the selected frequencies is prohibited from subsequent selection in at least *a portion of [a] time period, T*.'"

*See* Ex. 4 (April 5, 2005 Request for Reconsideration) at 11 (emphasis added). That is consistent with the plain language of the claim, and starkly contrary to Canon's construction. But Canon's Reply Brief fails to address those statements.

Canon also fails to acknowledge that the Notice of Allowability made clear that the invention over the prior art was that the "repetition of frequency over time period T is reduced" – but need not be eliminated. Ex. 5 (December 15, 2005 Notice of Allowability) at 2. Thus, the out of context statements that Canon cites does not amount to a "clear and unmistakable" disavowal of claim scope, particularly where it contradicts the claim language.[4]

---

[4] Courts have consistently declined to find disclaimer on similar facts involving inaccurate statements or general descriptions of the claimed invention that contradict the words of the claim and specification. *See, e.g., Intervet Am., Inc. v. Kee-Vet Lab'ys, Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989) (holding that erroneous statement made during prosecution does not limit claim scope because "[t]he claims themselves control"); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1089–91 (Fed. Cir. 2003) (finding no clear disclaimer because the statement made was "facially inaccurate" in light of the remainder of the prosecution history); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001) (finding no clear disclaimer because "a person of reasonable intelligence would not be misled into relying on the erroneous statement, for it is contrary not only to the plain language of the claims

b.        The "Purpose of Invention" Cannot Limit The Claim Terms

Canon contends that the purported purpose of invention is to eliminate frequencies from being repeated during time period T, and that its proposed constructions are consistent with that purpose.  Canon Reply Br. at 2-3.  But that is not the stated purpose of the invention, even though it can be the result.  As explained, the stated purpose is to *minimize* or *reduce* frequency repeats during time period T – not necessarily to eliminate repeats.  Ex. 1 ('346 patent) at 3:38-40.  Indeed, Canon's expert, Dr. Ding, agreed that the patent specification describes the objective of the invention to be to reduce or minimize frequency repeats.  Ex. 3 (Ding Tr.) at 65:18-66:3.

Additionally, Canon overstates the use of the purported "objective of the claimed invention" in the claim construction process.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1323-24 (Fed. Cir. 2012) (rejecting argument that a purported "object of the invention" controlled claim construction).  The Federal Circuit has clarified that "[t]he court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention."  *See E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003).  Here, the purported purpose cannot be used override the plain language of the claims.

Additionally, Canon's contention that WSOU's plain and ordinary meaning construction "would actually ***increase*** frequency repetitions in violation of the purpose of the invention" is wrong.  Canon Reply Br. at 2-3.  Nor did Dr. Cooklev agree with that bogus contention.  Under the plain and ordinary meaning, the invention would necessarily result in a reduction of the use of a frequency that was previously selected because claim 1 requires that at least one previously

and the specification, but also to other statements in the same prosecution document"); *Bd. of Regents v. EOS GmbH Electro Optical Sys.*, No. A-03-CA-113-SS, 2003 WL 25787490, at *6 (W.D. Tex. Dec. 4, 2003) ("The prosecution history statement [that] describes generally the features of the claimed invention . . . cannot override the claim language itself, which controls the bounds of the claim.").

selected frequency is "prohibited from subsequent selection in at least a portion of the time period T." Canon's hypotheticals do not demonstrate otherwise. The fact that there could be a frequency hopping algorithm where at least one previously selected frequency is prohibited from subsequent selection in at least a portion of the time period T but permits the use of a frequency more than once, over the time period T, would always result in "more repetitions than would occur under Canon's construction." But that does not mean there is an *increase* in the repeated use of frequencies, as Canon wrong asserts. Canon is measuring that increase in relation to Canon's proposed construction that requires no repetition. But that is contrary to the claim language.

### c.   The Patent Examples Cannot Limit The Claim Terms

Canon insists that the specification is consistent with Canon's proposed constructions that "cover frequency hopping over many short time periods T." Canon Reply Br. at 6-7. That is wrong. In fact, Canon's expert, Dr. Ding, agreed that the specification does not expressly define the time period T. Ex. 3 (Ding Tr.) at 51:12-20. Rather, Canon and Dr. Ding rely upon the examples in the specification. But they misread the examples. More specifically, in describing Fig. 1, Dr. Ding limits T to the single speech frame 1 (a hopping set). Ex. 3 (Ding Tr.) at 46:5-17. However, Fig. 1 does not explicitly define "Speech frame 1" as "time period T." By contrast, the specification describes Fig. 1 to cover "an illustrative time period," and Fig. 1 includes not just one Speech frame 1 but also an overlapping Speech frame 2. Ex. 1 ('346 patent) at 2:52-54.[5]

Moreover, the examples cannot be imported to improperly narrow the claims, particularly because they conflict with the claim language. *See Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) ("A construing court's reliance on the specification must not go so

---

[5] As yet another example, Dr. Ding and Canon ignore that the patent in describing "a sequence of 8 bursts" refers to a speech frame as a "time slot" rather than "a time period." Ex. 1 ('346 patent) at 1:28-33.

far as to import limitations into claims from examples or embodiments appearing only in a patent's written description [] unless the specification makes clear that the patentee [] intends for the claims and the embodiments in the specification to be strictly coextensive.") (internal quotations omitted); *accord JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005).

d.    The "T", "N," and "F" Terms Are Not Indefinite

Canon repeatedly argues that these terms are indefinite unless they are restricted to time period T that is less than or equal to N frequencies, where there cannot be any repeated use of frequencies.  Canon Reply Br. at 4-5.  That is wrong.  As explained, these terms are used in algorithms and to program software and hardware.  WSOU Resp. Br. at 9-14, 17-19.  Indeed, Canon's own expert, Dr. Ding admitted that the "T," "N", and "F" terms need not be pre-defined in frequency hopping algorithms.  Ex. 3 (Ding Tr.) at 59:17-18, 20-25.  Dr. Ding further admitted that he is capable of drafting a frequency hopping algorithm with these terms but without the constraints that Canon imposes in its constructions.  *Id*. at 87:10-88:7.

Canon further argues that WSOU's reliance on the specification to delineate the scope of these terms is allegedly inconsistent with WSOU's construction for plain and ordinary meaning.  Canon Reply Br. at 4-5.  In support, Canon cites *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370 (Fed. Cir. 2017) and *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351 (Fed. Cir. 2008) to argue that "[i]f the specification is required to enable a POSITA to understand the bounds of the claim, then the construction needs to reflect those bounds in order to resolve the parties' dispute."  Canon Reply Br. at 4-5.  However, neither case supports Canon's narrow reading.  In *Sonix*, the Court held that the term "visually negligible" is not purely subjective and not indefinite because "the written description and prosecution history provide sufficient support to inform with reasonable certainty those skilled in the art of the scope of the invention."  *Sonix*, 844 F.3d at 1381.  In *O2 Micro*, the Court held that the plain and ordinary meaning of a term may

8

be inadequate "when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361.  Neither Court rejected the ordinary meaning of the terms requiring the constructions to import the limitations from the specification, as Canon contends.  In fact, in *Sonix*, the appellees had agreed to the ordinary-meaning constructions.  *Sonix*, 844 F.3d at 1380.

Canon's Reply Brief also fails to address that courts look to see whether the claims and specification let the public know that any value can be used so long as the claim term plays its claimed role in the claimed process or device.  WSOU Resp. Br. at 11-12.[6]

**B.**   **"At Least One of the Selected Frequencies is Prohibited from Subsequent Selection" (All Asserted Claims)**

Canon insists that the Court adopt its construction that improperly imports two limitations: (i) that "a frequency that has already been used during time period T is prohibited from being reused during the remainder of the time period T"; and (ii) that said frequency is "prohibited from being reused *solely* because it has been previously used."  However, Canon's Reply Brief merely repeats the same argument as in its opening brief – that its construction is consistent with the specification and prosecution history.  As explained, that is wrong.  WSOU Resp. Br. 19-20; *see also supra* at 3-7.  And Canon's Reply Brief fails to explain why the Court should import the word "solely" and swap out "used" for "select".  Neither are found in the claim phrase nor expressly used to define the term in the specification.  Tellingly, Canon's expert did not offer an opinion on this term.

---

[6] In both cases that WSOU cited and Canon failed to address, the district courts adopted plain and ordinary meanings without requiring import of additional limitations in the constructions after resorting to the specification to delineate the scope of those terms.  *See BASF Corp. v. Johnson Matthey, Inc.*, No. 14-1204-RGA, Dkt. No. 179 (May 22, 2018 D. Del.); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-CV-00066-JRG, 2020 WL 1692968, at *12 (E.D. Tex. Apr. 7, 2020).

C.     **"Pseudorandom[ly]" (All Asserted Claims)**

Canon argues that WSOU's construction of "pseudorandom[ly]" is "unworkable" and "untenable". Canon Reply Br. at 8. That is incorrect. As explained, the plain and ordinary meaning controls and is consistent with the intrinsic record. WSOU Resp. Br. at 21. Indeed, Dr. Ding explained that the term is well-known to by POSITAs as of May 2001. Ex. 3 (Ding. Tr) at 116:7-17, 118:20-24. Therefore, no construction is necessary.

Moreover, while Canon and Dr. Ding do not dispute that their proposed construction essentially equates its meaning to that of "random", neither explain the basis for doing so. But each should have different meanings. Indeed, when asked to explain each, Dr. Ding struggled to articulate definitions and even refused to opine on a construction for the term random because it would require a statistician or mathematician, while confirming that he or a POSITA lacks that expertise. Ex. 3 (Ding Tr.) at 107:15-108:18. Dr. Ding's inability to explain articulate the meaning of such terms makes that construction unclear and inconsistent. Thus, Canon's construction should be rejected.

## III.   CONSTRUCTION OF THE '714 PATENT DISPUTED TERMS

A.     **The "Corresponding Temporally Predicted Second Encoded Representation" Terms (All Asserted Claims)**

The Court should reject Canon's proposed construction because it seeks to import limitations into the claim. WSOU Resp. Br. at 24-27. Indeed, Canon now admits that its construction adds the requirement of "including both encoded representations in a ***single*** encoded video." Canon Reply Br. at 11-12 (emphasis added). However, nothing in the intrinsic record expressly supports the importation of that limitation. Instead, Canon relies heavily on what it considers is the purported benefit of the invention. Canon Reply Br. at 10-11. That argument is based on a statement in the specification that "corresponding to INTRA frames as discussed above

introduces error resilience." Ex. 2 ('714 patent) at 12:55-61. But nothing there or in any of the other cited portions of the specification requires "including both encoded representations in a single encoded video." Rather, the cited portion states "[t]he invention is applicable to *any* video coding protocol using temporal prediction." *Id*. at 12:55-56 (emphasis added). Also, the cited portion is preceded by an explanation that the "video coding protocols discussed above: these are intended to be merely *exemplary*." *Id*. at 12:53-55 (emphasis added). As explained in the patent, the benefit of the invention can be accomplished whether in a "single" video or not.[7] Further, Canon's Reply Brief again exaggerates the importance of the purported objective of the claimed invention in the claim construction process. *See supra* at 6 (citing *Dealertrack*, 674 F.3d at 1323-24; *E-Pass Techs.*, 343 F.3d at 1370 ("[t]he court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention.").[8]

Moreover, the cases upon which Canon relies is distinguishable. For example, in *On Demand*, the Court relied on evidence from the specification that the patent was directed to a narrower definition of the term "customer" than anyone who buys goods or service. *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1339–40 (Fed. Cir. 2006). This was supported by the claims themselves. *Id*. at 1335-6. Here, on the other hand, Canon points to nothing in the claims or specification, other than the alleged purpose of the invention. That is insufficient.

---

[7] The remarks that Canon cites from the prosecution history in no way suggest that the invention is limited to using a single video. Not only does Canon misrepresent the prosecution history, Canon also misquotes WSOU's position using ellipses with respect to how the Court should treat the prosecution history. The case law is clear—*Phillips* explained that the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

[8] Canon's reliance on *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) is inapplicable because in that case "critical language in the claims and specification" necessitated a narrower meaning. Here, however, WSOU's construction is consistent with the "only meaning that matters in claim construction[, which] is the meaning in the context of the patent." *Id*. at 1363.

Similarly, in *Trover*, the claim itself required storing a second image "***only if***" a condition is met, making plaintiff's construction entirely inconsistent with the claim.  *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047, 2015 WL 1263358, at *2-3 (E.D. Tex. Mar. 19, 2015). (emphasis added).  By contrast, nothing in the claim here requires limiting the claim to a single video.  Also, unlike here, the prosecution history in *Trover* contained "clear disclaimers."  *Id.* Canon has pointed to no such disclaimer here.[9]

Likewise, the Court in *Grantley*, in fact, refused to limit claim scope to a preferred embodiment stating that "[a]bsent any clear disclaimer of claim scope, the court would not import limitations from the specification into the claims."  *Grantley Pat. Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, No. CIV.A. 9:06CV259, 2008 WL 5428186, at *4 (E.D. Tex. Apr. 21, 2008). Again, Canon has not pointed to any disclaimer here.

Moreover, Canon does not provide any clarity (other than citing to WSOU's general description of the technology) as to how its construction would make sense in the context of the claim read as whole.  Canon Reply Br. at 12.  Nothing in the claim relates to Canon's imported limitation and the claim would be incomprehensible with Canon's proposed construction.[10]

**B.**  **"A video codec" (Claims 7, 13), "A multimedia system" (Claims 8, 13), "A portable electronic device" (Claim 12)**

As explained, these preambles are limiting because the claims would otherwise be identical and these claim terms provide essential structure.  WSOU Resp. Br. at 27-35.  Canon contends that

---

[9] Notably, Canon, in a similar fashion, misapplies *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1251-52 (Fed. Cir. 1998). There, the patent was "[r]eplete with references that indicate that the patentee was preeminently concerned with generating a trigger signal as soon as possible after contact." *Id.* Here, as described above, there are no references in the patent limiting to a single video, and the specification, in fact, supports the opposite conclusion.

[10] In a footnote, Canon purportedly suggests adding an additional phrase to its construction, but this in no way cures the lack of clarity.  Further, it would be improper at this point for Canon to shift its position and change its proposed construction.

WSOU misapplies the law and that the structures are not essential.  Canon Reply Br. at 12-14.  That is wrong.  First, WSOU did not misstate or misapply the law.  Contrary to Canon's assertion, courts have used claim differentiation as a basis to construe preambles as limiting.  Indeed, the even the cases that Canon cites demonstrates as much.  *See Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967) ("[c]laim differentiation is a guide").  Because even Canon admits the claims would be identical but for the preambles, the preamble should be limiting.[11]

Canon further belittles the evidence WSOU presents showing that each limitation is essential, by characterizing WSOU's evidence as "passing references."  Canon Reply Br. at 13.  But they are not.  The intrinsic evidence clearly shows that each limitation is essential.  For example, Figure 3 depicts a "video codec" and it is constituent parts.  If anything, it appears that Canon takes issue where the descriptions may be short.  However, the length of a description does not render it non-essential.  *See, e.g.*, *In re Hayes Microcomputer Prod., Inc. Pat. Litig.*, 982 F.2d 1527, 1534 (Fed. Cir. 1992) ("[c]ertainly no length requirement exists for a disclosure to adequately describe an invention.  While some inventions require more disclosure, the adequacy of the description of an invention depends on its content in relation to the particular invention, not its length.").

Canon misstates WSOU's argument regarding the positioning of the phrase "a video codec" in claim 13.  Canon admits that the transitional phrase must be right ***after*** the preamble.  Canon Reply Br. at 14.  However, Canon, inconsistent with established case law, limits transitional phrases to just two examples.  In fact, the term "including" can be a transitional phrase and Claim 13 reads "A multimedia system ***including*** a video codec . . . ."  *See, e.g.*, *Boeing Co. v. United*

---

[11] The cases that Canon cites to the contrary are distinguishable.  For example, the Court in *Anderson* did not apply claim differentiation because the claims are *not* identical.  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007).

*States*, 57 Fed. Cl. 22, 27 (2003) (listing "including" as a transitional phrase).  As such the "a video codec" limitation in Claim 13 is not part of the preamble at all because it appears after the transitional phrase.

The remainder of Canon's arguments provide no more than conclusory assertion that the examiner did not rely on the preamble language.  That is not the case.  As described in WSOU's opening brief, the examiner clearly relied on and considered these terms limitations in his September 30, 2005 Final Rejection (Ex. 6).[12]  *See* WSOU Resp. Br. at 33-35.

### C.    "The Encoder is Arranged to Transmit" (Claim 31)

Canon contends that a POSITA would not understand the difference between a transmitter and an encoder.  Canon Reply Br. at 14.  That is wrong.  In fact, Canon admits that a POSITA "could create a system that encodes and transmits."  *Id*.  That is consistent with claim language and specification.  WSOU Resp. Br. at 35-37.  Thus, the term is not indefinite.  Moreover, Canon did not previously raise indefiniteness, and therefore, the argument is waived.

### D.    "Temporally Prior" (Claim 3)

Canon contends that WSOU's proposed construction "offers no additional clarity."  Canon Reply Br. at 15.  That is incorrect.  Canon's Reply Brief mischaracterizes WSOU's position in an attempt to interject confusion into the claim.  The claim term, however is clear and is described in the specification as preceding in time.  For example, the specification provides that "[f]or all but the first frame of the video sequence, a frame that has been INTRA-coded is also encoded (407)

---

[12] Canon's reliance on *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337–38 (Fed. Cir. 2005) is misplaced.  First, it is inapplicable because it is not concerned with issue at hand.  Second, unlike here, the "applicants cite problems with OLE object handlers, but do not disclaim anything.  They simply argue that the cited references do 'not disclose or suggest the missing features.'"  Here, on the other hand, the examiner specifically noted "a multimedia system" and "a portable electronic device" were distinct limitations and described them as limiting in the Sept. 30, 2005 Final Rejection.  *See* WSOU Resp. Br. at 33-35.

in a temporally predictive manner with reference to a frame occurring within the video sequence temporally prior to the frame to be coded i.e. by forward prediction." Ex. 2 ('714 patent) at 7:37-41; *see also* Fig. 4.  Moreover, Canon does not dispute that its indefiniteness argument was waived for failure to provide notice of the argument in its invalidity contentions.

### E.     "Said Other Picture" (Claims 29, 32)

Canon insists that "said other picture" is indefinite because it lacks antecedent basis.  But Canon fails to address the fact that WSOU showed the antecedent basis in independent claim 6 from which claims 29 and 32 depend.  WSOU Resp. Br. at 38-39.  Indeed, Canon's alternative proposed construction of "said another picture" supports the fact that the term does in fact have an antecedent basis and undermines Canon's indefinite construction.  Further, Canon fails to address WSOU's argument that, even assuming *arguendo* that claim lacks antecedent basis (which is not the case), the claim is still definite because it is readily ascertainable by those skilled in the art.  *Id.* at 39; *see Graphon Corp. v. Autotrader.com, Inc.*, No. CIVA205CV530TJW, 2007 WL 1870622, at *11 (E.D. Tex. June 28, 2007).  Moreover, contrary to Canon's assertion, Canon's invalidity contentions did not include its indefiniteness position, and therefore, it is waived.

## IV.    CONCLUSION

WSOU respectfully requests that the Court adopt its proposed constructions.

Dated:  October 15, 2021                    RESPECTFULLY SUBMITTED,

By:  */s/ Jonathan K. Waldrop*

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
(Admitted in this District)
jshaw@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5096

Hershy Stern (Admitted *pro hac vice*)
hstern@kasowitz.com
Jayita Guhaniyogi (Admitted *pro hac vice*)
jguhaniyogi@kasowitz.com
Bradley P. Lerman (Admitted *pro hac vice*)
blerman@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
mark@waltfairpllc.com
**LAW FIRM OF WALT FAIR, PLLC**
1508 N. Valley Mills Drive
Waco, TX 76710
Telephone:  (254) 772-6400
Facsimile:  (254) 772-6432

16

**Attorneys for Plaintiff**
**WSOU INVESTMENTS, LLC d/b/a**
**BRAZOS LICENSING AND**
**DEVELOPMENT**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel hereby certifies that on October 15, 2021, pursuant to Local Rule CV-5, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties who have appeared in this case.

*/s/ Jonathan K. Waldrop*
**Jonathan K. Waldrop**
