**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00980-ADA |
| Canon Inc. and Canon U.S.A., Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | |
| Canon Inc., | |
| Third-Party Plaintiff, | |
| v. | |
| NXP USA, Inc., | |
| Third-Party Defendant. | |

**CANON U.S.A., INC.'S MOTION TO TRANSFER FOR IMPROPER VENUE AND
CANON U.S.A., INC. AND CANON INC.'S MOTION TO TRANSFER FOR
CONVENIENCE TO THE EASTERN DISTRICT OF NEW YORK**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTS .......................................................................................... 2

III. LEGAL STANDARD AND APPLICABLE LAW ........................................... 3

IV.  ARGUMENT ...................................................................................................... 3

    A.   CUSA Does Not "Reside" or Have a Physical Place of Business in the
        Western District of Texas ........................................................................ 4

        1.   Registering with an Agent to Conduct Business Is Insufficient to
             Meet the Second Prong of Section 1400(b) ................................. 4

        2.   CUSA Employees Working in WDTX Alone Cannot Meet the
             Second Prong of Section 1400(b) ................................................ 4

        3.   Canon Solutions America, Inc. Cannot Establish Venue for CUSA ......... 6

        4.   Retailers and Authorized Dealers Are Insufficient for Venue ................... 6

    B.   This Case Should Also Be Transferred to EDNY Under § 1404(a) Because
        It Is a Clearly More Convenient Forum .................................................... 7

        1.   The Canon Entities Do Not Have Relevant Witnesses or
             Documents in WDTX ................................................................... 7

        2.   Potential Nonparty Witnesses ...................................................... 8

        3.   Sources of Evidence or Potential Witnesses in WDTX Is Minimal .......... 8

    C.   LEGAL STANDARD .............................................................................. 9

    D.   ANALYSIS ............................................................................................ 10

        1.   This Suit Could Have Been Brought in EDNY ........................... 10

        2.   EDNY Is Clearly the More Convenient Forum ........................... 10

V.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Vehicular Scis. LLC v. Toyota Motor Corp.*,
2014 WL 3385149, at *3 (E.D. Tex. July 10, 2014) .................................................5

*Andra Group, LP v. Victoria's Secret Stores LLC*,
6 F.4th 1283 (Fed. Cir. 2021) ...................................................................................6

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ........................................................................ *passim*

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ................10, 12

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018) ...................................................................................3

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ......................................................................3, 4, 5, 6

*DataQuill, Ltd. v. Apple Inc.*,
No. A-13-CA-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) .......................10

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...............13

*Gaddis v. Calgon Corp.*,
449 F.2d 1318 (5th Cir. 1971) ...................................................................................4

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................12

*GreatGigz Solutions, LLC v. Maplebear Inc.*,
No. W-20-CV-00737-ADA, 2021 WL 4691145 (W.D. Tex. Oct. 6, 2021)......................3, 5, 6

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018) ...............................................................................10

*LoganTree LP v. Garmin Int'l, Inc.*,
2017 WL 2842870 (W.D. Tex. June 22, 2017) ........................................................4

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) ...........................................................................12, 15

*St. Paul Reinsurance Co. v. Greenberg,*
    134 F.3d 1250 (5th Cir. 1998) ...................................................................................5

*TC Heartland LLC v. Kraft Food Grp. Brands LLC,*
    137 S. Ct. 1514 (2017)...............................................................................................3

*In re TS Tech. USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008)...............................................................................15

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ........................................................................9, 12, 14

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ......................................................................9, 10, 12

*Wet Sounds, Inc. v. Audio Formz, LLC,*
    No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017).....................10, 11, 15

*XY, LLC v. Trans Ova Genetics, LC,*
    No. W-16-CA-447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...................11

*In re ZTE (USA) Inc.,*
    890 F.3d 1008 (Fed. Cir. 2018)..................................................................................3

**Statutes**

28 U.S.C. § 1400(b) ......................................................................................3, 4, 5, 6

28 U.S.C. Section 1404(a) ........................................................................1, 2, 7, 12

28 U.S.C. Section 1406(a) ....................................................................................1, 3

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) .................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. Section 1406(a), Canon U.S.A, Inc. ("CUSA") requests that this Court transfer WSOU Investments, LLC's ("WSOU") claims in its Second Amended Complaint ("SAC") against CUSA to the Eastern District of New York ("EDNY") because venue is not proper in the Western District of Texas ("WDTX"). Additionally, Canon Inc. ("CINC") and CUSA (collectively, the "Canon Entities") request that this Court transfer this case to EDNY under 28 U.S.C. 1404(a) because EDNY is a more convenient forum for litigating the issues in the case.

## I.     <u>INTRODUCTION</u>

On October 12, 2021, WSOU filed its SAC and added CUSA as party. However, there is no basis for venue over CUSA here. Venue is only proper where: (1) a defendant resides, or (2) in a district in which a defendant has a regular and established place of business and has committed acts of infringement. CUSA has never resided in this District and has no regular and established place of business in this District. Thus, CUSA respectfully requests that this Court transfer venue of this action to EDNY, where it is headquartered. The Canon Entities also move to transfer this case to EDNY under Section 1404(a) because WDTX is not a convenient forum. This case has no meaningful connection with this District in terms of witnesses, documents, or acts of infringement. The Canon Entities have no presence in this district and CINC performs ***no acts*** of alleged infringement in this District. Indeed, CINC does not make, use, sell, or import the Accused Product in the U.S. ***at all***. CUSA—which is headquartered in EDNY—is responsible for importing, marketing, and selling all of the Accused Product in the U.S.

A significant substantive liability issue in this case will revolve around whether CINC commits any acts of infringement, direct or otherwise, in the U.S. That inquiry will focus on CUSA's documents and personnel, because it is the only U.S. entity that CINC transacts with

regarding the Canon EOS R5 Camera (the "Accused Product").  All the potential witnesses and documents relevant to the Accused Product are in EDNY or Japan where CINC is based.

Because venue is improper as to CUSA and because the interests of justice, the convenience of likely witnesses, and local interests strongly favor transfer, the Canon Entities respectfully request that this action be transferred to EDNY.

## II.   RELEVANT FACTS

On September 10, 2021, CINC filed a Motion to Transfer Venue under Section 1404(a) in related Case No. 6:20-cv-00981-ADA ("the 981 Action").  Dkt. 42.  CINC's motion demonstrated that it undertakes no acts of direct infringement in the U.S.  Instead, CUSA, which is based in EDNY, is the exclusive U.S. importer and distributor of the accused products and has in its possession, custody, and control information related to U.S. sales, financial records, marketing, business and strategic goals, testing, and services and repairs related to the accused products.  Declaration of James L. Smith ISO Mot. to Transfer ("Smith Decl."), ¶¶ 7, 10-12.  Because CUSA is also the exclusive U.S. importer and distributor of the Accused Product in this case, the same issues apply here.  *Id.* at ¶ 7.

On October 12, 2021, WSOU filed its SAC against CINC, and added CUSA as a defendant in this case.  The SAC acknowledges that CUSA is a New York corporation with its principal place of business at One Canon Park, Melville, New York, 11747.  SAC, ¶ 3.  WSOU's complaint does not allege that CUSA resides or has a regular and established place of business in WDTX because CUSA does not.  SAC, ¶¶ 7-12.  To the extent any CUSA employees reside in WDTX, that is their personal choice for their home, as CUSA does not require its employees to reside in WDTX.  Smith Decl., ¶¶ 17-18.  And CUSA does not own, operate, or control any stores or businesses in this District.  *Id.* at ¶ 16.  Indeed, the CUSA employees with relevant

information and all relevant documents in CUSA's possession, custody, and control are located at its headquarters in EDNY.  *Id.* at ¶¶ 12-14.

## III.   <u>LEGAL STANDARD AND APPLICABLE LAW</u>

Venue in a patent case is only proper "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).  For domestic corporations, the first prong is met for a business' "State of incorporation" (*TC Heartland*, 137 S. Ct. at 1521) or "the judicial district where the principal place of business is located" (*In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018)).  The second prong requires that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  All three factors of the second prong must be met for venue to be proper in a specific district.  *Id.*

Once a defendant raises a 12(b)(3) motion for improper venue, it is the plaintiff's burden to establish proper venue.  *GreatGigz Solutions, LLC v. Maplebear Inc.*, No. W-20-CV-00737-ADA, 2021 WL 4691145, at *1 (W.D. Tex. Oct. 6, 2021) (citing *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-14 (Fed. Cir. 2018)).  If venue is improper under § 1400(b), the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

## IV.   <u>ARGUMENT</u>

Venue is improper as to CUSA because it neither "resides" in WDTX nor has a physical, regular and established place of business in WDTX.  And WDTX is not convenient.

A.    **CUSA Does Not "Reside" or Have a Physical Place of Business in the Western District of Texas**

Venue over CUSA is ***not*** proper under the first prong of §1400(b) because it is undisputed that CUSA is incorporated in New York and maintains its principal place of business in Melville, New York, which is in EDNY.  Smith Decl., ¶ 8.

CUSA also does not have a "regular and established place of business" in WDTX. WSOU does not even plead that CUSA has a "regular and established place of business" in this District.  CUSA does not own or lease any property in WDTX.  *Id.* at ¶ 16.  And CUSA does not have any employees or contractors in WDTX working at a CUSA place of business.  *Id.*  Thus, the second prong of § 1400(b) is not satisfied.  *In re Cray*, 871 F.3d at 1363 (§ 1400(b) requires a "physical place").

WSOU's SAC asserts that venue is proper in WDTX.  But, as will be discussed below, every WSOU purported basis for venue is meritless and none are sufficient to establish that CUSA has a "regular and established place of business" in WDTX.

1.    **Registering with an Agent to Conduct Business Is Insufficient to Meet the Second Prong of Section 1400(b)**

WSOU pleads CUSA is registered in Texas (SAC, ¶ 8), as required by Texas law.  But simply having a registered agent in a district is insufficient to make that district a "regular and established place of business."  *LoganTree LP v. Garmin Int'l, Inc.*, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("The fact that [defendants] are authorized to do business in Texas is not controlling and will not establish the [§ 1400(b)] requirement.") (alternations in original) (citing *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1320 (5th Cir. 1971).

2.    **CUSA Employees Working in WDTX Alone Cannot Meet the Second Prong of Section 1400(b)**

WSOU alleges that CUSA has employees in WDTX.  SAC, ¶¶ 9-10.  But that is

insufficient to show a "regular and established place of business."  Instead, WSOU must establish that there is a "place *of the defendant*, not solely a place of the defendant's employee." *In re Cray*, 871 F.3d at 1363.  Here, CUSA does not own or lease any property in WDTX, and therefore, does not have a "regular and established place of business."  Smith Decl., ¶ 16.  While CUSA has a handful of employees who work remotely from WDTX, they work from their own homes and not "a place of [CUSA]," as required under the second prong of Section 1400(b).  *Id.* at ¶ 18.  CUSA does not use the homes of its employees like distribution centers or for storing inventory or run any of its business out of their homes, nor does CUSA own the homes of its remote employees or exercise control over their living arrangements.  *Id.*  Thus, CUSA employees who work from home in WDTX cannot establish venue under Section 1400(b). *Greatgigz*, 2021 WL 4691145, at *2-3.

Additionally, the venue analysis is performed based on facts that exist at the time suit is filed.  *Am. Vehicular Scis. LLC v. Toyota Motor Corp.*, No. 6:12-cv-404 MHS-JDL (Lead), 2014 WL 3385149, at *3 (E.D. Tex. July 10, 2014); *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  Thus, WSOU's assertions regarding alleged *former* CUSA employees residing in this District but who only worked for CUSA before the complaints in this action were filed, if at all, are completely irrelevant to the venue analysis under Section 1400(b). SAC, ¶¶ 9-10.  Referring to the individuals identified in WSOU's Second Amended Complaint, CUSA has no record of the following individuals ever being employed by CUSA: (1) Bill Benavides; (2) Laura RomeroM; (3) Nicky Drake; and (4) Christopher Riddle.  Smith Decl., ¶ 19.  The following former CUSA employees were not employed by CUSA at the time suit was filed: (1) Jill Curtis; (2) Anthony Moore; (3) Curtis Alexander II; (4) Liz Ruvalcaba; (5) Warndalyn Harrison Triche; (6) Tina Roberts; and (7) Robert Baker III.  *Id.* at ¶¶ 20-26.  And the

5

following current CUSA employees were not, and are not currently, working at any CUSA

facilities located in WDTX (because there are none): (1) Doug Marsolan; and (2) Michael James.

*Id.* at ¶¶ 27-28.  Therefore, none of the individuals WSOU identifies in its Second Amended

Complaint establish venue as to CUSA in WDTX.

### 3.  Canon Solutions America, Inc. Cannot Establish Venue for CUSA

That CUSA has a subsidiary with an office in WDTX is insufficient to establish venue

here.  To show a regular and established place of business "there must be a physical place … *of*

*the defendant*."  *Andra Group, LP v. Victoria's Secret Stores LLC*, 6 F.4th 1283, 1287 (Fed. Cir.

2021).  Unable to identify a physical place of CUSA in this District, WSOU relies on an Austin

office of Canon Solutions America, Inc. ("CSA") to allege venue.  SAC, ¶ 11.  While it is a

subsidiary of CUSA, CSA is an independent company dealing in office machines, such as

copiers, that are irrelevant to the Accused Product.  Smith Decl., ¶ 29.  CSA's office in Austin

(*Id.* ¶ 30) is not a "place of [CUSA]" and cannot establish venue over CUSA in WDTX.

### 4.  Retailers and Authorized Dealers Are Insufficient for Venue

WSOU cannot establish venue under § 1400(b) over CUSA based on CUSA's sales of

the Accused Product to independent retailers and authorized dealers (SAC, ¶ 12).  Section

1400(b) requires *CUSA* to have a "regular and established place of business."  *GreatGigz*, 2021

WL 4691145, at *3-4 (retail partner stores insufficient to show venue) (citing *In re Cray*, 871

F.3d at 1363).  The *independent* retailers and authorized dealers identified by WSOU are *not*

CUSA and, thus, their locations are not "places" of CUSA's.  Smith Decl., ¶ 31.  Thus, these

retailers and authorized dealers who simply sell the Accused Product cannot establish venue.

*   *   *

Because there is no proper venue as to CUSA in WDTX under either prong of § 1400(b),

CUSA respectfully requests that this Court transfer this case to EDNY.

**B.** **This Case Should Also Be Transferred to EDNY Under § 1404(a) Because It Is a Clearly More Convenient Forum**

CUSA and CINC jointly move under 28 U.S.C. § 1404(a) to transfer this case to EDNY. Regardless of whether venue is proper as to CUSA—which it is not—the entirety of this case should be transferred to EDNY because it is a clearly more convenient forum than WDTX.

**1.** **The Canon Entities Do Not Have Relevant Witnesses or Documents in WDTX**

CINC is a Japanese corporation headquartered in Tokyo, Japan. Declaration of Seiichi Hamada ("Hamada Decl.") ISO Mot. to Transfer, ¶ 3. CINC does not have any presence in WDTX. *Id*. at ¶ 7. The research, design, and development of the Accused Product takes place in Japan; thus, all of CINC's related documents and personnel are located in Japan. *Id*. at ¶ 6.

CUSA does all the importing and marketing of the Accused Product in the United States. Smith Decl., ¶ 7; Hamada Decl., ¶¶ 4-5. CUSA is headquartered at One Canon Park, Melville, NY 11747, which is in EDNY. Smith Decl., ¶ 8. The documents related to and witnesses with knowledge of the U.S. purchasing, importing, sales, marketing, costs, and profits of the Accused Product are located in or around EDNY. *Id.* at ¶¶ 10-13. These CUSA documents and witnesses will be critical to determining where the initial sale of these products occur, any damages attributable to U.S. sales, and whether CINC commits any acts that could give rise to infringement.

For example, James L. Smith is employed by CUSA as a Senior Director, Accounting Shared Services, Finance and Accounting. *Id.* at ¶ 14. Mr. Smith works in Melville, New York, which is in EDNY. *Id.* Similar to Mr. Smith, Jason Fligman (Senior Director/General Manager, Customer Support Operation, ITCG Technical Services Division), Nam Wook Baek (Advisor, Quality Engineering ITCG Quality Assurance & Control, Input Products Division of CUSA), and

Andrew MacCallum (Advisor, Technical Information, Imaging CX Marketing, Imaging Technologies and Communications Group) may be called as witnesses, each of whom is employed by CUSA at its headquarters in Melville, New York. *Id.* In contrast to the critical evidence located in EDNY, no likely witness for CINC or CUSA has any contact with WDTX.

### 2.    Potential Nonparty Witnesses

The Canon Entities are not aware of any relevant nonparty witnesses in WDTX. On the other hand, there are critical nonparty witnesses and documents within the subpoena power of EDNY related to the '346 patent. Three of the four named inventors of the '346 patent are located in New Jersey: Krishna Balachandran is based in Morganville, New Jersey (https://www.linkedin.com/in/krishna-balachandran-a168a12/), Joseph H. Kang is based in Belle Mead, New Jersey (Dkt. 70-2, p. 2; https://www.linkedin.com/in/joseph-kang-2748aa5/ (showing location as the New York City Metropolitan Area)), and Kumud K. Sanwal is based in Edison, New Jersey (https://njparcels.com/property/1205/1224/11; https://www.linkedin.com/in/kumud-k-sanwal-57463943/ (showing location as the New York City Metropolitan Area)). These cities are all within 100 miles of EDNY. Additionally, the prosecuting attorneys of the '346 patent are based in Virginia. Ex. C-1, p. 4.[1]

### 3.    Sources of Evidence or Potential Witnesses in WDTX Is Minimal

WSOU is a Delaware corporation formed in July 2017 to monetize intellectual property. While WSOU was registered with the Texas Secretary of State on ***January 7, 2020***, as a Foreign LLC, with a business registration at 605 Austin Ave Ste 6, Waco, TX 76701, WSOU's business is basically filing patent infringement lawsuits. Exs. A and B. Because WSOU had nothing to do with developing the technology related to the asserted patent, there is minimal, if any, evidence

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Richard F. Martinelli.

from WSOU that will be at play in this case.  Moreover, WSOU's initial disclosures list only two WSOU employees (Ex. C-1, p. 4), ***neither of whom reside in WDTX***.  Ex. D (WSOU's Chair, C. Etchegoyen, resides Hawaii); Ex. E (WSOU's President, S. Shanus, resides in California).

WSOU alleges in its initial disclosures that there are 13 current and former CUSA employees with knowledge relevant to this case.  Ex. C-1, pp. 5-7.  Contrary to WSOU's allegations, however, none of these individuals have information relevant to this case.[2]  CUSA has no record of four of these individuals, Bill Benavides, Laura RomeroM; Nicky Drake; and Christopher Riddle, having ever worked for CUSA.  Smith Decl., ¶ 19.  None of the actual current or former CUSA employees identified by WSOU were employed in divisions responsible for the Accused Product and, thus, they have no relevant knowledge. *Id.* at ¶¶ 20-28.

### C.    **LEGAL STANDARD**

To succeed on a motion to transfer, the moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Id.* at 315.  The following public and private factors are weighed in this analysis:

> Private Factors:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> Public Factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

---

[2] Even if these individuals had relevant knowledge and information about this case, WSOU has not shown that they have any kind of unique or distinct knowledge relevant to any of its claims or the Canon Entities' defenses that would warrant subpoenaing a third-party instead of seeking the information from a party to the case.

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  "The convenience of the witnesses is probably the single most important factor …."  *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).

    **D.**    **ANALYSIS**

    **1.**    **This Suit Could Have Been Brought in EDNY**

Because CINC is a foreign corporation and CUSA is headquartered in EDNY, this suit could have been brought in EDNY.  *See Volkswagen II*, 545 F.3d at 312-13; *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).  And considering that all the acts alleged to be an infringement in this case are performed by CUSA, a New York Corporation, the case clearly should have been brought in EDNY.  Instead, in filing the original complaint against CINC, and now adding CUSA to the case only after CINC had filed a motion to transfer, WSOU has engaged in a transparent exercise of forum shopping to bring the case in WDTX where there are virtually no contacts to the case and where WSOU cannot sue CUSA.

    **2.**    **EDNY Is Clearly the More Convenient Forum**

    **a.**    **The Private Interest Factors Favor Transfer**

    **(1)**    **Relative Ease of Access to Sources of Proof**

"This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence."  *In re Apple Inc.*, 979 F.3d 1332, 1339-40 (Fed. Cir. 2020).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, and therefore the location of the defendant's documents tends to be the more convenient venue."  *DataQuill, Ltd. v. Apple Inc.,* No. A-13-CA-706, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (internal quotations omitted)[3]; *see also Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-

---

[3] All emphasis added and citations omitted throughout.

CV-141-LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018).  Additionally, "in determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC,* No. W-16-CA-447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

CUSA markets and sells the Accused Products in the U.S. and all relevant damages related proof, such as U.S. sales, costs, and profits, reside in EDNY.  Conversely, there are no sources of proof regarding sales of the Accused Product in WDTX, as neither CINC nor CUSA have any relevant documents or witnesses there.  Smith Decl., ¶¶ 10-14, 16; Hamada Decl., ¶ 6.

WSOU has not identified any meaningful relevant categories of documents located in WDTX.  Ex. C-1, pp. 10-11.  The alleged invention disclosed in the '346 patent was developed by four Alcatel-Lucent employees in New Jersey and Illinois.  There is no evidence WSOU possesses documents relating to conception or reduction to practice for the '346 patent.

Because the Canon Entities U.S. sources of proof are all located in EDNY, and WSOU has limited relevant documents in WDTX, this factor weighs heavily in favor of transfer.

### (2)     Availability of Compulsory Process

As set forth above in Sections IV.B. 1 and IV.B.2., at least four CUSA witnesses and ***three of the four named inventors of the '346 patent*** are located within the subpoena power of Courts in EDNY.  To the extent it is necessary, compulsory processes to secure the attendance of the non-party inventors and witnesses from CUSA are available in EDNY and not WDTX.  In contrast, there are no identified relevant witnesses subject to compulsory process in WDTX.  Therefore, this factor also weighs strongly in favor of transfer.

**(3)**     **Convenience and Cost for Willing Witnesses**

The convenience for and cost of attendance of witnesses is the single most important factor in the transfer analysis.  *See In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *Auto-Dril*, 2016 WL 6909479 at *7.  The Fifth Circuit uses the "100-mile rule" to analyze this factor, which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Apple*, 979 F.3d at 1341 (citing *Volkswagen II*, 545 F.3d at 317).  As discussed above, all U.S. sales of the Accused Product go through CUSA as the sole source in the U.S.  CUSA witnesses will have critical information regarding the infringement issue of whether CINC imports or sells products in the U.S.  They will also have critical damages related information on U.S. sales and marketing to downstream U.S. customers.  Therefore, this factor weighs heavily in favor of transfer.

**CUSA Witnesses**: The Canon Entities anticipate that the following CUSA individuals in EDNY will have knowledge relevant to this litigation: James L. Smith, Jason Fligman, Nam Wook Baek, and Andrew MacCallum.  Smith Decl., ¶ 14.  Even as party witnesses, the convenience to these CUSA personnel is an important consideration.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).  All CUSA witnesses are a short car ride from EDNY courthouses, but more than 1,600 miles and a lengthy plane ride from Waco.  *See* Smith Decl., ¶¶ 14-15.  In addition to travel time, the length of this trip also involves additional expenses such as meal and lodging expenses that would not be necessary if this case was transferred to EDNY.  *Volkswagen I*, 371 F.3d at 204-05.  Therefore, the convenience to CUSA witnesses strongly favors transfer.

**CINC Witnesses**: CINC's witnesses are located in Japan.  Though the difference in distance in traveling from Japan to New York compared to traveling to Waco is arguably not great,

the inconvenience to the witnesses definitely is.  To reach Waco, witnesses from Japan will need to fly to Dallas Fort Worth ("DFW") airport and then travel over 100 miles to the Waco courthouse. Ex. F (DFW to Waco courthouse map).  In contrast, witnesses from Japan can take a direct flight to John F. Kennedy airport in New York City and be in the same city as the EDNY courthouse in Brooklyn.  Ex. G (JFK airport to EDNY courthouse map).  Furthermore, once in New York, the Japanese witnesses will be able to use CUSA's offices and facilities in EDNY.  Thus, EDNY is a more convenient forum for CINC's potential witnesses than WDTX, favoring transfer.

**WSOU Witnesses**: Neither of the two employees that WSOU has identified as having relevant knowledge is located in WDTX.  Mr. Etchegoyen, Chairman of WSOU, and Mr. Shanus, President of WSOU, reside in Kailua-Kona, Hawaii and Los Angeles, California, respectively. Given the additional distance from DFW airport to Waco compared to the distance from JFK airport to the EDNY courthouses, it cannot be said that WDTX is clearly more convenient to Messrs. Etchegoyen and Shanus than EDNY.  *In re Apple*, 979 F.3d at 1341-42 (finding that witnesses traveling from New York would only be "slightly more inconvenienced by having to travel to California than Texas").  Therefore, the location of WSOU's potential witnesses weighs in favor of transfer.

**Nonparty Witnesses**: As discussed in Section IV.B.1., none of the other potentially relevant nonparty witnesses are located in WDTX.  Under this factor, the convenience of nonparty witnesses, such as the non-party inventors, is the most important consideration.  *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019).  Three of the four named inventors of the '346 patent are located in the New York City Metropolitan Area and are within 100 miles of EDNY.  Thus, traveling to EDNY is much more convenient for them than traveling to Waco.

The prosecuting attorneys of the '346 patent are based in Virginia.  Travel from Virginia to New York is also more convenient than traveling to Waco.  The flight from Virginia area to New York is only about an hour.  To the extent any of the prosecuting attorneys would need to testify at trial, it would be possible for them to fly in and out of EDNY on the same day.

*     *     *

Because Canon has identified many relevant CUSA witnesses located in EDNY, there are no likely relevant witnesses located in WDTX, and it is more convenient overall for CUSA's, CINC's, WSOU's, and other nonparty witnesses to travel to EDNY, this factor strongly supports transfer.

### (4)      All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

CUSA must be transferred to EDNY because venue is improper in WDTX.  Thus, CINC should also be transferred to avoid wasting judicial resources, inconsistent results, and additional inconvenience to CUSA and nonparty witnesses if CINC and CUSA are forced to litigate and have witnesses appear in two jurisdictions.[4]  Accordingly, this factor weighs in favor of transfer.

### b.      The Public Interest Factors Favor Transfer

**Local Interest**: The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, ***but rather the significant connections between a particular venue and the events that gave rise to a suit.***"  *In re Apple*, 979 F.3d at 1332.  This factor weighs heavily in favor of transfer to EDNY because of the solid factual connection that this action has to the transferee venue and the lack of connection to WDTX.  *See Volkswagen I*, 371 F.3d at 206.  The CUSA personnel responsible for the allegedly infringing sales in the U.S.

---

[4] The Canon Entities are simultaneously moving to transfer co-pending Case No. 6:20-cv-00981-ADA.

are in EDNY.  Smith Decl., ¶ 14.  This gives EDNY a significant localized interest in the action. *In re Apple*, 979 F.3d at 1345; *see also Wet Sounds*, 2017 WL 4547916, at *4.

In contrast, although WSOU is nominally "headquartered" in Waco, its local interests have no tie to "the events that gave rise to [this] suit."  *In re Apple*, 979 F.3d at 1345.  Because the Canon Entities have no presence in WDTX, WSOU's local interests in WDTX cannot be tied to events giving rise to this suit and this factor strongly favors transfer to EDNY.  *See In re Samsung,* 2 F.4th at 1380-81 (holding case should be transferred where acts leading to infringement took place in transferee forum not WDTX).

**Familiarity with the Governing Law and Conflicts of Law**: Because this case is governed by federal patent law, the last two public interest factors are neutral.  *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## V.   CONCLUSION

For the reasons set forth above, the Canon Entities respectfully request that this Court grant this motion and transfer this case to the Eastern District of New York.

Dated: November 4, 2021

Respectfully Submitted,

/s/ Richard F. Martinelli

Richard F. Martinelli (*pro hac vice*)
rmartinelli@orrick.com
Joseph A. Calvaruso (*pro hac vice*)
jcalvaruso@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Tel:  (212) 506-5000
Fax:  (212) 506-5151

John M. Jackson (Texas Bar No. 24002340)
jjackson@jw.com
**JACKSON WALKER, LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel:  (214) 953-6000
Fax:  (214) 953-5822

*Attorneys for Defendant Canon Inc. and Canon
U.S.A., Inc.*

**CERTIFICATE OF CONFERENCE**

I certify that on November 2, 2021, counsel for Plaintiff conferred with counsel for the Canon Entities regarding the relief requested herein.  Plaintiff's counsel advised that Plaintiff is opposed to a motion to transfer, so it is presented to the Court for resolution.

*/s/ Michael C. Chow*

Michael C. Chow

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically on November 4, 2021 in compliance with CV-5 and has been served on all counsel who have consented to electronic service and all other counsel by regular mail.

*/s/ John M. Jackson*

John M. Jackson

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00980-ADA |
| Canon Inc. and Canon U.S.A., Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | |
| Canon Inc., | |
| Third-Party Plaintiff, | |
| v. | |
| NXP USA, Inc. | |
| Third-Party Defendant. | |
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | Case No. 6:20-cv-00981-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| Canon Inc. and Canon U.S.A., Inc. | |
| Defendants. | |

**DECLARATION OF JAMES L. SMITH IN SUPPORT OF DEFENDANT CANON
U.S.A., INC.'S MOTIONS TO TRANSFER FOR IMPROPER VENUE AND
DEFENDANTS' CANON U.S.A., INC. AND CANON INC.'S MOTIONS TO TRANSFER
FOR CONVENIENCE TO THE EASTERN DISTRICT OF NEW YORK**

In accordance with 28 U.S.C. § 1746, I, James L. Smith, declare as follows:

1.      I am employed by Canon U.S.A., Inc. ("CUSA") and work in Melville, New York. I have been employed by CUSA for approximately 15 years and currently hold the position of Senior Director, Accounting Shared Services, Finance and Accounting at CUSA.

2.      I make this declaration in support of Defendant CUSA's Motions to Transfer for Improper Venue and for Defendants CUSA's and Canon Inc.'s Motions to Transfer for to the Eastern District of New York in the above-captioned action (the "Actions"). I have knowledge of the facts set forth herein based on my personal knowledge, my review of corporate records maintained by CUSA in the ordinary course of business, and/or my discussions with other CUSA employees.

3.      I understand that WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") filed a Second Amended Complaint ("SAC") for patent infringement against CUSA and Canon Inc. ("CINC") on October 12, 2021 in the United States District Court for the Western District of Texas. The SAC alleges infringement of U.S. Patent No. 7,054,346 (the "'346 patent"), entitled "Enhanced Frequency Hopping in a Wireless System."

4.      I understand that WSOU alleges patent infringement of the '346 patent based on the making, using offer to sell, selling and/or importing in the United States of Canon's EOS R5 camera. The EOS R5 camera was announced in the United States in July 2020.

5.      I also understand that WSOU filed another Second Amended Complaint ("SAC") for patent infringement against Canon Inc. on October 12, 2021 in the United States District Court for the Western District of Texas. This SAC alleges infringement of U.S. Patent No. 7,116,714 (the "'714 patent"), entitled "Video Coding."

6.      I understand that WSOU alleges patent infringement of the '714 patent based on the making, using, offer to sell, selling and/or importing in the United States of Canon's EOS C70 and EOS C100 Mark II cinema cameras (collectively with the Canon EOS R5 camera, "the Accused Products"). The EOS C70 was announced in the United States in September 2020 and the EOS C100 Mark II was announced in the United States in October 2014.

7.      CUSA is the exclusive U.S. importer and distributor of the Accused Products in the United States and has been since the products' introduction.

8.      CUSA is a New York corporation that was founded over fifty years ago in 1965. Its headquarters is in Melville, New York, in Suffolk County, Long Island, and has been on Long Island, in the Eastern District of New York, since 1971. It employs over 1,000 workers in its Melville facility. There, CUSA markets Canon's products, including the Accused Products.

9.      CUSA's revenues are dependent on its sales of Canon products in the United States, including the Accused Products.

10.      In addition to selling and distributing the Accused Products in the United States, CUSA also (1) prepares marketing materials, instruction manuals, and websites concerning the Accused Products; (2) maintains financial records concerning their U.S. sales; (3) formulates short- and long-term business and strategic goals for the U.S. market; (4) tests the Accused Products to ensure that they meet pre-established quality standards; and (5) services and repairs the Accused Products.

11.      As a result, CUSA has all of the documentation and electronically stored information that relate to activities in the United States regarding the Accused Products at its headquarters in Melville, New York, including for example:

3

- marketing and product launch materials relating to the Accused Products, including advertisements and product forecasts and planning materials;

- documentation, sales invoices and financial records relating to the purchase and importation of the Accused Products and downstream sales of the Accused Products documenting volume, customers, price, costs, and other metrics over time;

- organizational charts concerning roles and responsibilities of CUSA employees, including those with purchase, importation, and sales functions and technical support and servicing functions related to the Accused Products;

- user guides and manuals detailing instructions for use of the Accused Products;

- quality reports concerning repair trends and data relating to the technical customer service inquiries for the Accused Products; and

- adjustment software (*i.e.*, software used by customer service technicians to make electronic adjustments to camera products) relating to the Accused Products.

12.     To the best of my knowledge, all of these documents and electronically-stored information that are located in the United States reside at CUSA's headquarters in Melville, New York, in the Eastern District of New York.

13.     CUSA does not have any facilities in the Western District of Texas and no relevant documents possessed by CUSA are located in the Western District of Texas.

14.     Further, CUSA employs at its headquarters in Melville, New York witnesses knowledgeable about the activities and documents described above.  Some of these knowledgeable witnesses include:

- Myself, **James L. Smith**, Senior Director, Accounting Shared Services, Finance & Accounting of CUSA.  I have a knowledge related to CUSA's financial information

4

and will be able to testify, among other things, on sales of the Accused Products for the past six years.

- **Jason Fligman**, Senior Director/General Manager, Customer Support Operation, ITCG Technical Services Division at CUSA. Mr. Fligman is knowledgeable concerning CUSA's customer support operation ("CSO") and CUSA's communications to end-user customers concerning technical issues that arise in Canon products, including the Accused Products.

- **Nam Wook Baek**, Advisor, Quality Engineering ITCG Quality Assurance & Control, Input Products Division of CUSA. Mr. Baek is knowledgeable concerning technical support services and quality control issues relating specifically to of the accused Canon EOS R5 camera.

- **Andrew MacCallum**, Advisor, Technical Information, Imaging CX Marketing, Imaging Technologies and Communications Group. Mr. MacCallum is knowledgeable concerning the marketing and launch of the accused Canon EOS R5 camera.

- **Leonard Musmeci**, Senior Manager, Marketing, Pro & B2B Marketing Division of CUSA. Mr. Musmeci is knowledgeable concerning the marketing of Canon's professional camera products, including the accused Canon EOS C70 and EOS C100 Mark II cinema cameras.

- **Vince Agatep**, Senior Specialist, Marketing, ITCG Professional Products Business Planning Division of CUSA. Mr. Agatep is knowledgeable concerning the marketing and launch of the accused Canon EOS C70 and EOS C100 Mark II cinema cameras.

- **Raffi Nenejian**, Manager, Quality Engineering at CUSA. Mr. Nenejian is knowledgeable concerning technical support services and quality control issues

relating specifically to the accused Canon EOS C70 and EOS C100 Mark II cinema cameras.

15.    Many of CUSA's possible witnesses have high-level jobs that are critical to the operation of CUSA, and it would be very disruptive to the company for them to travel to and spend time in the Western District of Texas to testify at trial or other hearings.

16.    CUSA does not lease or own any property in the Western District of Texas and is not incorporated in Texas.  CUSA does not own, operate, or control any stores or business in the Western District of Texas.  Therefore, CUSA does not have any employees or contractors working at a CUSA place of business in the Western District of Texas.

17.    To the extent there are any CUSA employees who reside in the Western District of Texas, that is their personal choice for their home.  CUSA does not require any of its employees to reside in the Western District of Texas.

18.    CUSA has four of employees who work remotely from home in WDTX.  CUSA does not use the homes of these employees for any CUSA business purpose.  It does not use these homes as distribution centers or for storing inventory.  CUSA does not own these homes or exercise control over the living arrangements of its remote employees.

19.    CUSA has no record of the following individuals ever being employed by CUSA: (1) Bill Benavides; (2) Laura RomeroM; (3) Nicky Drake; and (4) Christopher Riddle.

20.    Jill Curtis was employed by CUSA from June 1, 1998 to July 2, 2019.  While at CUSA, Jill worked as an in-house attorney in the legal department at CUSA's headquarters on Long Island handling commercial litigation matters.  She did not have any involvement with, or knowledge of, the Accused Products through her job duties.

6

21.     Anthony Moore was employed by CUSA from June 2, 2014 to August 19, 2017. While at CUSA, he was a sales analyst in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

22.     Curtis Alexander II was employed by CUSA from September 14, 2015 to November 30, 2017.  While at CUSA, he was an account relations representative in a regional account management division within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

23.     Liz Ruvalcaba was employed by CUSA from August 24, 1998 to March 21, 2014. While at CUSA, she was a secretary, sales admin assistant, and account relations representative in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

24.     Warndalyn Harrison Triche was employed by CUSA from February 24, 2000 to November 15, 2008.  While at CUSA, she was a sales admin assistant/representative and an account relations representative in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

25.     Tina Roberts was employed by CUSA from July 17, 2006 to February 2, 2018. While at CUSA, she was a field analyst, a sales analyst, and a technical sales executive in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

26.     Robert Baker III was employed by CUSA from May 1, 1995 to August 1, 2009. While at CUSA, he was a systems support engineer, a marketing specialist, a field analyst, and a

technical sales executive in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

27.     Doug Marsolan is a current CUSA employee who works remotely from his home in Pflugerville, Texas. He has worked as a field analyst and a sales engineer, and now holds the role of Senior Technical Marketing Analyst in CUSA's Hybrid Workplace Solutions Group. This group is responsible for Canon home office products such as inkjet printers and scanners. Mr. Marsolan's prior positions were in divisions within the CUSA business group responsible for Canon products such as copiers, production presses, multi-function enterprise devices, and large format printers.

28.     Michael James is a current CUSA employee who works remotely from his home in Rockwall, Texas. He has worked as a field analyst and a technical marketing analyst in CUSA's large format printer business divisions.

29.     Canon Solutions America, Inc. ("CSA") is a wholly owned subsidiary of CUSA. It is a New York corporation with its headquarters in Melville, New York, in Suffolk County, Long Island, and has been on Long Island, in the Eastern District of New York, since 2013. CSA deals in office machines, such as copiers and printers.

30.     The office location at 12515 Research Blvd. Bldg. 7, Suite 110, Austin Texas 78759 is leased by CSA and is used by CSA as a regional office. No CUSA employees work from this office.

31.     I have reviewed WSOU's Initial Disclosures and the entities identified by WSOU as dealers are not subsidiaries of CUSA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of November, 2021, in Melville, New York.

James L. Smith

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | |
| Plaintiff, | |
| v. | Case No. 6:20-cv-00980-ADA |
| Canon Inc. and Canon U.S.A., Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | |
| Canon Inc., | |
| Third-Party Plaintiff, | |
| v. | |
| NXP USA, Inc. | |
| Third-Party Defendant. | |
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | Case No. 6:20-cv-00981-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| Canon Inc. and Canon U.S.A., Inc. | |
| Defendants. | |

**DECLARATION OF SEIICHI HAMADA IN SUPPORT OF DEFENDANT CANON U.S.A., INC.'S MOTIONS TO TRANSFER FOR IMPROPER VENUE AND DEFENDANTS' CANON U.S.A., INC. AND CANON INC.'S MOTIONS TO TRANSFER FOR CONVENIENCE TO THE EASTERN DISTRICT OF NEW YORK**

I, Seiichi Hamada, declare as follows:

1.      I am currently Senior General Manager of Intellectual Property Transactions & Enforcement Center of Corporate Intellectual Property and Legal Headquarters for Canon Inc. ("CINC").

2.      I have reviewed the Second Amended Complaints for Patent Infringement dated October 12, 2021, filed by Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") against CINC, and I am generally aware of the facts and circumstances surrounding this case (hereinafter, "the Litigation").  In particular, I am aware that WSOU accuses Canon's EOS R5 camera of infringing the '346 patent and Canon's EOS C70 and EOS C100 Mark II cinema cameras of infringing the '714 patent (collectively, the "Accused Products").

3.      CINC is a Japanese corporation.  CINC's worldwide headquarters, principal place of business, and development facilities are located in at 30-2, Shimomaruko 3-chome, Ohta-ku, Tokyo 146-8501, Japan.

4.      CINC does not sell the Accused Products in the United States.  CINC sells products to Canon U.S.A., Inc. ("CUSA"), who has an exclusive license to import and distribute the Accused Products in the United States.

5.      CUSA is responsible for importing, marketing and selling the Accused Products to U.S. consumers.

6.      The Accused Products were researched, designed, developed and manufactured in Japan.

7.      CINC has no presence in the Western District of Texas or the State of Texas.  It is not registered to do business in Texas, has no employees in Texas, and did not develop the Accused

2

Products in Texas.  It does not make, use, sell, or offer to sell the Accused Products in Texas and does not import the Accused Products into Texas.

8.      It is significantly more inconvenient for witnesses from CINC to travel to the Western District of Texas compared to the Eastern District of New York.  If trial were to be held in the Eastern District of New York, witnesses from CINC who attend trial can work out of the offices of CUSA with support from CUSA personnel.  This would be less disruptive compared to attending trial in the Western District of Texas, where neither CINC nor CUSA has an office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of November, 2021, in Tokyo, Japan.

_____
Seiichi Hamada

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development,<br><br>    Plaintiff,<br><br>  v.<br><br>Canon Inc. and Canon U.S.A., Inc.,<br><br>    Defendants. | Case No. 6:20-cv-00980-ADA<br><br>**JURY TRIAL DEMANDED** |
| Canon Inc.,<br><br>    Third-Party Plaintiff,<br><br>  v.<br><br>NXP USA, Inc.<br><br>    Third-Party Defendant. | |
| WSOU Investments, LLC d/b/a Brazos Licensing and Development,<br><br>    Plaintiff,<br><br>  v.<br><br>Canon Inc. and Canon U.S.A., Inc.<br><br>    Defendants. | Case No. 6:20-cv-00981-ADA<br><br>**JURY TRIAL DEMANDED** |

**DECLARATION OF RICHARD F. MARTINELLI IN SUPPORT OF DEFENDANT**
**CANON U.S.A., INC.'S MOTIONS TO TRANSFER FOR IMPROPER VENUE AND**
**DEFENDANTS CANON U.S.A., INC.'S AND CANON INC.'S MOTIONS TO**
**TRANSFER FOR CONVENIENCE TO THE EASTERN DISTRICT OF NEW YORK**

I, Richard F. Martinelli, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a partner of the firm of Orrick, Herrington & Sutcliffe LLP ("Orrick"), attorneys for Defendants Canon Inc. ("CINC") and Canon U.S.A, Inc. ("CUSA"). I make this declaration based on personal knowledge and, if called upon, could testify competently thereto. I submit this declaration in support of CUSA's Motions to Transfer for Improper Venue and Defendants CUSA and CINC's Motions to Transfer for Convenience to the Eastern District of New York in the above-captioned action.

2.      Attached hereto as Exhibit A is a true and correct copy of documents from the Texas Secretary of State records for WSOU entitled "Application for Registration of a Foreign Limited Liability Company," "Assumed Name Certificate" and "Statement of Change of Registered Office/Agent."

3.      Attached hereto as Exhibit B is a true and correct copy of WSOU's webpage https://www.brazoslicensing.com/about, last visited on September 9, 2021.

4.      Attached hereto as Exhibit C-1 is a true and correct copy of WSOU's Initial Disclosures in Case No. 6:20-cv-00980, served on October 8, 2021. Attached hereto as Exhibit C-2 is a true and correct copy of WSOU's Initial Disclosures in Case No. 6:20-cv-00981, served on October 8, 2021.

5.      Attached hereto as Exhibit D is a true and correct copy of a LinkedIn page for Craig Etchegoyen.

6.      Attached hereto as Exhibit E is a true and correct copy of Stuart A. Shanus' license registration with the State Bar of California, last visited on September 9, 2021.

7.     Attached hereto as Exhibit F is a true and correct copy of Google Map from Dallas/Fort Worth International Airport in Dallas, TX to the Western District of Texas, Waco Division courthouse.

8.     Attached hereto as Exhibit G is a true and correct copy of Google Map from JFK Airport in Queens, NY to the Eastern District of New York, Brooklyn Division courthouse.

9.     Attached hereto as Exhibit H is a true and correct copy of Donald E. Stout's profile on   Fitch,   Even,   Tabin   &   Flannery   LLP's   website https://www.fitcheven.com/?t=3&A=8391&format=xml&p=5482, last visited on September 9, 2021.

10.     Attached hereto as Exhibit I is a true and correct copy of G. Peter Albert's profile on Innovation Law LLP's website http://www.innovationlawllp.com/our-founder.html, last visited on September 9, 2021.

11.     Attached hereto as Exhibit J is a true and correct copy of Finnair direct flights from Helsinki   to   New   York   retrieved   from   https://www.finnair.com/en/flights/city-to-city/hel/nyc/flights-from-Helsinki-to-New-York, last visited on September 9, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2021        */s/ Richard F. Martinelli*
                                                            Richard F. Martinelli