PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | **CIVIL ACTION 6:20-cv-00980-ADA** |
| *Plaintiff,* | |
| **v.** | |
| **CANON INC. AND CANON U.S.A., INC.** | |
| *Defendants.* | |
| **CANON INC.,** | **CIVIL ACTION 6:20-cv-00980-ADA** |
| *Third-Party Plaintiff,* | |
| **v.** | |
| **NXP USA, INC.,** | |
| *Third-Party Defendant.* | |

**PLAINTIFF'S OPPOSITION TO CANON U.S.A., INC.'S**
**MOTION TO TRANSFER FOR IMPROPER VENUE AND**
**CANON U.S.A., INC.'S AND CANON INC.'S MOTION TO TRANSFER**
<u>**FOR CONVENIENCE TO THE EASTERN DISTRICT OF NEW YORK**</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................... 2

    A.  Procedural History ...................................................................................... 2

    B.  CUSA's Places of Business at the Employees' WDTX Home Offices ................ 2

    C.  CUSA's Place of Business at CSA's Office in the WDTX and the
        Underlying Comingling of Products, Offices and Employees ............................ 4

    D.  Canon Inc.'s Third-Party Action Against NXP For Indemnification ................... 5

III. ARGUMENT ...................................................................................................... 5

    A.  Legal Standard ............................................................................................ 5

    B.  Venue Is Proper Under 28 U.S.C. § 1400(b) ...................................................... 6

    C.  CUSA's Subsidiary CSA In this District Supports Venue For CUSA .................. 8

    D.  Venue Is Proper Under 28 U.S.C. § 1404(a) ...................................................... 9

        1.  The Balancing Of The Public And Private Interest Factors Weighs
            Against Transfer ............................................................................... 9

            a)  The Private Factors Weigh Against Transfer .............................. 10

            a)  The Public Interest Factors Weigh Against Transfer ................... 14

IV. CONCLUSION.................................................................................................. 155

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvanceMe, Inc. v. RapidPay LLC*,
  450 F. Supp. 2d 669 (E.D. Tex. 2006) ................................................................9, 11

*Auto-Drill, Inc. v. Pason Sys. USA Corp.*,
  No. 6:15–CV–00093, 2015 WL 12780779 (W.D. Tex. June 29, 2015) ..........................12, 13

*Awards Depot, LLC v. Trophy Depot, Inc.*,
  No. H-18-1838, 2018 WL 5311750 (S.D. Tex. Oct. 26, 2018) ..............................15

*Commc'ns Workers of Am., Local 6182 v. Advocacy, Inc.*,
  No. SA–07–CA–662–OG, 2007 WL 9710886 (W.D. Tex. Oct. 4, 2007) ..................11, 13

*In re Cray, Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ................................................................5, 6, 7, 9

*FCX Solar, LLC v. FTC Solar, Inc.*,
  No. 6:21-cv-548-ADA, 2021 WL 4953912 (W.D. Tex. Oct. 25, 2021) ................................15

*Fintiv Inc. v. Apple Inc.*,
  No. 6:18-cv-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ....................................11

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ....................................13

*Mallinckrodt IP v. B. Braun Med. Inc.*,
  No. 17-365-LPS, 2017 U.S. Dist. LEXIS 205593 (D. Del. Dec. 14, 2017) ............................8

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017) ................................................................10

*Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Technology, Ltd.*,
  No. 6:20-cv-00876-ADA, 2021 WL 5316454 (W.D. Tex. Nov. 5, 2021) ........................9, 12

*Network-1 Security Solutions, Inc. v. D-Link Corp.*,
  433 F. Supp. 2d 795 (E.D. Tex. 2006) ................................................................14, 15

*In re Samsung*,
  2 F.4th 1371 (Fed. Cir. 2021) ................................................................14

PUBLIC VERSION

*Uniloc 2017 LLC v. Apple Inc.*,
    No. 6-19-CV-00532-ADA, 2020 WL 3415880 (W.D. Tex. June 22, 2020) ..........................11

*X Tech., Inc. v. Marvin Test Sys., Inc.*,
    No. SA–10–CV–319–XR, 2010 WL 2303371 (W.D. Tex. June 7, 2010) ............................14

**Statutes**

28 U.S.C. § 1391(c)(3) ..............................................................................................................9

28 U.S.C. § 1400(b) ........................................................................................................5, 6, 8, 9

28 U.S.C. § 1404(a) ..............................................................................................................1, 9

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") respectfully files this opposition to defendant Canon U.S.A., Inc.'s ("CUSA") motion to transfer for improper venue and CUSA and Canon Inc.'s ("Canon") (collectively, "Defendants") motion to transfer for convenience to the Eastern District of New York (the "Motion" or "Mot.").[1]

## I.   **INTRODUCTION**

CUSA's argument that venue is improper rests primarily on the mistaken notion that CUSA has no place of business in the Western District of Texas ("WDTX").  CUSA construes that requirement too strictly and ignores the unrebutted evidence.  Further, Canon, CUSA's parent, has sued NXP USA, Inc. ("NXP"), headquartered in the WDTX, and Canon conceded that venue is proper in this District because of NXP's presence here.  Moreover, CUSA's wholly-owned subsidiary, Canon Solutions America ("CSA") (run by the same executives from the same offices and selling identical products in the same target market from the same facilities), has two corporate offices here.  Indeed, CUSA and its and CSA's employees do not distinguish between CUSA and CSA, and neither should the Court.  Thus, notwithstanding defendants' self-serving reading of the law, CUSA has a regular and established place of business in the WDTX sufficient to maintain venue here.

Defendants' § 1404(a) motion also fails.  Defendants do not satisfy their burden of proving that the Eastern District of New York ("EDNY") is *clearly* a *more convenient forum* than the WDTX.  In fact, even if CUSA is headquartered in New York and some of its witnesses/documents

---

[1] Capitalized terms used but not defined herein have the same meaning ascribed to them in the Motion.

are located there, there is a wealth of relevant evidence and witnesses in the WDTX, including all of WSOU's relevant documents and several witnesses, as well as several CUSA employees and third-party dealers that are authorized to sell the accused products.  In addition, potential third-party witnesses have signed declarations attesting to their willingness to appear for trial in this District.  And, of course, NXP, which defendants chose to sue here, is located in the WDTX and its witnesses (per its initial disclosures) and documents presumably are here.  Thus, defendants' transparent attempt to minimize their connections to the WDTX should be disregarded and their Motion denied.

## II.   FACTUAL BACKGROUND

### A.   Procedural History

On October 19, 2020, WSOU filed its Complaint, asserting that Canon infringed U.S. Patent No. 7,054,346 (the '346 Patent").  (Dkt. 1.)  On March 29, 2021, Canon filed a third-party Complaint against NXP (based in Austin) for indemnification for allegedly providing an infringing component in an Accused Product.  (Dkt. 22.)  On April 12, 2021, WSOU filed its Amended Complaint.  (Dkt. 27.)  On October 12, 2021, based on Canon's repeated representations that CUSA sells the accused products in this District, and that CUSA is thus a necessary party, WSOU filed its Second Amended Complaint, adding CUSA as a defendant.  (Dkt. 70.)  On November 4, 2021, Canon submitted a motion for leave to file a motion to transfer to the EDNY for improper venue and for convenience.  (Dkt. 85.)  On December 6, 2021, the Court granted Canon's motion and the Motion was filed the next day.  (Dkts. 94-95.)

### B.   CUSA's Places of Business at the Employees' WDTX Home Offices

CUSA's physical presence and business activities in the WDTX are extensive:

- Since 1977, CUSA has been registered to conduct business in the WDTX (with a registered agent in Austin) and has conducted regular and established business by

selling the accused products and a wide range of other products within the WDTX. (Ex. A, Franchise Tax Account Status sheet.)[2]



[2] "Ex.__" refers to the exhibits to the Declaration of Jonathan K. Waldrop filed concurrently herewith.

-3-

### C.   CUSA's Place of Business at CSA's Office in the WDTX and the Underlying Comingling of Products, Offices and Employees

The evidence shows that CUSA and CSA are being run by the same executives, from the same offices, and sell identical products across multiple product sectors in the same target market:



███████████████████████████████████████

### D.    Canon Inc.'s Third-Party Action Against NXP For Indemnification

Canon sued NXP for indemnification as to Canon and CUSA based on NXP's alleged infringement of the '346 patent and related indemnification agreement.  The facts surrounding the claim against NXP and NXP's motion to sever the claim[4] and keep it in the WDTX show that venue is not only proper but more convenient in this District:

- NXP "has sold products, which form the accused features alleged by WSOU of infringing the '346 patent, to Canon."  (Dkt. 22, Canon Inc.'s Third-Party Complaint against NXP, at ¶ 21.)

- NXP is headquartered in the WDTX and does not have any locations or relevant witnesses in New York.  (Dkt. 99, NXP Motion to Sever Third-Party Claim, at 2 ("there is no dispute that venue for the indemnity claim should be decided in the Western District of Texas, where NXP maintains its principal place of business").)

- ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ███████████████████████████████

## III.    <u>ARGUMENT</u>

### A.    Legal Standard

Pursuant to 28 U.S.C. § 1400(b), venue is proper "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  A defendant has a "regular and established place of business" where: (1) it has a physical place; (2) the physical place is a regular and established place of business; and (3) the physical place is the place of the defendant.  *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  In deciding whether a defendant has a regular and established place of business in a district, "no precise rule has been laid down and each case depends on its own facts."  *Id.* at 1362.

---

[4] WSOU will oppose NXP's motion to sever.

PUBLIC VERSION

The "physical place" element may include an employee's home where the employee is conducting defendant's business, and that place is the *defendant's* place of business where it ratifies the employee's homes for conducting business on defendant's behalf. *Id.* Factors relevant to "ratification" include whether the defendant pays for any part of the employee's home and whether the defendant stores materials there that are necessary for defendant's business, such as equipment, inventory, and training or demo materials (as is the case here). *See Id.* at 1363.

### B.   Venue Is Proper Under 28 U.S.C. § 1400(b)

Here, all three elements of the venue test are met.   As shown above (p. 3), CUSA specifically hired at least five employees to work in the WDTX. ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████   That is more than enough to establish venue under § 1400(b).   *See, e.g., Koss Corp. v. Skullcandy, Inc.*, No. 6-20-CV-00664-ADA, 2021 WL 1226557, at *4 (W.D. Tex. Mar. 31, 2021) (defendant "has a regular and established place of business" in a district where its employees work, even if those employees are working from home); *Correct Transmission LLC v. Adtran, Inc.*, No, 6:20-CV-00669-ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (employee's home is the place of the defendant if the defendant ratifies that home for conducting its business, owns/rents any portion of the home, or stores the defendant's materials needed to

conduct the business there).  *See also RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018) (presence of a single work-at-home employee supported finding of a regular and established place of business where the defendant-employer did not pay the employee's rent, did not exercise any control over his home, and where the employee did not sell products from his home but did store the defendant's materials including a sales kit with related literature for sales demos).

CUSA's argument that venue against it cannot be maintained because it purportedly does not own or lease any property in the WDTX (Mot. at 5) is of no moment.  First, the Federal Circuit has made it clear that owning property or paying rent for property in a district is only one of the many considerations and that "no one fact is controlling."  *In re Cray Inc.*, 871 F.3d at 1366. Moreover, a "place of business" does not require "real property ownership or a leasehold interest in real property."  *TMT Systems, Inc. v. Medtronic, Inc.*, No. 6:20-CV-00973-ADA, 2021 WL 5316411, at *2 (W.D. Tex. Oct. 19, 2021).  But in any event, CUSA effectively *does* lease property here ████████████████████████████████████████████████████████████
████████████████████████████████

CUSA also argues that it does not use the homes of its WDTX employees as distribution centers or for storing inventory.  (Mot. at 5.)  But there is no requirement that a defendant use the employees' homes as distribution centers.  It is sufficient that, as shown (*supra* at 3), the employees are conducting CUSA's business from home using equipment supplied by CUSA.  *See RegenLab USA LLC*, 335 F. Supp. 3d at 549 (element satisfied where the employee stored defendant's sales kit).  CUSA admits its employees ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████[5]

---

[5] CUSA resisted providing that information, doing so only when the Court ordered it to do so.  (Dkt. 106.)

PUBLIC VERSION

And while CUSA contends that it does not "require" its employees to work in this District (Mot. at 2), it ignores that those employees are, in fact, conducting CUSA's business here and CUSA purposefully hired: ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ in Austin.  Defendants cannot dance around those facts.  *See, e.g., RegenLab USA LLC, supra*, 335 F. Supp. 3d at 551 (although the defendant did not "require" employees to reside in district, their homes were the defendant's regular places of business where their tasks were tied to the district).

Finally, CUSA argues that it does not "run any of its business out of [the employees'] homes."[6]  (Mot. at 5.)  This argument is disingenuous.  The WDTX employees were hired by CUSA to assist with conducting CUSA's business in the WDTX, ████████████████████

██████████████████████████████ (*See supra* at 3.)

Accordingly, CUSA has a regular and established place of business in the WDTX, and venue here is proper under 28 U.S.C. 1400(b).

## C.   CUSA's Subsidiary CSA In this District Supports Venue For CUSA

As shown above (p. 4), CUSA is inextricably intertwined in CSA's business and treats CSA promotionally and financially as a CUSA proxy, with the same officers, offices, product lines and market.  For venue purposes, then, contrary to CUSA's argument (Mot. 6), CSA's presence in this District is yet another factor establishing venue as to CUSA.  *See, e.g., TMT Systems*, 2021 WL 5316411, at *11 (parent's role in establishing subsidiary's facility was "alone sufficient for finding venue"); *Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS, 2017 U.S. Dist. LEXIS

---

[6] CUSA asserts that certain CUSA employees referenced in WSOU's complaint no longer work for CUSA or CUSA has no record of them.  (Mot. at 5)  This is irrelevant as CUSA admits there are five CUSA employees working in the WDTX.  *See TMT Systems, Inc., supra*, 2021 WL 5316411, at *1 ("In determining whether venue is proper, 'the Court may look beyond the complaint to evidence submitted by the parties'").

205593, at *8 (D. Del. Dec. 14, 2017) ("In the Court's view, it follows from *Cray* that the 'place'
of a corporate affiliate or subsidiary of a named defendant may, in at least some circumstances,
and similar to the place of a defendant's employee, be treated as a 'place of the defendant.'").

That CSA deals in copiers and not the infringing products (Mot. 6) is irrelevant.  There is
no requirement under § 1400(b) that the defendant's physical presence and business activities in
this District relate specifically to the accused products (and CUSA cites no law to the contrary).
Accordingly, CSA's WDTX offices further establish venue as to CUSA in this District.

### D.      Venue Is Proper Under 28 U.S.C. § 1404(a)

Defendant's motion to transfer to the EDNY under 28 U.S.C. § 1404(a) also is meritless
and should be denied.  As shown above, Canon has argued that venue for this action is proper
before this Court.  (*E.g.*, 981 Case Dkt. 42 at 1, 13-14; Ex. Y, 8/16/21 H'rg. Tr. at 33:9-35:24.)
And the WDTX is inarguably a proper venue as to Canon because "a defendant not resident in the
United States may be sued in any judicial district."  28 U.S.C. § 1391(c)(3).[7]

### 1.      The Balancing Of The Public And Private Interest Factors Weighs Against Transfer

To prevail on a § 1404(a) motion, the movant "must demonstrate that the balance of
convenience and justice substantially weighs in favor of transfer, and, unless the balance of
conveniences weighs *heavily* in the favor of the defendant, the plaintiff's choice of forum will
rarely be disturbed."  *AdvanceMe, Inc. v. RapidPay LLC*, 450 F. Supp. 2d 669, 675 (E.D. Tex.
2006) (citations omitted).  The movant must show that the alternative venue is "*clearly* more
convenient."  *Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Technology,*

---

[7] Canon designs, develops and manufactures the infringing products in Japan ███████████████████████████
████████  (Mot. 2; ███████████████████████████)  And Canon admits it has no office or employees in New
York.  (Mot. 7).

*Ltd.*, No. 6:20-cv-00876-ADA, 2021 WL 5316454, at *2 (W.D. Tex. Nov. 5, 2021) (emphasis added).  As shown below, defendants cannot meet that heavy burden.

> **a)     The Private Factors Weigh Against Transfer**

Given that all of WSOU's documents and witnesses are in or willing to appear in this District, NXP is headquartered and asserts venue is proper here, and Canon's documents and witnesses concerning the design, research, and development of the products are in Japan, the private factors weigh against transfer, even if some of CUSA's witnesses/documents are physically located in New York.

**Private Factor 1: Relative Ease of Access to Sources of Proof Weighs Against Transfer**

All of WSOU's relevant documents, including the '346 patent, patent prosecution file, assignment, asset purchase agreement and chain of title, and related correspondence, are in the WDTX.  (Hogan Decl., ¶ 7.)  Canon's research, design, and development documents are in Japan. (Mot. 7.)  ███████████████████████████████████████████████████

████████████████████████████[8]  *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226-27 (D. Del. 2017) ("reasonable to presume that much of the evidence will be found" where defendant "designed and developed the product" at issue).

Faced with these facts, defendants argue that, because CUSA's documents regarding sale of the infringing products are in CUSA's New York office, this factor favors transfer.  (Mot. 11.) But those documents are only part of the infringement story – which relates to sale *and* the design, research, development and manufacturing of the products – and defendants concede ██████████

████████████████████████████████████████████████████████████████████

---

[8] ████████████████████████████████████████████████████
████████████████████████████████



[9] Accordingly, the "relative ease of access to sources of proof" factor weighs against transfer.

**Private Factor 2:  The Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs Against Transfer**

This factor considers nonparty witnesses whose attendance may need to be secured by a court order.  *See Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 10, 2019).  This factor also does not favor transfer.  The only nonparty witnesses defendants identify are: (i) inventors of the '346 Patent, in New Jersey and Illinois; and (ii) the patent prosecution attorney for the '346 Patent, John Curtin, in Virginia.  (Mot. 8.)  While defendants claim three inventors may be within the subpoena power of the EDNY (but do not claim they would not willingly testify here), Mr. Seymour, is willing to appear in Waco, as is Mr. Curtin (and it is not clear that all inventors will need to testify).  *See* Ex. R, Nov. 11, 2021 Declaration of John Curtin, Esq., ¶ 4; Ex. S, November 17, 2021 Declaration of John Paul Seymour, ¶ 4.)

And defendants ignore nonparty witnesses in the WDTX, including CUSA's authorized dealers, ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  These non-

---

[9] *See also Uniloc 2017 LLC v. Apple Inc.*, No. 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) (electronic access to documents makes them available at almost any location)*; Commc'ns Workers of Am., Local 6182 v. Advocacy, Inc.*, No. SA–07–CA–662–OG, 2007 WL 9710886, at *2 (W.D. Tex. Oct. 4, 2007) ("To the extent transfer would only serve to shift the burden of producing documents from defendant to plaintiffs, transfer is not appropriate.").  And even assuming that some sales documents exist only as hard copies, defendants fail to show any hardship or significant inconvenience associated with producing these documents.  *See Id.,* (transfer not warranted where documents "can be easily copied or scanned and presented to the Court"); *AdvanceMe, Inc.*, 450 F. Supp. 2d at 675 (transfer not warranted where "documents and other records are easily transportable in paper or electronic form").

PUBLIC VERSION

party witnesses, likely with information relevant to sales of the infringing products, are subject to compulsory process here.  *See, e.g.*, *Monolithic Power Sys.*, 2021 WL 5316454, at *6 (WDTX witness who was a "customer, or at least the recipient of samples from [defendant], has information relevant to the merits" of the infringement claim and was subject to compulsory process).  This factor weighs against transfer or is at most neutral.  *See, e.g., Auto-Drill, Inc. v. Pason Sys. USA Corp.*, No. 6:15–CV–00093, 2015 WL 12780779, at *3 (W.D. Tex. June 29, 2015) (this factor is neutral "where the parties have not alleged that non-party witnesses are unwilling to testify").

**Private Factor 3: The Cost of Attendance and Convenience for Willing Witnesses Weighs Against Transfer**

This factor also weighs against transfer.  Here, WSOU's employees are either located in Waco or willing to appear for trial here.  (Hogan Decl., ¶ 8.)  According to Canon, NXP's witnesses are located in the WDTX.  (Ex. T, Canon's Initial Disclosures, p. 2.)  Canon's witnesses with knowledge about the research, design and development of the accused products are in Japan, and there is no more inconvenience to their attendance at trial in the WDTX versus the EDNY (they would travel 6,427 miles from Tokyo to Dallas or 6,745 miles from Tokyo to JFK).  (Ex. U.)  The airfare is comparable for both destinations.  (Ex. V.)  And the time to travel between Dallas and the Waco courthouse is similar to the time to travel between JFK and the EDNY courthouse (approximately a 40-minute difference).  (Ex. W.)

Defendants contend that this case should be transferred, in part, because certain CUSA employees with relevant knowledge are in New York.  (Mot. 12.)  However, defendants do not even allege that these witnesses will *actually* provide deposition or trial testimony, let alone confirm that they will be defendants' key witnesses.  To the contrary, defendants merely contend that the marketing and engineering employees they identify "may be called as witnesses" and that they "anticipate" that the individuals they identify will have relevant knowledge.  (*Id.* at 8, 12.)

While defendants conclude that "no likely witness for [Canon] or CUSA has any contact with WDTX" (*id.* at 8), they do not even address CUSA's presence, including its numerous employees and dealers located in this District, who are likely to have relevant information. *See supra* at 3.[10]

Defendants also fail to show how the testimony of the four identified CUSA employees with purported knowledge about the sale of the accused products (Mot. 12) is not cumulative of each other or why all of those employees would have to travel to Texas at all, rather than be deposed (or appear remotely) wherever they reside. *See* Fed. R. Civ. P. 32(a)(4); *Commc'ns Workers of Am.*, *supra*, 2007 WL 9710886, at *2 ("A defendant's vague description of its need for a witness is insufficient to overcome a plaintiff's choice of forum"). As noted above (*supra* at 3), there are at least five witnesses with knowledge regarding the accused products in the WDTX: ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████. It will certainly be more convenient for those WDTX witnesses to appear in this District than to travel more than 1,600 miles to New York.[11]

Given the totality of the circumstances, the EDNY is not more convenient for the witnesses than the WDTX. *See*, *e.g.*, *Auto-Drill*, 2015 WL 12780779, at *3 (this factor is either neutral or weighs against transfer "when the relevant witnesses are spread throughout the country"); *X Tech.*,

---

[10] While party-employees' inconvenience is still relevant, "an employer's cooperation in allowing an employee to testify [and presumably reimbursement of the costs of doing so] may diminish certain aspects of inconvenience to the employee witness." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5, *13 (Fed. Cir. Aug. 2, 2021).

[11] Tellingly, and in addition to the claims it filed against NXP in this action, Canon filed two cases as a plaintiff in the WDTX seeking the conveniences and protections of this District. *See Canon Inc. v. Roku, Inc.*, No. 6:19-cv-00245, *Canon Inc. v. Acecom, Inc.*, No. 1:18-cv-00181. Moreover, although Canon and CUSA were named as defendants in three other WDTX cases, they did not move to transfer or object to venue in those cases. *See Nano-Proprietary, Inc. v. Canon Inc.*, *et al.*, No. 1:05-cv-00258; *Dobson v. Canon Inc. et al.*, No. 1:98-cv-00639; *Flexiworld Technologies, Inc. v. Canon, Inc.*, et al., No. 6:21-cv-00143. These facts further evidence that defendants do not actually believe venue is improper against them in the WDTX, and defendants offer no reason why venue was proper in those cases but purportedly improper here.

*Inc. v. Marvin Test Sys., Inc.*, No. SA–10–CV–319–XR, 2010 WL 2303371, at *6 (W.D. Tex. June 7, 2010) (defendant failed to show transferee venue was "'clearly more convenient' for the willing witnesses" where plaintiff's witnesses were in Texas and defendant's witnesses were in California and transfer would "merely shift the inconvenience to plaintiff's witnesses"); *Network-1 Security Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800 (E.D. Tex. 2006) (denying transfer to New York and holding convenience factor neutral where witnesses would be coming from Taiwan, California, Israel, New York and Connecticut).[12]

> **Private Factor 4: All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Weigh Against Transfer**

For this factor, defendants argue only that because the claim against CUSA purportedly should be transferred, WSOU's claim against Canon also should be, to avoid inefficiency and inconsistent results. (Mot. 14.) Because, as shown above, the claim against CUSA is properly venued here, there are no practicalities gained from transferring WSOU's claim against Canon.

And defendants also simply ignore their previous argument (981 Case Dkt. 42, pp. 1, 13-14) that venue is proper here because NXP has offices and documents in the WDTX (and no presence in the EDNY). That is still the case, and WSOU *also* has its principal place of business, witnesses and relevant documents in this District. (Hogan Decl., ¶¶ 4-8.) This factor weighs against transfer.

> **b)       The Public Interest Factors Weigh Against Transfer**

> **Public Factor 1: Faster Disposition In This District Weighs Against Transfer**

---

[12] Nor does *In re Samsung*, 2 F.4th 1371 (Fed. Cir. 2021) mandate transfer here. In *Samsung*, there were "over a dozen third-party individuals with relevant and material information" in Northern California and "at least two of the inventors also reside in Northern California." *Id.* at 1379. In contrast, defendants fail to identify any nonparty witnesses in New York and neither the inventors nor the prosecuting attorney live in the EDNY, whereas CUSA has an account manager for the accused products, counsel, multiple dealers that sell the accused products in the WDTX, and an inventor and the prosecuting attorney for the relevant patent have both declared their willingness to appear at trial in the WDTX.

Defendants ignore the much shorter median time from filing to trial for patent cases in the WDTX as compared to the EDNY (23.8 months versus 38.8 months).  (Ex. X, U.S. District Courts – National Judicial Caseload Profile).  And the EDNY (12,733 pending cases) is more congested than the WDTX (9,743 pending cases).  (*Id*.)  Thus, this factor weighs heavily against transfer.[13]

### Public Factor 2: This District's Localized Interest Weighs Against Transfer

Moreover, the WDTX has a localized interest in this dispute.  WSOU's principal place of business is located in Waco.  (Hogan Decl., ¶ 4.)  Further, as shown (*supra* at 3), CUSA sells the infringing products in the WDTX through multiple authorized dealers and has a sales manager for the accused products and independent counsel here.  ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

Accordingly, the WDTX's local interest in the disposition of this case weighs against transfer.  *See Network-1 Security Solutions*, 433 F. Supp. 2d at 801 (local interests weighed against transfer where "[a]llegedly infringing products are sold to residents of the [District], just as they are sold to New York residents, and potential acts of infringement affect the residents of both states").  At a minimum, though, WSOU's headquarters in this District, coupled with CUSA's local connections and activities and NXP's presence here, balanced against CUSA's headquarters and location of sales witnesses in New York, render this factor neutral.[14]

### IV.    CONCLUSION

For the foregoing reasons, defendants' motion to transfer this case should be denied.

---

[13] *See FCX Solar, LLC v. FTC Solar, Inc*., No. 6:21-cv-548-ADA, 2021 WL 4953912, at *9 (W.D. Tex. Oct. 25, 2021) (19.1 months median time to trial in the WDTX versus 30.6 months in the SDNY weighed against transfer); *Awards Depot, LLC v. Trophy Depot, Inc*., No. H-18-1838, 2018 WL 5311750, at *5 (S.D. Tex. Oct. 26, 2018) (median time to trial weighed against transfer where it was significantly greater in EDNY than the SDTX).
[14] WSOU agrees with defendants (Mot. 15) that factors 3 and 4 are neutral.

Dated:  December 28, 2021           RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    333 Twin Dolphin Drive, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 453-5170
    Facsimile: (650) 453-5171

    Bradley P. Lerman (NY Bar No. 4906079)
    (*Pro hac vice* admission)
    blerman@kasowitz.com
    Jayita Guhaniyogi (NY Bar No. 5349022)
    (*Pro hac vice* admission)
    jguhaniyogi@kasowitz.com
    Hershy Stern (NY Bar No. 4631024)
    (*Pro hac vice* admission)
    hstern@kasowitz.com
    Howard L. Bressler (NY Bar No. 248379)
    hbressler@kasowitz.com
    (*Pro hac vice* admission)
    **KASOWITZ BENSON TORRES LLP**
    1633 Broadway
    New York, NY 10019
    Telephone: (212) 506-1700
    Facsimile:  (212) 506-1800

    Mark D. Siegmund (TX Bar No. 24117055)
    mark@swclaw.com
    **STECKLER WAYNE COCHRAN**
    **CHERRY PLLC**

PUBLIC VERSION

8416 Old McGregor Road
Waco, TX 76712
Telephone: (254) 651-3690
Facsimile: (972) 387-4041

**ATTORNEYS FOR PLAINTIFF**
**WSOU INVESTMENTS, LLC**
**d/b/a BRAZOS LICENSING AND**
**DEVELOPMENT**

PUBLIC VERSION

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] Document Filing System, to all counsel of record, on this 28th day of December, 2021.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop