IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC, D/B/A BRAZOS LICENSING AND DEVELOPMENT,**<br>*Plaintiff*<br><br>-v-<br><br>**CANON, INC. AND CANON U.S.A, INC.,**<br>*Defendants* | **6:20-CV-00980-ADA**<br><br>JURY TRIAL DEMANDED |
| **CANON INC.,**<br>*Third-Party Plaintiff*<br><br>-v-<br><br>**NXP USA, INC.,**<br><br>*Third-Party Defendant* | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Third-Party Defendant NXP USA, Inc.'s ("NXP") Opposed Motion to Sever Third-Party Claims and for Separate Trial. ECF No. 99. NXP filed the Motion on December 10, 2021. Third-Party Plaintiff Canon Inc. ("Canon") filed its Opposition to the Motion on January 14, 2022. ECF No. 115. WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") also filed a brief in opposition to NXP's Motion on January 14, 2021. ECF No. 115. NXP filed its Reply on January 21, 2022. ECF No. 120. After careful consideration of the briefing and the applicable law, the Court **DENIES** Canon's Motion to Sever Third-Party Claims and for Separate Trial.

1

## I. BACKGROUND

On October 19, 2020, WSOU filed its Complaint against Defendant Canon alleging infringement of United States Patent No. 7,054,346 (the '346 Patent"). ECF No. 1. On March 29, 2021, Canon filed a third-party Complaint pursuant to FED. R. CIV. P. 14 against NXP for breach of warranties and obligations to indemnify, defend, and hold harmless Canon for an and all claims by Plaintiff WSOU of infringing on the '346 Patent. ECF No. 22. Canon states that the chip providing the infringing functionality was designed and manufactured by Marvell Technology Inc. ("Marvell"), a predecessor to NXP. ECF No. 114 at 1. Canon also alleges that on December 1, 2005, Canon and Marvell entered into an IP Indemnification Agreement where Marvell agreed to indemnify Canon if it purchased Marvell's wireless LAN chips. ECF No. 22 at 4. Canon also alleges an amendment to the agreement in 2017 also confirms the earlier agreement. *Id.* at 5. After NXP acquired Marvell's Bluetooth Business in 2019, Canon and NXP executed an agreement that purportedly warrants NXP as the successor to Marvell and that NXP is bound by all of Marvell's obligations under the 2005 Agreement. *Id.*

On April 12, 2021, WSOU filed its Amended Complaint. ECF No. 27. WSOU later filed its Second Amended Complaint, which added Canon U.S.A., Inc. as a defendant. ECF No. 70.

WSOU is a corporation organized under the laws of Delaware, and its principal place of business is in Waco, Texas. ECF No. 1 ¶ 8. Defendant Canon is a Japanese corporation with its established place of business in Tokyo, Japan. *Id.* ¶ 9. Defendant CUSA is a corporation organized under the laws of New York and maintains its principal place of business in New York. ECF No. 70 ¶ 3. NXP is a Delaware corporation with its principal place of business in Austin, Texas. ECF No. 22 ¶ 2.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 14(a) expressly authorizes any party to "move to strike [a] third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). "Courts are granted wide discretion in determining whether to permit such third-party procedure." *Johnson v. M.I. Windows and Doors, Inc.*, 2:11-CV-0167, 2012 WL 1015798, at *2 (D.S.C. Mar. 23, 2012) (citing *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984). When considering whether to sever the third-party claim under Rule 14(a)(4), "the court typically is concerned with the effect the additional parties and claims will have on the adjudication of the main action—in particular, whether continued joinder will serve to complicate the litigation unduly or will prejudice the other parties in any substantial way." 6 Fed. Prac. & Proc. Civ. § 1460 (3d ed.)

Under Rule 21 of Federal Rules of Civil Procedure, a court may "sever any claim against a party." FED. R. CIV. P. 21. "'Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.'" *Allied Elevator, Inc. v. E. Tex. State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992) (quoting *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983)).

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. "[A] trial court has broad discretion to sever." *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). The relevant considerations for the court to determine whether to sever a party may include: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether judicial economy would be served; (4) whether

prejudice could be avoided through severance; and (5) whether the separate claims require different witnesses and documentary proof*." City of El Paso, Tex. v. Jones*, No. EP-09-CV-119-KC, 2011 WL 996308, at *2 (W.D. Tex. Mar. 17, 2011) (citing *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *see also In re Rolls Royce Corp.*, 775 F.3d 671, 680 n. 40 (5th Cir. 2014).

Rule 42(b) allows a court to order a separate trial of a third-party claim. Fed. R. Civ. P. 42(b). "[T]he court may do so in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." 9A Fed. Prac. & Proc. Civ. § 2387 (3d ed.)

### III. DISCUSSION

NXP moves to sever its third-party claims and for a separate trial on such claims pursuant to Federal Rules of Civil Procedure 14, 21, and 42. The concerns that inform courts when considering severance under these rules often overlap. Among these are judicial economy, prejudice, similarity of factual issues, convenience, the effect on discovery, and more. As Canon notes, the "considerations for severance under Rule 14 are subsumed by the factors considered for severance under Rule 21." ECF No. 114 at 4 n.2. The Court will therefore address NXP's Motion by analyzing the five factors under Rule 21. But first, this Court will analyze whether California law, which governs the dispute between Canon and NXP, requires severance.

**A. California Law does not preclude Canon's third-party claim from proceeding simultaneously with the underlying infringement case.**

NXP argues that Canon's third-party claim does not become ripe until after WSOU's patent infringement claim is decided, meaning that the two claims cannot be decided together. ECF No. 99 at 11. It contends that under California law, indemnification obligations are only triggered after final judgment is rendered in the underlying liability action. *Id.* (citing *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 559, 187 P.3d 424, 435 (2008)). NXP made this same argument in its

4

motion to dismiss. ECF No. 35. This Court has already rejected NXP's argument in its oral ruling on NXP's motion to dismiss for failure to state a claim. ECF No. 51 at 36. Although NXP is correct that the Court did not explicitly state on the record that California law does not bar Canon's claim, the Court was not persuaded by that argument because it denied the motion in its entirety. Nothing has changed since the Court's ruling, and NXP's argument now fares no better.

Even if the Court's prior ruling did not articulate why Canon's claim can proceed, it does so now—California law does not preclude Canon's third-party claim at this stage. NXP relies heavily on *Crawford* and its progeny for the proposition that the duty to indemnify does not arise until after liability is found. ECF No. 99 at 11–12. But NXP's quotations from *Crawford* fail to support its argument considering the contractual language in its indemnification agreement with Canon. The language in the indemnification agreement includes not just a duty to indemnify, but a duty to *defend* Canon from any claims alleging that its chips infringe on a patent. ECF No. 22 ("to indemnify, defend and hold harmless Canon … from and against any claims alleging that … the Chips and any associated firmware infringes a third party's patent."). As the California Supreme Court in *Crawford* explained, the duty defend is broader than the duty to indemnify. *Crawford*, 44 Cal. 4th at 548. The Court explained that the duty to defend attaches as soon as the lawsuit is filed against the indemnitee, not after liability is found:

> A contractual promise to "defend" another against specified claims clearly connotes an obligation of active responsibility, from the outset, for the promisee's defense against such claims. The duty promised is to render, or fund, the service of providing a defense on the promisee's behalf—a duty that necessarily arises as soon as such claims are made against the promisee, and may continue until they have been resolved. This is the common understanding of the word "defend" as it is used in legal parlance.

*Id.* at 552–54. NXP either conflates the duty to indemnify and duty to defend, or it is cherry picking quotes from *Crawford* to escape its obligations under the agreement. Although this Court is not

5

ruling whether NXP actually has any obligations to Canon, the plain language of the agreement shows that Canon's claim is not barred by California law.

### B. The five factors under Rule 21 all favor trying the claims together.

Having determined that California law does not preclude the third-party claim, the Court now turns to the five factors under Rule 21 to analyze whether the claims should be severed. These factors include whether the two claims arise out of the same transaction or occurrence, whether there are overlapping issues of law and fact, whether relevant documents and witnesses overlap, the impact on judicial economy, and prejudice. *City of El Paso,* 2011 WL 996308, at *2.

#### 1) The claims arise out of the same occurrence.

First, the Complaint and Third-Party Complaint arise out of the same occurrence—how Canon's EOS R5 camera infringes on the '346 Patent. First, in the WSOU v. Canon dispute, WSOU is alleging that Canon's Bluetooth functionality in its EOS R5 camera infringes on the '346 Patent. A component in the infringing camera is the chip containing that Bluetooth functionality, a chip that was supplied by Marvell, the predecessor to NXP. In the Canon v. NXP dispute, Canon is seeking indemnity from NXP stemming from Canon being sued by WSOU for infringing on the '346 Patent. Canon's indemnity argument is that NXP and its predecessor Marvell supplied the chip in the EOS R5 camera that contains the accused Bluetooth functionality. If that is true, Canon seeks indemnification because it entered into agreements with Marvell and NXP as suppliers of those chips to indemnify Canon should it be sued for infringement involving those chips. The same transaction or occurrence is therefore at issue in both disputes—how Canon's EOS R5 camera infringes on the '346 Patent. This consideration therefore favors denying the severance.

**2) There are common questions of law and fact.**

Second, because the two disputes arise out of the same transaction or occurrence, they will involve common questions of law and fact. Canon's acquisition of the Bluetooth technology from Marvell and NXP will be at issue in both disputes, as will how the EOS R5 camera, which includes NXP's chip, infringes on the '346 Patent. When there are common questions of law and fact, Courts often elect to try the claims together. *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 730 (S.D. Tex. 2016).

As Canon notes, NXP has admitted that its litigation strategy "depends on whether the jury finds infringement, and, if so, why." ECF No. 99 at 10. Both disputes will have to analyze if NXP supplied an infringing component of the EOS R5 camera, or if Canon infringed by developing software that was independent of the NXP-supplied chips. The source of the infringement in the Accused Product will be at issue in both cases. If the facts show that the chip NXP licensed to Canon does not infringe on the '346 Patent, then that will simultaneously affect WSOU's infringement case and Canon's indemnity case. As the litigation develops in WSOU's case against Canon, the parties will discover precisely what WSOU is accusing of infringing on the '346 Patent. Those issues overlap with Canon's case against NXP.

**3) Relevant documents and witnesses overlap.**

Third, and perhaps most importantly, keeping these cases together would streamline discovery significantly. Relevant documents will overlap. Production of technical documents from the accused functionality will come from both Canon and NXP. When WSOU seeks discovery on the EOS R5 camera, Canon will have to provide documents relating to the design and development of the camera, which will likely include documents about the chips supplied by NXP. It is likely that NXP will then have to produce its documents about the chips that describe its development

7

and design. Canon is therefore correct that "both the infringement action and [Canon's] third-party claim will require production from the same technical documentation from both" Canon and NXP. ECF No. 114 at 9.

Relevant witnesses will also overlap. Testimony from technical witnesses at both Canon and NXP will be relevant to WSOU's infringement case. Those same witnesses will offer testimony relevant to the Canon v. NXP action because whether the Bluetooth 5 technology causes the infringement in the EOS R5 camera will affect NXP's obligations under the indemnification agreement. Both Canon's initial disclosures in the WSOU case and NXP's initial disclosures in the third-party case indicate that there are overlapping witnesses in the two cases. ECF No. 115-5, 115-6. Lastly, damages discovery in the WSOU action will be relevant to the NXP action because those will inform any apportionment of damages involving the NXP chips. Courts often deny motions to sever when there are overlapping discovery, witnesses, and evidence, as is the case here. *Aguirre v. Valerus Field Sols. LP*, No. 15-cv-03722, 2017 WL 2982299, at *4-5 (S.D. Tex. July 13, 2017) ("much of the discovery in the case and many of the witnesses will be the same for all Plaintiffs. Thus, duplicative witnesses and documentary proof weigh in favor of joinder"); *SM Glob. Union, LLC v. Roberts*, No. 14-cv-00535, 2013 WL 2432741, at *2 (S.D. Tex. June 3, 2013) (denying motion to sever); *Cty. of El Paso*, 2011 WL 996308, at *2-3 (denying motion to sever where both sets of claims "arise from the same transactions or occurrences" and thus "present common question of law or fact and *have overlapping* need for witnesses and documentary proof"); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960–61 (S.D. Tex. 2001) (denying motion to sever because, inter alia, "[t]he factual similarity of the claims made by both sets of Plaintiffs, along with the overlapping of their witness lists, weigh heavily against the severing of their claims).

8

**4) Severance would impair judicial economy.**

Courts often deny severance when doing so would hinder judicial economy. *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 457-58 (E.D. Tex. 2004) (denying motion to sever where severance "would decrease judicial efficiency by requiring duplicitous claim constructions, discovery, and pretrial motions"); *GOM Shelf, LLC v. Sun Operating Ltd. P'ship*, No. 06-cv-03444, 2008 WL 11472126, at *1-2 (S.D. Tex. July 17, 2008) (denying motion to sever "in the interests of judicial economy").

Here, trying the claims together will promote judicial economy. As discussed above, because these issues arise out of the same occurrence and involve common questions of law and fact, the most efficient course of action is to keep the disputes together and hear them at the same time. This will minimize the duplication of facts and arguments presented to this Court, thus streamlining both disputes without wasting both litigant and judicial resources. The same reasoning applies to having two juries hear these disputes. Technical and damages witnesses would testify in both actions to describe the infringement of the Accused Product and how NXP's chip contributes to that. Having two juries hear many of the same issues would be duplicitous and wasteful.

Even if the two cases were severed, and a jury in the WSOU case finds that Canon does not infringe, it is not entirely clear that NXP's obligation to Canon terminates. As explained above, the indemnification agreement suggests there is a duty that NXP owes beyond merely indemnifying Canon for any finding of infringement. The language of the agreement requires not just indemnity, but also defense to "any claim, action, suit or proceeding . . . alleging that any Warranted Activity constitutes infringement . . . of any patent". ECF No. 115 at 10. Because the language appears to extend to allegations, as opposed to a jury's findings, a jury verdict of non-

9

infringement may still not be the end of NXP's obligations. Thus, NXP's claim that it would be more efficient to sever the two in order to prevent the need for empaneling a second jury is not persuasive. Judicial and juror economy are best served by denying severance.

### 5) Prejudice to NXP is minimal. Prejudice to Canon and WSOU is likely.

Fifth and finally, NXP argues that WSOU and Canon would suffer no prejudice from a severance, but NXP would be prejudiced by a joint trial of patent infringement and indemnity. ECF No. 99 at 14. The prejudice that NXP's complains of centers on many of the arguments addressed above, such as complicating discovery and leading to unnecessary production of documents. *Id.* NXP also complains that the joint trial could result in confusing the issues to the jury and biasing NXP. *Id.* at 15.

Canon and WSOU contend that they would suffer prejudice if the severance were granted. Canon argues that NXP intends to make substantive technical arguments as to why it has no duty to indemnify in WSOU's infringement case. ECF No. 114 at 5–6. If the cases are severed and NXP does not make those arguments in this case, Canon argues that it will not be able to investigate and rebut those arguments. *Id.* at 6. WSOU argues that a severance would force it to pursue non-party discovery that could "cause delay, inconvenience to the parties and the Court, and cause unnecessary additional expense." ECF No. 115 at 15.

NXP's arguments on pre-trial prejudice are unpersuasive. WSOU alleges infringement based on Canon's Bluetooth 5, and NXP provided the chip that provides the Bluetooth functionality. NXP will therefore have to respond to discovery requests that ask how the chip is implemented into Bluetooth 5. Those discovery requests will happen regardless of whether these cases are severed. And NXP's claim that its liability is "theoretical" and may never emerge if Canon is found not to infringe is also not entirely correct. As discussed above, the indemnification

agreement arguably requires NXP to defend even allegations of infringement surrounding the chip it supplied to Canon. The costs it complains of are not "theoretical"; they could have arisen the moment WSOU filed its Complaint against Canon. Those costs would be incurred regardless of their joinder in this action and are irrelevant to severance.

In terms of prejudice at trial, NXP is correct that there is *some* risk of juror confusion. ECF No. 99 at 15. But that risk inheres every patent case, with issues of infringement, validity, and damages forces jurors to wrestle with complex issues. As Canon notes, a jury would likely be able to understand why NXP as the manufacturer of the chip is trying to defend itself in WSOU's infringement case. ECF No. 114 at 8. The risk of juror confusion is also too speculative at this stage, where discovery has not commenced and the issues for trial have not been narrowed. It would be premature at this stage to hold that prejudice from potential juror confusion should merit severing or bifurcating trials.

As for prejudice to the other parties, this Court agrees that Canon and WSOU would suffer greater prejudice than NXP if the cases were severed. Although WSOU is not asserting claims against NXP, NXP has indicated it will make arguments relevant to infringement that affect is obligation to indemnify. A severance would mean Canon is in a worse position to develop its non-infringement arguments because NXP would be divorced from WSOU's case. As for WSOU, severing the disputes would likely delay discovery and force both it and NXP to incur additional expense associated with non-party discovery.

## IV. CONCLUSION

Severance of the WSOU's claims against Canon and Canon's claims against NXP is unwarranted. In the interests of judicial economy, streamlining discovery, and prejudice to WSOU

and Canon, these cases should proceed together. Based on the foregoing, NXP's Motion to Sever Third-Party Claims and for Separate Trial is **DENIED**.

**SIGNED** this 8th day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE