IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development,<br><br>       Plaintiff,<br><br>  v.<br><br>Canon Inc. and Canon U.S.A., Inc.,<br><br>       Defendants. | Case No. 6:20-cv-00980-ADA<br><br>**JURY TRIAL DEMANDED** |
| Canon Inc.,<br><br>       Third-Party Plaintiff,<br><br>  v.<br><br>NXP USA, Inc.<br><br>       Third-Party Defendant. | |

**CANON INC. AND CANON U.S.A. INC.'S MOTION FOR SUMMARY JUDGMENT THAT CANON IS LICENSED TO THE ASSERTED PATENT UNDER THE BLUETOOTH PATENT AND COPYRIGHT LICENSE AGREEMENT**

1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF UNDISPUTED FACTS .................................................................... 2
    A. Ownership of the '346 Patent ............................................................................... 2
    B. The Bluetooth SIG and Bluetooth Patent/Copyright License Agreement ............. 2
    C. WSOU Accuses the Bluetooth Standard of Infringement .................................... 5
III. LEGAL STANDARD ...................................................................................................... 7
IV. ARGUMENT .................................................................................................................... 8
    A. Canon and Nokia Were Both Members of Bluetooth SIG When Bluetooth 5 Was Adopted .................................................................................................. 8
    B. WSOU's Theory of Infringement Requires the Asserted Claims of the '346 Patent To Be "Necessary Claims" and Accuses Licensed "Compliant Portions" of the Accused Products of Infringement ............................................. 9
        1. The Asserted Claims Are Necessary Claims ............................................ 9
        2. WSOU Accuses Compliant Portions of the Accused Products ............... 12
V. CONCLUSION ............................................................................................................... 13
CERTIFICATE OF SERVICE ................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................. 8

*Duffie v United States*,
    600 F.3d 362 (5th Cir. 2010) ..................................................................................................... 8

*Orion IP, LLC v. Mercedes-Benz USA, LLC*,
    560 F. Supp. 2d 556 (E.D. Tex. 2008) ..................................................................................... 13

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ...................................................................................... 1, 7

Defendants Canon Inc. and Canon U.S.A., Inc. ("Canon USA") (collectively, "Canon") hereby move under Federal Rule of Civil Procedure 56(a) for summary judgment of non-infringement on the basis that Canon is licensed to practice the only patent asserted in this action, U.S. Patent No. 7,054,346 (the "'346 patent") under the Bluetooth Patent/Copyright License Agreement (the "BPCLA") that governs the relationship between all members of the Bluetooth Special Interest Group ("Bluetooth SIG").

I.     INTRODUCTION

As a co-member of the Bluetooth SIG, Alcatel-Lucent—the owner of the '346 patent at the relevant time—granted Canon a perpetual, irrevocable, and worldwide license to all patent claims necessary to practice the Bluetooth standard. Contrary to that still binding license, Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") now accuses Canon of infringement with the sole basis for this claim being that Canon's products practice the Bluetooth 5 standard.

Canon's license to the asserted patent is defined by the BPCLA, which requires that all members of the Bluetooth SIG—such as Alcatel-Lucent (and their successors in interest)—grant to all other members and their affiliates a ***perpetual, irrevocable***, royalty-free license to any patent claims necessary to practice the standard from the moment a Bluetooth specification is adopted. There is no factual dispute that the '346 patent issued on May 30, 2006, which was before the adoption of the allegedly infringing Bluetooth 5.0. There is also no dispute that Alcatel-Lucent, Canon Inc. and Canon USA were all members of the Bluetooth SIG when Bluetooth 5.0 was adopted in December 2016. Thus, under the BPCLA, Alcatel-Lucent granted Canon a ***perpetual***, ***irrevocable***, royalty-free license to the Asserted Claims of the '346 patent in December 2016. And by virtue of WSOU's claim that Canon infringes solely based on its

1

products practice of the Bluetooth Standard, WSOU cannot argue the asserted patent is not necessary to practice Bluetooth under the BPCLA. WSOU's present allegations, which seek payment for Canon's use of Bluetooth 5.0, are inconsistent with the license granted by WSOU's predecessor and summary judgment of noninfringement is warranted.

## II. STATEMENT OF UNDISPUTED FACTS

### A. Ownership of the '346 Patent

WSOU accuses Canon of infringing the '346 patent, titled "Enhanced Frequency Hopping in a Wireless System." *See, e.g.*, SAC, Dkt. 70 at ¶¶ 13-30.[1] The '346 patent was filed on May 7, 2001 and was assigned to Lucent Technologies Inc. Dkt. 70-2 (the '346 patent). The '346 patent issued on May 30, 2006. *Id.* On December 1, 2006, Lucent Technologies merged with Alcatel, forming Alcatel-Lucent S.A.[2] Alcatel-Lucent was subsequently purchased by Nokia—a Bluetooth SIG Board member—on November 2, 2016.[3] In August 2017, Alcatel-Lucent assigned the '346 patent to Wade and Company, who subsequently assigned the '346 patent to WSOU that same month. Dkt. 32-2.

### B. The Bluetooth SIG and Bluetooth Patent/Copyright License Agreement

On December 6, 2016, while Alcatel-Lucent was the owner of the '346 patent, the

---

[1] All citations to WSOU's pleadings reference the Second Amended Complaint hereinafter unless stated otherwise.
[2] *See* SEC, https://www.sec.gov/Archives/edgar/data/886125/000095012306009953/y20140b3e424b3.htm (last visited March 27, 2022).
[3] *See* https://www.nokia.com/about-us/news/releases/2016/11/02/nokia-finalizes-its-acquisition-of-alcatel-lucent-ready-to-seize-global-connectivity-opportunities/ (last visited March 27, 2022).

Bluetooth SIG adopted Bluetooth 5.0.[4][5] Lucent was a founding member of the Bluetooth SIG and Alcatel-Lucent was an Adopter member of Bluetooth SIG at the time Bluetooth 5.0 was released.[6] Furthermore, Nokia was also a Bluetooth SIG Promoter Member at all relevant times. *See* Intel Press Release; Ex. 11; Ex. 12 (showing Shkumbin Hamiti as Nokia's representative on the Bluetooth SIG Board of Directors in September 2016); Ex. 13 (showing the same representative of Nokia, Shkumbin Hamiti, on the Bluetooth SIG Board of Directors in January 2017); Ex. 14 (showing the same representative of Nokia, Shkumbin Hamiti, on the Bluetooth SIG Board of Directors in March 2022); Ex. 15, p. 2 (showing Mr. Hamiti as a Bluetooth SIG Board representative appointed by Nokia as a Promoter Member of Bluetooth SIG from August 2011 to Present). Canon has also been a continuous member of the Bluetooth SIG from at least 2003 until the present, including in December 2016. *See* Tachiwa Decl. ¶¶ 4-6. Specifically, Canon Inc. has been an Associate member and Canon USA has been an Adopter member at all relevant times. *Id*. Additionally, all of the accused products in this case, the EOS R5, EOS R5 C, EOS R3, and IVY CLIQ+2 cameras (collectively, "the Accused Products") meet the Compliance Requirements of the Bluetooth 5.0 specification. *Id.* at ¶ 9; s*ee also* https://launchstudio.bluetooth.com/ListingDetails/102790.

As a condition of membership in Bluetooth SIG, all members must agree to abide by the

---

[4]https://web.archive.org/web/20161220193752/https://www.bluetooth.com/news/pressreleases/2016/12/07/bluetooth-5-now-available (last visited March 27, 2022); *see also* Dkt. 70-7 ("Bluetooth Core Specification v 5.0"), dated December 6, 2016.

[5] Exhibits 1-9 are attached to the Declaration of Wataru Tachiwa ISO Canon's MSJ ("Tachiwa Decl."); exhibits 10-21 are attached to the Declaration of Richard F. Martinelli ISO Canon's MSJ ("Martinelli Decl.").

[6] *See* Intel Press Release: "Bluetooth™ Special Interest Group To Be Led By 3COM, Ericsson, Intel, IBM, Lucent, Microsoft, Motorola, Nokia, and Toshiba," https://www.intel.com/pressroom/archive/releases/1999/mp120199.htm (hereinafter "Intel Press Release") (last visited March 27, 2022); Ex. 10; Ex. 22.

3

BPCLA.  Ex. 8 (BPCLA), p. 1 ("This License will become effective upon the date that Bluetooth SIG issues a written notice to Company…that Company's application for membership in Bluetooth SIG has been accepted by Bluetooth SIG").  The BPCLA requires that each Associate or Adopter Member (including Alcatel-Lucent) and their Affiliates of the Bluetooth SIG grant to every Promoter Member, Associate Member (including Canon Inc.), and Adopter Member (including Canon USA), and their Affiliates a:

> [N]onexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicensable, worldwide license under its Necessary Claims solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions…

*Id.*, ¶ 5(b).  Promoter Member's (including Nokia) and their Affiliates are also required to grant the same nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicensable, worldwide license under the Promoter Member's Necessary Claims to each Associate and Adopter Member and their Affiliates.  *Id.*, 5(a).  Affiliates are defined in the Bluetooth SIG bylaws as:

> [A]ny entity that is, directly or indirectly controlled by, under common control of, or that controls the subject party.  For purposes of this definition control means direct or indirect ownership of or the right to exercise (a) greater than 50% of the outstanding shares or securities entitled to vote for the election of directors or similar managing authority of the subject entity; or (b) greater than 50% of the ownership interest representing the right to make decisions for the subject entity.

Ex. 16 (Bluetooth SIG Bylaws), Section 4.9; *see also* Ex. 17 at CANON_980_00013091 (Section 4.9 of the Bluetooth SIG Bylaws adopted February 20, 2001).  Based on this definition, Alcatel-Lucent is an Affiliate of Nokia.  Canon USA is a wholly owned subsidiary of Canon Inc.  Therefore, Canon USA is an Affiliate of Canon Inc.

"Necessary Claims" means:

4

> [C]laims of a patent or patent application that (a) are owned or controlled by a party or its Affiliates (Licensor) now or at any future time while this License Agreement remains in effect; and (b) are necessarily infringed by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope, wherein a claim is necessarily infringed only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the Scope.

Ex. 8, ¶ 1(o). "Scope" means:

> [T]he protocols and data formats needed for Bluetooth interoperability, and the electrical signaling characteristics solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within such Bluetooth Specification and/or Foundation Specification.

*Id.*, ¶ 1(p).[7]

### C. WSOU Accuses the Bluetooth Standard of Infringement

WSOU filed its FAC on April 12, 2021, alleging that the EOS R5 camera infringes the '346 patent solely because it "uses Bluetooth 5 to transmit data" and "Bluetooth 5 technology is based on Adaptive Frequency Hopping." SAC, Dkt. 70-3 at 1. WSOU's allegations have relied solely on compliance with the Bluetooth 5.0 standard. *See generally* Dkt. 70-3 (citing Dkt. 70-6 (Bluetooth 5 standard published by Bluetooth SIG) and Dkt. 70-7 (Bluetooth Core Specification v 5.0 published by Bluetooth SIG on December 6, 2016)). On May 12, 2021, WSOU served its preliminary infringement contentions, confirming its position that compliance with Bluetooth 5 infringed the '346 patent. On March 14, WSOU served its final infringement contentions cementing this position. For each Asserted Claim, WSOU's contentions rely solely on the text

---

[7] Canon reserves its right to present any additional evidence that the Bluetooth SIG may produce in response to Canon's subpoena to the Bluetooth SIG for deposition testimony and documents.

5

of the Bluetooth 5 standard and alleged implementation of the same to allege infringement of each claim element. *See generally* Ex. 18 at Exhibit 1 to WSOU Investments, LLC's Infringement Contentions. WSOU relies on the channel selection schemes disclosed in Bluetooth 5 for its theory of infringement and specifically, adaptive frequency hopping (*id.* at 7-11) and the Channel Selection Algorithm #2 (hereinafter "Algorithm #2") (*id.* at 11-13, 21-23, 31-33) of Bluetooth 5.[8]

WSOU relies on the following aspects of the Bluetooth 5 standard. The Bluetooth 5 Adaptive Frequency Hopping process begins by using a "selection scheme" that chooses a series of hop frequencies "and visits these hops in a pseudo-random order," with the scheme selecting frequencies from the "AFH_channel_map" input. *See* Dkt. 70-7 (Bluetooth Core Specification v 5.0) at pp. 374-375. The "AFH_channel_map indicates which RF channels shall be used and which shall be unused." *Id*. at p. 379. If a "used" channel is selected, "no adjustment is made" and it can be used, as its name suggests. In contrast, "[u]nused RF channels are re-mapped uniformly onto used RF channels. That is, if the hop selection kernel of the basic system generates an unused RF channel, an alternative RF channel out of the set of used RF channels is selected pseudo-randomly." *Id*. A high-level overview of this selection scheme is shown in Figure 2.20 of the standard. *Id*. at p. 380:

---

[8] On October 12, 2021, WSOU filed its SAC to add Canon USA as a defendant to the case, but WSOU's infringement allegations remain the same.



Figure 2.20: Block diagram of adaptive hop selection mechanism

The Bluetooth 5 standard states that the reason that Adaptive Frequency Hopping (AFH) is used is to "allow[] Bluetooth devices to improve their immunity to interference from and avoid causing interference to other devices in the 2.4 GHz ISM band." *Id*. at p. 258. Adaptive Frequency Hopping is central to the Bluetooth 5 standard because it is necessary for multiple Bluetooth devices to know what channel to transmit over. Indeed, the standard describes Adaptive Frequency Hopping as "a critical element in coexistence." *Id*. at p. 259.

WSOU also alleges that the Accused Products—the EOS R5, EOS R5 C, EOS R3 and IVY CLIQ+2 cameras—infringe the Asserted Claims entirely on the basis that they practice Bluetooth 5. *See* Ex. 19 (Discovery Dispute Chart attached to the December 1, 2021 email from B. Lerman to M. Chow) (alleging in Issue 3 that "WSOU's investigation has revealed that the following products also likely infringe the '346 patent since they also implement Bluetooth 5.0 adaptive frequency hopping: Canon EOS R5, R3, IVY CLIQ+2 Instant Camera Printer + App").

### III.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

7

The moving party bears the initial responsibility to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden that there is no genuine issue of material fact on a dispositive issue, the non-movant can survive summary judgment only by "identify[ing] specific evidence in the record and articulat[ing] [how] that evidence supports that party's claim." *Duffie v United States*, 600 F.3d 362, 371 (5th Cir. 2010).

## IV.   ARGUMENT

WSOU's infringement claims are barred and summary judgment must be granted because Canon has a license to the '346 patent. Both Canon and Alcatel-Lucent (and its parent Nokia) were members of Bluetooth SIG at all relevant times. And under WSOU's own theory of infringement, the Asserted Claims of the '346 patent are "Necessary Claims" to which Alcatel-Lucent granted Bluetooth SIG members—including Canon—a nonexclusive, royalty-free, *perpetual*, irrevocable, and worldwide license pursuant to the terms of the BPCLA.

### A.   Canon and Nokia Were Both Members of Bluetooth SIG When Bluetooth 5 Was Adopted

Under the BPCLA, perpetual and irrevocable licenses are granted for any necessary patents owned by Bluetooth SIG members (including Associate, Adopter, and Promoter Members) and their Affiliates when a standard is adopted. Ex. 8, ¶¶ 5(a)-(b).

Bluetooth SIG adopted Bluetooth 5.0 on December 6, 2016.[9] It is undisputed that, at the time of adoption, Canon Inc., Canon USA, and Alcatel-Lucent (and its parent Nokia) were members of Bluetooth SIG. *Supra*, Section II.B. It is also undisputed that on December 6, 2016,

---

[9] https://web.archive.org/web/20161220193752/https://www.bluetooth.com/news/pressreleases/2016/12/07/bluetooth-5-now-available; *see also* Dkt. 70-7 ("Bluetooth Core Specification v 5.0"), dated December 6, 2016.

Alcatel-Lucent was the owner of the '346 patent, as the patent was not assigned to WSOU until August 2017. *Supra*, Section II.A. WSOU has asserted no facts and submitted no evidence to the contrary.[10] Thus, Alcatel-Lucent, both as a member of Bluetooth SIG and an Affiliate of Nokia, granted Canon a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to any Necessary Claims.

### B. WSOU's Theory of Infringement Requires the Asserted Claims of the '346 Patent To Be "Necessary Claims" and Accuses Licensed "Compliant Portions" of the Accused Products of Infringement

#### 1. The Asserted Claims Are Necessary Claims

Necessary Claims under the BPCLA are claims within patents or patent applications owned or controlled by a member of Bluetooth SIG that are "*necessarily infringed* by implementing those portions of a Bluetooth Specification and/or Foundation Specification … wherein a claim is necessarily infringed only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification." Ex. 8, ¶ 1(o). The relevant portions of the Bluetooth Specification at issue here are Adaptive Frequency Hopping and Algorithm #2.

WSOU cannot reasonably argue that there is a way to implement the adaptive frequency hopping using Algorithm #2 of Bluetooth 5 without infringing because WSOU's *entire* theory of its case is that Canon infringes because it practices adaptive frequency hopping using Algorithm #2 as described in the Bluetooth Standard. *See generally* Ex. 19 (final infringement contentions). Indeed, WSOU relies on *only* the Bluetooth 5.0 specification to allege that the Accused Products

---

[10] Canon brought its Bluetooth licensing defense to WSOU's attention in a letter dated April 27, 2021. Ex. 21 (April 27, 2021 Letter from R. Martinelli). In response, WSOU failed to dispute any of Canon's claims, merely arguing that Canon did not assert that the Accused Product was complaint with Bluetooth 5.0 and that Canon did not address the other requirements for the License. Ex. 22 (June 15 Letter from J. Downing). Both points are addressed herein.

meet *all* the claim elements of the Asserted Claims.[11]  Thus, it is WSOU's position that *any* implementation of adaptive frequency hopping using Algorithm #2 according to the Bluetooth Standard necessarily infringes the Asserted Claims of the '346 patent, leaving no room for a non-infringing implementation of adaptive frequency hopping using Algorithm #2.  WSOU thus admits that, to the extent there is any infringement at all, the Asserted Claims must be "necessarily infringed by implementing" Algorithm #2, as specified by the BPCLA.

The only other requirement under the BPCLA to be a Necessary Claim is that the relevant portion of the Bluetooth Specification be within "the Scope."  The BPCLA defines "Scope" as:

> [P]rotocols and data formats needed for Bluetooth interoperability, … solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is **to enable products to interoperate, interconnect or communicate** as defined within such Bluetooth Specification and/or Foundation Specification.

Ex. 8, ¶ 1(p).  Adaptive frequency hopping falls "within the bounds of the Scope" because it is defined in the Bluetooth 5.0 specification as a communications protocol and "the sole purpose of disclosure is to enable products interoperate, interconnect or communicate."  Dkt. 70-7, pp. 258-59 ("The Core Specification defines the aspects of [adaptive frequency hopping] necessary to *ensure interoperability*, including the hopping kernel, Baseband behavior, Link Manager Protocol (LMP) commands, and Host Controller Interface (HCI) commands and events required to change and configure hopping sequences.") (emphasis added).  Indeed, if a Bluetooth device was not able to follow the Bluetooth specifications for adaptive frequency hopping, it would not

---

[11] This is further supported by WSOU's accusation that the IVY CLIQ +2 also infringes the '346 patent based on the same final infringement contentions (Ex. 19, p. 2) even though the Bluetooth functionality is provided by a different third-party (Cypress Semiconductor) than the third-party that provides the Bluetooth functionality for the EOS R3, EOS R5, EOS and R5 C (NXP).

be able to communicate with other Bluetooth devices because it would not be transmitting and receiving on the same channels.

WSOU's infringement allegations rely on Algorithm #2, which is a specific implementation of adaptive frequency hopping disclosed solely "to enable products to interoperate, interconnect or communicate." Ex. 8, ¶ 1(p). The Bluetooth 5.0 specification describes Algorithm #2:

> Channel Selection Algorithm #2 supports channel selection for connection events and periodic advertising packets.
>
> At the start of an event, which can be a connection event or a periodic advertising packet, the algorithm described here generates an event channel index (which is a data channel index or secondary advertising channel index, as appropriate).

*See* Dkt. 70-7 (Bluetooth Core Specification v 5.0) at 2645. The Bluetooth 5 specification further sets forth in detail how Algorithm #2 works for channel selection events. *Id.* at pp. 2645-2648. Thus, Algorithm #2 is disclosed solely to enable two Bluetooth devices to interoperate, interconnect and communicate.

There is no material dispute that the exceptions to the "Scope" do not apply to adaptive frequency hopping using Algorithm #2 because neither are: (1) enabling technologies in the vein of semiconductor manufacturing technology, compiler technology, object oriented technology, or basic operating system technology; (2) implementations of another published specification; (3) portions of a product or combination of products whose purpose or function is not required for compliance; or (4) application interfaces, applications, or user interfaces. Ex. 8, ¶ 1(p) (describing the types of technology that *do not* fall within the Scope). Thus, adaptive frequency hopping using Algorithm #2 falls within the Scope of the Bluetooth 5.0 Specification and the Asserted Claims are Necessary Claims under the BPCLA.

11

## 2. WSOU Accuses Compliant Portions of the Accused Products

The BPCLA licenses cover "Compliant Portions" of products. The BPCLA defines a "Compliant Portion" as "those specific portions of products… that: (i) implement and are compliant with the actual Bluetooth Specification …, (ii) are qualified pursuant to the Bluetooth Qualification Process, (iii) are within the bounds of the Scope and (iv) meet the requirements set forth in the Compliance Requirements." This provision ensures, for example, that licenses provided by the Bluetooth SIG do not extend to features of a product unrelated to Bluetooth. But that is not an issue here.

All of the Accused Products have passed Bluetooth's Qualification Process and meet Bluetooth's Compliance Requirements for Bluetooth 5.0. Tachiwa Decl., ¶ 9; s*ee also* https://launchstudio.bluetooth.com/ListingDetails/102790. Furthermore, as shown above, the features of Bluetooth being accused of infringement are within the Scope and are directed to core aspects of the Bluetooth specification that are needed for the device to know what channel to communicate over. *Supra*, Section IV.B.1. Thus, the "specific portions" of the Accused Products being accused of infringement are Compliant Portions. WSOU cannot reasonably argue otherwise.

Moreover, WSOU's infringement allegations are directed only and expressly at the portions of the Accused Products that are complaint with the Bluetooth 5 Specification. Indeed, the infringement allegations do not identify any other portions of the Accused Products as allegedly infringing. Instead, the allegations are simply directed at whatever portions of the Accused Product practice the Bluetooth standard. Because WSOU is arguing that the infringing portions of the Accused Products are whatever portion of the Accused Product complies with the standard, those portions must—by definition—be compliant portions.

\*   \*   \*

Accordingly, because WSOU's sole infringement theory is that the Accused Products infringe simply because they comply with the Bluetooth 5.0 specification, Alcatel-Lucent (and its parent Nokia) granted Canon a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to the Asserted Claims of the '346 patent pursuant to the terms of the BPCLA. This perpetual and irrevocable license runs with the patent and survives to this day, as no provisions in the BPCLA permit the termination of the license due to the subsequent sale and assignment of the '346 patent to WSOU. *See Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F. Supp. 2d 556, 560 (E.D. Tex. 2008) (finding that the accused infringer continued to enjoy the "nonexclusive, non-transferable ... royalty-free, fully paid-up, worldwide license" for the life of the patent where the underlying Settlement Agreement only ended the license if the Settlement Agreement was terminated and for no other reason).

## V. CONCLUSION

Under WSOU's infringement theory, Canon enjoys an irrevocable, nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to the Asserted Claims of the '346 patent. This license bars WSOU from asserting claims alleging that the Accused Products infringe the '346 patent. Accordingly, Canon's motion should be granted, and WSOU's claims should be dismissed.

Dated: March 28, 2021                                    Respectfully Submitted,


                                                         */s/ Richard F. Martinelli*

                                                         Richard F. Martinelli (*pro hac vice*)
                                                         rmartinelli@orrick.com
                                                         Joseph A. Calvaruso (*pro hac vice*)
                                                         jcalvaruso@orrick.com
                                                         **ORRICK, HERRINGTON & SUTCLIFFE LLP**
                                                         51 West 52nd Street
                                                         New York, NY 10019-6142
                                                         Tel:  (212) 506-5000
                                                         Fax:  (212) 506-5151

                                                         John M. Jackson (Texas Bar No. 24002340)
                                                         jjackson@jw.com
                                                         **JACKSON WALKER, LLP**
                                                         2323 Ross Avenue, Suite 600
                                                         Dallas, TX 75201
                                                         Tel:  (214) 953-6000
                                                         Fax:  (214) 953-5822


                                                         *Attorneys for Defendant and Third-Party Plaintiff Canon Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically on March 28, 2021 in compliance with CV-5 and has been served on all counsel who have consented to electronic service by electronic mail and all other counsel by regular mail.

*/s/ John M. Jackson*
John M. Jackson