EXHIBIT
21

# KASOWITZ BENSON TORRES LLP

333 TWIN DOLPHIN DRIVE, SUITE 200
REDWOOD SHORES, CALIFORNIA 94065
(650) 453-5170
FAX: (650) 453-5171

JOHN W. DOWNING
DIRECT DIAL: (650) 453-5426
DIRECT FAX: (650) 362-9430
JDowning@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
WASHINGTON DC

June 15, 2021

**VIA E-MAIL**

Richard F. Martinelli
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
rmartinelli@orrick.com

Re: *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Canon, Inc.*, Case Nos. 6:20-cv-00980; 981; 982, -ADA (W.D. Tex.)

Dear Richard:

We write in response to three letters dated April 27, 2021 in the 980, 981, and 982 cases ("Canon Cases"). We disagree with your position that the Canon Cases are frivolous in nature and were filed without a pre-suit investigation. Among other things, WSOU retained an outside engineering firm to confirm its infringement analysis. This analysis included a review of the public record along with testing the products when possible. WSOU provided Canon with a detailed infringement analysis supporting its preliminary infringement contentions, which WSOU will timely supplement when it receives Canon's core technical documents.

**980 case – '346 Patent**

We understand that Canon has taken the position that WSOU's infringement allegations and assertion of the Bluetooth 5.0 standard establish a "clear" license defense against the '346 patent claims. (*See* 980 - April 27, 2021 Letter at 1.) WSOU respectfully disagrees. Canon has not affirmatively stated whether it fully complies with Bluetooth 5.0 as outlined in WSOU's infringement contentions and therefore WSOU cannot currently assess whether the license in this case applies. Moreover, even if we were to assume that Canon was in full compliance with Bluetooth 5.0, which is our current understanding based on public information, and if we assumed

KASOWITZ BENSON TORRES LLP

Richard F. Martinelli
June 15, 2021
Page 2

that the July 2016 Bluetooth Patent/Copyright License Agreement ("License") identified in your letter is relevant, Canon does not address at all the other requirements for the License. For example, Canon has not explained whether "there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the Scope." (*See* License at 1(o) (highlighted by Canon). As a result, we have not received information from Canon that would support a license defense. We look forward to receiving this information so we can fully address Canon's argument.

**981 case – '714 Patent**

Canon's April 27 letter addressing the 981 case cites to several portions of the '714 specification and then concludes that the "Canon EOS C70 is incapable of creating a video in which a picture is redundantly coded as both an INTRA and INTER frame." (*Id*.)  Canon states that the infringement mapping does not point to the "first picture" as claimed in the patent." (*Id.*) However, the available public evidence indicates that a picture in the Canon product is "simultaneously" encoded in two different modes. This indicates that the same picture would be encoded in both the coding methods (in turn as an I-frame and P-frame). To the extent that Canon believes that two streams are encoded separately with separate and independent encoding methods, please provide technical documentation to support Canon's position.

Canon next references Faber along with a claim chart analyzing the reference. But, Faber discloses a video server that stores and processes video. Canon does not disclose a video encoder that has an input for receiving a video signal representing a sequence of pictures. Faber teaches the insertion of I-frames into the transmitted bit-stream whenever the video server receives negative acknowledgements from the client. The negative acknowledgements are sent over a feedback channel as control information using the same error control protocol that is used for the reliable transmission of system commands. In contrast, the patent-in-suit discloses the generation/transmission of I-Frames and P-Frames in the video stream without the Negative Acknowledgement feedback. Faber is therefore deficient for at least these reasons.

**982 case – '537 Patent**

Cannon's April 27 letter regarding the 982 case appears to claim that that Canon's accused system "does not use JPEG2000 at all," such that there can be no infringement of the '537 patent. (982 - April 27, 2021 Letter at 1.)  This appears to be the sole basis for all of Canon's complaints regarding WSOU's infringement theories. WSOU's infringement contentions, served on May 12, 2021, however, identify publicly available documents that show that JPEG 2000 image compression (s*ee e.g.* Fig. 13) and JPEG Transfer Syntax (*see e*.g. Figure 12) *are* implemented in the accused products. With regards to invalidity, we are not in a position to understand how the Canon products have changed over time, and Canon has not provided any information to confirm that its products are prior art to the '537 patent claims.

KASOWITZ BENSON TORRES LLP

Richard F. Martinelli
June 15, 2021
Page 3

We would like to meet and confer regarding the arguments contained in Canon's letters to better understand Canon's positions. Please provide convenient dates for the meet and confer.

                              Sincerely,

                              John W. Downing