PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING AND<br>DEVELOPMENT<br><br>    Plaintiff,<br><br>v.<br><br>CANON INC. and CANON U.S.A., INC.,<br><br>    Defendants. | FILED UNDER SEAL<br><br>Case No.: 6:20-CV-00980-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CANON, INC. AND
<u>CANON U.S.A., INC'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. COUNTER STATEMENT OF UNDISPUTED FACTS ..................................................... 2

    A. The Bluetooth SIG and Bluetooth Patent/Copyright License Agreement ............. 2

    B. The Bluetooth Standard, Testing Bluetooth, and Channel Selection Algorithms Nos. 1 and 2 ..................................................................................... 4

III. LEGAL STANDARD ........................................................................................................... 7

IV. ARGUMENT ........................................................................................................................ 7

    A. Canon Does Not Have a License to the BPCLA Because the '346 Patent is Not a "Necessary Claim" under the BPCLA. ......................................................... 7

    B. Canon Failed to Show Bluetooth 5.0 with CSA No. 2 is Within the Bounds of the Scope. ............................................................................................ 10

    C. The Court Should Grant Summary Judgment on Infringement in Favor of Plaintiff Based on Canon's Failed Argument that it Has a License Defense. ................................................................................................................ 11

V. CONCLUSION ................................................................................................................... 13

PUBLIC VERSION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................................7

*Averette v. Transocean Enters., Inc.*,
    No. 6:07-1557, 2010 WL 2814702 (W.D. La. July 16, 2010)..................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................................7

*City Nat'l Bank v. United States*,
    907 F.2d 536 (5th Cir. 1990) .....................................................................................................12

*Collections Fine Jewelry, Inc. v. Stanley Convergent Sec. Sols.*,
    No. 3:11-CV-3230-N, 2013 WL 12123516 (N.D. Tex. June 4, 2013)....................................12

*Menendez v. Wal-Mart Stores, Inc.*,
    364 F. App'x 62 (5th Cir. 2010) ................................................................................................12

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
    822 F. Supp. 2d 639 (E.D. Tex. 2011).......................................................................................12

*Samson Contour Energy E & P, LLC v. Fred Bowman, Inc.*,
    No. 11-cv-0247, 2011 WL 6157481 (W.D. La. May 11, 2011) ...............................................13

*Stumbaugh v. Am. Commercial Lines LLC*,
    No. CIV.A. 08-1669, 2009 WL 1458037 (E.D. La. May 26, 2009).........................................13

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") respectfully files this opposition to Defendant Canon, Inc. ("CINC") and CANON U.S.A., Inc.'s ("CUSA," and with CINC, "Defendants" or "Canon") Motion for Summary Judgment (Dkt. 141) (the "Motion" or "Mot.").[1]

I. **INTRODUCTION**

Canon's Motion must be denied because it fails to demonstrate the absence of a genuine dispute of material fact that Defendants have a license to the Asserted Claims of the '346 Patent under the Bluetooth Patent and Copyright License Agreement (the "BPCLA"). Canon's Motion is devoid of facts altogether, instead relying on conclusory statements while entirely ignoring a record replete with evidence that undermines its arguments, especially in regards to the existence of technically reasonable noninfringing alternatives ("NIAs") and whether the technology is in the license "Scope." As such, Canon has not met its burden and summary judgment in its favor on this matter is improper. To the contrary, the Court should find that summary judgment is appropriate for Plaintiff regarding the licensing defense pursuant to FRCP Rule 56(f)(1). Given that Canon has argued that its products are covered by the license and attached Plaintiff's infringement contentions that contain (i) references to Bluetooth standards and (ii) references to NXP and Canon source code implemented in the Canon products, the Court should also grant Plaintiff summary judgment on infringement.

---

[1] "Ex. _" refers to the exhibits to the Declaration of Jonathan K. Waldrop ("Waldrop Decl.") filed concurrently herewith.

## II.     COUNTER STATEMENT OF UNDISPUTED FACTS

### A.     The Bluetooth SIG and Bluetooth Patent/Copyright License Agreement

On October 19, 2020, Brazos filed its Complaint, asserting that Canon infringed U.S. Patent No. 7,054,346 (the "'346 Patent"). Dkt. 1. On March 29, 2021, Canon filed a third-party Complaint against NXP USA, Inc. ("NXP") for indemnification for allegedly providing an infringing component in an Accused Product. Dkt. 22. On April 12, 2021, Brazos filed its Amended Complaint. Dkt. 27.

The '346 Patent was filed on May 7, 2001 and was assigned to Lucent Technologies Inc. Dkt. 70-2 (the '346 Patent). The '346 Patent issued on May 30, 2006. *Id.* On December 1, 2006, Lucent Technologies merged with Alcatel, forming Alcatel-Lucent S.A.[2] Alcatel-Lucent was subsequently purchased by Nokia—a Bluetooth SIG Board member—on November 2, 2016.[3] In August 2017, Alcatel- Lucent assigned the '346 Patent to Wade and Company, who subsequently assigned the '346 Patent to Brazos that same month. Dkt. 32-2.

The Bluetooth Special Interest Group ("SIG") is a network of member organizations that are the caretakers and innovators of Bluetooth technology. On December 6, 2016, Bluetooth SIG adopted Bluetooth 5.0. Mot. at 3. Alcatel-Lucent was the owner of the '346 Patent at the time, and Alcatel-Lucent was an Adopter member of Bluetooth SIG at the time Bluetooth 5.0 was released. Mot. at 3. Plaintiff does not dispute that Nokia was also a Bluetooth SIG Promoter Member at all relevant times.

---

[2] *See* SEC, https://www.sec.gov/Archives/edgar/data/886125/000095012306009953/y20140b3e424b3.htm (last visited April 25, 2022).
[3] See https://www.nokia.com/about-us/news/releases/2016/11/02/nokia-finalizes-its-acquisition-of-alcatel-lucent-ready-to-seize-global-connectivity-opportunities/ (last visited April 25, 2022).

As a condition of membership in Bluetooth SIG, all members must agree to abide by the BPCLA. Dkt. 141-3 (Exhibit 8, BPCLA) at 1 ("This License will become effective upon the date that Bluetooth SIG issues a written notice to Company…that Company's application for membership in Bluetooth SIG has been accepted by Bluetooth SIG"). The BPCLA includes a provision in which all Associate or Adopter Members of the Bluetooth SIG, and their Affiliates, grant to every Promoter Member, Associate Member and Adopter Member, and their affiliates, a "nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicensable, worldwide license under its *Necessary Claims* solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions…." *Id.* at ¶ 5(b) (emphasis added). Promoter Member's and their Affiliates are also required to grant the same nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicensable, worldwide license under the Promoter Member's Necessary Claims to each Associate and Adopter Member and their Affiliates. *Id.* at ¶ 5(a).[4] For the purposes of this Opposition only, Plaintiff does not dispute that, under the definitions provided in the Bylaws, that Alcatel-Lucent is an Affiliate of Nokia, and Canon USA is an affiliate of Canon, Inc.

The agreement goes on to define the "Necessary claims" to which the parties would be granted a license as:

> [C]laims of a patent or patent application that (a) are owned or controlled by a party or its Affiliates (Licensor) now or at any future time while this License Agreement remains in effect; and (b) are necessarily infringed by implementing those portions of a Bluetooth

---

[4] Affiliates are defined in the Bluetooth SIG bylaws as: "[A]ny entity that is, directly or indirectly controlled by, under common control of, or that controls the subject party. For purposes of this definition control means direct or indirect ownership of or the right to exercise (a) greater than 50% of the outstanding shares or securities entitled to vote for the election of directors or similar managing authority of the subject entity; or (b) greater than 50% of the ownership interest representing the right to make decisions for the subject entity." Dkt. 141-12 (Exhibit 16, Bluetooth SIG Bylaws) at § 4.9.

> Specification and/or Foundation Specification within the bounds of the Scope, wherein a claim is necessarily infringed ***only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the Scope.***

Dkt. 141-3 at ¶ 1(o) (emphasis added). "Scope" means:

> [T]he protocols and data formats needed for Bluetooth interoperability, and the electrical signaling characteristics solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within such Bluetooth Specification and/or Foundation Specification.

*Id.* at ¶ 1(p).

### B. The Bluetooth Standard, Testing Bluetooth, and Channel Selection Algorithms Nos. 1 and 2

Plaintiff's final infringement contentions (Dkt. 141-14 (Exhibit 18)) accuse Canon Products that include Bluetooth 5.0 (and later Bluetooth Specification versions) that include Channel Selection Algorithm ("CSA") No. 2. Plaintiff's infringement contentions include citations to the Bluetooth specification, but also reference the actual code that was produced on secure source code computers pursuant to the Protective Order entered in the case. *See id.* at Infringement Chart at 19 (discussing designation of used channels and unused channels).

The Bluetooth specifications include mandatory and optional features. Mandatory features are features that must be tested and passed – or the product cannot be Bluetooth certified; if the product is not certified, the product is not allowed to use the corresponding Bluetooth logo. *See* Ex. A (April 22, 2022 Deposition of Steve Syang ("Syang Dep. Tr.")) at 60:12-19. Optional Bluetooth features are not required to be tested at all and the new Bluetooth features disclosed in Bluetooth Specifications 4.2, 5.0, 5.1, 5.2, and 5.3 are optional and thus, do not require testing. *Id.* at 60:20-61:8; 61:17-19.

CSA No. 1 implements channel hopping as a fixed interval and was introduced when Bluetooth 4.0 was introduced.  *Id.* at 72:7-18; 72:24-73:6. CSA No. 1 is a mandatory feature (not optional).  *Id.* at 72:3-19.  Unlike CSA No. 1, CSA No. 2 does not use fixed interval hopping, it instead performs hopping in a pseudo random manner.  *Id.* at 73:24-74:17. CSA No. 2 is an optional Bluetooth feature.  *Id.* at 74:24-75:6; 101:4-17.





In either scenario, the final product remains cable of communication and interoperability with another device, and as such, multiple technically reasonable NIAs exist.

### III. LEGAL STANDARD

The Court should grant summary judgment only where the moving party demonstrates "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, it is the moving party's burden to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). District courts considering summary judgment motions should not "weigh the evidence and determine the truth of the matter" because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …." *Id.* at 255. Furthermore, "all justifiable inferences are to be drawn" in favor of the non-moving party; here, Plaintiff. *Id*.

### IV. ARGUMENT

#### A. Canon Does Not Have a License to the BPCLA Because the '346 Patent is Not a "Necessary Claim" under the BPCLA.

Canon does not have a colorable argument that it has a license to use the Asserted Claims of the '346 Patent under the BPCLA. As explained *supra*, Section II.A, and in Canon's Motion, in order to be a "necessary claim" at least two things must happen: first, the license only applies "when it is not possible to avoid infringing it because there is ***no technically reasonable non-infringing alternative*** for implementing such portions of the Bluetooth Specification…", and second, it must be "***within the bounds of the Scope***." Dkt. 141-3 at ¶¶ 1(o and p). With regards to the first issue ("technically reasonable non-infringing alternative"), it is unsurprising that Canon ignores this important caveat, since Canon and NXP have both admitted that technically reasonable alternatives to CSA No. 2 exist.

-7-

Specifically, Wataru Tachiwa, Canon's lead engineer and 30(b)(6) witness, testified during his deposition that he believed there to be technically reasonable NIAs to Bluetooth 5.0 and CSA No. 2. Ex. C (██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████). Furthermore, NXP, who makes the accused Bluetooth chip in question, the 88W8987 admitted in Request for Admission response No. 5 – that technically reasonable non-infringing alternatives exist for the Patented Technology (Bluetooth 5.0 with CSA No. 2). Ex. E (NXP's Responses and Objections to Brazos's First Set of Requests for Admissions, dated April 20, 2022). Additionally, NXP went on to explain in NXP's First Supplemental Responses and Objections to Plaintiff's Interrogatory No. 7 that it provides firmware to its customers that can ██████████████████████████:

[██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████]

Ex. F (NXP's First Supplemental and Amended Objections and Responses to Brazos's First Set of Interrogatories, dated March 17, 2022). NXP's corporate witness explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Syang goes on to explain that the product that removes CSA No. 2 will continue to function and interoperate using Bluetooth.

Canon's witness, Mr. Tachiwa, also testified that even if Bluetooth 5.0 and CSA No. 2 is included in the NXP chip and capable of being used, it is not used in all circumstances:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. C (Tachiwa Dep. Tr. Day II) at 255:13-25; *see also* Ex. D (Tachiwa Dep. Tr. Day I) at 33:3-25; 43:3-45:4 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Finally, CSA No. 2 was not used in previous Bluetooth specifications, meaning while it represents an improvement, technically reasonable alternatives to it exist where the Bluetooth specification could still operate, without infringing on the CSA No. 2. Ex. D (Tachiwa Dep. Tr.

-9-

Day I) at 133:4-8 (█████████████████████████████████████████████████████████████████████████████████).

Canon wholly ignores the overwhelming and definitive evidence and admissions from Canon and NXP in the record that technically reasonable NIAs exist, and thus it has no license defense under the BPCLA. Accordingly, Canon's Motion fails as a matter of law.

### B. Canon Failed to Show Bluetooth 5.0 with CSA No. 2 is Within the Bounds of the Scope.

Canon also fails under part two of the test. Canon cannot show that Bluetooth 5.0 with CSA is "*within the bounds of the Scope*" of the BPCLA and that "data protocols and data formats needed for Bluetooth interoperability and the electrical signaling characteristics … where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate." Dkt. 141-3 at ¶ 1(o). As explained above, CSA No. 2 is an optional feature that can be taken entirely out of the product. There is no support at all that CSA No. 2 is needed for Bluetooth interoperability or that the *sole* purpose of CSA No. 2 is to enable products to "interoperate, interconnect or communicate." *Id.* Indeed, consistent with the testimony and discovery responses from NXP and Canon indicating that CSA No. 2 is optional, Bluetooth documentation also states that "[d]evices can indicate whether or not they support" CSA No. 2. Ex. G (Exhibit 8 to Tachiwa Deposition (Day I)) at 21. This document does not indicate at all that Bluetooth 5.0 with CSA No. 2 is needed for interoperability or that the sole purpose of CSA No. 2 is to interoperate, interconnect, or to communicate. Indeed, according to Bluetooth, CSA No. 2 is intended as an improvement to "reduc[e] the probability of packet collisions." *Id.* There is simply no support that Bluetooth 5.0 with CSA No. 2 falls within the "Scope," nor any technical analysis at all.

At a minimum, there is a clear *dispute* of material fact regarding the existence of technically reasonable NIAs and whether Bluetooth 5.0 and CSA No. 2 falls within the "Scope," making

summary judgment improper. Plaintiff, however, believes this is a case beyond a mere dispute of material fact, but rather the above evidence and critical admissions on this topic by Canon (and NXP) are insurmountable, and as such summary judgment finding no license defense should be granted in Plaintiff's favor. *See* FRCP Rule 56(f)(1).

### C.  The Court Should Grant Summary Judgment on Infringement in Favor of Plaintiff Based on Canon's Failed Argument that it Has a License Defense.

Canon wants to have its cake and eat it too. In its Motion, Canon claims because *Plaintiff's position* is that Canon's implementation of adaptive frequency hopping using CSA No. 2 infringes the Asserted Claims of the '346 Patent, that Canon is licensed under the BPCLA. Mot. at 6 (indicating that Plaintiff's infringement theory is adaptive frequency hopping and the implementation of CSA No. 2). In that sense, Canon has *admitted* that the implementation of Bluetooth 5.0 and CSA No. 2 in the Canon products, including the Canon and NXP Source Code identified in Plaintiff's contentions, infringe the '346 Patent.

However, outside of its Motion, Canon has taken the position that infringement and noninfringement are subjects of expert testimony, on which Canon will not provide discovery, evidence or argument until serving expert reports. For example, in response to Interrogatory No. 4, which asked Canon "to set forth in detail (on an element-by-element and product-by-product basis) the factual and legal bases for your contention of non-infringement," Canon responded that:

> Canon further objects to this Interrogatory as premature in that . . . it seeks expert opinions, analysis, or testimony before such discovery is required pursuant to the Agreed Amended Scheduling Order . . . WSOU "is not entitled to obtain early disclosure of expert opinions via interrogatory" and Canon's non-infringement contentions "are left for expert opinions and expert discovery." *Maxell Ltd. v. Apple Inc.,* No. 5:19-cv-00036-RWS, D.I. 126 at *4-5 (E.D. Tex. Nov. 13, 2019 Order) (citing *Huawei Techs. Co. v. T-Mobile US, Inc.,* No. 2:16-cv-00052-JRG-RSP, 2017 WL 9988630, at *1 (E.D. Tex. Aug. 25, 2017); *Promethean Insulation Tech. LLC v. Sealed Air Corp.,* No. 2:13-CV-1113-JRG-RSP, 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015)). Because this Interrogatory seeks expert discovery that

is not appropriate at this phase of litigation, Canon does not need to respond to this
Interrogatory at this time. *Id.*

Ex. H (Canon's Responses and Objections to Brazos's First Set of Interrogatories (Nos. 1-8)) at 14-15; Ex. I (CUSA's Responses and Objections to Brazos's First Set of Interrogatories (Nos. 1-8)) at 15-16. Canon responded similarly in stating such topics were premature subjects of expert testimony to Plaintiffs' interrogatory requesting Canon to describe any NIAs, and Plaintiff's 30(b)(6) subpoena requesting a witness on the same. However, Canon has now put the issue of infringement front and center through the Motion, by attaching Plaintiff's final infringement contentions, which contain Plaintiff's infringement theories, and without offering any evidence of non-infringement. Instead, Canon has included a declaration from one of its employees attaching a testing document to show that its products are compliant with Bluetooth. Mot. at 12; Dkt. 141-1 at ¶ 9.

Looking at the confines on Canon's Motion, Canon has admitted its products infringe on the Asserted claims of the '346 Patent. The Fifth Circuit has held that courts "can appropriately treat statements in briefs as binding judicial admissions of fact." *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990); *see, e.g.*, *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 n.6 (5th Cir. 2010) ("We treat the plaintiffs' statement in their briefing before the district court that Mr. Menendez was a citizen of Texas as a binding judicial admission."); *Collections Fine Jewelry, Inc. v. Stanley Convergent Sec. Sols.*, No. 3:11-CV-3230-N, 2013 WL 12123516, at *2 n.2 (N.D. Tex. June 4, 2013) (rejecting plaintiff's contention "that [defendant] fail[ed] to conclusively prove that the . . . contract governs the parties" and concluding that the plaintiff's "previous assertion that [defendant] assumed [the] rights and obligations is a binding judicial admission of fact"); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 643-44 (E.D. Tex. 2011) (treating party's "admission in its response brief" regarding sales figures "as a

binding judicial admission of fact" for the purpose of calculating damages); *Samson Contour Energy E & P, LLC v. Fred Bowman, Inc.*, No. 11-cv-0247, 2011 WL 6157481, at *3 (W.D. La. May 11, 2011) ("Statements in a brief or memorandum may be treated as binding judicial admissions."); *Averette v. Transocean Enters., Inc.*, No. 6:07-1557, 2010 WL 2814702, at *3 (W.D. La. July 16, 2010) (holding that party's "statements in its briefs, admitting that the stabbing basket controls malfunctioned, are judicially binding" under judicial admissions doctrine); *Stumbaugh v. Am. Commercial Lines LLC*, No. CIV.A. 08-1669, 2009 WL 1458037, at *2 (E.D. La. May 26, 2009) (party could not claim seaman status after asserting in summary judgment motion that he was not an employee). Canon's entire Motion is premised on the fact that the Accused Products infringe, and on the basis of that infringement and the Canon's status as member of the Bluetooth SIG, Canon has a license to use Plaintiff's Asserted Claims. While Canon is wrong that it has a BPCLA license, Canon should not be allowed to use infringement as a shield, if it does not want Plaintiff to wield it as a sword. The Court should take Canon at its word that infringement has occurred, and grant summary judgment on infringement in favor of Plaintiffs under FRCP 56(f).

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on its licensing defense should be denied. The Court should grant summary judgment based on infringement.

Dated: April 25, 2022                                           RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Hershy Stern (NY Bar No. 4631024)
(Admitted *pro hac vice*)
hstern@kasowitz.com
Howard L. Bressler (NY Bar No. 248379)
(Admitted *pro hac vice*)
hbressler@kasowitz.com
Noah P. Dorman (DC Bar No. 1779821)
(Admitted *pro hac vice*)
ndorman@kasowitz.com
Charles A. Naggar (NY Bar No. 5356449)
(Admitted *pro hac vice*)
cnaggar@kasowitz.com
Lea Dartevelle Erhel (NY Bar No. 5172101)
(Admitted *pro hac vice*)
ldartevelle@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
mark@swclaw.com
Craig D. Cherry (TX. Bar No. 240124149)
craig@swclaw.com

**STECKLER WAYNE CHERRY & LOVE PLLC**
8416 Old McGregor Road
Waco, TX 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689

**ATTORNEYS FOR PLAINTIFF WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT**

PUBLIC VERSION

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record, on this 25th day of April, 2022, via the Court's CM/ECF system.

                                                */s/ Jonathan K. Waldrop*
                                                Jonathan K. Waldrop